Michael J. Coffino (SBN 88109)
MCoffino@ReedSmith.com
Brandon W. Corbridge (SBN 244934)
BCorbridge@ReedSmith.com
James E. Heffner (SBN 245406)
JEHeffner@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   415.543.8700
Facsimile:   415.391.8269

Attorneys for Plaintiffs
Robert Carl Patrick Keane and Chieko Strange

ORIGINAL FILED

SEP 2 0 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

COPY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,

Plaintiffs,

vs.

SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,

Defendants.

No.: C 07 4894 SBA

COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

JURY TRIAL DEMANDED

## INTRODUCTION

1.      This action seeks to redress one of the worst nightmares of any law abiding citizen. It involves a misidentification under highly suggestive and inappropriate circumstances, followed by sloppy, careless, and cavalier police work, all culminating in a traumatizing early morning raid by Rambo-style law enforcement agents, who broke unannounced into the wrong place, with weapons trained on the wrong people. On December 19, 2006, at about 7:30 in the morning, agents of the United States Drug Enforcement Administration (the "DEA") in concert with the Petaluma Police Department and Marin County Sheriff's Department burst unannounced through

the front door of Plaintiffs' home and, with guns trained on Plaintiffs, terrorized, intimidated and inflicted bodily harm on them, and ransacked and violated the sanctity of their home, all without probable cause or a reasonable belief to justify their outrageous conduct. Sadly, Plaintiffs' home now serves as a constant reminder of the horrors of that day, which robbed them of the feeling of safety and security they once had and are entitled to enjoy behind the walls of their home. The shocking and unwarranted intrusion wreaked havoc on their emotional state, causing nightmares, paranoia coupled with a general distrust of authorities, a diminished enjoyment of life and decreased work performance. Plaintiffs bring this suit to remedy these violations.

## JURISDICTION

2.   This action arises under 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.   The unlawful acts alleged in this complaint occurred in the County of Marin, California, which is within this Court's jurisdictional district.

4.   Plaintiffs invoke the Court's supplemental jurisdiction over the state law claims alleged in this complaint pursuant to 28 U.S.C. § 1367.

## VENUE

5.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the County of Marin, which is located in this district.

## THE PARTIES

6.   Plaintiff Robert Carl Patrick Keane ("KEANE") was at all times relevant to this complaint a citizen of the United States residing in the County of Marin.

7.   Plaintiff Chieko Ueda Strange ("STRANGE") was at all times relevant to this complaint a citizen of the United States residing in the County of Marin.

8.   Defendant Seth McMullen ("MCMULLEN") is and, at all times relevant to this Complaint, was a Special Agent with the DEA, a federal agency. At all times relevant to this Complaint, MCMULLEN acted under color of the statutes, ordinances, customs, and usage of the State of California. Plaintiffs sue MCMULLEN in his individual capacity.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

9.  Defendant John Silva ("SILVA") is and, at all times relevant to this Complaint, was a Special Agent with the DEA. At all times relevant to this Complaint, SILVA acted under color of the statutes, ordinances, customs, and usage of the State of California. Plaintiffs sue SILVA in his individual capacity.

10. Defendant Petaluma Police Officer Paul Accornero ("ACCORNERO") is and, at all times relevant to this Complaint, was a duly appointed police officer of the City of Petaluma. At all times relevant to this Complaint, ACCORNERO acted under color of the statutes, ordinances, customs, and usage of the State of California and within the scope of his employment with PETALUMA. Plaintiffs sue ACCORNERO in his individual capacity.

11. Throughout this complaint, Plaintiffs refer collectively to MCMULLEN, SILVA and ACCORNERO, inclusive, as "Defendants."

## STATEMENT OF FACTS

12. On December 19, 2006, at approximately 7:30 a.m., KEANE and his girlfriend of ten years, STRANGE, were upstairs in their Mill Valley home preparing for their morning commute and a day of work as sales associates at Sak's Fifth Avenue in San Francisco. As salespersons, the holiday season was the busiest and most important time of the year for Plaintiffs. As KEANE prepared to walk the couple's dogs and before STRANGE had dressed for work, the two were startled by an unusually loud solitary "bang" at the front of the house.

13. KEANE immediately glanced downstairs, where he saw several armed men dressed in dark clothes outside his glass front door. KEANE froze with fear as the men burst into the house. The men did not knock or announce their purpose or identities, or wait for KEANE to answer the door and permit them entry.

14. Fearing a home invasion, STRANGE screamed for KEANE to call the police. However, before KEANE could recover from his shock and terror, the intruders were already in the home and storming up the stairs with their weapons trained on Plaintiffs. Defendants ordered Plaintiffs to "get down" and "give up their weapons," but did not identify themselves or the purpose for their intrusion. Terrified and confused, Plaintiffs did not resist, but attempted to cooperate by dropping to the ground. Nevertheless, despite their cooperation, evident fear and the absence of any

weapons or other danger to Defendants, the intruders persisted with their overly aggressive and shocking tactics.

15. No weapons are owned by KEANE or STRANGE. Yet despite this, and KEANE's repeated inquiries about the meaning and purpose of the invasion, the intruders offered no explanation, and instead continued to shout "where are your weapons?" One then placed a boot on STRANGE's head as she, a 63 year old woman, lay face down on the ground. Still without identifying themselves, Defendants commanded Plaintiffs to "shut up" and announced "you know why we're here."

16. Defendants tightly cuffed Plaintiffs' hands behind their backs, resulting in cuts to KEANE's wrists, and left Plaintiffs face down on the ground for approximately ten minutes.

17. Defendants then started to search Plaintiffs' home. During the search, Defendants damaged Plaintiffs' furniture and home fixtures, threatened and intimidated Plaintiffs with accounts of an ultra-sensitive drug sniffing dog, and ransacked Plaintiffs personal belongings, leaving the home violated and in disarray. Notwithstanding the reckless and improper nature of the search, Defendants found no evidence of any sort of illicit or unlawful activity in Plaintiffs' home.

18. While the intruders conducted their search, they separated Plaintiffs for questioning. MCMULLEN lifted KEANE from the ground by his handcuffed wrists, which was totally unnecessary, forced him into a bathroom and made him sit on the toilet. As MCMULLEN stood blocking the doorway, he remarked to SILVA while signaling towards KEANE and the toilet, "isn't this ironic," adding to KEANE's already existing confusion, humiliation and embarrassment.

19. It was not until MCMULLEN and SILVA began their questioning that KEANE learned this entire ordeal, and Defendants' unjustified home invasion, stemmed from Defendants' absurd suspicion that KEANE mailed a package of marijuana from a Mail Depot packaging store, and that in doing so, he inexplicably labeled the package with his *own home return address*. According to MCMULLEN, a suspect recently mailed a package containing six pounds of marijuana from a Mail Depot in Petaluma, located approximately thirty miles North of KEANE's home, to a residence in Brick Township, New Jersey. The package was addressed to "Kerry Keane," identified the sender as "C. Keane" and listed KEANE's home as the return address.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

20. MCMULLEN asked whether KEANE had ever been to the Petaluma Mail Depot, and KEANE replied that he had not. MCMULLEN then told KEANE that the owner of the Mail Depot, Maureen McGuigan, identified him as the sender of the subject package and that his fingerprints were on the package. KEANE informed Defendants that neither was true.

21. As it turned out, the purported identification was based on a highly suggestive single photo-lineup in which MCMULLEN showed McGuigan KEANE's state ID photo and asked her to confirm that this was the man who sent the package of marijuana.

22. Further, more than two weeks prior to the raid on KEANE's home, on December 1, 2006, Defendants and New Jersey police performed a "controlled delivery" of the package of marijuana. In connection with the delivery, local New Jersey authorities arrested Brian and Suzanne Keane of New Jersey (neither of whom is related or known to KEANE) when they took possession of the package. At the time, Brian Keane insisted he did not know who sent the package. He also told authorities that while he has a brother named *Chris* Keane, he did not know any other "C. Keane" who could have sent the package.

23. Moreover, during his "investigation," and prior to the home raid, MCMULLEN discovered that Brian Keane's birthday was September 15, 1958 and KEANE, who MCMULLEN suggested was Brian Keane's brother, was born only nine months and twenty two days earlier on December 13, 1957. The proximity of these birthdates ruled out any reasonable suspicion that Carl KEANE was Brian Keane's brother.

24. Despite this exculpatory evidence, on or about December 15, 2006, MCMULLEN requested a search warrant for KEANE's home, asserting that "[a]gents also believe that Robert Carl Patrick Keane and Brian Keane are possibly related due to the same last names and a physical resemblance of both."

25. As alleged, during his interrogation the morning of the raid, MCMULLEN represented to KEANE that his fingerprints were on the package of marijuana. This of course was a lie. Throughout the interrogation, KEANE consistently insisted that he had never visited the Petaluma Mail Depot in his life and that his fingerprints could not possibly be on the package.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

26. MCMULLEN then produced pictures of Brian and Suzanne Keane of Brick Township, New Jersey. MCMULLEN informed KEANE that Brian and Suzanne Keane had been arrested after receiving the marijuana during a controlled delivery. KEANE told MCMULLEN that he was not related to and did not know Brian or Suzanne Keane and that he did not have any relatives in New Jersey. This information could have been easily verified, and any suspicion that KEANE would have lied about a family relation was totally implausible. Nonetheless, MCMULLEN continued to insist that KEANE was related to the individuals depicted in the photographs in a blatant effort to coerce a false admission.

27. ACCORNERO searched the house with a dog that MCMULLEN claimed could detect even recreational drug use as far back as two years ago. As the dog searched, Defendants "warned" that if the dog detected any contraband, it would tear up the walls or the floorboards where any drugs were hidden. The search uncovered no evidence of any drug use or other illegal activities. Further, the dog frightened Plaintiffs and damaged their property.

28. Following KEANE's interrogation, Defendants led STRANGE into the bathroom, where she too was forced to sit on the toilet. Defendants asked STRANGE whether she was a U.S. citizen, searched her personal address book and probed her about her relationship with KEANE, his parents and his other relatives. Consistent with KEANE's statements, STRANGE told Defendants that KEANE had no relatives in New Jersey.

29. Defendants then took STRANGE to the living room, where she joined KEANE. When STRANGE asked KEANE what was happening, MCMULLEN loudly interjected "shut up or I'll put your face against the wall."

30. Despite finding no evidence of drug production, drug sales or drug use, or any other indicia of the illegal activity MCMULLEN described in his affidavit for warrant, Defendants placed KEANE under arrest. As Defendants were exiting the home, they finally produced a search warrant. Defendants have never produced an arrest warrant. Defendants then transported KEANE to the Sonoma County Main Adult Detention Facility.

31. Upon arrival at the detention facility, Defendants had a female officer search KEANE's body in the presence of several other male officers. The search was uncomfortable and

embarrassing, to the conspicuous amusement of the male officers, including MCMULLEN and SILVA. The inappropriateness of the situation was so obvious that the female officer apologized to KEANE for his palpable humiliation.

32.  After this humiliating search, which predictably turned up no evidence, as Defendants knew it would, Defendants placed KEANE in a holding cell. Later that day, STRANGE paid a $2,000 bail bond premium to meet the $20,000 bail requirement, which in turn allowed KEANE to leave the jail that evening.

33.  Astonishingly, local authorities charged KEANE with unlawful possession of marijuana for purpose of sale. As a result, KEANE spent the next several months attempting to clear his name. In the process KEANE expended significant amounts of money and devoted a substantial amount of his valuable time.

34.  After the arrest, the Sonoma County District Attorney's office, using a six-photo lineup, asked McGuigan to identify the man who sent the marijuana parcel. This time, not surprisingly, McGuigan failed to identify KEANE. Almost three months after the unnecessary raid and arrest, prosecutors finally dismissed the case on March 13 "in the interest of justice."

## INJURIES AND DAMAGES

35.  The early morning raid on Plaintiffs' home and subsequent arrest of KEANE were shocking, traumatizing, and improperly conducted without probable cause or legal authority. Defendants' unreasonable and unjustified conduct proximately caused Plaintiffs extensive injuries. As alleged below, this conduct violated several constitutional rights, which entitles Plaintiffs to an award of damages and other relief.

36.  KEANE suffered pain and physical injuries, including cuts and damage to his wrists from improperly applied handcuffs.

37.  Plaintiffs suffered and continue to suffer severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of a sense of security and dignity.

38.  Plaintiffs also suffered and continue to suffer lost wages and diminished capacity to work.

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

39. Plaintiffs have suffered property damage of more than $20,000, including damage to doors, cabinetry, and furniture.

40. Plaintiffs incurred expenses, including but not limited to, over $15,000 in attorney fees defending KEANE and $2,000 for a bail bond.

41. Plaintiffs have also found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are entitled to an award of all attorneys' fees incurred in relation to this action for violation of their civil rights pursuant to 42 U.S.C. § 1983.

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983)

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41, inclusive, above, as though fully set forth in this paragraph.

43. Defendants violated Plaintiffs' constitutional and civil rights in the following ways, among others:

   a. Defendants did not properly knock or announce their presence and identify themselves or their purpose before forcefully entering Plaintiffs' home;

   b. Defendants did not have permission to enter Plaintiffs' residence, search their residence, seize property or arrest KEANE;

   c. Defendants lacked probable cause to search Plaintiffs, their residence and other property or to arrest KEANE; and

   d. Defendants used excessive force in executing their unlawful search and arrest.

44. In doing these and the other things alleged in this complaint, MCMULLEN, SILVA and ACCORNERO each acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

      b.      The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

      c.      The right to be free from the use of excessive force by law enforcement agents, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and/or

      d.      The right to be free from interference within the zone of privacy, as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

45.    Plaintiffs petition this Court for damages for the harm suffered as a result of Defendants' violations of the above stated constitutional rights pursuant to 42 U.S.C. § 1983.

## JURY DEMAND

46.    Plaintiffs demand a jury trial for all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief, as follows:

1.    An award of compensatory damages according to proof and as permitted by law;

2.    An award of just compensation for pain and suffering according to proof and as permitted by law;

3.    An award of costs, disbursements, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1983;

4.    For such other and further relief as the Court deems just and proper.

DATED: September 20, 2007.

REED SMITH LLP

By _____
James E. Heffner
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL