Michael J. Coffino (SBN 88109)
MCoffino@ReedSmith.com
James E. Heffner (SBN 245406)
JEHeffner@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   415.543.8700
Facsimile:    415.391.8269

Attorneys for Plaintiffs
Robert Carl Patrick Keane and Chieko Strange

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,<br><br>   Plaintiffs,<br><br>   vs.<br><br>SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,<br><br>   Defendants. | No.: CV-07-04894 SBA<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND "BIVENS" CLAIM UNDER FOURTH AND FIFTH AMENDMENTS OF THE U.S. CONSTITUTION**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.  This action seeks to redress one of the worst nightmares imaginable for law abiding citizens in our country: an unlawful and traumatizing early morning invasion of the home sanctuary by Rambo-style law enforcement agents breaking aggressively into the wrong place with weapons trained on the wrong people. On December 19, 2006, at about 7:30 in the morning, agents of the United States Drug Enforcement Administration (the "DEA") in concert with the Petaluma Police Department and Marin County Sheriff's Department burst unannounced through the front door of Plaintiffs' home and, with guns trained on Plaintiffs, terrorized, intimidated and inflicted bodily harm on them, and ransacked and violated the sanctity of their home, all without probable

cause or a reasonable belief to justify their outrageous conduct. Sadly, Plaintiffs' home now serves as a constant reminder of the horrors of that day, which robbed them of the feeling of safety and security they once had and are entitled to enjoy behind the walls of their home. The shocking and unwarranted intrusion wreaked havoc on their emotional state, causing nightmares, paranoia coupled with a general distrust of authorities, a diminished enjoyment of life, and decreased work performance. Plaintiffs bring this suit to remedy these violations.

## JURISDICTION

2. This action arises under 42 U.S.C. § 1983 and the Constitution of the United States. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The unlawful acts alleged in this complaint occurred in the County of Marin, California, which is within this Court's jurisdictional district.

## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the County of Marin, which is located in this district.

## THE PARTIES

5. Plaintiff Robert Carl Patrick Keane ("KEANE") was at all times relevant to this complaint a citizen of the United States residing in the County of Marin.

6. Plaintiff Chieko Ueda Strange ("STRANGE") was at all times relevant to this complaint a citizen of the United States residing in the County of Marin.

7. Defendant Seth McMullen ("McMULLEN") is and, at all times relevant to this Complaint, was a Special Agent with the DEA, a federal agency. At all times relevant to this Complaint, McMULLEN was a federal official acting under the color and authority of the statutes, ordinances, customs, and usage of the State of California or, in the alternative, as alleged below, as a federal officer violating constitutional rights. Plaintiffs sue McMULLEN in his individual capacity.

8. Defendant John Silva ("SILVA") is and, at all times relevant to this Complaint, a Petaluma police officer. Plaintiffs understand SILVA asserts that, at the time of the events described in this action, he was commissioned as a Special Agent with the DEA, a federal

agency. Thus, at all times relevant to this Complaint, SILVA either was a local official commissioned by a federal agency or an employee of the City of Petaluma, or both, but in either case acting under the color and authority of the statutes, ordinances, customs, and usage of the State of California or, in the alternative, as alleged below, as a federal officer violating constitutional rights. Plaintiffs sue SILVA in his individual capacity.

9. Defendant Petaluma Police Officer Paul Accornero ("ACCORNERO") is and, at all times relevant to this Complaint, was a duly appointed police officer of the City of Petaluma. At all times relevant to this Complaint, ACCORNERO acted under color of the statutes, ordinances, customs, and usage of the State of California and within the scope of his employment with the City of Petaluma. Plaintiffs sue ACCORNERO in his individual capacity.

10. Throughout this complaint, Plaintiffs refer collectively to McMULLEN, SILVA and ACCORNERO, inclusive, as "DEFENDANTS."

## STATEMENT OF FACTS

11. On December 19, 2006, at approximately 7:30 a.m., KEANE and his girlfriend of ten years, STRANGE, were upstairs in their Mill Valley home preparing for their morning commute and a day of work as sales associates at Sak's Fifth Avenue in San Francisco. As salespersons, the holiday season was the busiest and most important time of the year for Plaintiffs. As KEANE prepared to walk the couple's dogs and before STRANGE had dressed for work, the two were startled by an unusually loud solitary "bang" at the front of the house.

12. KEANE immediately glanced downstairs, where he saw several armed men dressed in dark clothes outside his glass front door. KEANE froze with fear as the men burst into the house. The men did not properly knock or announce their purpose or identities or wait for KEANE to answer the door and permit them entry. KEANE later learned that this group of men included each of the DEFENDANTS.

13. Fearing a home invasion, STRANGE screamed for KEANE to call the police. Before KEANE could recover from his shock and terror, however, the intruders had entered his home and stormed up the stairs with weapons trained on Plaintiffs. DEFENDANTS ordered Plaintiffs to "get down" and "give up their weapons," but did not identify themselves or the purpose

for their intrusion. Terrified and confused, Plaintiffs did not resist, but attempted to cooperate by dropping to the ground. Despite their cooperation and evident fear and the absence of any weapons or other danger to the intruders, DEFENDANTS each persisted with their overly aggressive and shocking tactics intended to terrorize Plaintiffs.

14. No weapons are owned by, or registered to, KEANE or STRANGE. Yet, despite this and KEANE's repeated inquiries about the meaning and purpose of the invasion, DEFENDANTS refused to offer an explanation as to whom they were or why they were there, and instead continued to shout "where are your weapons?!" McMULLEN then placed a boot on STRANGE's head as she, a slight 63 year-old woman, lay face down on the ground. Still without providing or stating any identification, McMULLEN announced "you know why we're here."

15. SILVA and McMULLEN tightly cuffed Plaintiffs' hands behind their backs, resulting in cuts to KEANE's wrists, and left Plaintiffs face down on the ground for approximately ten minutes.

16. DEFENDANTS then started to search Plaintiffs' home. During the search, they damaged Plaintiffs' furniture and home fixtures, threatened and intimidated Plaintiffs with accounts of an ultra-sensitive drug-sniffing dog, and ransacked Plaintiffs' personal belongings, leaving the home violated and in disarray. Notwithstanding the reckless and improper nature of the search, no officer found evidence of any sort of illicit or unlawful activity in Plaintiffs' home.

17. While DEFENDANTS conducted their search, they separated Plaintiffs for questioning. McMULLEN lifted KEANE from the ground by his handcuffed wrists, in a painful manner that caused injury to KEANE's wrists. DEFENDANTS then forced KEANE into a bathroom and made him sit on the toilet. As McMULLEN stood blocking the doorway, he remarked to SILVA while signaling towards KEANE and the toilet, "isn't this ironic," intentionally adding to KEANE's already existing confusion, humiliation, and embarrassment.

18. It was not until McMULLEN and SILVA began their questioning that KEANE learned this entire ordeal, and DEFENDANTS' unjustified home invasion, stemmed from DEFENDANTS' absurd suspicion that KEANE mailed a package of marijuana from a Mail Depot packaging store, and that in doing so, he inexplicably labeled the package with his *own home return*

*address*. According to McMULLEN, a suspect recently attempted to mail a package containing six pounds of marijuana from a Mail Depot in Petaluma, located approximately thirty miles North of KEANE's home, to a residence in Brick Township, New Jersey. The package was addressed to a "Kerry Keane," identified the sender as "C. Keane" and listed KEANE's home as the return address.

19. McMULLEN asked whether KEANE had ever been to the Petaluma Mail Depot, and KEANE replied that he had not. McMULLEN then told KEANE that the owner of the Mail Depot, Maureen McGuigan, identified him as the sender of the subject package and that his fingerprints were on the package. KEANE informed SILVA and McMULLEN that neither was true and offered that Defendants could take his finger prints.

20. As it turned out, the purported identification was based on a highly suggestive and unreliable single photo-lineup in which MCMULLEN showed McGuigan KEANE's state ID photo and asked her to confirm that this was the man who sent the package of marijuana. McMULLEN knew that use of a single photo in that circumstance was highly irregular and suggestive.

21. Further, more than two weeks prior to the raid on KEANE's home, on December 1, 2006, New Jersey police performed a "controlled delivery" of the package of marijuana. In connection with the delivery, local New Jersey authorities arrested Brian and Suzanne Keane of New Jersey (neither of whom is related or known to KEANE or STRANGE) when they took possession of the package. At the time, Brian Keane insisted he did not know who sent the package. He also told authorities that while he has a brother named *Chris* Keane, he did not know any other "C. Keane" who could have sent the package. Plaintiffs are informed and believe and on that basis allege that the criminal investigation of New Jersey law enforcement regarding the controlled delivery failed to turn up any connection between the package or Brian and Suzanne Keane and either of the Plaintiffs. On the contrary, in regards to each of the Plaintiffs, the evidence marshaled in New Jersey was entirely exculpatory.

22. Plaintiffs are informed and believe and on that basis allege that the New Jersey authorities conveyed to McMULLEN and SILVA the results of the controlled delivery and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  investigation, including the absence of any connection between the marijuana package, the New
2  Jersey "Keanes" or any criminal activity, on the one hand, and either of the Plaintiffs, on the other.

3  　　　　23.　　Moreover, during their "investigation," and *prior to* the home raid, SILVA
4  and McMULLEN discovered that Brian Keane's birthday was September 15, 1958 and KEANE,
5  who SILVA and McMULLEN suggested was Brian Keane's brother, was born only nine months
6  and twenty-two days earlier on December 13, 1957.  The proximity of these birthdates ruled out any
7  reasonable suspicion that KEANE was Brian Keane's brother.

8  　　　　24.　　Ignoring the mounting exculpatory evidence and without further investigation
9  of the conflicting evidence that was likely to lead to additional exculpatory evidence, on or about
10 December 15, 2006, McMULLEN invoked the authority of the California judicial system and
11 requested a search warrant from a California court for KEANE's home, asserting that "[a]gents also
12 believe that Robert Carl Patrick Keane and Brian Keane are possibly related due to the same last
13 names and a physical resemblance of both."  Neither McMULLEN nor the other unidentified
14 "agents" had any reasonable basis to reach this conclusion.

15 　　　　25.　　As alleged, during his interrogation the morning of the raid, SILVA and
16 McMULLEN represented to KEANE that his fingerprints were on the package of marijuana.  This of
17 course was a lie.  Both SILVA and McMULLEN knew the truth was that KEANE's fingerprints
18 were not on the package.  Throughout the interrogation, KEANE consistently insisted that he had
19 never visited the Petaluma Mail Depot in his life and that his fingerprints could not possibly be on
20 the package.

21 　　　　26.　　McMULLEN produced pictures of Brian and Suzanne Keane of Brick
22 Township, New Jersey.  McMULLEN informed KEANE that Brian and Suzanne Keane had been
23 arrested after receiving the marijuana during a controlled delivery.  KEANE told SILVA and
24 McMULLEN that he was not related to and did not know Brian or Suzanne Keane and that he did
25 not have any relatives in New Jersey.  This was not news to SILVA and McMULLEN, for it was
26 wholly consistent with statements they had obtained from New Jersey law enforcement personnel
27 who had arrested Brian and Suzanne Keane.  Further, if DEFENDANTS had any doubt about the
28 information, which Plaintiffs are informed and believe DEFENDANTS did not, DEFENDANTS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

could have easily verified the information through an independent source. DEFENDANTS did not because they well knew that harboring any suspicion that KEANE would have lied about a family relation was implausible, not to mention contrary to everything they knew at that time. Nonetheless, SILVA and McMULLEN continued to insist that KEANE was related to the individuals depicted in the photographs in a blatant and unsuccessful effort to coerce a false admission.

27. ACCORNERO searched the house with a dog that McMULLEN claimed could detect even recreational drug use as far back as two years ago. As the dog searched, in a blatant effort to frighten and intimidate Plaintiffs, DEFENDANTS "warned" that if the dog detected any contraband, it would tear up the walls or the floorboards where any drugs were hidden. Predictably, the search uncovered no evidence of any drug use or other illegal activities. Further, the manner in which ACCORNERO's handled the dog was intended by DEFENDANTS to create a traumatizing and dangerous experience to frighten Plaintiffs and damage property.

28. Following KEANE's interrogation, SILVA and McMULLEN led STRANGE into the bathroom, where she too was forced to sit on the toilet. SILVA and McMULLEN asked STRANGE whether she was a U.S. citizen, searched her personal address book and probed her about her relationship with KEANE, his parents and his other relatives. Consistent with KEANE's statements, as well as all other evidence DEFENDANTS had marshaled to that point, STRANGE told SILVA and McMULLEN that KEANE had no relatives in New Jersey.

29. Plaintiffs are informed and believe and on that basis allege that ACCORNERO was informed of the results of the investigation by SILVA and McMULLEN prior to entering Plaintiffs' home and DEFENDANTS discussed the results of the search prior to arresting KEANE.

30. Despite finding no evidence of drug production, drug sales or drug use, or any other indicia of the illegal activity McMULLEN described in his affidavit for the search warrant, invoking the authority of the State of California, DEFENDANTS placed KEANE under arrest. As DEFENDANTS were exiting the home, they produced a California-state court search warrant for the first time. DEFENDANTS have never produced an arrest warrant. SILVA and McMULLEN then transported KEANE to the Sonoma County Main Adult Detention Facility.

31. Upon arrival at the state run detention facility, SILVA and McMULLEN had a female officer, who Plaintiffs allege on information and belief was employed by the County of Sonoma, search KEANE's body in the presence of several other male officers. The search was uncomfortable and embarrassing, to the conspicuous amusement of the male officers, including McMULLEN and SILVA. The inappropriateness of the situation was so obvious that the female officer apologized to KEANE for his palpable humiliation.

32. After this humiliating search, which predictably turned up no evidence, as SILVA and McMULLEN knew or should have known it would, SILVA and McMULLEN placed KEANE in a Sonoma County holding cell. Later that day, STRANGE paid a $2,000 bail bond premium to meet the $20,000 bail requirement, which in turn allowed KEANE to leave the jail that evening.

33. Astonishingly, state authorities charged KEANE with unlawful possession of marijuana for purpose of sale. As a result, KEANE spent the next several months attempting to clear his name. In the process KEANE expended significant amounts of money and devoted a substantial amount of his valuable time.

34. After the arrest, the Sonoma County District Attorney's office, using a six-photo lineup, asked McGuigan to identify the man who sent the marijuana parcel. This time, not surprisingly, McGuigan failed to identify KEANE. Almost three months after the unnecessary raid and arrest, prosecutors finally dismissed the case on March 13 "in the interest of justice."

## INJURIES AND DAMAGES

35. The early morning raid on Plaintiffs' home and subsequent arrest of KEANE were shocking, traumatizing, and improperly conducted without probable cause or legal authority. DEFENDANTS' unreasonable and unjustified conduct proximately caused Plaintiffs extensive injuries. As alleged below, this conduct violated several of Plaintiffs' constitutional rights, and entitles them to an award of damages and other relief.

36. KEANE suffered pain and physical injuries, including cuts and damage to his wrists from improperly applied handcuffs.

37. Plaintiffs suffered and continue to suffer severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of a sense of security and dignity.

38. Plaintiffs also suffered and continue to suffer lost wages and diminished capacity to work.

39. Plaintiffs have suffered property damage of more than $20,000, including damage to doors, cabinetry, and furniture.

40. Plaintiffs incurred expenses, including but not limited to, over $15,000 in attorneys' fees defending KEANE and $2,000 for a bail bond.

41. Plaintiffs have also found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are entitled to an award of all attorneys' fees incurred in relation to this action for violation of their civil rights pursuant to 42 U.S.C. § 1983 and applicable laws.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 1983)

42. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41, inclusive, above, as though fully set forth in this paragraph.

43. McMULLEN, SILVA and ACCORNERO violated Plaintiffs' constitutional and civil rights in the following ways, among others:

  a. DEFENDANTS entered Plaintiffs' home without properly knocking and announcing their presence, without identifying themselves or their purpose, and without waiting for permission before forcefully entering Plaintiffs' home. All of these actions were committed without any justification;

  b. Without Plaintiffs consent, DEFENDANTS entered Plaintiffs' home, searched their residence, seized their property, and arrested KEANE;

  c. SILVA and McMULLEN failed to conduct an adequate investigation and submitted an affidavit for a warrant that lacked exculpatory evidence, was based on an incomplete investigation, and showed a

– 9 –   No.: CV-07-04894 SBA
FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND DEMAND FOR JURY TRIAL

reckless disregard for the truth in light of the information then known to SILVA and McMULLEN;

    d.    DEFENDANTS unreasonably relied on warrants issued by the state of California;

    e.    DEFENDANTS forcefully entered Plaintiffs' home, detained Plaintiffs' and conducted a search without probable cause or any reasonable suspicion that probable cause could exist;

    f.    DEFENDANTS lacked probable cause to arrest KEANE; and

    g.    DEFENDANTS used excessive force in their entry into Plaintiffs' home, in their detention of Plaintiffs, and in their search of Plaintiffs' property.

44.    In doing these and the other things alleged in this complaint, McMULLEN, SILVA, and ACCORNERO each acted under color of state law:

    a.    DEFENDANTS' investigation was triggered by receipt of a package from a police department established under the authority of the laws of California;

    b.    DEFENDANTS claimed to enter Plaintiffs home under the authority of a warrant issued by the state of California that relied on an affidavit primarily composed of evidence gathered by state employed officials acting pursuant to their authority as such;

    c.    SILVA and McMULLEN worked in concert with ACCORNERO and other state employed officers to execute the raid on Plaintiffs' home;

    d.    ACCORNERO acted in his capacity as an officer of the Petaluma Police department;

    e.    SILVA and McMULLEN worked in concert with ACCORNERO and other state officers to search Plaintiffs' home for evidence;

    f.    Upon information and belief, after conducting the search, DEFENDANTS decided whether KEANE should be arrested based on

discussions with, and input from, SILVA and McMULLEN, ACCORNERO, and other state or non-federal officers;

g.  If an arrest warrant existed, it would have been issued pursuant to the laws of the state of California;

h.  The majority of the evidence DEFENDANTS relied on was procured by state actors conducting state investigations including the Petaluma Police Department obtaining the package from the Mail Depot and the Brick Township Police Department conducting controlled delivery of the package in New Jersey.  Both police departments are organized and run under the authority granted to them by their respective states; and

i.  The majority of the investigation was conducted by state officers, including the investigation conducted by the Brick Township Police department during the controlled delivery of the package.

45.  While acting under the color of state law, DEFENDANTS unlawfully entered Plaintiffs' home, conducted an illegal and unreasonable search, seized Plaintiffs' property and arrested KEANE without probable cause or justification, depriving Plaintiffs of certain constitutionally protected rights, including, but not limited to:

a.  The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.  The right to be free from the use of excessive force by law enforcement agents, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and

c.  The right to be free from interference within the zone of privacy, as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

46.  Plaintiffs petition this Court for damages for the harm suffered as a result of DEFENDANTS' violations of the above stated constitutional rights pursuant to 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF**

(*Bivens Claim* for Violation of the Fourth and Fifth Amendments of the U.S. Constitution)

47. Plaintiffs reallege and incorporate by reference paragraphs 1 through 43, inclusive, above, as though fully set forth in this paragraph.

48. Plaintiffs plead this Second Claim for Relief in the alternative. As alleged, Plaintiffs assert that SILVA and McMULLEN, in committing the acts and omissions alleged in this Complaint, acted under color of state law. In the alternative, Plaintiffs allege that if SILVA and McMULLEN did not act under color of state law, then both acted as federal officials and are liable to Plaintiffs under the constitutional claim commonly known as the *Bivens Claim*. As such, MCMULLEN and SILVA violated Plaintiffs' constitutional and civil rights, including those existing by virtue of the Fourth and Fifth Amendments to the U.S. Constitution, in the following ways, among others:

   a. SILVA and McMULLEN entered KEANE and STRANGE's home without adequately knocking and announcing their presence, without identifying themselves or their purpose, and without waiting for permission before forcefully entering. All of these actions were committed without any justification;

   b. Without Plaintiffs' consent, SILVA and McMULLEN entered Plaintiffs' home, searched their residence, seized their property, and arrested KEANE;

   c. SILVA and McMULLEN failed to conduct an adequate investigation and submitted an affidavit for a warrant that lacked exculpatory evidence, was based on an incomplete investigation and showed a reckless disregard for the truth in light of the information then known to SILVA and McMULLEN;

   d. SILVA and McMULLEN unreasonably relied on court-issued warrants;

     e.    SILVA and McMULLEN forcefully entered Plaintiffs' home, detained Plaintiffs, and conducted a search without probable cause or any reasonable suspicion that probable cause could exist;

     f.    SILVA and McMULLEN lacked probable cause to arrest KEANE; and

     g.    SILVA and McMULLEN used excessive force in their entry into Plaintiffs' home, in their detention of Plaintiffs, and in their search of Plaintiffs' property.

49. While doing these and other things alleged in the complaint, McMULLEN and SILVA were federal officers.

50. SILVA and McMULLEN unlawfully entered Plaintiffs' home, conducted an illegal and unreasonable search, seized Plaintiffs' property, and arrested KEANE without probable cause or justification, depriving Plaintiffs of certain constitutionally protected rights, including, but not limited to:

     a.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

     b.    The right to be free from the use of excessive force by law enforcement agents, which is guaranteed by the Fourth and Fifth Amendments to the United States Constitution; and

     c.    The right to be free from interference within the zone of privacy, as protected by the Fourth Amendment to the United States Constitution.

51. Plaintiffs petition this Court for damages for the harm suffered as a result of SILVA and McMULLEN's violations of the above stated constitutional rights.

**JURY DEMAND**

52. Plaintiffs demand a jury trial for all issues in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for relief, as follows:

1. An award of compensatory damages according to proof and as permitted by law;

2. An award of just compensation for pain and suffering according to proof and as permitted by law;

3. An award of costs, disbursements, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 and applicable laws; and

4. For such other and further relief as the Court deems just and proper.

DATED: February 1, 2008

                              REED SMITH LLP

                              By: /s/  James E. Heffner
                                   Attorneys for Plaintiffs