Michael J. Coffino (SBN 88109)
MCoffino@ReedSmith.com
James E. Heffner (SBN 245406)
JEHeffner@ReedSmith.com
Christopher C. Foster (SBN 253839)
CFoster@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936

Telephone:   415.543.8700
Facsimile:   415.391.8269

Attorneys for Plaintiffs
Robert Carl Patrick Keane and Chieko Strange

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,<br><br>            Plaintiffs,<br><br>  vs.<br><br>SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,<br><br>            Defendants. | No.: CV-07-4894 SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS IN OPPOSITION TO DEFENDANTS SETH M. MCMULLEN AND JOHN SILVA'S MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Date:     April 29, 2008<br>Time:    1:00 p.m.<br>Place:   Courtroom 3, 3rd Floor<br><br>Hon. Saundra B. Armstrong |

Plaintiffs Robert Carl Patrick Keane and Chieko Strange ("Plaintiffs") respectfully submit this memorandum of points and authorities in opposition to Defendants Seth McMullen ("McMullen") and John Silva's ("Silva") motion for a more definite statement ("Motion").

## I.  INTRODUCTION

The motion of Defendants McMullen and Silva for a more definite statement under Rule 12(e) is entirely baseless and a waste of time and resources. The motion is troubling in a few respects.

First, cases uniformly hold – which Defendants totally ignore – that a defendant who has filed an answer to a complaint may not file a motion for a more definite statement. This common sense rule flows naturally from the essential purpose of a Rule 12(e) motion: to cure a complaint so unclear the defendant cannot even frame a response. Each of the three Defendants, including McMullen and Silva, has filed answers to the Complaint. The Court should deny the motion summarily for that reason alone.

Second, the Complaint is extremely detailed and clear, especially in light of the trauma Plaintiffs suffered in their home at the hands of a group of armed strangers one very early morning during the Christmas holiday season. It carefully distinguishes between when Defendants acted together – using for those specific instances the defined term "DEFENDANTS" to include each of the three individual Defendants – and when individual Defendants committed actionable conduct alone – e.g., describing when McMullen gratuitously placed his large boot on the head of the 63 year-old Ms. Strange. No Defendant could in good faith have any doubt about what the Complaint alleges. Not surprisingly, Defendants do not cite a single case under Rule 12(e) to illuminate how this very detailed complaint could possibly be a proper subject of this type of motion.

Third, rather than provide applicable legal authority, McMullen and Silva invoke case authority that deals with the sufficiency of fraud allegations under Rule 9(b). In so doing, they betray a fundamental misunderstanding of pleading law. Worse, they fail to mention U.S. Supreme Court and Ninth Circuit authority that specifically holds civil rights complaints are not subject to heightened pleading standards but rather are subject to Rule 8 notice pleading standards.

This motion has nothing whatever to commend it and, respectfully, should be denied.

## II.  FACTS

This is an action for damages based upon the violation of Plaintiffs' federal constitutional rights, arising from (1) the unlawful search and seizure of Plaintiffs' property, (2) the use of

1  excessive force against Plaintiffs and their property and (3) the unlawful arrest of Plaintiff Keane.

2        On December 19, 2006, at approximately 7:30 a.m., Plaintiffs Keane and Strange were in the
3  upstairs level of their Mill Valley home when they were startled by an unusually loud solitary
4  "bang" at the front of the house. First Amended Complaint ("Complaint") ¶ 11. Following the
5  "bang," several armed men dressed in black burst into the their home, failing to knock and announce
6  their presence or wait for Keane to permit them entry voluntarily. *Id.* ¶ 12. Although the intruders
7  did not identify themselves until much later in this ordeal, Plaintiffs ultimately learned that the
8  armed men were law enforcement officers, including Defendants McMullen, Silva and Accornero.
9  *Id.* After bursting into the home, the armed men trained their weapons on Plaintiffs and ordered
10 them to the ground. *Id.* ¶ 13. Plaintiffs, confused, frightened and fearing a home invasion, did not
11 resist the intruders' demands and cooperated by dropping to the ground. *Id.* The intruders then
12 engaged in a series of overly aggressive tactics meant to terrorize and humiliate Plaintiffs. These
13 tactics included, among other things, Defendant McMullen placing his police boot on Ms. Strange's
14 head as she lay face down on the ground. *Id.* ¶ 14. Defendants Silva and McMullen then tightly
15 cuffed Plaintiffs' hands behind their backs and left them on the ground for approximately ten
16 minutes while Plaintiffs were still unaware as to the intruders' identity. *Id.* ¶ 15.

17       After confining the Plaintiffs to the ground, the intruders, including Defendants McMullen
18 and Silva, began searching the Plaintiffs' home, damaging furniture, household fixtures and personal
19 belongings. *Id.* ¶ 16. Defendants Accornero, McMullen and Silva threatened and intimidated
20 Plaintiffs with references to their ultra-sensitive narcotics dog, warning Plaintiffs that the dog would
21 tear their home apart. *Id.* ¶ 27. Although they ransacked the residence to the point of complete
22 disarray, none of the officers present found any indication of illicit or unlawful activity in the
23 Plaintiffs' home. *Id.* ¶ 16.

24       Following their search of the home, the Defendants separated Plaintiffs. *Id.* ¶ 17. McMullen
25 lifted Keane from the ground in a painful fashion--injuring his wrists--and then directed Keane into a
26 bathroom where he was forced to sit on the toilet. *Id.* McMullen and Silva then subjected both
27 Plaintiffs to humiliating and invasive questioning. *Id.* It was not until this point that Plaintiffs fully
28 discovered that the armed intruders were law enforcement officers in search of a narcotics

– 3 –

DOCSSFO-12511104.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

distributor. *Id.* ¶ 18. Despite uncovering no evidence or contraband suggesting unlawful activity, and being faced with results wholly inconsistent with those they expected, Defendants placed Keane under arrest and took him into custody. *Id.* ¶ 30. Although Defendants produced a California-state court search warrant upon exiting the home, they did not then and still have not produced an arrest warrant. *Id.* ¶ 30.

Defendants McMullen and Silva transported Keane to the Sonoma County Main Adult Detention Facility, where a female officer searched Keane's body under the direction and presence of several male officers. *Id.* ¶¶ 30, 31. Keane was embarrassed by the uncomfortable search, to the conspicuous amusement of the male officers, including Silva and McMullen. *Id.* ¶ 31. Keane's humiliation was obvious enough to prompt an apology from the female officer performing the search. *Id.* Further, the search uncovered no contraband or other evidence of unlawful activity. *Id.*

Ultimately, Plaintiffs learned that the Defendants justified their intrusion and the subsequent arrest based on a suspicion that Keane had mailed a package containing six pounds of marijuana to a residence in Brick Township, New Jersey. *Id.* ¶ 18. The subject package was mailed from a Mail Depot location in Petaluma, situated thirty miles north of the Keane home. *Id.* The package listed Plaintiffs' home as the return address, and was addressed to a "Kerry Keane," identifying the sender only as "C. Keane." *Id.* Upon questioning, Keane informed Defendants Silva and McMullen that he had never been to the Petaluma Mail Depot. *Id.* ¶ 19. Silva and McMullen, however, represented that the Mail Depot owner had identified Keane as the sender and misrepresented that Keane's fingerprints were on the subject package. *Id.*

Plaintiffs later discovered that the purported "identification" was based on an irregular and highly suggestive single-photo lineup in which Defendant McMullen showed the Mail Depot owner a copy of Keane's state identification card, asking her to confirm that the photo showed the man who sent the subject package. *Id.* ¶ 20. Further, Plaintiffs learned that more than two weeks before the raid on their home, New Jersey police performed a "controlled delivery" of the package of marijuana. *Id.* ¶ 21. At that time, New Jersey authorities arrested a "Brian Keane" and a "Suzanne Keane," neither of whom had any knowledge of Plaintiffs. *Id.* Brian Keane did, however, have a brother named Chris Keane. *Id.* Further, Defendant McMullen showed Keane a photograph of

Brian and Suzanne Keane, and Plaintiff stated that he did not know either of them and was not related to them. *Id.* ¶ 26. Additionally, prior to the raid on Plaintiffs' home, Defendants McMullen and Silva had learned that Brian Keane was born on September 15, 1958, just nine months and twenty-two days after Keane, ruling out McMullen's suspicion that they were brothers. *Id.* ¶ 23.

Despite the lack of evidence from the "investigation," "search" of the home and "search" of Plaintiff's body, state authorities charged Keane with unlawful possession of marijuana for purpose of sale. *Id.* ¶ 33. As a result, Keane spent several months and substantial amounts of time and money to clear his name. *Id.* Following the arrest, the owner of the Mail Depot was again asked to identify Keane in a line-up. *Id.* ¶ 34. This time, however, she was presented with a six-photo lineup and failed to identify Keane. Nearly three months after the unjustified raid and arrest, prosecutors dismissed the case "in the interests of justice." *Id.*

Plaintiffs filed this action on September 20, 2007. In response, Silva and Accornero filed answers and McMullen filed a motion to dismiss and, in the alternative, for a more definite statement. The parties then entered into a stipulation, which this Court approved, allowing Plaintiffs to file a (more detailed) amended complaint. Before signing the stipulation, <u>defendants reviewed and approved</u> the proposed amended complaint. Declaration of James Heffner ("Heffner Decl."), ¶ 6. Plaintiffs filed a First Amended Complaint ("Complaint") on February 19, 2008. On March 11, 2008, McMullen and Silva filed both their answers and this Motion. It was the second time Silva filed an answer in this action.

### III.  ARGUMENT

**A.  The Motion is Rendered Moot by the Moving Defendants' Answers.**

A motion for a more definite statement is not allowed where the moving party has filed an answer to the complaint. Rule 12(e) states that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the <u>party cannot reasonably prepare a response</u> . . . ." (Emphasis added). "Generally, the Court will require a more definite statement only when the pleading is 'so vague or ambiguous that the opposing party <u>cannot respond</u>, even with a simple denial, in good faith or without prejudice to himself.'" *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (quoting

*Delta Educ. Inc. v. Langlois*, 719 F. Supp. 42, 50 (D.N.H. 1989) (emphasis added).

Courts thus routinely deny Rule 12(e) motions that are filed with answers. For example, in *Beery v. Hitachi Home Elecs.*, 157 F.R.D. 477 (C.D. Cal. 1993), defendants, like McMullen and Silva did here, filed a motion for a more definite statement on the same day they answered the complaint. In denying the motion, the Court stated that, "since the Moving Defendants have already filed a responsive pleading, they cannot now claim that the complaint is 'so vague and ambiguous' they cannot reasonably be required to frame a responsive pleading." *Id.* at 480. *See also Wycoff v. Nichols*, 32 F.R.D. 369 (W.D. Mo. 1962) (not necessary to discuss Rule 12(e) motion further because moving party already answered); *Agricultural Lands, Inc. v. Panhandle & S. F. R. Co.*, 60 F. Supp. 108 (D.C. Mo. 1945) (filing of an answer obviates need to discuss motion for more definite statement). <u>Defendants fail to bring this line of case authority to the attention of the Court</u>.

Here, <u>each</u> of the Defendants – including Accornero, who did <u>not</u> file a Rule 12(e) motion -- has filed an answer to the Complaint and in so doing responded specifically to each allegation on a paragraph by paragraph basis. Heffner Decl. Exhs. A (McMullen), B (Silva) & C (Accornero). The Court needs no more to deny this motion.

The attempt by McMullen and Silva to justify this motion in the face of the detailed answers they filed is ludicrous. McMullen and Silva suggest that their Rule 12(e) motion is proper because they filed their answers a few minutes before the Motion! Motion at 1 n.1; Heffner Decl. ¶ 5. They unabashedly state they maintained "technical compliance with Federal Rule 12(e), [because] this motion is filed prior to filing by federal defendants of their answer . . ." *Id*. Not surprisingly, Defendants provide no legal authority for this absurd position.

Defendants each filed answers to the Complaint, the most common form of responsive pleading in our legal system. By so doing, they have acknowledged that the Complaint is sufficiently clear to allow them to frame a response to this civil rights action. The filing of the answers conclusively undermines this motion. It should be summarily denied.

**B.    The Filing of Answers Aside, the Complaint is More than Sufficiently Definite.**

To begin, motions for a more definite statement are disfavored and rarely granted. *In re American Int'l Airways, Inc.*, 66 BR 642, 645 (E.D. Pa. 1986). They may be granted only when a

complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." FRCP 12(e). To grant the motion, the Court must find the complaint so indefinite the defendant cannot even ascertain the nature of the claims. *Famolare, Inc. v. Edison Bos. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981). As such, the motion posits whether a pleading is intelligible, not merely whether it contains sufficient details. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Further, if the details sought by the motion are obtainable through discovery, the motion should be denied. *Beery v. Hitachi Home Electronics, Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). A motion for a more definite statement must identify specific deficiencies and state what details are required to remedy those deficiencies. FRCP 12(e) ("The motion shall point out the defects complained of and the details desired"). Application of these legal principles exposes this motion as frivolous.

The <u>only</u> purported deficiency Defendants identify is use of the defined term "DEFENDANTS." The Complaint defines "DEFENDANTS" to "refer to McMULLEN, SILVA and ACCORNERO, inclusive," and to describe when all Defendants acted together. Complaint ¶ 3. When the Complaint describes the conduct of a specific Defendant, it says so specifically, and in fact contains <u>no less than forty</u> such allegations. In other words, the Complaint meticulously parses allegations that apply to all Defendants and those that apply to certain Defendants only, thus distinguishing between group and individual conduct. Consequently, the use of "DEFENDANTS" is specific and clear. McMullen and Silva provide <u>no</u> authority that holds otherwise.

    **1.    The term "DEFENDANTS" is neither Vague nor Ambiguous.**

Despite the clear definition of "DEFENDANTS" and parsing of conduct in the Complaint, McMullen and Silva insist that the term "DEFENDANTS" is ambiguous. For example, they argue that Plaintiffs fail to specify which Defendant was "ordering plaintiffs to 'get down' and 'give up their weapons'" in the paragraph that alleges "DEFENDANTS" did so. Motion at 7; Complaint ¶ 13. On the contrary. It should be quite evident that Plaintiffs allege that a group of men descended upon them, which included each of the Defendants, each of whom screamed at Plaintiffs to get down and give up their (imaginary) weapons. The Complaint thus specifically defines that a group of men, including Silva, McMullen and Accornero, together verbally abused Plaintiffs. The Complaint could

not be clearer.

The same is true for other paragraphs that use the term "DEFENDANTS." For example, the Complaint alleges that "DEFENDANTS refused to offer an explanation as to whom they were or why they were there," that "DEFENDANTS then started to search Plaintiffs' home" damaging property in the process, that "DEFENDANTS could have easily verified the information [obtained during the investigation] through an independent source," and "the dog was intended by DEFENDANTS to create a traumatizing and dangerous experience to frighten Plaintiffs and damage property." Complaint ¶¶ 14, 16, 17, 26, 27. Each of these allegations ascribes conduct or omissions to <u>all three</u> individual Defendants and thus is certain and definite.

In contrast, when the Compliant seeks to identify individual conduct, it plainly does so. For example, the Complaint alleges that "McMULLEN then placed a boot on STRANGE's head;" "McMULLEN lifted KEANE from the ground by his handcuffed wrists, in a painful manner that caused injury;" "McMULLEN showed McGuigan KEANE's state ID photo and asked her to confirm that his was the man who sent the package;" "SILVA and McMULLEN discovered that Brian Keane's birthday was September 15, 1958;" "SILVA and McMULLEN represented to KEANE that his fingerprints were on the package of marijuana;" "McMULLEN invoked the authority of the California judicial system;" "SILVA and McMULLEN had a female officer . . . search KEANE's body in the presence of several other male officers;" "SILVA and MCMULLEN failed to conduct an adequate investigation and submitted an affidavit for a warrant that lacked exculpatory evidence;" and "SILVA and McMULLEN lacked probable cause to arrest KEANE." Complaint ¶¶ 14, 17, 20, 23, 25, 31, 43 & 48. Each of these allegations excludes one or two of the other unnamed Defendants, who would otherwise be included if the Complaint used the term "DEFENDANTS." The Complaint hardly could be clearer in describing which conduct applies to which Defendant(s).

**2.    The Moving Defendants Provide No Relevant Authority for their Position.**

An equally troubling aspect of this motion is its mischaracterization of applicable law. McMullen and Silva ask this Court to apply Rule 9 pleading standards to a Complaint that Rule 8 governs. But that is not the law, as Defendants should know. As a civil rights action, the Complaint

must only satisfy Rule 8 notice pleading standards. *Leatherman v. Tarrant County*, 507 U.S. 163 (1993) (rejecting the application of a heightened pleading standard to local government in 1983 cases); *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (rejecting any pleading distinction between civil rights claims against individuals and those against local governments). <u>Once again, Defendants ignore controlling law</u>.

Defendants seem to acknowledge that Rule 8 applies (Motion at 7), yet rely on cases that apply Rule 9(b) requirements for pleading fraud. For example, Defendants cite *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) to argue that "Plaintiffs may not lump multiple defendants together." Motion at 7. *Swartz*, however, involved specificity for pleading <u>fraud</u> claims under <u>Rule 9(b)</u>. There, the court dismissed the fraud claims in part because the "complaint failed to specify any false representations made by them," instead grouping appellants with other defendants. *Id.* at 764 (emphasis omitted). The court stated that "<u>Rule 9(b)</u> does not allow a complaint to merely lump multiple defendants together . . . [but must] identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (emphasis added). *Swartz* had nothing to do with pleading civil rights claims or application of Rule 8.

Further, at no point do Defendants argue that the Complaint is unintelligible or that the Complaint does not provide them with notice of the claims. Nor could they credibly do so. The Complaint is <u>very detailed</u> about the conduct that forms the basis for the claims Plaintiffs assert in this action. The Complaint specifies a series of events, including the improper procurement of a search warrant, an unconstitutional home and property search, an unconstitutional arrest, and other actionable conduct. Indeed, the Defendants found the Complaint sufficiently clear to file a Case Management Conference with their "side" of the story and a statement of several legal issues that the Complaint presents. It seems wholly incongruous -- to state it charitably -- to be able to draft a detailed Case Management Statement, with carefully framed legal issues, and then claim that the Complaint does not give notice of what it purports to claim.

The degree of detail in the Complaint is especially commendable in light of the circumstances that produced this lawsuit. Defendants – complete strangers to Plaintiffs -- disrupted the equanimity of Plaintiffs' law-abiding and tranquil life by barging throw the front door of their

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

home at 7:00 a.m. over the Christmas holiday. Defendants then descended on Plaintiffs, trained guns on them, forced them to the ground, shackled them in handcuffs and emotionally terrorized them. This was an absolute nightmare that any one of us would prefer to forget. In these circumstances, the detail in the Complaint is anything but wanting; it is exceedingly beyond what the law requires.

Finally, any doubt that Defendants genuinely harbor about what Plaintiffs believed occurred that fateful morning of December 19, 2006 can be resolved in discovery. As noted, the Court must deny a motion for a more definite statement that seeks details obtainable through discovery. *Beery v. Hitachi Home Electronics, Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). If Defendants truly suffer from some lack of clarity about what Plaintiffs allege, with properly crafted questions, they can easily eliminate that doubt.

### IV.    CONCLUSION

This motion has no basis in fact or law. It serves no useful purpose and cannot be justified with any rationale. It should be denied.

DATED: April 8, 2008

Respectfully submitted,

REED SMITH LLP

/s/ James E. Heffner
James E. Heffner
Attorneys for Plaintiffs