JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue, 9th Floor
    San Francisco, California 94102-3495
    Telephone:   (415) 436-7264
    Facsimile:   (415) 436-6748
    Email:   abraham.simmons@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,<br><br>                Plaintiffs,<br><br>v.<br><br>SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,<br><br>                Defendants. | No. C 07-4894 SBA<br><br>DECLARATION OF NIKOS ELIOPOULOS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT |

I, Nikos Eliopoulos, declare as follows:

1. I am a Special Agent employed by the United States Department of Justice Drug Enforcement Administration. I have personal knowledge of the facts presented in this declaration and if called to testify I would and could competently testify to these facts.

## MY BACKGROUND

2. I am an instructor with the Tactical Safety and Survival Unit in the Office of Training with the Drug Enforcement Agency in Quantico, Virginia. Currently there are four instructors with the Unit and the four of us generally are responsible for teaching the Basic Agent Trainee courses here at Quantico. I have been in this position for over two years and I have been a Special Agent with the DEA for sixteen years. Before working with the DEA, I was a police

officer for over six years in Lake Forest, Illinois, a suburb of Chicago. I have experience and extensive training in executing search warrants and with drug investigations.

3. As noted above, among the groups of persons I teach are Basic Agent Trainees. Generally, these are Special Agents that are new to the DEA. Among the subjects I am responsible for teaching them are physical training, defensive tactics, breaching (i.e., entry of premises), how to conduct a raid and how to conduct vehicle stops. In addition to these basic courses, I also teach courses such as Advanced Agent Training, commonly referred to as in-service training, and the Group Supervisor Institute. In all these courses, we strive to communicate the best methods for safe and effective law enforcement techniques. By employing the methods we teach, there is a reduced likelihood that the law enforcement officer, any third party or any third person is injured or killed while the officer's objective is accomplished.

## OVERVIEW

4. I have read the First Amended Complaint filed by the plaintiffs in this case. I also have read the declaration of Seth McMullen. I will address only the contentions in the amended complaint that deal with the appropriateness of certain tactics used by the defendants when executing the warrant to search Mr. Keane's residence. Specifically, I address the suggestion by the plaintiffs that the defendants should not have demonstrated the potential to use overwhelming force when executing the warrant by (1) executing the warrant by appearing with several officers, (2) announcing the presence of the officers with loud and intimidating instructions to comply and (3) having guns drawn at the time of entry. It is my understanding from the reading of the complaint that the plaintiffs believe each of these tactics was not appropriate in light of the circumstances of this case. This declaration explains the government interests in using these techniques under the circumstances of this case.

5. **I do not attempt herein to address the allegations in the complaint that the warrant was defective or that the defendants knew or should have known that the warrant was improper.** Instead, I will comment only on the tactics that DEA agents are trained to use and the

Declaration of Nikos Eliopoulos
C 07-4894 SBA

2

governmental interests at stake when executing a warrant to search a residence in furtherance of a drug investigation. In other words, I have assumed when preparing this declaration that the warrant is, in fact, valid.

6. Similarly, I have read the declaration of Seth McMullen in which he states that he knocked on the Keane residence, announced his presence and waited a reasonable time for a response before entering the residence. I note that plaintiffs allege they did not hear a knock and announcement. I do not herein attempt to address the reasons that this discrepancy may exist; in other words, I assume both that Special Agent McMullen properly knocked and announced his presence and that no occupant of the home either heard or responded to the knock and announcement.

7. As a short answer to the plaintiffs' allegations, the decision to use each of the three tactics identified (i.e., using the physical presence of a large number of officers, announcing instructions with loud and intimidating voices and entering the residence with guns drawn), each is consistent with good law enforcement practice. Absent extraordinary facts dictating an unusual situation, the use of these three tactics are appropriate when executing a warrant for the search of a residence in furtherance of a drug investigation.

## TWO PRELIMINARY CONCERNS

8. As an initial matter, it is important to remember that the warrant that was issued in this case required that the law enforcement officers look for drugs and paraphernalia. Although the execution of a warrant to search any residence may raise security concerns, the execution of a warrant to search a residence for drugs and paraphernalia generally involves a significant potential for great harm to law enforcement officers. The potential existence of drugs often is accompanied by the desire on the part of criminals to protect themselves and their illegal drugs, often with violence whether or not necessary. The desire of criminals to protect illegal drugs and themselves, in turn, often results in the presence of weapons and violent responses to attempts by law enforcement officers to compromise the security of the criminal and his possessions.

Declaration of Nikos Eliopoulos
C 07-4894 SBA                                        3

9.   A second preliminary issue to keep in mind in this case is that the officers executing the warrant would have had a predictable disadvantage with respect to any persons in the house engaged in illegal activity; that is, the officers would not have been as familiar with the inside of the residence as the occupants. As explained further below, in cases where there is no information either about the number of persons in the house or the layout of the house, there is an increased potential that the main governmental interests may be compromised.

## THE GOVERNMENT INTERESTS AT STAKE

10.  Generally, the government has three objectives during the initial entry when executing a drug search warrant at a residence. First, and foremost, to ensure the safety of the officers and the occupants of the residence– whether or not they are involved with illegal activity. The second is to prevent the destruction of evidence. The third is to prevent the escape of suspects. The training that DEA officers receive is geared toward reducing the risk of compromising any of these three governmental interests.

11.  **The government has an interest in ensuring the safety of officers and occupants.** The safety of officers is at risk whenever an entry is made into a home. The safety of officers and occupants is at risk whenever an entry is made into a home during the execution of a drug search warrant. This generally is because it is not clear what a person would do when the warrant is executed. Training for officers includes the potential that occupants of a residence may attempt to defy the law enforcement officers by using any number of techniques that can seriously compromise the officer's safety. For example, the occupants of the home may attempt to fortify their positions or find a place from which to more safely take aim and shoot at the officer. As noted above, this concern is amplified in cases where drugs are involved and in cases where there is no information about either the number of persons in the home or the layout of the property. These factors existed in this case.

12.  The second governmental objective during the entry is to prevent the destruction of

evidence. The government has an interest in ensuring that evidence is not destroyed.. This concern is greater when no response is given to a knock and announcement that law enforcement officers are present. The training received by DEA agents is designed to minimize the possibility that evidence is destroyed during the execution of a search warrant.

13. **The third governmental concern, the possibility that a person might attempt to escape the** building, also is a governmental concern. This concern also is magnified when a person fails to respond in a knock and announce scenario. In this case, the chances that someone may want to escape during the execution of the search warrant would be a concern where drugs are involved and there is limited information about the places that a person may gain egress from the structure.

## THE METHODS AT ISSUE

14. Because of the governmental interests at stake, a DEA agent executing a warrant for the search of a residence for drugs and paraphernalia under these circumstances is trained to use speed, surprise and overwhelming presence when executing the warrant. Stated another way, absent extraordinary circumstances, there are procedures that law enforcement officers should use when making entry into a home to execute a search warrant for the presence of drugs and paraphernalia. These procedures are intended to use speed, surprise and overwhelming presence in an effort to convey that the officers "mean business," that compliance with commands is required and that resistance would be futile. The speed, surprise and overwhelming presence of officers is intended to intimidate the occupants of a home so that the occupants comply with commands until the residence is secured. This keeps the occupant "off balance" so to speak; they will be momentarily disoriented by the speed and surprise of the officers, such that their immediate thought is not to assault the officers, but rather that resistance to the overwhelming presence of the officers would be futile. The occupants and officers are kept safe because the occupants do not resist the officers' efforts to secure them. Only in those rare cases where circumstances ensure that the occupants' failure to respond to a knock and announce would nevertheless be followed with compliance by all the occupants of the residence to the officers'

Declaration of Nikos Eliopoulos
C 07-4894 SBA                                           5

commands, should the officer neglect to use speed, surprise and overwhelming presence to secure the residence. As noted above, an officer's unjustified failure to use speed, surprise and overwhelming presence would increase the likelihood that the search would result in an escape, the destruction of evidence, or the compromise in safety of everyone in the residence, including the officers, any targets of the investigation and any third parties who happen to be in the residence at the time.

15. **Among the techniques that special agents are taught to use speed, surprise and overwhelming presence** during the execution of a search warrant (1) demonstrating an overwhelming presence by appearing with greater manpower than the target, (2) demonstrating an overwhelming presence by announcing the presence of officers with loud and intimidating instructions and (3) protecting themselves and third parties by entering with guns drawn at the time of entry.

16. In this case, the plaintiffs appear to be complaining that the defendants entered the home with too many other officers. In general, the objective when securing a residence is to ensure that there are twice as many officers as occupants in the residence. The proper ratio of officers to occupants is difficult to achieve when it is unclear how many persons are in the residence. In this case, I have seen no facts to suggest that Special Agent McMullen should have used fewer agents.

17. **In this case, plaintiffs appear to be complaining that defendants intimidated them during** the execution of the warrant. As noted above, special agents are instructed to use techniques to intimidate the occupants into compliance until the residence is secured. Examples of appropriate tools are those that appear in the complaint: clear, loud commands that use inflection and project a physical presence that suggest resistance would be futile. It should be noted that in cases such as this one, where the presence of drugs is suspected and there is little information regarding how many persons are in the residence, the use of intimidating commands should be used to obtain compliance not only from persons that the officers see, but also from unseen occupants of the

Declaration of Nikos Eliopoulos
C 07-4894 SBA

residence. This often will convince a person with a perceived opportunity to resist or flee to simply comply with the officers instead.

18.  In this case, plaintiffs appear to be complaining that defendants had their guns drawn at the time of the entry into the residence. Absent extraordinary circumstances (e.g., circumstances demonstrating that all the occupants of the residence would first fail to respond to a knock and announcement but then would comply with subsequent requests), the entry of a residence should be conducted with a drawn firearm. I have reviewed no facts in the complaint that suggest this a one of the special cases in which entry into a residence should be attempted without a drawn gun.

    I declare under penalty of perjury under the laws of the United States that the above is true and accurate. Executed this 16th day in June, 2008, in Quantico, Virginia.



/s/
Nikos Eliopoulos

Declaration of Nikos Eliopoulos
C 07-4894 SBA