# EXHIBIT 4

# EXHIBIT 4(a)

U.S. Department of Justice

*United States Attorney*
*Northern District of California*

---

*9th Floor, Federal Building*                          *(415) 436-7264*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California 94102*                    *FAX:(415) 436-7169*

May 30, 2008

*__via facsimile and U.S. mail__*

James E. Heffner
Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111-3922

      Re:    **Keane et al. V. McMullen, et al.**
              **C 07 4894 SBA**

Dear Mr. Heffner:

We address herein two issues: (1) plaintiffs' subpoena dated May 16, 2008 to the United States Drug Enforcement Administration and (2) the Federal Defendant's Motion for Summary Judgment.

### The Subpoena

Your cover letter to me states that it "will be served on third parties." In this regard, we wish to make explicit the obvious implication of your letter; i.e., that service to the undersigned does not constitute service on the agency.

Further, this also will confirm that the undersigned has not been assigned to represent the agency regarding any response to the subpoena. Typically, subpoenas are assigned to an attorney when it is properly served.

In addition, this will serve to assert on behalf of the individual defendants, the following objections to the subpoena:

(1)    The subpoena is so overbroad as to be unduly burdensome.

    (A)    Preliminarily, please note that as examples of the subpoena's overbreadth the definitions therein– including the definitions for the terms "You," "person," "document," "all documents," "relates to," and "all communications"– are so broad and over-inclusive as to require the agency to search for and review an extraordinary number of documents;

    (B)    the subpoena requests documents that are not reasonably calculated to result in the discovery of admissible evidence;

Letter to James Heffner
May 30, 2008
Page 2

    (C)    Request No. 1 seeks all documents that "relate" in any way to any policy or any procedure governing criminal procedures– there is no limitation to, for example, a particular time or place; it is apparent that any attempt by this large federal agency to collect such a massive amount of documents would not be practicable and would be, in any case, unnecessary given the issues presented in this case;

    (D)    similarly, Request No. 2 seeks all documents that relate in any way to any policy or any procedure "for obtaining search warrants and arrest warrants;" there is no limitation in the request that the agency limit its search for documents that relate to, for example, any particular time or place and here again, any attempt by the federal agency to collect such a massive amount of documents would not be practicable and would be unnecessary given the issues presented in this case;

    (E)    Request Nos. 4 and 5 also identify an extraordinarily wide range of documents for production and fail to have any reasonable limitations regarding the scope of described documents.

(2)    Compliance with the subpoena would require disclosure of documents protected from disclosure by the Privacy Act. This is particularly true of Request Nos. 5, 6 and 7.

(3)    Compliance with the subpoena would require disclosure of documents protected from disclosure by the attorney-client privilege and work product doctrine. Broadly construing the subpoena, this is true of each one of your requests. Even construing the subpoena in the most narrow way, the document unnecessarily calls for disclosure of documents in Request Nos. 5, 6, 7, 8, 9, 10, 11 and 12.

(4)    Compliance with the subpoena would require disclosure of documents protected from disclosure by law enforcement privileges.

Should you decide to serve the subpoena, please let us know so that we can decide whether to take steps to prevent disclosure of protected documents. At a minimum, we will seek to inform the attorney handling the subpoena of the objections asserted by the Federal Defendants.

### Defendants' Motion For Summary Judgment

We previously have informed you that the Federal Defendants intend to file a motion for summary judgment. Judge Armstrong's standing orders and the pretrial order in this case both require that Federal Defendants meet and confer before filing the motion. Also, in the event that a motion is necessary, the pretrial order also requires that we attempt in good faith to determine the facts about which there is no reasonable dispute. This attempts to address both requirements.

Letter to James Heffner
May 30, 2008
Page 3

Generally, this case deals with both (1) the investigation prior to the arrest of Keane and the search of his residence as well as (2) allegations of excessive force during the execution of search and arrest warrants. We are hopeful Plaintiffs will concede that even if this case should be permitted to move forward, it should move forward on fewer issues than are now asserted in the First Amended Complaint.

First, only Special Agent McMullen even was responsible for the procurement of the warrants, thus no other defendants even should be part of the "investigation" aspect of the case. Moreover, Special Officer McMullen made no material omissions in his affidavit requesting the warrants and there is no evidence of any other improper conduct in the procurement of the arrest and search warrants. Additionally, the warrants were not so defective on their face that the other officers all were entitled to rely on the warrants as a basis for probable cause. For these reasons, if this case is permitted to move forward, it should do so on the basis of Plaintiff's allegations of excessive force. If Plaintiffs are aware of facts or authority that would justify holding all these officers liable for other aspects of the investigation or for the decision to execute the warrants, please provide them before we file the motion for summary judgment so that we may evaluate them in accordance with the Court's orders.

Second, the Federal Defendants are entitled to qualified immunity with respect to all the allegations in the complaint except, on a showing from plaintiffs, the allegations that (1) Keane's handcuffs were applied too tightly, (2) Keane improperly was lifted from the floor by his handcuffs, and (3) McMullen put his boot on Strange's head. Federal Defendants were entitled to execute the arrest and search warrants by entering Keane's home with their guns drawn. This is standard procedure and is justified whenever executing a drug-related search warrant of a private home. If Plaintiffs can produce evidence that (1) Keane's handcuffs were applied too tightly, (2) Keane improperly was lifted from the floor by his handcuffs, and (3) McMullen put his boot on Strange's head, these facts, if proven, would be relevant to liability. Nevertheless, please confirm that Plaintiffs acknowledge that the remainder of the allegations, even if proven, would not establish liability against the Federal Defendants.

Third, even if we are not able, for some reason, to agree that the Federal Defendants are entitled to judgment with respect to the claims described above, Plaintiffs should identify any of the 48 facts on the attached list about which there is a dispute. These, by and large, are the same facts presented in Federal Defendants' previous motions and is nothing new.

## Conclusion

Please let us know if and when you decide to serve the subpoena attached to your letter dated May 16, 2008. In addition, if you have served the subpoena, please let us know if you have been contacted by the agency (and if so, by whom) so that we may serve notice of these objections to the agency as well.

Letter to James Heffner
May 30, 2008
Page 4

Finally, please inform us whether you are willing to stipulate to dismiss any part of Plaintiffs' case in light of the facts stated above. Alternatively, please let us know whether you dispute any of the 48 facts on the attached list and, if so, on what basis. We seek to file a motion next week if we are unable to reach an agreement with you, so your prompt reply would be appreciated.

Sincerely,

Joseph P. Russoniello
United States Attorney

ABRAHAM A SIMMONS
Assistant United States Attorney

enc.: Facts about which there is no reasonable dispute
cc: Tricia Hines

Attachment to May 30, 2008 letter to James Heffner

## FACTS ABOUT WHICH THERE IS NO REASONABLE DISPUTE

| | |
|---|---|
| 1 | Seth McMullen is a Special Agent with the Santa Rosa Resident Office (SRRO) of the United States Drug Enforcement Agency, an agency of the United States Government. |
| 2 | On November 29, 2006, Sergeant Jim Stephenson, a member of the Petaluma Police Department, contacted Special Agent McMullen by telephone and reported that he had received information regarding an attempt to deliver a controlled substance. |
| 3 | Sergeant Jim Stephenson reported to Special Agent McMullen that Maureen McGuigan, the owner of Mail Depot in Petaluma reported that a customer attempted to mail marajuana from Petaluma to New Jersey. |
| 4 | Stephenson related his conversation with McGuigan wherein she reported that earlier the same day a person left with her a wrapped package for mailing. |
| 5 | Maureen McGuigan described the person as a white male adult, approximately forty years old, 5'6" tall, 150 pounds, with brown hair and wearing sunglasses. |
| 6 | Maureen McGuigan reported the man claimed he wanted to deliver the package to his 'niece', Kerry Keane in Brick, New Jersey. |
| 7 | McGuigan stated that she became concerned when she found his behavior suspicious and asked the man if the package contained marijuana. |
| 8 | The man denied that the contents of the package were illegal drugs, stated that it contained clothing for his niece and left. |
| 9 | McGuigan discovered the package contained three packages of marijuana. |
| 10 | McGuigan delivered the package to the Petaluma Police Department and discussed the contents of the package with Stephenson. |
| 11 | Stephenson stated that among the things he did after he took custody of the package was to call Special Agent McMullen. |
| 12 | McMullen stated that he would retrieve the package and open an investigation. |
| 13 | November 30, 2006, Special Agent McMullen and Special Agent Jeff Hoyt met Sergeant Stephenson, took custody of the package, and transported it back to back to the SRRO. |
| 14 | The package bore a sending address of "C. Keane," 307 North Ferndale Avenue, Mill Valley, California, 94941. |
| 15 | Special Agent McMullen conducted research using computer databases and verified both that the address was valid and that Plaintiff Robert Carl Patrick Keane used the address as a residence. |

| 16 | Special Agent McMullen conducted further research and obtained a photograph of Mr. Keane as well as other identifying information. |
|----|----|
| 17 | Later the same day, the agents returned to the Mail Depot, showed McGuigan a photograph of Keane (identifying him as a "possible suspect") and asked whether the person in the photograph resembled the person who attempted to deliver the package. |
| 18 | McGuigan confirmed that the photograph depicted the person who had dropped off the package the day before. |
| 19 | Special Agent McMullen arranged to have the package shipped and delivered under controlled circumstances. |
| 20 | On December 1, 2006, the package was delivered by officers of the Brick Township Police Department. |
| 21 | McMullen was informed by the Brick Township law enforcement that Brian William Keane and Susanne Keane were arrested for taking possession of the marajuana. At the time, neither Brian Keane nor Susanne Keane admitted to knowing the contents of the package. |
| 22 | Among McMullen's concerns regarding the further investigation was the fact that once the controlled delivery was made to the New Jersey address, and subsequent law enforcement activity likely would be communicated to persons in California which would result in the spoliation of evidence in California. |
| 23 | Special Agent McMullen decided to pursue a warrant to search the Keane residence. |
| 24 | Special Agent McMullen chose to use procedures available in state, rather than federal, court in light of the amount of marajuana involved. |
| 25 | Special Agent McMullen retained responsibility for conducting the investigation and drafting the documents necessary to obtain a warrant. |
| 26 | From December 1, 2006 through December 15, 2006, Special Agent McMullen prepared a six-page Search Warrant and Affidavit that consisted of (1) a one-paragraph affidavit for signature by Special Agent McMullen and a deputy district attorney, (2) a two-and-a-half-page search warrant for signature by a Superior Court Judge for the County of Sonoma, (3) a seven-paragraph statement of expertise and (4) a ten-paragraph statement of probable cause. |
| 27 | The affidavit attests to Special Agent McMullen's belief that the facts expressed in the Search Warrant and Affidavit are true and correct and that he has probable cause to believe that the items sought are lawfully seizable. |

| 28 | The affidavit is signed by Special Agent McMullen. Below McMullen's signature is a statement that the document was "[p]repared with the assistance of or reviewed by" the deputy district attorney on the case. Scott Jamar, a deputy district attorney for the Sonoma County District Attorney's Offfice, signed the preparation or review statement. |
|----|----|
| 29 | The search warrant indicates that Special Agent McMullen had probable cause to believe the lawfully seizable items were either used as the means of committing a felony, were possessed by a person with intent to use it as a means of committing a public offense or is evidence tending to show that a felony has been committed. |
| 30 | The search warrant identified Keane's address as the residence that is authorized to be searched. The search warrant permits search for numerous items including "deposit slips," utility company receipts, legal documents and "other receipts." |
| 31 | Among the topics described in Special Agent McMullen's state of expertise were his experience and training in the field of narcotics, his experience in preparing and executing state and federal warrants, and his experience in narcotics investigations. |
| 32 | The statement of probable cause included an account of the facts that had been communicated to, and investigated by, Special Agent McMullen up until the date the affidavit was signed, December 15, 2006. |
| 33 | The statement disclosed that McGuigan was shown "a photo of a possible suspect" and that she positively identified Keane. There was no suggestion in the statement that McGuigan was subjected to a line-up. |
| 34 | The concluding paragraph of the affidavit stated Special Agent McMullen's belief that Keane and Brian Keane were related. The concluding paragraph of the affidavit stated:<br><br>   10.  Agents believe that Robert Carl Patrick KEANE and Carl or Carl Patrick KEANE is the same person. Also, the shipping label of the six pounds of marijuana sent to New Jersey for the controlled delivery had C. KEANE, 307 North Ferndale Avenue, Mill Valley, California as the sending address. When Brian KEANE was arrested, he gave 39 Sandy Point Drive, Brick, New Jersey, as his address, and (732) 262-8875 as his telephone number. All of this information was contained on the shipping label. Agents also believe that Robert Carl Patrick KEANE and Brian KEANE are possibly related due to the same last names and a physical resemblance of both. |
| 35 | Special Agent McMullen also prepared an arrest warrant for Keane's arrest. |
| 36 | Both the arrest warrant and the search warrant were reviewed by Sonoma County District Attorney Scott Jamar and submitted to Sonoma County Superior Court Judge Robert S. Boyd. |
| 37 | Judge Boyd signed and issued both warrants. |

| 38 | To prepare for the execution of the search and arrest warrants, McMullen requested that a K-9 unit be deployed to assist with the search. |
| 39 | McMullen also contacted the local authorities, the Marin County Sheriff's Department, and invited them to have a representative attend the execution of the search warrant. |
| 40 | The Marin County Sheriff's Department were represented by Officers Mike Brovelli, Brian Caboud and Steve De La O. |
| 41 | On December 19, 2006, McMullen participated along with the Marin County officers, Task Officer Silva, and three other DEA officers in the execution of the search and arrest warrants. |
| 42 | The other officers included Defendant Paul Accornero who, with his dog, comprised the K-9 unit from Petaluma. |
| 43 | McMullen wore a DEA-issued uniform. |
| 44 | The front door of the Keane residence was unlocked and Special Agent McMullen entered without using force. |
| 45 | Special Agent McMullen denies that he put his boot on anyone's head, denies that he put on Keane's handcuffs too tight and denies that he lifted Keane from his wrists or in any way to cause Keane damage. |
| 46 | Keane was admonished regarding the purpose of the K-9 unit and the likely reaction should the dog be alerted to the presence of drugs. The admonitions were audio taped. |
| 47 | Special Agent McMullen searched Keane's residence and seized a Wells Fargo deposit slip and a telephone bill. |
| 48 | Special Agent McMullen served the arrest warrant on Keane and arrested him. |

Multi Communication Report                    MAY-30-2008 03:45 PM FRI

```
                              Xerox FaxCentre 2218
                              Machine Fax ID        :  US ATTORNEY
                              Serial Number         :  CBC458282.......
                              Fax Number            :  4154367169

                              Ref. Name             :
                              Pages                 :  9
```

1. Successful

| Fax Number | Name |
|---|---|
| 93918269 | |
| 915104441108 | |

2. Unsuccessful

| Fax Number | Name |
|---|---|

3. Multi Communication Journal

| No. | Name/Number | Start Time | Time | Mode | Page | Results |
|---|---|---|---|---|---|---|
| 600 | 93918269 | 05-30 03:40PM | 03'02" | ECM BC | 009/009 | O.K |
| 600 | 915104441108 | 05-30 03:43PM | 01'34" | ECM BC | 009/009 | O.K |



U.S. Department of Justice
United States Attorney
Northern District of California
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
Telephone Number: 415/436-7200
Fax Number: 415/436-6748

# FAX

| To | James E. Heffner, Esq.<br>PH: 415.546.8700    FX: 415.391.8269 | cc: | Tricia L. Hynes, Esq.<br>PH: 510.808.2000  FX: 510.444.1108 |
|---|---|---|---|

| From | Tina Louie, Legal Assistant<br>to<br>Abraham A. Simmons, AUSA | | |
|---|---|---|---|
| **Phone** | (415) 436-7213 | **Fax** | (415) 436-7169 |

Date:  May 30, 2008              Page(s): [9] including cover

Re:  Keane, et al. V. McMullen, et al.
     C 07-4894 SBA

**ATTACHMENT:**
-Ltr from A. Simmons to J. Heffner dated 5/30/08 with enclosures

**MESSAGE:**
Original will follow by mail.

## CONFIDENTIAL U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying documents constitutes confidential information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.

# EXHIBIT 4(b)

## Simmons, Abraham (USACAN)

**From:**     Foster, Christopher C. [CFoster@ReedSmith.com]
**Sent:**     Tuesday, June 03, 2008 1:54 PM
**To:**       Simmons, Abraham (USACAN)
**Cc:**       Peters, Matthew T.
**Subject:**  Meet and Confer

Dear Mr. Simmons,

I am in receipt of your letter to James Heffner dated May 30, 2008 regarding the DEA subpoena and your forthcoming motion for summary judgment in *Keane v. McMullen*. James got married over the weekend and is presently out of the office on his honeymoon. We will have a response to your letter prepared as promptly as possible, likely towards the end of this week or early next week.

Regards,

## Christopher C. Foster
415.659.5666
cfoster@reedsmith.com

## Reed Smith LLP

Two Embarcadero Center
San Francisco, CA 94111
415.543.8700
Fax 415.391.8269

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

* * *

To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication  (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Disclaimer Version RS.US.1.01.03
pdc1

EXHIBIT 4(c)

## Simmons, Abraham (USACAN)

| | |
|---|---|
| **From:** | Simmons, Abraham (USACAN) |
| **Sent:** | Wednesday, June 04, 2008 4:33 PM |
| **To:** | Foster, Christopher C. |
| **Cc:** | Peters, Matthew T. |
| **Subject:** | RE: Meet and Confer |

Thank you for letting me know what the holdup is.

If you do not mind, please run this up the ladder so that I can get an answer this week. (It occurs to me that James rarely makes these sorts of decisions on his own, anyway.) I intend to file a motion early next week and that would not leave us with much time to confer.   It is important that we have some opportunity to reach agreement on any of this, if possible.

Thank you, Christopher.

**From:** Foster, Christopher C. [mailto:CFoster@ReedSmith.com]
**Sent:** Tuesday, June 03, 2008 1:54 PM
**To:** Simmons, Abraham (USACAN)
**Cc:** Peters, Matthew T.
**Subject:** Meet and Confer

Dear Mr. Simmons,

I am in receipt of your letter to James Heffner dated May 30, 2008 regarding the DEA subpoena and your forthcoming motion for summary judgment in *Keane v. McMullen*.  James got married over the weekend and is presently out of the office on his honeymoon.  We will have a response to your letter prepared as promptly as possible, likely towards the end of this week or early next week.

Regards,

## Christopher C. Foster
415.659.5666
cfoster@reedsmith.com

## Reed Smith LLP

Two Embarcadero Center
San Francisco, CA 94111
415.543.8700
Fax 415.391.8269

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.
\* \* \*
To ensure compliance with Treasury Department regulations, we inform you that, unless otherwise indicated in writing, any U.S. Federal tax advice contained in this communication  (including any attachments) is not intended or written to be

used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or applicable state and local provisions or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

Disclaimer Version RS.US.1.01.03
pdc1

# EXHIBIT 4(d)

# ReedSmith

Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111-3922
+1 415 543 8700
Fax +1 415 391 8269
reedsmith.com

**Christopher C. Foster**
Direct Phone: +1 415 659 5666
Email: CFoster@reedsmith.com

June 5, 2008

**VIA FACSIMILE AND U.S. MAIL**

Abraham A. Simmons
Assistant United States Attorney
9th Floor, Federal building
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102

**Re:　Keane et al. v. McMullen et al., C-07-4894**

Dear Mr. Simmons:

This responds to your letter of May 30, 2008 and e-mail of June 4, 2008. In your letter, you make several requests. You ask that we (1) advise you if and when we decide to serve the May 16, 2008 subpoena on the United States Drug Enforcement Administration; (2) indicate whether we are willing to dismiss any part of our case; and (3) set forth our basis for disputing any of the 48 purported facts attached to your letter. We address each request in turn.

**Service of DEA Subpoena**

We attempted service of the DEA subpoena on May 16, 2008, but DEA informed our process server it would not accept service. In other words, DEA is stonewalling. This of course does not reflect favorably on the federal government and hardly serves well your attempt to accelerate a summary judgment motion (which we address separately below). To date, the modus operandi of the federal government in this case is to delay and evade, except of course when a different tact suits its strategic bent (again, see summary judgment discussion below). In all events, we will press on with service attempts, including, if necessary, seeking judicial intervention, but suggest you consider intervening to eliminate the barrier so the parties can actually focus on the merits of the controversy.

**Dismissal of All or Part of Plaintiffs' Claims**

We continue to believe that the claims pled in the Amended Complaint are well-founded. Your letter does not persuade us otherwise. Accordingly, plaintiffs will not dismiss any part of their case.

**Plaintiff's Dispute of the 48 Facts Attached to Your Letter**

In a purported attempt to "meet and confer" regarding an anticipated motion for summary judgment, your letter includes a list of 48 facts entitled "facts about which there is no reasonable dispute." It should be no surprise that we endorse the earlier observations of the Court that the factual disputes in this case are tailor-made for jury resolution. Nonetheless, as a preliminary matter, a motion

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH
OAKLAND ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

DOCSSFO-12517300.1-MTPETERS 6/5/08 3:32 PM

Abraham A. Simmons
June 5, 2008
Page 2

**ReedSmith**

for summary judgment in this case is premature.  Discovery has barely begun.  For example we have had virtually no opportunity to request and review documents from parties and non-parties and, critically, no opportunity at all to depose third-party and party witnesses.  Until that occurs, it is patently unreasonable to ask us to provide meaningful responses to the vast majority of the 48 facts you style as "undisputed." For example, request number 22 inquires into Defendant Seth McMullen's personal "concerns" regarding the investigation at issue.  We fail to see how Plaintiffs can offer an informed response to this request without examining McMullen under oath.  We are confident that the Court will deny your motion, if filed before meaningful discovery takes place, on this basis alone.  We thus request that you reconsider your plan to file the motion next week so that the parties may proceed unabated with discovery.  We believe this request is consistent with the Court's observation that discovery should proceed unimpeded and that a dispositive motion at this early stage will likely be viewed with disfavor.

We do not begrudge your clients the right to file a dispositive motion.  But we are mystified that, after what the Court has told the parties about unrestricted discovery and the general prospects of a summary judgment motion, you will not await the completion of important discovery before presenting such a motion to the Court.  We respectfully urge you to reconsider the timing of the motion and to cooperate fully to achieve timely and complete discovery in this case.

Very truly yours,

Christopher C. Foster

cc: Tricia L. Hynes

# EXHIBIT 4(e)

U.S. Department of Justice

*United States Attorney*
*Northern District of California*

---

9th Floor, Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102

(415) 436-7264

FAX:(415) 436-7169

June 12, 2008

*via facsimile and U.S. mail*

Christopher C. Forster
Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111-3922

Re:    **Keane et al. v. McMullen, et al.**
       **C 07 4894 SBA**

Dear Mr. Foster:

This follows up with the undersigned's letter to James Heffner dated May 30, 2008 and responds to your letter dated June 5, 2008.

### Service of Plaintiff's Subpoena on the DEA

In our letter, we objected to various aspects of the subpoena and asked that you inform us if and when you were to serve the subpoena. In your June 5, 2008, response, you wrote that you already had attempted to serve the subpoena but had been unable to do so. Specifically, you stated that "DEA informed our process server it would not accept service." You went on to explain the modus operandi of the "federal government", as well as how "this" reflects upon the federal government. You then requested that the undersigned "consider intervening to eliminate the barrier so the parties can actually focus on the merits of the controversy."

As an initial matter, please observe that we hope to conduct this litigation with a minimum of unnecessary grousing. We believe effective lawyering in this case will not have to contain invective nor ad hominum attacks. To this end, we will do what we can to maintain cordial correspondence– even when we disagree on the merits of the arguments or procedures that should be used.

With respect to your request that we assist with the service of the subpoena, we will attempt to find the appropriate attorney who can receive the subpoena. We also will forward to the attorney your request that any additional procedures be waived so that the subpoena can be processed as soon as possible. If there is more you are requesting of us, please let us know so that we can determine whether it makes sense to meet your requests. For the record, this office was unaware that you already had attempted to serve the DEA with the subpoena or how you were making such efforts. Now that we know what you are trying to do, we do think we can be helpful and will get back to you as soon as possible (hopefully, by the end of the day tomorrow).

Letter to Christopher C. Foster
June 12, 2008
Page 2

    In the meantime, we request that you let us know whether you are willing to (1) redraft the subpoena so as to provide reasonable limits (especially with regard to the time frames and offices that are being asked to respond) and (2) enter into a stipulation requesting a protective order in the event that documents responsive to your request are protected by privileges, protective doctrines or the like. We do not mean to suggest that your forwarding this information to us is a prerequisite for providing the assistance described in the previous paragraph. Nevertheless, please note that in our experience, having these issues addressed before service of this sort of subpoena may actually accelerate the actual production of documents.

    Further, in the future, if you have problems figuring out how to serve documents on divisions of the federal government or on federal employees, please just call the undersigned and he will do what he can to help. Although AUSA Simmons represents only the two federal defendants in this litigation, we recognize the procedures in the Federal Rules of Civil Procedure and the Code of Federal Regulations often can be difficult to understand or to follow; we do not have a problem being helpful and, in the appropriate case, assisting with the elimination of the procedures when such procedures are not necessary to ensure a fair and efficient resolution to plaintiffs' claims.

### Dismissal of All or Part of Plaintiffs' Claims

    Thank you for advising us regarding your position on this issue.

    We wish to make one more effort to solicit from you any additional facts or law that you believe would justify the investigation-related allegations. After careful review of the Amended Complaint and the Joint Case Management Statement, we believe there are simply insufficient facts to support the claims being made by plaintiffs regarding the inadequacy of Seth McMullen's investigation and request for arrest and search warrants. Please accept this as a final request for any additional facts or law that would substantiate this claim.

    Similarly, it appears to be undisputed that John Silva was not present in the Keane residence until after the plaintiffs were in handcuffs and the residence was secured. He also made no decisions regarding whether to seek a warrant, how and when to request search and arrest warrants or whether the warrants should be signed by the Superior Court Judge and District Attorney. In this regard, it appears there are several claims pending against Officer Silva that you should be willing to dismiss.

    Please review these requests with as much care as possible as they are made in an effort to obtain your compliance with Judge Armstrong's standing order and the pretrial order entered in this case. Although we understand your bottom line, our experience and review of Judge Armstrong's orders suggests the "meet and confer" obligations in the judge's orders should be addressed with more substance than the paragraph provided in your June 5, 2008, letter.

Letter to Christopher C. Foster
June 12, 2008
Page 3 _____

### The 48 Facts About Which There Should Be No Dispute

We have requested that you identify any of the facts on the list that you believe are in dispute. We have tried to identify facts that you have no basis for disputing and, in most cases, that you would have little or no interest in disputing. This can be seen as an alternative to serving requests for admission or using other discovery devices. You have responded that it is not reasonable for defendants to "ask us to provide meaningful responses to the vast majority of the 48 facts . . .."

We would like to encourage you to respond substantively to the request. We believe the wholesale refusal to address the issue is not in keeping with the meet and confer obligations in Judge Armstrong's orders.

Additionally, identifying facts that plaintiffs will agree are undisputed should not be viewed as unreasonable– even if no motion is filed. There may be facts about which the parties may stipulate in order to avoid discovery altogether. If any of the facts on the list are facts about which you have no legitimate dispute, please let us know.

### Defendant's Decision to File A Motion

You have expressed considerable concern that our tentative decision to file a motion is not consistent with Judge Armstrong's comments during the case management conference. We, too, are concerned with the judge's comments and take seriously the court's preference that only "good" motions be filed. In this regard, we offer the following:

The Judge also requested that the parties meet and confer before any such motion is filed. We are attempting to do so, in part to assess the propriety of filing a motion. To date, we have not received from you a basis for disputing any facts and we have not received from you any citations suggesting a motion would be improper.

We do not believe Judge Armstrong's comments were more than a request to be careful when filing a motion. A properly supported motion for summary judgment based on the defense of immunity is properly brought as soon as it can be heard. The policy justifying qualified immunity motions at the earliest possible stage is to protect officers against the burden of discovery and pretrial motions. *See Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Indeed, until the threshold immunity question is resolved, discovery should not be allowed. *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982).

Here, there are several issues that should be decided before discovery and other pretrial procedures are fully underway. For example, The determination of whether the facts alleged could support a reasonable belief in the existence of probable cause is also a question of law to

Letter to Christopher C. Foster
June 12, 2008
Page 4 _____ _____

be determined by the court. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). These and other questions about which there is not material issue of fact in dispute should be resolved before discovery is conducted.

### Conclusion

Please let us know whether you have additional concerns regarding serving the subpoena. In the meantime, we will attempt to locate a lawyer to whom you can deliver the document. Also, please let us know whether you are willing to adjust the scope of the subpoena and/or to enter into a protective order to prevent public disclosure of protected documents.

Please let us know which particular facts on our list of 48, if any, you can accept as undisputed and provide us with the basis for the dispute.

If you have any basis for further disputes or wish to enhance the efforts to meet and confer that you have made to date, please do so as soon as possible.

Sincerely,

Joseph P. Russoniello
United States Attorney

ABRAHAM A SIMMONS
Assistant United States Attorney

cc: Tricia Hines

Multi Communication Report                    JUN-12-2008 03:48 PM THU

```
Xerox FaxCentre 2218
Machine Fax ID          :  US ATTORNEY
Serial Number           :  CBC458282.......
Fax Number              :  4154367169

Ref. Name               :
Pages                   :  5
```

1. Successful

| Fax Number | Name |
|------------|------|
| 93918269 ✓ | |
| 915104441108 ✓ | |

2. Unsuccessful

| Fax Number | Name |
|------------|------|
| | |

3. Multi Communication Journal

| No. | Name/Number | Start Time | Time | Mode | Page | Results |
|-----|-------------|------------|------|------|------|---------|
| 622 | 93918269 | 06-12 03:45PM | 01'46" | ECM BC | 005/005 | O.K |
| 622 | 915104441108 | 06-12 03:47PM | 00'54" | ECM BC | 005/005 | O.K |

# EXHIBIT 4(f)

**Simmons, Abraham (USACAN)**

| | |
|---|---|
| **From:** | Foster, Christopher C. [CFoster@ReedSmith.com] |
| **Sent:** | Monday, June 16, 2008 3:23 PM |
| **To:** | Simmons, Abraham (USACAN) |
| **Cc:** | thynes@meyersnave.com; Heffner, James E. |
| **Subject:** | Stipulation to Extend Mediation |
| **Attachments:** | PROPOSED STIPULATION (KEANE).doc |

Dear Mr. Simmons,

I made a few changes to the stipulation and proposed order, hopefully they will be agreeable to both you and Ms. Hynes. Given that we are stipulating to your request for an extension of this court ordered deadline, we believe it more appropriate for you to file the stipulation. Accordingly, the contents of the attached stipulation are agreeable to us, and you may sign on our behalf, you need only change the caption.

As an aside, with respect to your forthcoming motion for summary judgment, now that James is back in the office and up to speed, we are prepared to meet and confer with you tomorrow at a mutually convenient time, as I understand it is your preference to file that motion tomorrow.

Please confirm that you will file the attached stipulation.

Best regards,
Chris


<<PROPOSED STIPULATION (KEANE).doc>>




**Christopher C. Foster**
415.659.5666
cfoster@reedsmith.com

**Reed Smith LLP**

Two Embarcadero Center
San Francisco, CA 94111
415.543.8700
Fax 415.391.8269




* * *


This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.
* * *

EXHIBIT 4(g)

Reed Smith LLP
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111-3922
+1 415 543 8700
Fax +1 415 391 8269
reedsmith.com

**James E. Heffner**
Direct Phone: +1 415 659 5996
Email: jeheffner@reedsmith.com

June 18, 2008

Abraham A. Simmons
Assistant United States Attorney
United States Attorney's Office
450 Golden Gate Ave., 9th Floor
San Francisco, CA  94102-3495

**Keane v. McMullen, C 07-4894 SBA**

Dear Mr. Simmons:

This letter addresses various issues related to your impending Motion for Summary Judgment/Adjudication ("MSJ") and is intended to continue the meet and confer process regarding the motion.

**<u>Request for Dismissal</u>**

Your May 30th letter argues that neither Officer Silva ("Silva") nor Officer McMullen ("McMullen") is liable for any conduct alleged in the First Amended Complaint ("FAC"). In making this argument, you oversimplify the case, miscomprehend the law and ignore the allegations of the FAC.

Your argument that McMullen has no liability in the "investigation" portion of the case because he "made no material omission in his affidavit . . . and there is no evidence of any improper conduct," does not comport with our limited investigation and the law. While this issue cannot be fully addressed without appropriate discovery, our information shows a deeply flawed and reckless investigation. Further, our investigation indicates his affidavit omitted critical pieces of evidence that would have prevented the issuance of a warrant. For example, the affidavit states that "[a]gents also believe that Robert Carl Patrick KEANE and Brian KEANE are possibly related due to the same last names and a physical resemblance of both." This statement is either knowingly false or recklessly omits exculpatory evidence known to McMullen (and others) as a result of what occurred in the related New Jersey investigation.

You also argue that Silva had no involvement in the investigation and was not present at the residence until after Plaintiffs were handcuffed. Our investigation shows otherwise. Indeed, this illustrates why a motion is premature. We have had no opportunity to depose Silva and our evidence depicts his roll as more material than your letter describes.

Your only other argument is little more than a conclusion that Silva and McMullen are entitled to qualified immunity for their conduct in (1) applying the handcuffs too tightly, (2) hurting Mr. Keane when lifting him by his handcuffs, and (3) placing a boot on Ms. Strange's head. This conclusion is unsupported by law. Indeed, to suggest that an officer is acting reasonably when placing their boot on

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ PITTSBURGH
OAKLAND ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ BIRMINGHAM ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE

DOCSSFO-12518686.2-JEHEFFNE

Abraham A. Simmons
June 18, 2008
Page 2

ReedSmith

the head of a handcuffed and compliant 63 year-old woman is ludicrous. Further, Plaintiffs' claims are based on a myriad of additional actionable conduct. For example, the officers did not comply with the clearly established knock and announce requirements before entering Plaintiffs' home. Finally, your suggestion that "standard procedure" excuses Silva and McMullen's aggressive use of their weapons when conducting this raid is not acceptable. The issue is whether the aggressive tactics violated Plaintiffs' constitutional rights, and in this case, we maintain they did. Further, we believe the evidence will show that your clients did not follow "standard procedure."

We recognize that the parties have disagreements regarding the merits of the claims and, it appears, the applicable legal standards. Further, as a fact intensive case, it is evident that issues may be substantially narrowed as discovery clears up the numerous disputes regarding material facts. We are open to a good faith attempt to narrow the issues, but we cannot consider such an important step until we test present issues through discovery. As such, we suggest, once again, that a MSJ is premature and would be more effective after an opportunity to conduct discovery.

**Request to Dispute your List of Facts**

Your May 30th letter includes a list of 48 facts about which you suggest "there is no reasonable dispute." We responded by letter dated June 4th by endorsing the court's earlier observation that the factual disputes in this case are tailor-made for jury resolution and by explaining that your request for firm commitment about whether your set of facts are disputed or undisputed is premature. You responded by letter dated June 12th and suggested that our refusal to identify factual statements we dispute does not comply with Judge Armstrong's orders. Yet you act unilaterally by filing a Notice of Motion commits you to a filing date of June 24th.

In other words, you want to proceed on your terms only. But many of the facts you list require testing in discovery. For example, your statement that "McMullen chose to use procedures available in state, rather than federal, court in light of the amount of marijuana involved," necessitates discovery of DEA procedures and the deposition McMullen. Indeed, many of your "factual" statements relate to state of mind or opinions, which by definition can only tested, at a minimum, through deposition examination. One obvious example is the statement that McMullen believed the facts in the affidavit were "true and correct and that he [had] probable cause." To state the obvious, a substantial portion of the information necessary to test your assertions of undisputed facts cannot be determined until after the artificial June 24th deadline you have unilaterally imposed.

We are willing to continue this dialogue and try to narrow differences regarding material facts. But this is process is a two-way street. We have yet to see any expression of compromise from you on our oft-repeated need to conduct discovery. It is still not clear why you believe we are not entitled to any discovery in this case before being required to participate in the process of parsing disputed and undisputed facts. We would like you to spell your position out clearly on this threshold issue. That said, we remain willing to work with you to see what compromises might be feasible, notwithstanding the observation of the Court that dispositive motions at this early stage will be viewed with disfavor.

We look forward to hearing from you.

Abraham A. Simmons
June 18, 2008
Page 3

ReedSmith

Very truly yours,

James E. Heffner

JEH