1   JOSEPH P. RUSSONIELLO (SBN 44332)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   ABRAHAM A. SIMMONS (SBN 146400)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, 9th Floor
5       San Francisco, California 94102-3495
        Telephone:    (415) 436-7264
6       Facsimile:    (415) 436-6748
        Email: abraham.simmons@usdoj.gov
7
    Attorneys for Federal Defendants
8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                          OAKLAND DIVISION
11
    ROBERT CARL PATRICK KEANE,         )    No. C 07-4894 SBA
12  individually; and CHIEKO STRANGE,  )
    individually,                      )
13                                     )    **FEDERAL DEFENDANT SETH**
                            Plaintiffs,)    **McMULLEN'S NOTICE OF MOTION**
14                                     )    **AND MOTION FOR SUMMARY**
                                       )    **JUDGMENT OR, IN THE**
15              v.                     )    **ALTERNATIVE, FOR PARTIAL**
                                       )    **SUMMARY JUDGMENT**
16  SETH M. MCMULLEN, PAUL             )    **Fed.R.Civ.P. 56**
    ACCORNERO and JOHN SILVA,          )
17                                     )
                                       )    Date:    July 29, 2008
18                          Defendants.)    Time:    1:00 p.m.
    _____)    Place:   Courtroom 3, 3rd Floor
19                                          Before:  Hon. Saundra B. Armstrong
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

NOTICE OF MOTION AND MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II. STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    PLAINTIFF KEANE WAS IDENTIFIED BY BUSINESS OWNER
               MAUREEN McGUIGAN AS THE PERSON WHO ATTEMPTED TO
               DELIVER THREE BAGS OF MARIJUANA TO NEW JERSEY . . . . . . 5

        B.    SPECIAL AGENT McMULLEN AND OTHER DEA OFFICERS
               EXECUTED THE SEARCH AND ARREST WARRANTS. . . . . . . . . . 8

        C.    PLAINTIFFS FILED THE CURRENT LAWSUIT ALLEGING
               VIOLATIONS OF 42 U.S.C. § 1983 AND BIVENS VIOLATIONS.. . . 10

    III. ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.    FEDERAL DEFENDANTS ARE ENTITLED TO SUMMARY
               JUDGMENT REGARDING PLAINTIFFS' INVESTIGATION-
               RELATED CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        D.    FEDERAL DEFENDANTS ARE ENTITLED TO SUMMARY
               JUDGMENT WITH RESPECT TO PLAINTIFFS' EXCESSIVE
               FORCE CLAIMS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        E.    AT A MINIMUM, THE FEDERAL DEFENDANTS ARE
               ENTITLED TO JUDGMENT WITH RESPECT TO PLAINTIFFS'
               SECTION 1983 CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **PAGE**

*Act Up!/Portland v. Bagley*,
   988 F.2d 868 (9th Cir. 1993)........................................... 14, 15

*Alexander v. City and County of San Francisco*,
   29 F.3d 1355 (9th Cir. 1994)........................................... 15, 17

*Anderson v. Creighton*,
   483 U.S. 635 (1987).................................................... 14, 22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................... 12, 13

*Baker v. McCollan*,
   443 U.S. 137 (1979).................................................... 16

*Baldwin v. Placer County*,
   418 F.3d 966 (9th Cir. 2005)........................................... 17

*Beck v. City of Upland*,
   2008 WL 2186300 (9th Cir. May 28, 2008). ............................. 19, 20

*Beier v. City of Lewiston*,
   354 F.3d 1058 (9th Cir. 2004).......................................... 14

*Bergquist v. County of Cochise*,
   806 F.2d 1364 (9th Cir.1986), *disapproved on other grounds, Merritt v. County of
   Los Angeles*, 875 F.2d 765 (9th Cir. 1989).............................. 24

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971).................................................... 3

*Celotex v. Catrett*,
   477 U.S. 317 (1986).................................................... 12

*Crowe v County of San Diego*,
   359 F. Supp. 2d 994 (S.D. Cal.)........................................ 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   43 F.3d 1311 (9th Cir. 1995) *cert. denied*, 516 U.S. 869 (1995). ....... 12

*Dawson v. City of Seattle*,
   435 F.3d 1054 (9th Cir. 2006).......................................... 25

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001).......................................... 13

*Flores v. Morgan Hill Unified Sch. District*,
   324 F.3d 1130 (9th Cir. 2003).......................................... 22

# TABLE OF AUTHORITIES CONT'D

*Franklin v. Foxworth,*
   31 F.3d 873 (1994)................................................. 25

*Franks v. Delaware,*
   438 U.S. 154 (1978)................................................. 17

*Galvin v. Hay,*
   374 F.3d 739 (9th Cir. 2004)....................................... 13

*Graham v. Connor,*
   490 U.S. 386 (1989)................................................. 24

*Greenstreet v. County of San Bernardino,*
   41 F.3d 1306 (9th Cir. 1994)..................................... 20, 21

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982)................................................. 14

*Hope v. Pelzer,*
   536 U.S. 730 (2002)................................................. 22

*Hunter v. Bryant,*
   502 U.S. 224 (1991)................................................. 15

*Johnson v. Hornung,*
   358 F. Supp. 2d 910 (C.D.Cal., 2005)............................... 13

*KRL v Estate of Moore,*
   512 F.3d 1184 (9th Cir. 2008)...................................... 21

*Maffei v. Northern Insurance Co. of New York,*
   12 F.3d 892 (9th Cir. 1993)........................................ 12

*Malley v. Briggs,*
   475 U.S. 335 (1986)............................................. 14, 21

*Michigan v. Summers,*
   452 U.S. 692 (1981)................................................. 25

*Mills v. Graves*
   930 F.2d at 729 (9th Cir. 1991).................................... 21

*Muehler v. Mena,*
   544 U.S. 93 (2005)................................................. 25

*Nelson v. Pima Community College,*
   83 F.3d 1075 (9th Cir.1996)........................................ 13

*San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,*
   402 F.3d 962 (9th Cir. 2005).................................... 13, 14

iii

# TABLE OF AUTHORITIES CONT'D

*Saucier v. Katz,*
    533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 21

*Sinaloa Lake Owners Association v. City of Simi Valley,*
    70 F.3d 1095 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Skinner v. Railway Labor Executives' Association,*
    489 U.S. 602 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smiddy v. Varney,*
    665 F.2d 261 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Triton Energy Corp. v. Square D Co,*
    68 F.3d 1216 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Alaimalo,*
    313 F.3d 1188 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Banks,*
    540 U.S. 31 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Clark,*
    31 F.3d 813 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Combs,*
    394 F.3d 739 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Penn,*
    647 F.2d 876 (9th Cir.), *cert. denied*, 449 U.S. 903 (1980). . . . . . . . . . . . . . . . . . . 24

*Vigliotto v. Terry,*
    873 F.2d 1201 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson v. Arkansas,*
    514 U.S. 927 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

Fed.R.Civ.P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

FRCP 56 (b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 10, 12

U.S. Const. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE THAT on July 29, 2008 at 9:00 a.m., before Hon. Saundra B.

3  Armstrong, 1301 Clay Street, Oakland, California, Federal Defendant Seth McMullen, by and

4  through his attorney of record, will move for summary judgment or, in the alternative, for partial

5  summary judgment with respect to the below-enumerated facts and issues.

6      Special Agent McMullen will request that this Court issue an order granting summary

7  judgment in favor of Special Agent McMullen and against plaintiffs with respect to all the claims

8  brought in Plaintiffs' *First Amended Complaint For Violations Of Civil Rights Under 42 U.S.C.*

9  *§ 1983 and Bivens Claim Under Fourth and Fifth Amendments Of The U.S. Constitution*.

10  The motion is made pursuant to Federal Rule of Civil Procedure ("FRCP") 56 (b) on the ground

11  that there are no disputed issues of material fact and on the ground that Special Agent McMullen is

12  entitled to qualified immunity and to judgment as a matter of law.

13      In the alternative, pursuant to FRCP 56 (b) and (c)(1), Special Agent McMullen is entitled

14  to an order granting partial summary judgment or adjudicating as many of the following facts and

15  issues as the Court deems proper:

16      (1)    that Special Agent McMullen has no liability for Plaintiffs' investigation-related

17           claims because (a) the undisputed evidence is that McMullen did not violate

18           Plaintiffs' constitutional rights by submitting the affidavit in support of the arrest

19           and search warrants, and (b) McMullen is entitled to rely on the probable cause

20           determinations of Sonoma County Assistant District Attorney Jamar and Superior

21           Court Judge Robert Boyd;

22      (2)    that no constitutional violation occurred when several officers entered the residence

23           with drawn guns and loud commands because the evidence demonstrates such an

24           entrance was reasonable under the circumstances;

25      (3)    that Special Agent McMullen is not liable to Plaintiffs pursuant to excessive force

26           theory because (a) lying to Plaintiff's during questioning does not violate Plaintiff's

27           constitutional rights, (b) there is insufficient evidence to support Plaintiffs' claims

28           that McMullen physically mistreated Plaintiffs and (c) the undisputed evidence is

1    that McMullen is not responsible for the procedures employed by the Sonoma

2    County detention facility; and

3    (4)    that both Federal Defendants (Special Agent McMullen and Task Force Officer

4    John Silva) are entitled to judgment on Plaintiffs' §1983 claims because each was

5    performing their duties as federal officers and the facts offered by Plaintiffs as

6    evidence of substantial state participation in the alleged constitutional violations is

7    legally insufficient.

8    This motion is based on this Notice; the following points and authorities filed in support of

9    the motion; the pleadings, motions and papers on file in this matter; the declarations of Seth

10    McMullen (including the declaration filed herewith and the declaration filed January 14, 2008);

11    the declarations of John Silva (including the declaration filed herewith and the declaration filed

12    March 14, 2008); the declarations of John Murphy, Robert W. Scott, II, Bridget Coughlin, Robert

13    Armstrong, and Abraham A. Simmons, the audiotape of admonitions given to Robert Keane, the

14    Motion For Summary Judgment filed by John Silva and on such oral argument and additional

15    evidence as the Court may permit.

16    ## MEMORANDUM OF POINTS AND AUTHORITIES

17    ## I.  INTRODUCTION[1]

18    Plaintiffs Robert Carl Patrick Keane and his girlfriend Chieko Strange filed this civil rights

19    action alleging defendant Special Agent McMullen never should have suspected Keane was

20    involved in trafficking illegal narcotics.  The crux of Plaintiffs' claim is that McMullen should not

21    have (1) applied for warrants to arrest Keane and to search his home (the "investigation-related

22    claim") nor (2) used excessive force when executing the arrest and search warrants (the "excessive

23    force claim").  Protesting Keane's innocence and claiming that the tactics used to search his home

24

25        [1]        There are three defendants in this case.  Special Agent Seth McMullen is an
26    employee of the Drug Enforcement Administration.  Task Force Officer John Silva is a Petaluma
Police Officer who was deputized and acting in his capacity as a federal Task Force Officer with
27    regard to his activities in this case.  Paul Accornero is an officer with the Petaluma Police
Department.  He is represented by separate counsel.
28

1   violated his constitutional rights, Plaintiffs assert they are entitled to damages pursuant to the civil

2   rights statute at 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of*

3   *Narcotics,* 403 U.S. 388 (1971).

4        This Court should grant judgment in favor of Special Agent McMullen with respect to

5   both parts of Plaintiffs' case.  With respect to the investigation-related claims, Special Agent

6   McMullen properly concluded he had probable cause to believe Keane was involved in the

7   transportation of marijuana.  His affidavit in support of search and arrest warrants was accurate

8   and sufficiently complete.  In any event, even if his affidavit does not contain sufficient facts to

9   establish probable cause, he still cannot be held liable because a prosecuting attorney decided to

10  file criminal charges and a superior court judge issued the search and arrest warrants at issue.  In

11  this case, these decisions operate to preclude judgment against Special Agent McMullen as the

12  executing officer.

13       With respect to the excessive force claims, the undisputed facts establish that the tactics

14  adopted by Special Agent McMullen were well within the range of those required of an officer

15  executing an arrest warrant and a search warrant of a residence in a drug investigation.  There is no

16  evidence Special Agent McMullen violated Plaintiffs' constitutional rights and the audiotape of

17  the conversation between Accornero and Keane demonstrates why the myriad of sensational

18  allegations in the Amended Complaint can carry no weight at this stage of the proceedings. [2]

19       Finally, even if Plaintiffs are permitted to pursue some of their claims, they cannot do so

20  pursuant to 42 U.S.C. § 1983.  Special Agent McMullen relies on the brief filed by John Silva and

21  the arguments raised therein as the basis for establishing that summary judgment on this issue is

22  appropriate.  The brief is incorporated by reference as though set forth fully herein.

23       In sum, Special Agent McMullen is entitled to summary judgment with respect to all

24  Plaintiffs' claims.  In the alternative, this Court should grant summary adjudication in favor of

25  Special Agent McMullen on as many of the issues raised herein as the Court deems proper.

26  _____

27       [2]    Defendants acknowledge Plaintiffs may be able to hold open part of this case by
    merely submitting declarations suggesting Special Agent McMullen physically abused them
28  when he executed the arrest and search warrants.  It remains to be seen, however, how far
    Plaintiffs will go in preparing statements under oath asserting that such force was used.

## II.  STATEMENT OF THE FACTS

**A.    PLAINTIFF KEANE WAS IDENTIFIED BY BUSINESS OWNER MAUREEN McGUIGAN AS THE PERSON WHO ATTEMPTED TO DELIVER THREE BAGS OF MARIJUANA TO NEW JERSEY**

Seth McMullen is a Special Agent with the Santa Rosa Resident Office (SRRO) of the United States Drug Enforcement Administration, an agency of the United States government. Declaration of Seth McMullen filed January 14, 2008 ("McMullen Decl.") at ¶ 1; Complaint at ¶ 8.  He has occupied this position for almost eight years.  Supplemental Declaration of Seth McMullen filed herewith ("Supp. McMullen Decl.") at ¶ 2.

On November 29, 2006, Sergeant Jim Stephenson, a member of the Petaluma Police Department, contacted Special Agent McMullen by telephone and reported that he had received information regarding an attempt to deliver a controlled substance.  Specifically, Maureen McGuigan, the owner of Mail Depot in Petaluma, reported that a customer attempted to mail marijuana from Petaluma to New Jersey. McMullen Decl. at ¶ 2.  Stephenson related his conversation with McGuigan wherein she reported that earlier the same day a person left with her a wrapped package for mailing.  She described the person as a white male adult, approximately forty years old, 5'6" tall, 150 pounds, with brown hair and wearing sunglasses.  McMullen Decl. at ¶ 2.  The man claimed he wanted to deliver the package to his 'niece', Kerry Keane in Brick, New Jersey.  McMullen Decl. at ¶ 2.  McGuigan stated that she became concerned when she found his behavior suspicious and asked the man if the package contained marijuana.  McMullen Decl. at ¶ 2.  The man denied that the contents of the package were illegal drugs, stated that it contained clothing for his niece and left. McMullen Decl. at ¶ 2.  McGuigan discovered the package contained three packages of marijuana.  McMullen Decl. at ¶ 2.  She delivered the package to the Petaluma Police Department and discussed the contents of the package with Stephenson.  McMullen Decl. at ¶ 2.  Stephenson stated that among the things he did after he took custody of the package was to call Special Agent McMullen.  McMullen Decl. at ¶ 2.  McMullen stated that he would retrieve the package and open an investigation.  McMullen Decl. at ¶ 2.

The next day, November 30, 2006, Special Agent McMullen and Special Agent Jeff Hoyt met Sergeant Stephenson, took custody of the package, and transported it back to back to the

1    SRRO. McMullen Decl. at ¶ 3, Exh 1 (photograph of package).  The package bore a sending

2    address of "C. Keane," 307 North Ferndale Avenue, Mill Valley, California, 94941. McMullen

3    Decl. at ¶ 3.  Special Agent McMullen conducted research using computer databases and verified

4    both that the address was valid and that Plaintiff Robert Carl Patrick Keane used the address as a

5    residence.  McMullen Decl. at ¶ 4.  Special Agent McMullen conducted further research and

6    obtained a photograph of Mr. Keane as well as other identifying information.  McMullen Decl. at

7    ¶ 4.  Later the same day, the agents returned to the Mail Depot, showed McGuigan a photograph of

8    Keane (identifying him as a "possible suspect") and asked whether the person in the photograph

9    resembled the person who attempted to deliver the package.  McMullen Decl. at ¶ 5.  McGuigan

10   confirmed that the photograph depicted the person who had dropped off the package the day

11   before. McMullen Decl. at ¶ 5.

12        Special Agent McMullen arranged to have the package shipped and delivered under

13   controlled circumstances. McMullen Decl. at ¶ 5.  On December 1, 2006, the package was

14   delivered by Detective Jason Shepherd of the Brick Township Police Department.  Declaration of

15   Abraham A. Simmons ("Simmons Decl.") , Exhibit 1(d).   Within the next few days, McMullen

16   was informed that the Brick Township law enforcement arrested Brian William Keane and

17   Susanne Keane for taking possession of the marijuana.  *See* Supp. McMullen Decl.at ¶¶ 5-7.  Both

18   arrestees claimed to have no knowledge of the contents of the package.  Simmons Decl., Exh. 1(d).

19   At the time of the arrest, Brian Keane claimed the package contained a bomb and that he was

20   returning it to the Federal Express facility.    Simmons Decl., Exh. 1(d).  Brian Keane nevertheless

21   had put the package in the seat next to his daughter and was not driving in the direction of the

22   federal express building.  Simmons Decl., Exh. 1(d).   Brian Keane also claimed he did not know a

23   C. Keane in California; nevertheless, after both denying and admitting he had a brother, he stated

24   his brother's name was Chris. Simmons Decl., Exh. 1(d).

25        Among the concerns regarding the further investigation was the fact that once the

26   controlled delivery was made to the New Jersey address, and subsequent law enforcement activity

27   likely would be communicated to persons in California.  Supp. McMullen Decl. ¶ 6. This likely

28   would result in the spoliation of evidence in California.  Supp. McMullen Decl. ¶ 6.  With time

1  believed to be of the essence, Special Agent McMullen decided to pursue a warrant to search the
2  Keane residence.  McMullen Decl. at ¶ 6.  He chose to use procedures available in state, rather
3  than federal, court in light of the amount of marijuana involved.  McMullen Decl., ¶ 6.

4       From December 1, 2006 through December 15, 2006, Special Agent McMullen prepared a
5  six-page Search Warrant and Affidavit that consisted of (1) a one-paragraph affidavit for signature
6  by Special Agent McMullen and a deputy district attorney, (2) a two-and-a-half-page search
7  warrant for signature by a Superior Court Judge for the County of Sonoma, (3) a seven-paragraph
8  statement of expertise and (4) a ten-paragraph statement of probable cause.  McMullen Decl., Exh.
9  2.  The affidavit attests to Special Agent McMullen's belief that the facts expressed in the Search
10  Warrant and Affidavit are true and correct and that he has probable cause to believe that the items
11  sought are lawfully seizable.  McMullen Decl., Exh. 1.  Below McMullen's signature on the
12  affidavit is a statement that the document was "[p]repared with the assistance of or reviewed by"
13  the deputy district attorney on the case.  McMullen Decl., Exh. 2.  Scott Jamar, a deputy district
14  attorney for the Sonoma County District Attorney's Offfice, signed the preparation/review
15  statement.

16       The search warrant indicates that Special Agent McMullen had probable cause to believe
17  the lawfully seizable items were either used as the means of committing a felony, were possessed
18  by a person with intent to use it as a means of committing a public offense or is evidence tending
19  to show that a felony has been committed. McMullen Decl., Exh. 2.  The search warrant identified
20  Keane's address as the residence that is authorized to be searched.  McMullen Decl., Exh. 1. The
21  search warrant permits search for numerous items including "deposit slips," utility company
22  receipts, legal documents and "other receipts."  McMullen Decl., Exh. 2.

23       Among the topics described in Special Agent McMullen's statement of expertise were his
24  experience and training in the field of narcotics, his experience in preparing and executing state
25  and federal warrants, and his experience in narcotics investigations.  McMullen Decl., Exh. 3.

26       The statement of probable cause included an account of the facts that had been
27  communicated to, and investigated by, Special Agent McMullen up until the date the affidavit was
28  signed, December 15, 2006. McMullen Decl., Exh. 2.  The statement disclosed that McGuigan was

shown "a photo of a possible suspect" and that she positively identified Keane. McMullen Decl.,

Exh. 2.  There was no suggestion in the statement that McGuigan was subjected to a line-up.

Similarly, the concluding paragraph of the affidavit stated Special Agent McMullen's belief that

Keane and Brian Keane were related.  Specifically, the concluding paragraph of the affidavit

stated:

> 10.  Agents believe that Robert Carl Patrick KEANE and Carl or
> Carl Patrick KEANE is the same person.  Also, the shipping label of
> the six pounds of marijuana sent to New Jersey for the controlled
> delivery had C. KEANE, 307 North Ferndale Avenue, Mill Valley,
> California as the sending address.  When Brian KEANE was
> arrested, he gave 39 Sandy Point Drive, Brick, New Jersey, as his
> address, and (732) 262-8875 as his telephone number.  All of this
> information was contained on the shipping label.  Agents also
> believe that Robert Carl Patrick KEANE and Brian KEANE are
> possibly related due to the same last names and a physical
> resemblance of both.

McMullen Decl., Exh. 2 (search warrant).

Special Agent McMullen also prepared an arrest warrant for Keane's arrest. Supp.

McMullen Decl., Exh. 1.  Both the arrest warrant and the search warrant were reviewed by

Sonoma County District Attorney Scott Jamar and submitted to Sonoma County Superior Court

Judge Robert S. Boyd.  McMullen Decl., Exh. 2.  Judge Boyd signed and issued both warrants.

McMullen Decl., Exh. 2.  Special Agent McMullen also prepared a two-count complaint charging

Keane with violations of the California Health and Safety Code. Simmons Decl., Exh. 2.  (Felony

Complaint).  The People of the State of California filed the complaint and opened a case against

Keane. *See* Simmons Decl., Exh. 3.

**B.    SPECIAL AGENT McMULLEN AND OTHER DEA OFFICERS EXECUTED THE SEARCH AND ARREST WARRANTS**

To prepare for the execution of the search and arrest warrants, McMullen requested

assistance from the Petaluma Police Department.  McMullen Decl. at ¶ 7.  Specifically, McMullen

requested that a K-9 unit be deployed to assist with the search. McMullen Decl. at ¶ 7.  Also,

consistent with department policy, McMullen contacted the local authorities about the impending

execution of the warrants.  In this case, Special Agent McMullen notified the Marin County

Sheriff's Department and invited them to have a representative attend the execution of the search

warrant.  McMullen Decl. at ¶ 7.

1     Special Agent McMullen prepared an operations plan that was mindful of the quantity of

2 marijuana that had been intercepted by Ms. McGuigan and the likelihood that the residence might

3 contain weapons and persons willing to use them. Supp. McMullen Decl., ¶ 8.  The operations plan

4 included the possibility of a dynamic entry which is proper procedure for entry into a residence in

5 a drug case such as this one if no response is made to a knock and announcement. *See* Declaration

6 of Nikos Eliopolous ("Eliopolous Decl."), ¶¶ 14-18. This is true because the government interests

7 at stake; namely, to prevent escapes, destruction of evidence, and most importantly, injury to

8 innocent third parties, the officers and the targets.  Eliopolous Decl. at ¶¶ 10-13.

9     On December 19, 2006, McMullen led the team that executed the warrants.  *See* Suppl.

10 McMullen Decl. at ¶ 8.  At approximately 7:35 a.m., Special Agent McMullen knocked and

11 announced the presence of law enforcement.  McMullen Decl. at ¶ 9.  The front door was unlocked

12 and he entered without using force.   McMullen Decl. at ¶ 9. He wore DEA-issued clothes and

13 announced "DEA."  He entered with the other DEA Special Agents. McMullen Decl. at ¶ 9.  The

14 Marin Officers, the K-9 unit, and Task Officer Silva waited outside while the DEA officers entered

15 and secured the home. *See* Supp. Silva Decl. ¶ 4.  Special Agent McMullen found plaintiffs in the

16 upstairs loft and was involved in their initial detention while the house was being secured.

17 McMullen Decl. at ¶ 9. Special Agent McMullen denies that he put his boot on anyone's head,

18 denies that he put on Keane's handcuffs too tight and denies that he lifted Keane from his wrists or

19 in any way to cause Keane physical harm.  McMullen Decl. at ¶ 9.

20     Special Agent McMullen and Task Officer Silva interviewed Keane and Strange.

21 McMullen Decl. at ¶ 11.  Special Agent McMullen does not recall being present when the K-9

22 officer admonished Keane regarding the K-9 unit. Nevertheless, the admonitions were audio taped

23 and forwarded to Special Agent McMullen. Simmons Decl., Exh 3 (Audiotape recording and

24 transcript).

25     Special Agent McMullen completed the search, finding no controlled substances.

26 Amended Complaint at ¶ 30.  He seized a Wells Fargo deposit slip and a telephone bill.

27 McMullen Decl., Exh. 1.  Special Agent McMullen arrested Keane and transported him to the

28 Sonoma County Detention Facility. Amended Complaint at ¶ 30.   The Intake documents from the

facility contain no complaints that Keane was physically injured or emotionally traumatized. Simmons Decl., Exh. 5.

On March 13, 2007, the criminal prosecution against Keane was dismissed. Simmons Decl., Exh. 3(a) (Notice of Motion/ Petition and Motion/ Petition of Factual Innocence). On April 25, 2007, Keane filed a motion in the Superior Court of Sonoma County to be declared factually innocent. Simmons Decl., Exh. 3(a). The District Attorney of Sonoma County filed an opposition to the motion. Simmons Decl., Exh. 3(b) (Opposition to Motion (hereinafter, "Opposition")). In the opposition to the motion, the Sonoma County District Attorney stated, "[i]n the matter at bar, an arrest was made based upon probable cause." Opposition at 4:7. In the opposition, the District Attorney further stated, "at the time of Defendant's arrest, there was a clear showing of probable cause." Opposition at 4:11-12. The District Attorney also informed the Superior Court that "[a]s far as law enforcement is aware, the available evidence does not conclusively establish that Defendant was not the individual who successfully shipped a package on May 31, 2006, and attempted to ship a package of marijuana from the Mail Depot on November 29, 2006." Opposition at 3:9-12.

## C.    PLAINTIFFS FILED THE CURRENT LAWSUIT ALLEGING VIOLATIONS OF 42 U.S.C. § 1983 AND BIVENS VIOLATIONS.

Plaintiffs filed their original complaint on September 20, 2007 and their First Amended Complaint ("FAC") on February 19, 2008. [Docket Nos. 1, 20.] In their FAC, Plaintiffs allege two types of wrongdoing. First, Plaintiffs complain that McMullen's investigation was improper. FAC at ¶¶ 43 (c)-(d); 48 (c)-(d). Plaintiffs acknowledge in the complaint that a search warrant was obtained prior to the search of Keane's home. FAC at ¶¶ 24, 30. Nevertheless, Plaintiffs allege that substantial exculpatory information was ignored or left out of the affidavit in support of the warrant. FAC at ¶ 43 (c). Plaintiffs also allege that any reference to the McGuigan identification was improper because the identification was not made pursuant to a traditional line up. *See* FAC at ¶ 20. Plaintiffs further allege Defendants lacked probable cause and permission to search the home and to seize any items therein. FAC at ¶ 43(b),(c).

Second, Plaintiffs allege excessive physical force was used during the execution of the search and arrest warrants. Specifically, they allege handcuffs were applied improperly, Keane

1    was lifted improperly, McMullen put his boot on Strange's head, weapons were brandished

2    improperly, and that defendants "ransacked Plaintiffs' personal belongings, leaving the home

3    violated and in disarray." FAC at ¶¶ 16-17. Plaintiffs further allege excessive psychological

4    force was used. Plaintiffs claim they were traumatized unnecessarily because (1) defendants did

5    not knock and announce their presence before entering, (2) defendants would not respond to

6    questions regarding why the search was conducted until after the house was secured,

7    (3) defendants yelled, "Where are your weapons," (4) defendants signaled to the toilet and said,

8    "isn't this ironic," and (5) intimidated Plaintiffs with "accounts" of an ultra-sensitive drug-sniffing

9    dog." FAC at ¶¶ 13-15.

10         With respect to the specific constitutional rights plaintiffs allege have been violated,

11    plaintiffs allege as follows:

12         While acting under color of state law, DEFENDANTS unlawfully entered
       Plaintiffs' home, conducted an illegal and unreasonable search, seized Plaintiffs'
13    property and arrested KEANE without probable cause or justification, depriving
       Plaintiffs of certain constitutionally protected rights, including, but not limited to:

14

15         a.   The right to be free from unreasonable searches and seizures,
       as guaranteed by the Fourth and Fourteenth Amendments to
16    the United States Constitution;

17         b.   The right to be free from the use of excessive force by law
       enforcement agents, which is guaranteed by the Fourth, Fifth,
18    and Fourteenth Amendments to the United States
       Constitution; and

19         c.   The right to be free from interference within the zone of
       privacy, as protected by the Fourth and Fourteenth
20    Amendments to the United States Constitution.

21    FAC at ¶ 45; *see also* FAC ¶ 50. Plaintiffs allege Federal Defendants violated their constitutional

22    rights while acting under color of state law. FAC at ¶ 44.

23    ### III. ANALYSIS

24    **A.   SUMMARY OF ARGUMENT**

25         Special Agent McMullen's affidavit in support of arrest and search warrants is supported

26    by ample probable cause. Moreover, abundant Ninth Circuit authority establishes Plaintiffs are

27    precluded from asserting Special Agent McMullen is liable regarding his decision to search and

28    arrest because (1) the decision of Sonoma County District Attorney Jamar to file a criminal

1  complaint operates to break the chain of causation to Plaintiffs' damages and (2) the decision

2  Superior Court Judge Boyd to issue the warrants operates as a bar to liability in this case.

3  Agent McMullen also is entitled to summary judgment with respect to Plaintiffs' excessive

4  force claims. He acted reasonably in preparing and executing the search plan. Similarly, there is

5  no evidence to substantiate Plaintiffs' claims of excessive force in the physical application of the

6  handcuffs, the use of his boot to restrain Plaintiff Strange's head and the alleged lifting of Keane

7  by his handcuffed wrists. These allegations, while sensational, will not establish a triable issue of

8  fact unless substantiated by evidence.

9  Additionally, if Plaintiffs are able to submit sufficient evidence to move forward with one

10  or more of their claims, this Court still should, at a minimum, summarily adjudicate that Plaintiffs

11  may not pursue their claims based upon 42 U.S.C. § 1983. Such claims are the Plaintiffs' only

12  legal basis to assert a claim for attorneys fees. That statute, however, does not apply because there

13  is insufficient basis upon which to assert the federal officers acted in concert with substantially

14  involved state actors.

15  **B.    STANDARD OF REVIEW**

16  1.    The Summary Judgment Standard

17  Summary judgment is proper where there is no genuine issue as to any material fact.

18  Fed.R.Civ.P. 56. Material facts are those which can effect the outcome of the case. *Anderson v.*

19  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

20  The party moving for summary judgment has no burden to produce any evidence on

21  elements of a claim on which the non-moving party will bear the burden of trial, but can merely

22  point out an absence of evidence to support any such element. *Celotex v. Catrett,* 477 U.S. 317,

23  322-23 (1986); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)

24  *cert. denied*, 516 U.S. 869 (1995); *Maffei v. Northern Insurance Co. of New York*, 12 F.3d 892,

25  899 (9th Cir. 1993). Once the moving party points out the absence of evidence, then the non-

26  moving party must come forward with specific evidence to show there is a genuine issue for trial.

27  *Id.* If the non-moving party fails to make this showing, then the moving party is entitled to

28  judgment as a matter of law. *Celotex,* 477 U.S. at 323 (1986).

1    Summary judgment is not only proper if Plaintiff fails to produce *any* evidence on an

2  element of his case, but summary judgment is also proper if Plaintiff fails to produce *sufficient*

3  evidence on an element of his case.  The Supreme Court has specifically held that summary

4  judgment is proper against a party who "fails to make a showing sufficient to establish the

5  existence of an element essential to that party's case, and on which that party will bear the burden

6  of proof at trial." *Celotex*, 477 U.S. at 322 (1986).  The mere existence of a "scintilla" of evidence

7  in support of the non-moving party's position is not sufficient.  The non-moving party has the

8  burden of establishing sufficient evidence on each element of his case so that  a jury could return a

9  verdict for him.  *Anderson*, 477 U.S. at 249 (1986).  Stated in another way, the standard for

10  summary judgment mirrors the standard for a directed verdict.  *Anderson*, 477 U.S. at 252 (1986);

11  *Triton Energy Corp. v. Square D Co,* 68 F.3d 1216, 1221 (9th Cir. 1995).  The standard is whether

12  the evidence presents a sufficient disagreement as to require jury consideration, or whether the

13  evidence is so one-sided that one party must prevail as a matter of law.  *Id.*

14    In ruling on a motion for summary judgment, the court need not accept legal conclusions

15  "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th

16  Cir.1981). "No valid interest is served by withholding summary judgment on a complaint that

17  wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v.*

18  *Terry*, 873 F.2d 1201, 1203 (9th Cir.1989); *see also Nelson v. Pima Community College*, 83 F.3d

19  1075, 1081-82 (9th Cir.1996) (stating that "mere allegation and speculation do not create a factual

20  dispute for purposes of summary judgment"); *Johnson v. Hornung*  358 F.Supp.2d 910, 921

21  (C.D.Cal.,2005).

22    2.    The obligation to hear summary judgment motions in cases brought against law
    enforcement officers for civil rights violations.

23

24    Seizing on this Court's admonition that Federal Defendants should not file a motion for

25  summary judgment that would amount to a waste of time, Plaintiffs have argued during the meet

26  and confer proceedings that Defendants should not file a motion at all.  Plaintiffs' position is

27  squarely at odds with the Ninth Circuit law requiring early resolution of issues, especially

28  qualified immunity issues, in civil rights cases brought against law enforcement officers.

    The Supreme Court has cautioned that a ruling on a qualified immunity defense "should be

1  made early in the proceedings so that the costs and expenses of trial are avoided where the defense

2  is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity shields *Bivens*

3  defendants "from liability for civil damages insofar as their conduct does not violate clearly

4  established statutory or constitutional rights of which a reasonable person would have known." *See*

5  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001) (en banc) (quoting *Harlow v. Fitzgerald*,

6  457 U.S. 800, 818 (1982)); *see also San Jose Charter of the Hells Angels Motorcycle Club v. City*

7  *of San Jose*, 402 F.3d 962, 971 (9th Cir.2005); *Galvin v. Hay*, 374 F.3d 739, 757 (9th Cir.2004)

8  (applying qualified immunity to Bivens claims).   The purpose of qualified immunity is to protect

9  officials from undue interference with their duties and from potentially disabling threats of

10  liability. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1098 (9th Cir.1994). The

11  Supreme Court has therefore stated that qualified immunity is an entitlement not to stand trial or

12  face the other burdens of litigation. *Saucier*, 533 U.S. 200.

13  **C.    FEDERAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT**
**REGARDING PLAINTIFFS' INVESTIGATION-RELATED CLAIMS**

14

15          1.      Defendant McMullen Is Entitled To Qualified Immunity With Respect To The
Investigation-Related Allegations In The Amended Complaint

16          The qualified immunity doctrine protects government officials from their exercise of poor

17  judgment and fails to protect only those who are "plainly incompetent or those who knowingly

18  violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Supreme Court defined the

19  qualified immunity analysis as a two-step process. First, a court examines whether the facts

20  alleged, taken in the light most favorable to the party asserting the injury, show that the

21  defendant's conduct violated a constitutional right. If no constitutional right would have been

22  violated by the alleged actions, a defendant has qualified immunity. On the other hand, if a

23  violation could be made out when the facts are interpreted in the light most favorable to the injured

24  party, the next step is to ask whether the right was clearly established. If the law did not put the

25  defendant on notice that his or her conduct would clearly be unlawful, the official has qualified

26  immunity from the claim. *Saucier*, 533 U.S. at 201; *see also San Jose Charter of the Hells Angels*

27  *Motorcycle Club*, 402 F.3d at 971; *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir.2004).

28  The threshold determination of whether the law governing the conduct at issue is clearly

1    established is a question of law for the court. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

2    Applying this standard in the context of alleged Fourth Amendment violations, the analysis has

3    two parts: "(1) Was the law governing the official's conduct clearly established? (2) Under the law,

4    could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland,* 988 F.2d at

5    871. The second part of this test is an objective inquiry; the subjective belief of the official as to

6    the lawfulness of his or her conduct is not relevant. *Anderson v. Creighton*, 483 U.S. 635, 641

7    (1987). An official is entitled to qualified immunity even where reasonable officers could disagree

8    as to the lawfulness of the official's conduct, so long as that conclusion is objectively reasonable.

9    *Act Up!/Portland*, 988 F.2d at 872.

10             a.      This Court Should Find That The Arrest And Search Warrants In This Case
                       Were Properly Supported By Probable Cause

11                     (1)      The facts known to McMullen establish probable cause

12    Plaintiffs' first and most fundamental argument in this litigation is that no probable cause

13    ever existed for the search of Keane's residence and for Keane's arrest. This argument is

14    meritless.

15             Probable cause requires only a fair probability or substantial chance of criminal activity, as

16    determined by the totality of the circumstances known to the officers at the time. *United States v.*

17    *Alaimalo*, 313 F.3d 1188, 1193 (9th Cir.2002). In *Act Up!/Portland* the Ninth Circuit held that

18    under the Supreme Court's decision in *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam),

19    "the question of whether a reasonable officer could have believed probable cause (or reasonable

20    suspicion) existed to justify a search or an arrest is an essentially legal question" to be resolved by

21    the court. 988 F.2d at 873 (internal citation and quotation marks omitted). Put another way, the

22    Ninth Circuit held that "[w]hether or not a reasonable officer would have known that his or her

23    conduct violated clearly established law 'is not in itself a factual issue that can preclude summary

24    judgment.'" *Alexander*, 29 F.3d at 1364 (quoting *Act Up!/Portland*, 988 F.2d at 873). Instead, it is

25    only when there is a dispute either as to the facts and circumstances within an officer's knowledge,

26    or as to the conduct underlying the alleged violation that those factual issues must be decided by a

27    jury before the district court can make any determination as to qualified immunity. *Alexander*, 29

28    F.3d at 1364; *Act Up!/Portland*, 988 F.2d at 873.

1    Here, Plaintiffs there was no probable cause for a search warrant.  They are wrong.

2   McGuigan, the owner of the Mail Depot in Petaluma, produced the package containing three

3   pounds of marijuana.  The package identified the residence that McMullen sought to search, 307

4   North Ferndale Avenue, Mill Valley, California, 94941.  Further, the address was in sufficient

5   proximity with the Petaluma Mail Depot that there was a fair probability or substantial chance the

6   sender may have traveled from Mill Valley to Petaluma in order to deliver the package.

7   McGuigan also confirmed that this was not the first package transported from the exact address to

8   the New Jersey address.  Simmons Decl., Exh 3.  Further, the address was linked to C. Keane and

9   Robert Keane who, as explained below, was properly suspected of being engaged in the

10  transportation of marijuana.  These facts establish sufficient probable cause to suspect the

11  residence may have contained evidence of a crime; i.e., the production or distribution of

12  marijuana.

13    Similarly, there was probable cause for an arrest warrant.  Even though Keane continues to

14  insist he did not send the package, the facts known to McMullen at the time suggested, and still do

15  suggest, that there is a fair probability Keane was involved.  The Constitution does not guarantee

16  that only the guilty will be arrested; "if it did, § 1983 would provide a cause of action for every

17  defendant acquitted-indeed, for every suspect released."  *Baker v. McCollan*  443 U.S. 137, 145,

18  99 S.Ct. 2689, 2695 (U.S.Tex.,1979).  The Supreme Court expressly rejected this notion. *See id.*

19  Here, McGuigan identified the person who attempted to mail the package as a white male adult,

20  approximately forty years old, 5'6" tall, 150 pounds, with brown hair and wearing sunglasses.

21  McMullen Decl. at ¶ 2.  This description does not exclude Keane.  The package did in fact bear the

22  name "C. Keane," and the address "307 North Ferndale Avenue, Mill Valley, California, 94941."

23  McMullen Decl. at ¶ 3.  These facts increased the likelihood that Keane was involved.  Moreover,

24  McGuigan's identification of Keane from the photograph suggested that if a person randomly

25  picked C. Keane's name from a phone book and happened to know he went by Carl rather than

26  Robert Keane, the person also happened by some coincidence to look something like Robert

27  Keane.  This is, by any estimation, an extraordinary confluence of facts suggesting Keane was

28  involved in the attempted delivery of the marijuana.  Moreover, after Brian Keane was arrested in

1   New Jersey, McMullen obtained a picture of the New Jersey resident.  Brian Keane and Robert

2   Keane resembled each other enough that they could have been related.  Taken together, these facts

3   undoubtedly provide probable cause.

4          For all these reasons, the facts established that probable cause existed to arrest Keane at the

5   time McMullen completed his affidavit.  Keane may or may not now be able to demonstrate that

6   he did not deliver the package.  This, however, is irrelevant.  This Court must employ an objective

7   analysis of the facts known to Special Agent McMullen at the time.  *Alexander*, 29 F.3d at 1364.

8   Keane was, at a minimum, extraordinarily unlucky to have numerous facts suggesting that he was

9   the culprit.  No fact adduced at the time, however, precluded a finding of probable cause.  In

10  addition, there is no clearly established right to be excluded from further investigation under these

11  circumstances.  Plaintiffs' argument that there was no probable cause therefore is meritless.

12                  (2)     The additional facts identified by plaintiffs do not establish a
                            lack of probable cause.

13         Plaintiffs suggest Special Agent McMullen must have been or should have been aware of

14  additional facts prior to issuance of the search warrant.

15         First, Plaintiffs claim Brian Keane had made allegedly exculpatory statements at the time

16  of his arrest in New Jersey and that these statements should have either convinced the Special

17  Agent he should not seek a warrant or that the statements should have been in the application for a

18  warrant.  *See* FAC at ¶ 24.  This argument fails for several reasons.  Generally, Plaintiffs would

19  have to show deliberate or reckless false statements or omissions of relevant facts to negate the

20  facial showing of probable cause.  *See Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).[3]

21  Plaintiffs, however, cannot establish that such facts exist in this case. None of Brian Keane's

22  statements at the time of his arrest were the least bit credible– indeed, they tended only to

23  incriminate him further.  Specifically, at the time of his arrest, Brian Keane explained he suspected

24  the package contained a bomb, not marijuana.  He nevertheless put the package in his car beside

25  his daughter. *See* Simmons Decl., Exh. 1(d).  In addition, Brian Keane claimed he was taking the

27  _____

28       [3]         An officer who submits an affidavit which he knows to be false cannot be said to
    have acted in a reasonable manner.  *Baldwin v. Placer* County, 418 F.3d 966, 970 (9th Cir. 2005).
    Plaintiffs have not specifically alleged knowingly false statements in this case.

1    package to the Federal Express building.  He nevertheless was driving in the wrong direction to get

2    to the building.  *See* Simmons Decl., Exh. 1(d).  Brian Keane also claimed he did not know a C.

3    Keane in California; nevertheless, after both denying and admitting he had a brother, he stated his

4    brother's name was Chris.  *See* Simmons Decl., Exh. 1(d).  In light of this, the very premise of

5    Plaintiff's argument– that Brian Keane made credible exculpatory statements– is simply untenable.

6    More fundamentally, even if Brian Keane did give sensible statements, the DEA would no have

7    been required to believe him.  *Crowe v County of San Diego,* 359 F. Supp. 2d, 994, 1013-1014

8    (S.D. Cal.) (collecting cases).  Also, there is no rule requiring every fact to be included in the

9    affidavit.  Instead, only material statements are relevant and only if the affidavit lacks probable

10   cause but for the omission of the statement.  Here, the statements from Brian Keane were not

11   material, not believable and not a necessary part of Special Agent McMullen's probable cause

12   analysis.

13          Second, Plaintiffs allege that it is relevant that Brian Keane and Maureen McGuigan both

14   made statements at a later time (i.e., after the warrants were procured) that tend to exculpate

15   Robert Keane.  *See* FAC at ¶¶ 21-24.  This argument, too, lacks merit.  Plaintiffs do not explain

16   how McMullen is supposed to have known the additional statements were going to be made.

17   Neither of the statements were made before Special Agent McMullen completed his affidavit– a

18   document created under time constraints.  *See* McMullen Decl., Exh. 2; Simmons Decl., Exhs.

19   1(f), 3(b).  After Brian Keane was arrested, he obtained a lawyer and did not give a formal

20   statement until May 2, 2007– several weeks after Special Agent McMullen completed his

21   affidavit. Simmons Decl., Exh. 1(f). Similarly, McGuigan apparently did not give an additional

22   statement tending to raise questions about her identification of Keane until months later.  *See*

23   Simmons Decl., Exh. 3(a) (noting the case against Keane was not dismissed until about 4 months

24   after it was filed).  Further, neither of the statements categorically exclude Robert Keane as the

25   person who sent the package.  Brian Keane again claimed he did not have a brother in California

26   but declined to state who sent him the marijuana.  Simmons Decl., Exh.  Similarly, McGuigan

27   subsequently failed to identify Robert Keane in a line-up, but this must have been weeks or

28   months after she properly identified Robert Keane to Special Agent McMullen.  *See* Simmons

1   Decl., Exh.  It is entirely reasonable that McGuigan would more easily identify the suspect one

2   day after the attempted mailing of the package and still have trouble making the identification

3   later.  For all these reasons, Plaintiffs' claim that Special Agent McMullen should have considered

4   these facts is meritless.

5           Third, Plaintiffs allege Special Agent McMullen was reckless because he failed to establish

6   that McGuigan was able to identify Keane in a lineup.  This allegation is meritless.  There is no

7   obligation to conduct an eye witness line up as a prerequisite to obtaining a warrant. There is no

8   authority that warrants cannot contain information that witnesses identified persons from a

9   photograph.  Further, there is no suggestion that Special Agent McMullen suggested in any way in

10  his affidavit that he conducted a photo lineup.  This argument lacks any legal grounding at all and

11  should not be considered by the Court.

12          Fourth, Plaintiffs argue the birthdates of Robert and Brian Keane are too close that it was

13  reckless to suspect them of being brothers.  This argument is odd.  First, the birthdays do not

14  preclude the possibility that the two persons are brothers. *See* FAC ¶ 23 (the birthdays are more

15  than nine months apart).  Second, Special Agent McMullen did not speculate in his affidavit that

16  Robert and Brian were brothers, only that they were related.  Third, and more importantly, taken as

17  a whole, there would be probable cause to believe Robert Keane was involved in a crime even

18  without the possibility that the two were related. Accordingly, even if Plaintiffs were right that the

19  two were not related, this would not meet the test of demonstrating that "but for" the statement in

20  the affidavit, there was no probable cause.

21          In sum, none of the facts that Plaintiffs point to remotely suggest recklessness on the part

22  of Special Agent McMullen.  Indeed, Plaintiffs' analysis of the evidence is far from credible.

23  Special Agent McMullen is entitled to summary judgment on Plaintiffs' investigation-related

24  claims.  The undisputed facts demonstrate that there is no basis for opposing the entry of judgment

25  on these claims.

26              b.      In Any Event, The Decision of the Prosecutor To File A Criminal
                       Complaint Breaks The Chain of Causation.

27          Even if this Court were to conclude that the warrants in this case are not supported by

28  probable cause or that additional facts should have been considered by Special Agent McMullen,

1  the law still precludes liability under the facts of this case.

2        This case should be analyzed under the Ninth Circuit's decisions in *Beck v. City of Upland*,

3  2008 WL 2186300 (9th Cir. May 28, 2008).  Pursuant to *Beck,* the Federal Defendants are entitled

4  to summary judgment because the decision of the Sonoma County prosecutor to charge Keane

5  with a crime operates to preclude liability for an alleged absence of probable cause.  In *Beck,* the

6  Ninth Circuit reaffirmed its previous holding that a prosecutor's independent judgment generally

7  breaks the chain of causation between the unconstitutional actions of other officials and the harm

8  suffered by a constitutional tort plaintiff. *Beck,* 2008 WL 2186300 *\*8 citing Hartman*, 547 U.S.

9  250, 262-63, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Smiddy v. Varney*, 665 F.2d 261, 266-68

10  ("Smiddy I ") (9th Cir.1981).  "Put in traditional tort terms, the prosecutor's independent decision

11  can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit

12  against the officials who made an arrest or procured a prosecution." *Id*. (citations omitted).  It is

13  well-established under the Ninth Circuit law that the prosecutor's decision to file a criminal

14  complaint demonstrates the exercise of independent judgment "in determining that probable cause

15  for an accused's arrest exist[ed], thereby breaking the chain of causation between an arrest and

16  prosecution and immunizing investigating officers from damages suffered after the complaint was

17  filed." *Id*. at *8-9 (citations and internal quotations omitted).

18        Here, the chain of causation identified in *Beck* undoubtedly has been broken.  The People

19  of the State of California, through Assistant Prosecutor Scott Jamar, decided to charge Keane with

20  two felony counts of violating the California Health and Safety Code.  This is sufficient to

21  demonstrate that Plaintiffs' allegations regarding a lack of probable cause are precluded in this

22  lawsuit.  Moreover, there are no facts to suggest that the prosecutor did not exercise independent

23  judgment.  To the contrary, in the face of Keane's protestations of innocence, the prosecutor made

24  clear its position that probable cause existed for the warrants to issue.  Accordingly, there is no

25  basis for Plaintiffs to pursue their investigation-related claims.

26        c.     The Superior Court Judge Issued The Arrest and Search Warrants; This Is
                  An Independent Basis For The Federal Defendants To Assert Their
27                  Qualified Immunity Defense.

28        The Ninth Circuit exercises a deferential review of the initial probable cause determination

1   by a magistrate and will uphold it so long as the magistrate had a "substantial basis" for

2   concluding probable cause existed based on the totality of circumstances.  *Greenstreet v. County of*

3   *San Bernardino*, 41 F.3d 1306, 1309 (9thCir. 1994); *compare United States v. Clark*, 31 F.3d 813,

4   834 (9th Cir. 1994). In Where a magistrate acts mistakenly in issuing a warrant but within the

5   range of professional competence of a magistrate, the officer who requested the warrant cannot be

6   held liable. *Malley v. Briggs*, 475 U.S. 335, 345, fn. 9, 106 S. Ct. 1092 (1986).  If a reviewing

7   court, in giving deference to a magistrate's approval of the Search Warrant, finds the magistrate

8   clearly erred and that there was not a substantial basis for the magistrate to believe that probable

9   cause existed to issue the warrant based on the totality of the circumstances, the officer applying

10  for the warrant is still entitled to qualified immunity unless the warrant is so lacking in indicia of

11  probable cause that a reasonable officer would have known that his affidavit failed to establish

12  probable cause and that he should not have applied for the warrant. *Greenstreet*, 41 F.3d at 1309.

13  Specifically, the United States Supreme Court held that "only where the warrant application is so

14  lacking in indicia of probable cause as to render official belief in its existence unreasonable will

15  the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. at 345; *Mills, supra*, 930 F.2d at 731.

16      Similarly, in *KRL v. Estate of Moore*, 512 F.3d 1184 (9th Cir. 1991), the Ninth Circuit

17  reiterated that reasonable minds frequently may differ regarding whether a particular affidavit

18  establishes probable cause, and that inadequate probable cause for a warrant does not necessarily

19  render an officer's belief in probable cause unreasonable. *Id*. at 1189 Thus, an officer who prepared

20  a warrant that lacked probable cause is entitled to qualified immunity unless the warrant is so

21  lacking in indicia of probable cause that "no officer of reasonable competence would have

22  requested the warrant." Id.

23      Here, the application of these authorities is clear.  For all the reasons stated above, there

24  was probable cause for the arrest and search warrants in this case.  But even if there were not, the

25  decision of Superior Court Judge Boyd was not so bereft of a reasonable basis that Special Agent

26  McMullen should never have pursued the warrant.  Any argument to the contrary would strain

27  credulity.  Special Agent McMullen is entitled to qualified immunity because Judge Boyd

28  ultimately issued the warrants.

**D.    FEDERAL DEFENDANTS ARE ENTITLE TO JUDGMENT WITH RESPECT TO THE EXCESSIVE FORCE CLAIMS**

To determine whether a right is clearly established, the reviewing court must consider whether a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. As the Supreme Court has explained:

For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal citations omitted). However, "[i]n order to find that the law was clearly established ... we need not find a prior case with identical, or even 'materially similar' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir.2003) (citing *Hope*, 536 U.S. at 740, 122 S.Ct. 2508).

Here, Plaintiffs claim Defendants used excessive force in the execution of the arrest and search warrants. Plaintiffs' claims may reasonably be divided into four categories.

(1)    Plaintiffs allege defendants failed to "knock and announce" their presence before entering the home.

(2)    Plaintiffs allege Defendants used unnecessary intimidating tactics including (a) entering with too many persons, (b) entering with guns trained on Plaintiffs, (c) using loud commands, (d) making unnecessary comments, (e) failing to state their identity or purpose and (f) making untrue statements during questioning,

(3)    Plaintiffs allege Defendants damaged the Keane residence in the process of searching it; and

(4)    Plaintiffs allege Defendants inflicted bodily harm on Plaintiffs by (a) placing a boot on Strange's head, (b) placing Keane's handcuffs on too long and too tight,

1        (c) lifting Keane up by his handcuffed wrists and (d) having a woman physically

2        search Keane during his intake to the prison.

3    Each of these sets of allegations is addressed in turn.

4       1.    <u>The knock and announce.</u>

5       Generally, the Fourth Amendment to the United States Constitution protects the "right of

6 the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

7 and seizures." U.S. Const. amend. IV.  Thus, the Fourth Amendment "does not proscribe all

8 searches and seizures, but only those that are unreasonable." *Skinner v. Railway Labor Executives'*

9 *Ass'n*, 489 U.S. 602, 619 (1989).  The common-law requirement to knock and announce forms part

10 of the reasonableness inquiry under Fourth Amendment law; it is not a predicate to a constitutional

11 search or seizure. *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

12 The amount of time officers are required to wait after announcing their presence is very

13 fact-specific. *United States v. Banks*, 540 U.S. 31, 37-38, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003)

14 (holding that an interval of fifteen to twenty seconds was sufficient where officers had a

15 reasonable suspicion that a suspect could destroy narcotics, even though the suspect was actually

16 in the shower). The act of knocking on the door is not always dispositive particularly where the

17 officers made their presence known by other means, such as nearing the house or running up stairs

18 to an apartment. *See United States v. Combs*, 394 F.3d 739, 744-45 (9th Cir.2005).

19       Here, Special Agent McMullen states that he knocked and announced his presence before

20 entering.  McMullen Decl., ¶ 9.  Absent more, it is unimportant that Plaintiffs claim they did not

21 hear the announcement.  There are no facts suggesting McMullen did not knock and announce his

22 presence.  Plaintiffs' claim therefore must fail.

23       2.    <u>Intimidating Tactics</u>

24       Plaintiffs allege they witnessed a range of conduct that they claim"Rambo-style" and that

25 was excessive.  Plaintiffs' colorful language does not mask the fact that the government interests

26 in this case, including the government's interest for the safety of everyone in the residence,

27 dictated the use of a dynamic entry.

28       "Determining whether the force used to effect a particular seizure is reasonable under the

1 Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the

2 individual's Fourth Amendment interests against the countervailing governmental interests at

3 stake."*Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citations

4 omitted). Determining whether the force used was reasonable requires attention to such facts as

5 the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

6 the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

7 flight. *See id.* The reasonableness of a particular use of force must be judged from the perspective

8 of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight...."*Id.* at 396-97.

9     In this case, the operational plan included the possibility of using a dynamic entry. Supp.

10 McMullen Decl. at ¶ 9. This sort of entry is appropriate and even standard for the entry into an

11 unknown residence suspected of being the source of marijuana that is packaged for distribution.

12 Eliopolous Decl. ¶¶ 14-18. It is more likely in these situations for the occupants of the residence

13 to attempt to flee, to destroy evidence or to fight back with weapons if the dynamic entry is not

14 used. Eliopolous Decl. at ¶¶ 14-18. Indeed, although such an entry may be intimidating, it

15 ultimately is safest for the officers and the occupants of the residence as well. Eliopolous Decl. at

16 ¶¶ 10- 14. McMullen also is not responsible for Keane's treatment at the detention facility.

17     3.     The Search

18     Plaintiffs claim that certain unspecified property was destroyed. The test under the Fourth

19 Amendment is "whether the officers' actions are 'objectively reasonable' in light of the facts and

20 circumstances confronting them, without regard to their underlying intent or motivation." *Graham

21 v. Connor*, 490 U.S. 386, 397 (1989). "[T]he reasonableness of a search authorized by a valid

22 warrant may be vitiated 'by the manner in which the police conducted the search....' " *Bergquist v.

23 County of Cochise*, 806 F.2d 1364, 1369 (9th Cir.1986), *disapproved on other grounds, Merritt v.

24 County of Los Angeles*, 875 F.2d 765 (9th Cir.1989) (quoting *United States v. Penn*, 647 F.2d 876,

25 882 (9th Cir.) (*en banc*), *cert. denied*, 449 U.S. 903 (1980)). Officers' conduct in destroying

26 property during a search "must be evaluated against a reasonableness standard to determine

27 whether the officers violated either the fourth or the fourteenth amendment." *Bergquist*, 806 F.2d

28 at 1369.

1    Here, Plaintiffs have not specified what property has been damaged.  Also, there is no

2    evidence McMullen is responsible if, in fact, anything was damaged.  Absent sufficient evidence

3    that McMullen damaged Plaintiffs' property, this claim must fail.

4        4.    Plaintiff's Claims Of Bodily Harm

5    Plaintiffs allege that defendants used excessive force in entering the house and detaining

6    Plaintiffs. Officers executing a search warrant have authority to detain the occupants of the

7    premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981)."An

8    officer's authority to detain incident to a search is categorical; it does not depend on the quantum

9    of proof justifying detention or the extent of intrusion to be imposed by the seizure." *Muehler v.*

10   *Mena*, 544 U.S. 93, 100 (2005) (upholding a search of an interior of a home taking approximately

11   four hours during which occupants were handcuffed). A detention in connection with a search may

12   be unlawful if is unnecessarily painful, degrading, or prolonged. *Franklin v. Foxworth*, 31 F.3d

13   873, 876 (1994); *compare Dawson v. City of Seattle*, 435 F.3d 1054,1069-70 (9th Cir.2006).

14   Here, Keane was arrested.  His detention necessarily would be sufficiently long to allow

15   for the search and then transportation to the detention facility.  For this reason, the length of

16   detention was reasonable.  McMullen denies the remaining allegations.

17   With respect to all Plaintiffs' additional claims of bodily injury, the only evidence in the

18   record at this time is Special Agent McMullen's denials that he inflicted these injuries.  Also, if

19   plaintiff submits evidence on this point, it should become apparent that one person is not being

20   accused of having caused all the conduct and injuries that Plaintiffs are alleging.

21   **E.    AT A MINIMUM, THE FEDERAL DEFENDANTS ARE ENTITLED TO
         JUDGMENT WITH RESPECT TO PLAINTIFFS' SECTION 1983 CLAIMS**

22
23   McMullen joins in the arguments raised in the brief submitted by John Silva as to the

     issues regarding the inapplicability of section 1983 in this lawsuit.  That portion of Silva's brief is
24
     incorporated by reference in its entirety into this brief.
25
                                    Respectfully submitted,
26
                                    JOSEPH R. RUSSONIELLO
27                                  United States Attorney

28   Dated: June 24, 2008                _/s/_____
                                    ABRAHAM A. SIMMONS
                                    Assistant United States Attorney