JOSEPH P. RUSSONIELLO (SBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102-3495
Telephone:   (415) 436-7264
Facsimile:    (415) 436-6748
Email: abraham.simmons@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,<br><br>                              Plaintiffs,<br><br>         v.<br><br>SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,<br><br>                              Defendants. | No. C 07-4894 SBA<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>**Fed.R.Civ.P. 56**<br><br>Date:       July 29, 2008<br>Time:      1:00 p.m.<br>Place:     Courtroom 3, 3rd Floor<br>Before:   Hon. Saundra B. Armstrong |

   This matter came on for hearing on July 29, 2008 on Defendants Seth McMullen's amd John Silva's motions for summary judgment. All parties were represented at the hearing. Having read and considered the papers and heard the argument submitted by the parties and being fully informed, the court hereby **GRANTS** Defendants' Motion for the following reasons.

   1. <u>Background</u>

   Plaintiffs Robert Carl Patrick Keane and his girlfriend Chieko Strange filed this civil rights action alleging defendant Special Agent McMullen never should have suspected Keane was involved in trafficking illegal narcotics. The crux of Plaintiffs' claim is that McMullen should not have (1) applied for warrants to arrest Keane and to search his home (the "investigation-related claim") nor (2) used excessive force when executing the arrest and search

1  warrants (the "excessive force claim").  Protesting Keane's innocence and claiming that the
2  tactics used to search his home violated his constitutional rights, Plaintiffs assert they are entitled
3  to damages pursuant to the civil rights statute at 42 U.S.C. § 1983 and *Bivens v. Six Unknown*
4  *Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

5       On November 29, 2006, Maureen McGuigan, the owner of Mail Depot in Petaluma,
6  reported that a customer attempted to mail marijuana from Petaluma to New Jersey. McMullen
7  Decl. at ¶ 2.  Stephenson related his conversation with McGuigan wherein she reported that
8  earlier the same day a person left with her a wrapped package for mailing.  She described the
9  person as a white male adult, approximately forty years old, 5'6" tall, 150 pounds, with brown
10 hair and wearing sunglasses.  McMullen Decl. at ¶ 2.  The man claimed he wanted to deliver the
11 package to his 'niece', Kerry Keane in Brick, New Jersey.  McMullen Decl. at ¶ 2.  McGuigan
12 became concerned when she found his behavior suspicious and asked the man if the package
13 contained marijuana.  McMullen Decl. at ¶ 2.  The man denied that the contents of the package
14 were illegal drugs, stated that it contained clothing for his niece and left.  McMullen Decl. at ¶ 2.
15 McGuigan opened the package and discovered it contained three packages of marijuana.
16 McMullen Decl. at ¶ 2.  She delivered the package to the Petaluma Police Department and
17 discussed the contents of the package with Sergeant Jim Stephenson,

18      Stephenson took custody of the package and called Special Agent Seth McMullen, an
19 agent with the United States Drug Enforcement Administration.  The next day, November 30,
20 2006, Special Agent McMullen and Special Agent Jeff Hoyt met Sergeant Stephenson, took
21 custody of the package, and transported it back to back to the SRRO. McMullen Decl. at ¶ 3.
22 The package bore a sending address of "C. Keane," 307 North Ferndale Avenue, Mill Valley,
23 California, 94941. McMullen Decl. at ¶ 3.  Special Agent McMullen conducted research using
24 computer databases and verified both that the address was valid and that Plaintiff Robert Carl
25 Patrick Keane used the address as a residence.  McMullen Decl. at ¶ 4.  Special Agent McMullen
26 conducted further research and obtained a photograph of Mr. Keane as well as other identifying

28 [Proposed] Order Granting
Motion For Summary Judgment
C 07-4894 SBA                        2

1  information. McMullen Decl. at ¶ 4. Later the same day, the agents returned to the Mail Depot,
2  showed McGuigan a photograph of Keane (identifying him as a "possible suspect") and asked
3  whether the person in the photograph resembled the person who attempted to deliver the
4  package. McMullen Decl. at ¶ 5. McGuigan confirmed that the photograph depicted the person
5  who had dropped off the package the day before. McMullen Decl. at ¶ 5.

6  Special Agent McMullen arranged to have the package shipped and delivered "under
7  controlled circumstances" i.e., by a police officer who would keep track of who came into
8  contact with the package. McMullen Decl. at ¶ 5. On December 1, 2006, the package was
9  delivered by Detective Jason Shepherd of the Brick Township Police Department. Declaration
10  of Abraham A. Simmons ("Simmons Decl."), Exhibit 1(d). Within the next few days,
11  McMullen was informed that the Brick Township law enforcement arrested Brian William
12  Keane and Susanne Keane for taking possession of the marijuana. *See* Supp. McMullen Decl.at
13  ¶¶ 5-7. Both arrestees claimed to have no knowledge of the contents of the package. Simmons
14  Decl., Exh. 1(d). At the time of the arrest, Brian Keane claimed the package contained a bomb
15  and that he was returning it to the Federal Express facility. Simmons Decl., Exh. 1(d). Brian
16  Keane nevertheless had put the package in the seat next to his daughter and was not driving in
17  the direction of the federal express building. Simmons Decl., Exh. 1(d). Brian Keane also
18  claimed he did not know a C. Keane in California; nevertheless, after both denying and
19  admitting he had a brother, he stated his brother's name was Chris. Simmons Decl., Exh. 1(d).

20  Among the concerns regarding the further investigation was the fact that once the
21  controlled delivery was made to the New Jersey address, and subsequent law enforcement
22  activity likely would be communicated to persons in California. Supp. McMullen Decl. ¶ 6. This
23  likely would result in the spoliation of evidence in California. Supp. McMullen Decl. ¶ 6. With
24  time believed to be of the essence, Special Agent McMullen decided to pursue a warrant to
25  search the Keane residence. McMullen Decl. at ¶ 6. He chose to use procedures available in
26  state, rather than federal, court because state court is a more appropriate venue to prosecute

27
28  [Proposed] Order Granting
Motion For Summary Judgment
C 07-4894 SBA                                    3

1  violations involving the amount of marijuana involved.  McMullen Decl., ¶ 6.

2       From December 1, 2006 through December 15, 2006, Special Agent McMullen prepared
3  a six-page Search Warrant and Affidavit that consisted of (1) a one-paragraph affidavit for
4  signature by Special Agent McMullen and a deputy district attorney, (2) a two-and-a-half-page
5  search warrant for signature by a Superior Court Judge for the County of Sonoma, (3) a seven-
6  paragraph statement of expertise and (4) a ten-paragraph statement of probable cause.
7  McMullen Decl., Exh. 2.  The affidavit attests to Special Agent McMullen's belief that the facts
8  expressed in the Search Warrant and Affidavit are true and correct and that he has probable
9  cause to believe that the items sought are lawfully seizable.  McMullen Decl., Exh. 1.  Below
10 McMullen's signature on the affidavit is a statement that the document was "[p]repared with the
11 assistance of or reviewed by" the deputy district attorney on the case.  McMullen Decl., Exh. 2.
12 Scott Jamar, a deputy district attorney for the Sonoma County District Attorney's Offfice, signed
13 the preparation/review statement.

14      The search warrant indicates that Special Agent McMullen had probable cause to believe
15 the lawfully seizable items were either used as the means of committing a felony, were possessed
16 by a person with intent to use it as a means of committing a public offense or is evidence tending
17 to show that a felony has been committed. McMullen Decl., Exh. 2.  The search warrant
18 identified Keane's address as the residence that is authorized to be searched.  McMullen Decl.,
19 Exh. 1. The search warrant permits search for numerous items including "deposit slips," utility
20 company receipts, legal documents and "other receipts."  McMullen Decl., Exh. 2.  Among the
21 topics described in Special Agent McMullen's statement of expertise were his experience and
22 training in the field of narcotics, his experience in preparing and executing state and federal
23 warrants, and his experience in narcotics investigations.  McMullen Decl., Exh. 3.

24      The statement of probable cause included an account of the facts that had been
25 communicated to, and investigated by, Special Agent McMullen up until the date the affidavit
26 was signed, December 15, 2006. McMullen Decl., Exh. 2.  The statement disclosed that
27 McGuigan was shown "a photo of a possible suspect" and that she positively identified Keane.
28 McMullen Decl., Exh. 2.  There was no suggestion in the statement that McGuigan was subjected

[Proposed] Order Granting
Motion For Summary Judgment
C 07-4894 SBA                                                        4

to a line-up. Similarly, the concluding paragraph of the affidavit stated Special Agent McMullen's belief that Keane and Brian Keane were related. Specifically, the concluding paragraph of the affidavit stated:

> 10. Agents believe that Robert Carl Patrick KEANE and Carl or Carl Patrick KEANE is the same person. Also, the shipping label of the six pounds of marijuana sent to New Jersey for the controlled delivery had C. KEANE, 307 North Ferndale Avenue, Mill Valley, California as the sending address. When Brian KEANE was arrested, he gave 39 Sandy Point Drive, Brick, New Jersey, as his address, and (732) 262-8875 as his telephone number. All of this information was contained on the shipping label. Agents also believe that Robert Carl Patrick KEANE and Brian KEANE are possibly related due to the same last names and a physical resemblance of both.

McMullen Decl., Exh. 2 (search warrant).

Special Agent McMullen also prepared an arrest warrant for Keane's arrest. Supp. McMullen Decl., Exh. 1. Both the arrest warrant and the search warrant were reviewed by Sonoma County District Attorney Scott Jamar and submitted to Sonoma County Superior Court Judge Robert S. Boyd. McMullen Decl., Exh. 2. Judge Boyd signed and issued both warrants. McMullen Decl., Exh. 2. Special Agent McMullen also prepared a two-count complaint charging Keane with violations of the California Health and Safety Code. Simmons Decl., Exh. 2. (Felony Complaint). The People of the State of California filed the complaint and opened a case against Keane. *See* Simmons Decl., Exh. 3.

To prepare for the execution of the search and arrest warrants, McMullen requested assistance from the Petaluma Police Department. McMullen Decl. at ¶ 7. Specifically, McMullen requested that a K-9 unit be deployed to assist with the search. McMullen Decl. at ¶ 7. Also, consistent with department policy, McMullen contacted the local authorities about the impending execution of the warrants. In this case, Special Agent McMullen notified the Marin County Sheriff's Department and invited them to have a representative attend the execution of the search warrant. McMullen Decl. at ¶ 7.

Special Agent McMullen prepared an operations plan that was mindful of the quantity of marijuana that had been intercepted by Ms. McGuigan and the likelihood that the residence might contain weapons and persons willing to use them. Supp. McMullen Decl., ¶ 8. The operations

1  plan included the possibility of a dynamic entry which is proper procedure for entry into a
2  residence in a drug case such as this one if no response is made to a knock and announcement.
3  *See* Declaration of Nikos Eliopolous ("Eliopolous Decl."), ¶¶ 14-18. This is true because the
4  government interests at stake; namely, to prevent escapes, destruction of evidence, and most
5  importantly, injury to innocent third parties, the officers and the targets. Eliopolous Decl. at
6  ¶¶ 10-13.
7       On December 19, 2006, McMullen led the team that executed the warrants. *See* Suppl.
8  McMullen Decl. at ¶ 8. At approximately 7:35 a.m., Special Agent McMullen knocked and
9  announced the presence of law enforcement. McMullen Decl. at ¶ 9. The front door was
10 unlocked and he entered without using force. McMullen Decl. at ¶ 9. He wore DEA-issued
11 clothes and announced "DEA." He entered with the other DEA Special Agents. McMullen Decl.
12 at ¶ 9. The Marin Officers, the K-9 unit, and Task Officer Silva waited outside while the DEA
13 officers entered and secured the home. *See* Supp. Silva Decl. ¶ 4. Special Agent McMullen found
14 plaintiffs in the upstairs loft and was involved in their initial detention while the house was being
15 secured. McMullen Decl. at ¶ 9. Special Agent McMullen denies that he put his boot on anyone's
16 head, denies that he put on Keane's handcuffs too tight and denies that he lifted Keane from his
17 wrists or in any way to cause Keane physical harm. McMullen Decl. at ¶ 9.
18      Special Agent McMullen and Task Officer Silva interviewed Keane and Strange.
19 McMullen Decl. at ¶ 11. Special Agent McMullen does not recall being present when the K-9
20 officer admonished Keane regarding the K-9 unit. Nevertheless, the admonitions were audio
21 taped and forwarded to Special Agent McMullen. Simmons Decl., Exh 3 (Audiotape recording
22 and transcript).
23      Special Agent McMullen completed the search, finding no controlled substances.
24 Amended Complaint at ¶ 30. He seized a Wells Fargo deposit slip and a telephone bill.
25 McMullen Decl., Exh. 1. Special Agent McMullen arrested Keane and transported him to the
26 Sonoma County Detention Facility. Amended Complaint at ¶ 30. The Intake documents from the
27 facility contain no complaints that Keane was physically injured or emotionally traumatized.
28 Simmons Decl., Exh. 5.

[Proposed] Order Granting
Motion For Summary Judgment
C 07-4894 SBA                         6

1    On March 13, 2007, the criminal prosecution against Keane was dismissed.  Simmons
2 Decl., Exh. 3(a) (Notice of Motion/ Petition and Motion/ Petition of Factual Innocence).  On
3 April 25, 2007, Keane filed a motion in the Superior Court of Sonoma County to be declared
4 factually innocent.  Simmons Decl., Exh. 3(a).  The District Attorney of Sonoma County filed an
5 opposition to the motion. Simmons Decl., Exh. 3(b) (Opposition to Motion (hereinafter,
6 "Opposition")).  In the opposition to the motion, the Sonoma County District Attorney stated,
7 "[i]n the matter at bar, an arrest was made based upon probable cause."  Opposition at 4:7.  In the
8 opposition, the District Attorney  further stated, "at the time of Defendant's arrest, there was a
9 clear showing of probable cause." Opposition at 4:11-12.  The District Attorney also informed the
10 Superior Court that "[a]s far as law enforcement is aware, the available evidence does not
11 conclusively establish that Defendant was not the individual who successfully shipped a package
12 on May 31, 2006, and attempted to ship a package of marijuana from the Mail Depot on
13 November 29, 2006."  Opposition at 3:9-12.

14    Plaintiffs filed their original complaint on September 20, 2007 and their First Amended
15 Complaint ("FAC") on February 19, 2008. [Docket Nos. 1, 20.]  In their FAC, Plaintiffs allege
16 two types of wrongdoing.  First, Plaintiffs complain that McMullen's investigation was improper.
17 FAC at ¶¶ 43 (c)-(d); 48 (c)-(d).  Plaintiffs acknowledge in the complaint that a search warrant
18 was obtained prior to the search of Keane's home. FAC at ¶¶ 24, 30.  Nevertheless, Plaintiffs
19 allege their Fourth Amendment and Fourteenth Amendment rights were violated because
20 substantial exculpatory information was ignored or left out of McMullen's affidavit in support of
21 the warrant.  FAC at ¶ 43 (c).  Plaintiffs also allege that any reference to the McGuigan
22 identification was improper because the identification was not made pursuant to a traditional line
23 up.  *See* FAC at ¶ 20.  Plaintiffs further allege Defendants lacked probable cause and permission
24 to search the home and to seize any items therein.  FAC at ¶ 43(b),(c).

25    Second, Plaintiffs allege their Fourth, Fifth, and Fourteenth Amendment rights were
26 violated because excessive physical force was used during the execution of the search and arrest
27 warrants.  Specifically, they allege handcuffs were applied improperly, Keane was lifted
28 improperly, McMullen put his boot on Strange's head, weapons were brandished improperly, and

1  that defendants "ransacked Plaintiffs' personal belongings, leaving the home violated and in
2  disarray." FAC at ¶¶ 16-17. Plaintiffs further allege they were traumatized unnecessarily
3  because (1) defendants did not knock and announce their presence before entering, (2) defendants
4  would not respond to questions regarding why the search was conducted until after the house was
5  secured, (3) defendants yelled, "Where are your weapons," (4) defendants signaled to the toilet
6  and said, "isn't this ironic," and (5) intimidated Plaintiffs with "accounts" of an ultra-sensitive
7  drug-sniffing dog." FAC at ¶¶ 13-15.

### 2. The Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Material facts are those which can effect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has no burden to produce any evidence on elements of a claim on which the non-moving party will bear the burden of trial, but can merely point out an absence of evidence to support any such element. *Celotex v. Catrett,* 477 U.S. 317, 322-23 (1986); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) *cert. denied*, 516 U.S. 869 (1995); *Maffei v. Northern Insurance Co. of New York*, 12 F.3d 892, 899 (9th Cir. 1993). Once the moving party points out the absence of evidence, then the non-moving party must come forward with specific evidence to show there is a genuine issue for trial. *Id.* If the non-moving party fails to make this showing, then the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323 (1986).

Summary judgment is not only proper if Plaintiff fails to produce *any* evidence on an element of his case, but summary judgment is also proper if Plaintiff fails to produce *sufficient* evidence on an element of his case. The Supreme Court has specifically held that summary judgment is proper against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986). The mere existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. The non-moving party has the burden of establishing sufficient evidence on each element of his case so that a jury could return a verdict for him. *Anderson*, 477 U.S. at 249 (1986). Stated in another way, the standard

for summary judgment mirrors the standard for a directed verdict. *Anderson*, 477 U.S. at 252 (1986); *Triton Energy Corp. v. Square D Co,* 68 F.3d 1216, 1221 (9th Cir. 1995). The standard is whether the evidence presents a sufficient disagreement as to require jury consideration, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Id*.

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir.1989); *see also Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.1996) (stating that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Johnson v. Hornung* 358 F.Supp.2d 910, 921 (C.D.Cal.,2005).

        3.      <u>The Court Grants Defendants' Motions</u>

                A.      Plaintiffs' Fourteenth Amendment and § 1983 Claims

In addition to claiming that their Fourth and Fifth Amendment rights have been violated, Plaintiffs argue they may proceed against defendants under 42 U.S.C. § 1983. Plaintiffs therefore argue McMullen and Silva were acting under color of state law and that the defendants violated Plaintiffs' Fourteenth Amendment rights. The Fourteenth Amendment merely makes Plaintiffs' Fourth and Fifth Amendment rights enforceable against the several states under certain circumstancses.

Generally, federal officials who act under color of federal law are not subject to liability under 42 U.S.C. § 1983. *District of Columbia v. Carter*, 409 U.S. 418 (1973); *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n. 2 (1963); *Dale-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987). 42 U.S.C. § 1983 provides a remedy only where a person acting under color of law of any state or territory or the District of Columbia deprives a person of his constitutional rights. *Daly-Murphy*, 837 F.2d at 355. In order to violate § 1983, the defendant must have acted "under color of state law" and deprived the plaintiff of his rights under federal law. *Cabrera v. Martin,* 973 F.2d 735, 741 (9th Cir. 1992). An exception to this rule can sometimes apply where there is

proof that an official acts in concert with a state or its agents and such state actors significantly participated in the challenged activity. *See Briley v. State of California*, 564 F.2d 849, 858 (9th Cir. 1977).

The application of *Briley* to this case is somewhat suspect in light of the fact that McMullen and Silva clearly were exercising their authority as federal actors at every step of the investigation and execution of the warrants. *See Scott v. Rosenburg*, 702 F.2d 1263 (9th Cir. 1983). In any event, because this Court finds no Fourth or Fifth Amendment violations have occurred, it need not consider whether Plaintiffs' argument has any merit.

        B.      <u>Defendants are entitled to qualified immunity.</u>

Plaintiffs argue that Defendants McMullen and Silva violated the Constitution when they sought warrants for Keane's arrest and the search of his residence. This argument lacks merit.

Plaintiff has resented no evidence that John Silva was the least bit involved in the investigation leading up to the applications for the warrant. He therefore is entitled to judgment on this claim.

McMullen is entitled judgment on this claim as well. Although the warrantless search of a home may raise certain liability issues, *see Curiel v. County of Contra Costa*, 2007 WL 2330320 (N.D.Cal. Aug. 13, 2007), the analysis is quite different if an arrest or search is performed after a warrant is obtained. In order to prove the violation of a constitutional right, Plaintiffs must demonstrate either that probable cause was so lacking that no reasonable officer would have requested the warrant (*Malley v. Briggs*, 475 U.S. 335, 345 (1986)), or that some material fact was intentionally or recklessly omitted from the application where inclusion of that fact would have precluded a probable cause determination. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). In all other cases, the qualified immunity doctrine generally will protect the government official from his or her exercise of poor judgment. *Malley*, 475 U.S. 341 (1986).

Here, the facts demonstrate a scenario far from the picture Plaintiffs paint. Special Agent Seth McMullen properly sought the search warrant and his application demonstrates ample probable cause for a warrant to search the residence to further his investigation. McGuigan, the owner of the Mail Depot in Petaluma, produced the package containing three pounds of

1  marijuana. The package identified the residence that McMullen sought to search, 307 North
2  Ferndale Avenue, Mill Valley, California, 94941. Further, the address was in sufficient proximity
3  with the Petaluma Mail Depot that there was a fair probability or substantial chance the sender
4  may have traveled from Mill Valley to Petaluma in order to deliver the package. McGuigan also
5  confirmed that this was not the first package transported from the exact address to the New Jersey
6  address. Simmons Decl., Exh 3. Further, the address was linked to C. Keane and Robert Keane
7  who, as explained below, was properly suspected of being engaged in the transportation of
8  marijuana. These facts establish sufficient probable cause to suspect the residence may have
9  contained evidence of a crime; i.e., the production or distribution of marijuana.
10       Similarly, Special Agent McMullen properly sought and obtained an arrest warrant. Even
11 though Keane continues to insist he did not send the package, the facts known to McMullen at the
12 time suggested Keane was involved. The Constitution does not guarantee that only the guilty will
13 be arrested; "if it did, § 1983 would provide a cause of action for every defendant
14 acquitted-indeed, for every suspect released." *Baker v. McCollan* 443 U.S. 137, 145, 99 S.Ct.
15 2689, 2695 (U.S.Tex.,1979). The Supreme Court expressly rejected this notion. *See id.* Here,
16 McGuigan identified the person who attempted to mail the package as a white male adult,
17 approximately forty years old, 5'6" tall, 150 pounds, with brown hair and wearing sunglasses.
18 McMullen Decl. at ¶ 2. This description does not exclude Keane. The package did in fact bear
19 the name "C. Keane," and the address "307 North Ferndale Avenue, Mill Valley, California,
20 94941." McMullen Decl. at ¶ 3. These facts increased the likelihood that Keane was involved.
21 Moreover, McGuigan's identification of Keane from the photograph suggested that if a person
22 randomly picked C. Keane's name from a phone book and happened to know he went by Carl
23 rather than Robert Keane, the person also happened by some coincidence to look something like
24 Robert Keane. This is, by any estimation, an extraordinary confluence of facts suggesting Keane
25 was involved in the attempted delivery of the marijuana. Moreover, after Brian Keane was
26 arrested in New Jersey, McMullen obtained a picture of the New Jersey resident. Brian Keane
27 and Robert Keane resembled each other enough that they could have been related. Taken
28 together, these facts undoubtedly provide probable cause. For all these reasons, the facts

[Proposed] Order Granting
Motion For Summary Judgment
C 07-4894 SBA                                    11

established that probable cause existed to arrest Keane at the time McMullen completed his affidavit.

Moreover, even if probable cause did not exist, McMullen still would be entitled to qualified immunity.   Here, the prosecutor's independent decision to file a criminal charge is a superseding or intervening cause of the constitutional tort Plaintiffs' injuries, precluding suit against the officials who made the arrest and procured the prosecution. *See Beck,* 2008 WL 2186300 *\*8* (9th Cir. 2008) (citations omitted). Also, Superior Court Judge Boyd had a substantial basis for concluding probable cause existed based on the totality of circumstances. *Greenstreet v. County of San Bernardino*, 41 F.3d 1306, 1309 (9thCir. 1994); *compare United States v. Clark*, 31 F.3d 813, 834 (9th Cir. 1994). Even if the officer and the judge were wrong regarding the existence of probable cause, the decision was "within the range of professional competence of a magistrate" and therefore Special Agent McMullen cannot be held liable. *Malley*, 475 U.S. at 345, fn. 9.

Defendants also are entitled to qualified immunity with respect to Plaintiffs' excessive force claims. There is no evidence suggesting John Silva was involved in any of the decisions or actions about which Plaintiffs are suing.  He therefore is entitled to judgment.

Special Agent McMullen states that before he entered the residence, he knocked and announced his presence. McMullen Decl., ¶ 9. Although Plaintiffs claim they did not hear the announcement, there are no evidence McMullen is being anything but truthful.  Absent some evidence that no knock and announcement occurred, Plaintiffs' claim must fail.

Plaintiffs' claim that Defendants used excessive force to enter and secure the residence also must fail. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."*Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted).  In this case, the operational plan included the possibility of using a dynamic entry. Supp. McMullen Decl. at ¶ 9. This sort of entry is appropriate and even standard for the entry into an unknown residence suspected of being the source of marijuana that is packaged for distribution. Eliopolous Decl.

¶¶ 14-18. It is more likely in these situations for the occupants of the residence to attempt to flee, to destroy evidence or to fight back with weapons if the dynamic entry is not used. Eliopolous Decl. at ¶¶ 14-18. Indeed, although such an entry may be intimidating, it ultimately is safest for the officers and the occupants of the residence as well. Eliopolous Decl. at ¶¶ 10- 14.

Finally, Plaintiffs have provided no evidence to substantiate the Special Agent McMullen is liable for any of the other excessive force claims raised in their complaint. For the foregoing reasons,

**IT IS HEREBY ORDERED THAT** Defendants' motions for summary judgment are **GRANTED** and judgment shall be entered in favor of Defendants Seth McMullen and John Silva and against Plaintiffs Keane and Strange.

**IT IS SO ORDERED.**

Dated: _____    _____
                                 SAUNDRA BROWN ARMSTRONG
                                 United States District Judge