# EXHIBIT 1

# EXHIBIT 1(a)

**MARLENE LYNCH FORD**
Ocean County Prosecutor

**RONALD F. DELIGNY**
First Assistant Prosecutor

**WILLIAM J. HEISLER**
Chief Assistant Prosecutor

**OFFICE OF THE PROSECUTOR**
**Courthouse Annex Building**
119 Hooper Avenue
P.O. Box 2191
Toms River, New Jersey 08754-2191
**(732) 929-2027 • Fax (732) 929-2145**

May 2, 2008

State vs. Brian W. Keane
Case Number 06-12-4361 GJ
Accusation number 07-05-00772 A

I, Lucy Barone, Records Manager in the Ocean County Prosecutor's Office, do Certify this is a true copy of the Accusation and records taken from the Grand Jury file, State vs. Brian W. Keane, located in the Ocean County Prosecutor's Office

Lucy Barone

Lucy Barone
RECORDS MANAGER
(732)929-2027 Ext. 3264

# EXHIBIT 1(b)

NEW JERSEY SUPERIOR COURT
OCEAN COUNTY

THE STATE OF NEW JERSEY :

VS.

BRIAN W. KEANE

Defendant

ACCUSATION

NO. 07-05-772

having been charged upon oath before a Magistrate in the said County of Ocean with:

POSSESSION CDS

and having in writing addressed to the County Prosecutor, waived indictment and said request having been duly reported and granted:

COUNT ONE - FOURTH DEGREE
POSSESSION CDS

THE COUNTY PROSECUTOR of said County of Ocean, ALLEGES that the said BRIAN W. KEANE, on or about November 29, 2006, in the Township of Brick, County of Ocean, and within the jurisdiction of this Court, knowingly or purposely did possess marijuana in a quantity of more than fifty grams including any adulterants and dilutants, contrary to the provisions of NJS 2C:35-10a(3), and against the peace of this State, the Government and dignity of the same.

COUNT TWO – THIRD DEGREE
POSSESSION CDS w/ Int to Dist

THE COUNTY PROSECUTOR of said County of Ocean, ALLEGES that the said BRIAN W. KEANE, on or about November 29, 2006, in the Township of Brick, County of Ocean, and within the jurisdiction of this Court, knowingly or purposely did possess, or have under his control, with the intent to distribute marijuana in a quantity of one ounce or more but less than five pounds including any adulterants and dilutants, contrary to the provisions

of NJS 2C:35-5a(1) and NJS 2C:35-5b(11), and against the peace of this State, the Government and dignity of the same.

DATED: 5/10/07

ROBERT J. ARMSTRONG
Assistant Prosecutor

Superior Court of New Jersey
Law Division, Ocean County

---

THE STATE

**BRIAN W. KEANE**

---

ACCUSATION NO.

---

ACCUSATION FOR

POSS. CDS

THOMAS F. KELAHER
Ocean County Prosecutor

---

# EXHIBIT 1(c)

**JOHN J. FLYNN**
COUNSELLOR AT LAW
2640 HIGHWAY 70
BUILDING 1A
MANASQUAN, NEW JERSEY  08736

(732) 528-8000
FAX (732) 528-6453

December 6, 2006

Criminal Assignment Office
Ocean County Courthouse
Box 2191
Toms River, NJ  08754

Re:    State v. Brian W. Keane
Township of Brick
Complaint #W-2006-001762

Dear Sir/Madam:

Please be advised that this office represents the defendant with reference to the above entitled matter which has been referred to the Ocean County Prosecutor's Office. Kindly mark your records accordingly.

Thank you.

Very truly yours,

JOHN J. FLYNN

JJF:thw
cc:  Ocean County Prosecutor's Office
Bricktown Municipal Court
Mr. Brian W. Keane

# EXHIBIT 1(d)

**Brick Township Police** **CONTINUATION PAGE**

| 1. STATION | 2. CODE | 4. STATION CASE NUMBER | 5. DIVISION NUMBER |
|---|---|---|---|
| | | | 70001-06 |

DATE OF OCCURRENCE: December 1, 2006 @ Approximately 1715 hours

PLACE OF OCCURRENCE: 39 Sandy Point Drive
Brick, NJ 08723

SUSPECTS:

Susanne Elizabeth Keane
39 Sandy Point Drive
Brick, NJ 08723
06/16/1963

Brian William Keane
39 Sandy Point Drive
Brick. NJ 08723
09/05/1958

DETAILS: On November 29, 2006 I spoke with Special Agent Jeff Hoyt of the Drug Enforcement Administration (DEA) who works in the Santa Rosa Resident Office in Windsor, California. Hoyt stated that during an investigation that originated at the Petaluma Mail Depot in Petaluma California, he recovered a package that contained approximately 4 pounds of Marijuana (three individual packages inside of one box each weighing approximately 1.37 pounds). The package was shipped from C. Keane of 307 N. Ferndale Ave. Mill Valley, CA 94941-3421. The package was being shipped to Kerry Keane at 39 Sandy Point Drive in Brick, NJ. The tracking number on the package was TRK# 7911-7719-8742.

Special Agent Hoyt went on to say that on November 29, 2006 at approximately 1030 hours a subject identified as Robert Carl Patrick Keane responded to the Petaluma (California) Mail Depot and requested to send a package to New Jersey. The sales clerk (Maureen E. McGuigan) asked C. Keane for his phone number for her data base in case the package was returned. Keane refused to give his phone number and stated that he did not want telemarketers calling his phone. McGuigan explained that the number was only for her data base and no one else had access to it. C. Keane again refused his number. McGuigan grew suspicious of Keane and asked if the package contained Marijuana. Keane stated that it did not contain Marijuana and that it was clothes for his niece's birthday. McGuigan again asked if the package contained Marijuana and again Keane stated it contained clothes. Keane then paid for the parcel service and left the store. McGuigan became very suspicious of the package and opened it. In the box were three individually wrapped football size packages. McGuigan took a box cutter and made an incision in each of the three packages. She immediately smelled a strong odor of what she believed to be Marijuana. McGuigan put the box into her vehicle and drove to the Petaluma (CA) Police Department. At the Police Department Detective Sergeant Jim Stephenson took custody of the packages from McGuigan and subsequently turned the package over to Special Agent Seth McMullen of the Santa Rosa Resident Office of the DEA. A Police Report detailing the incident at the Petaluma Mail Depot was completed by Jim Stephenson of the Petaluma Police Department (Case Number 06-0008483 Report is attached).

After receiving the package, Special Agent McMullen and Special Agent Hoyt inspected the contents of the package and determined that it did in fact contain Marijuana. Special Agent McMullen subsequently mailed the package to me via Federal Express on November 30, 2006 so a controlled delivery could be conducted at 39 Sandy Point Drive Brick, NJ.

On December 1, 2006 at approximately 1000 hours I received the package that SA McMullen sent (Tracking number 851102206241). After receiving the package Det. Cook #140 of the Brick Township Police Department Identification

| 57. TYPE NAME | 58. BADGE NUMBER | 59 Page | | 60. DATE OF REPORT |
|---|---|---|---|---|
| Detective Jason Shepherd | 167 | of | | December 2, 2006 |
| Signature | | 61 STATION | 62. TROOP | 63. DIVISION |



**Brick Township Police** **CONTINUATION PAGE**

| 1. STATION | 2. CODE | 4. STATION CASE NUMBER | 5. DIVISION NUMBER |
|---|---|---|---|
| | | | 70001-06 |

Unit photographed the package during each step of the opening process. After opening the package and confirming that it did in fact contain Marijuana, it was resealed and prepared for delivery.

Arrangements were now made with FedEX shipping to make a controlled delivery of the package at 39 Sandy Point Drive in Brick, NJ. At approximately 1700 hours, while Det. Lash #159 maintained surveillance of the residence, I conducted a controlled delivery of the package. At the residence I was met at the front door by Susanne Keane who had just arrived home with her daughter. S. Keane exited her vehicle and walked to the front door where I was standing. I advised S. Keane that I had a package for Kerry Keane and asked if she could sign for the package. She then signed the first initial of her first name and signed her entire last name on the paper that I provided. (See attached signature page that was placed into property)

After receiving the package, Keane placed it onto the front porch near the door where it remained. I entered the FedEx truck and left the area. Det. Lash #159 continued surveillance of the house and the package as I left the area. Approximately five minutes later, I entered my unmarked/undercover vehicle and assisted in the surveillance with Det. Lash #159.

At approximately 1755 hours Det. Lash #159 and I observed a Chevy Tahoe bearing NJ SE-859V arrive at the residence with a white male operating the vehicle (later identified as Brian Keane). At this time S. Keane and a small child exited the front door of the residence and entered the Tahoe (leaving the package on the porch). Det. Lash #159 followed the vehicle to the Buy Rite liquor store located in the Lenape Plaza. Det. Lash #159 observed Brian Keane exit the vehicle and enter the liquor store. A short time later, B. Keane exited the store with what appeared to be a bottle in a brown paper bag and re-entered the vehicle. Det. Lash #159 followed the vehicle back to the residence where I observed the driver (Brian Keane) exit the vehicle (vehicle left running) and pick up the package that I delivered earlier. B. Keane then opened the rear drivers side door of the vehicle and I observed him throw (underhanded) the box into the back seat of the vehicle.

At this time Det. Lash #159 and I followed the vehicle east on Mantoloking Road to the area of Winter Yacht Basin where the vehicle pulled into the front parking lot. There, we observed B. Keane exit the vehicle and walk to the side of the building where he bent down and picked up an unknown item. While he was walking back to the driver side of the vehicle, I approached him and identified myself as a Police Officer utilizing my Police badge and Identification. I immediately asked Keane for his License, Registration, and Insurance Card. While retrieving those items I asked B. Keane what he was doing on the side of the building. He stated that he picked up some muscle relaxers that a customer of his left for him. He immediately produced three pills in a plastic bag from his right front coat pocket. B. Keane asked what was going on and why we were stopping him. I asked Keane what was in the box that he threw in the back of the seat and he stated, "A bomb". He said that he and his wife were just on there way to the FedEx building in Lakewood to return the package. (It should be noted that I observed the box that Keane thought was a "bomb' next to the car seat where his three year old daughter Kerry was seated. Also the FedEx building that Keane stated he was going to was in the opposite direction of where he was traveling). It was at this time that I placed B. Keane under arrest and advised him of his Miranda Rights to which he stated he understood. B. Keane was then placed in the rear of Ptl. Williams #220 police car for transport to headquarters.

Det. Lash #159 was now engaged in conversation with S. Keane while she remained seated in the front of her vehicle. (See attached report submitted by Det. Lash #159 for details) S. Keane was subsequently placed under arrest after her conversation with Det. Lash #159.

| 57. TYPE NAME | 58. BADGE NUMBER | 59. Page of Pages | | 60. DATE OF REPORT |
|---|---|---|---|---|
| Detective Jason Shepherd | 167 | | | December 2, 2006 |
| Signature [signature] | | 61. STATION | 62. TROOP | 63. DIVISION [handwritten initials] |

ORIGINAL

**Brick Township Police** **CONTINUATION PAGE**

| 1. STATION | 2. CODE | 4 STATION CASE NUMBER | 5. DIVISION NUMBER |
|---|---|---|---|
| | | | 70001-06 |

After retrieving the package (which was in fact the package that I delivered earlier) from the rear of the vehicle, I placed it into Det. Lash's vehicle for safekeeping. I now attempted to speak with B. Keane while he was in the rear of the Police Vehicle. When I opened the door, B. Keane immediately said that "I think I know what is going on here?" I asked Keane what that was and he stated that "someone is setting me up'. I asked B. Keane what he meant and who might be setting him up and he stated I don't know but that package is not mine. I asked Keane if he knew who Kerry Keane was and he stated, "Yes it's my daughter". I also asked him if he knew who C. Keane was who sent him the package and he stated no. I asked him if he had brother and he initially stated he had no brother's. I again asked him if he had any relatives with the first initial C. and he finally stated yes that he had a brother Chris. I also asked him if he uses Marijuana and he stated," sure I party once in a while". I asked him if sells Marijuana and he stated that he had nothing else to say. B. Keane was subsequently transported to headquarters for processing.

Keane's daughter (Kerry) was turned over to the custody of Connie Hart (Susanne's mother) and transported to 57 Nejecho Drive in Brick, NJ. Susanne requested that her mother be able to take custody of Kerry.

At headquarters I again advised B. Keane of his rights against self incrimination from the Brick Township Police Department Miranda Rights Waiver Form while Det. Lash #159 was present. Keane read, signed, and stated that he understood his rights. During questioning I asked Keane about the pills he turned over to me. This time Keane said that he found the pills on his boat after cleaning it out for the end of the season. I went on to ask Keane if he has any idea why the box was mailed to him and he put his head in his hands while bent at the waist and said I have no idea. At this point I did not ask B. Keane any further questions and finished his processing. B. Keane was charged with Possession of over 50 grams of Marijuana 2C:35-10A(3) and Possession of Marijuana with Intent to Distribute 2C:35-5B(11) on Warrant W2006-001762-1506 and bail was set in the amount of $7500.00.

I also processed S. Keane and advised her of her rights against self incrimination from the Brick Township Police Department Miranda Rights Waiver Form while Det. Lash #159 was present. S. Keane read, signed, and stated that she understood her rights. During questioning I asked S. Keane if her husband uses Marijuana and she stated that "he might" then 'he probably does". I then asked if her husband sells Marijuana and she responded that I think I should have my attorney before I say anything else. At this time questioning stopped and S. Keane was further processed and also charged with Possession of over 50 grams of Marijuana 2C:35-10A(3) and Possession of Marijuana with Intent to Distribute 2C:35-5B(11) on Warrant W2006-001763-1506. Bail was set in the amount of $7500.00.

Both Keane's were released after posting bond.

Note: Keane's vehicle was towed from the scene by Brick Performance and is being held at Police Headquarters for forfeiture.

| 57. TYPE NAME | 58. BADGE NUMBER | 59 Page | of | 60. DATE OF REPORT |
|---|---|---|---|---|
| Detective Jason Shephard | 167 | | | December 2, 2006 |
| Signature [signature] | | 61 STATION | 62. TROOP | 63. DIVISION |

ORIGINAL

# EXHIBIT 1(e)

YOUR RIGHTS

Place OCPO

Date 5-2-2007

Time 1435 HRS

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. If you wish a lawyer, and cannot pay for one, you may apply to the court and one will be appointed for you. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER

I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer present during this interview. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Signed [signature]

Witnesses: [signature]

[signature]

Time 2:40 P

2:40 PM

# EXHIBIT 1(f)

Today is May 2, 2007, the time is approximately 2:35 in the afternoon and we are at the of Ocean County Prosecutor's Office.

MARJORIE HERR
TYPIST
MAY 3, 2007

Q Mr. Keane before we ask you any questions you must understand your rights. You have the right to remain silent, do you understand that?

A Yes

Q Anything you say can be used in court, you have the right to talk to a lawyer for advise before we ask you any questions and to have him with you during this questioning which obviously you do. Um you have this right to advise and presence of a lawyer and if you can not pay for one one can be appointed to you by the court, but that's not an issue, um if you wish to answer any questions now without your lawyer, which is not an issue, ah you have the right to stop answering questions at any time, you also have the right to stop answering at any time until you talk to your lawyer, which again that is not an issue.

Q Your lawyer is present today, John Flynn.

A I am.

Q Mr. Flynn.

A I am present. John Flynn at the conference table.

Q And if you could just read, you can read and right the English language?

A Yes.

Q Ok would you just read this out loud and sign then sign for me?

Q Read the waiver.

A I have read this statement on my right shown above, I understand what my rights are and I am willing to answer any questions and make a statement, I do not want a lawyer

Q Your lawyer is present

I do want a lawyer present during this interview, I understand and know what I am doing, no promises or threats have been made to me and now pressure of any kind has been used against me.

But you have been approved for the PTI Program have you not on your indictment?

A    Yes

Q    Ok sign that.

Q    And your lawyer signed as a witness and also Investigator Murphy at 2:40 p.m., correct?

A    Yes

Q    Ok Mr. Keane my name is John Murphy, I am an Investigator with the Ocean County Prosecutor's Office, this is Assistant Prosecutor Bridget Coughlin. Um I would like to ask you some questions regarding the events that occurred on December the 1st of 2006.

Ok

Are you willing to make a voluntary and truthful statement about this matter?

Yes

Have you been advised of your constitutional rights and signed a waiver of those rights?

Yes

Please state your name, address, phone number and date of birth.

Brian Keane
39 Sandy Point Drive
Brick, New Jersey 08723

Can your read  Oh I'm sorry.

Date of birth: 9-5-58

Can you read and write the English language?

Yes

Q What is the extent of your education?

A I have a college degree BS is business, minor in marine biology.

Q And by whom are you employed?

Marine Max

And where are they located?

1500 Riverside Drive, in Brick.

Q Ok Mr. Keane could you rehash the events of December the 1st, 2006 please?

A Came home from work, my wife and my child greeted me in the street right in front of my house

Q Around what time was that when you came home from work?

Probably around 6

In the evening?

Yeah 6- 6:15 I'm usually clockwork ah we go to the Labador Lounge just about every Friday night in Normandy Beach for diner. Ah I went up to the liquor store to get a bottle of wine for diner on the way there and back my wife told me that there was a suspicious package that got dropped off at the house by Fed-Ex, um she didn't like the return address. I went back to the house on the way to the restaurant when up looked at the package put it in my truck and on the way to Normandy Beach I stopped at Windsor's Yacht Basin where either a day or two before I had cleaned out my boat I had thrown two or three muscle relaxers that I had in a plastic bag, pulled in there to retrieve them because my back was killing me and I was obviously kind of nervous about what was transpiring and the police pulled in

Ok what, what did the package look like?

It was dark the best of my knowledge it was regular brown box.

And whom was it addressed to?

My daughter.

Q And was there a return address on it?

A Yes

Q And what was the return address?

A The return address was a C. Keane from Mill Valley, California.

Q Do you know who C. Keane is?

A No

Q You do not.

A No

Q Do you know anyone in California?

Off the record. Off the record.

We are going to be stopping tape the time is 2:42 p.m.

And we are continuing tape at 2:46 p.m.

Please go back for a second, what what the package look like?

Just a regular brown box.

Q And it was address to

A Carrie Keane

Q And that is?

A My daughter.

Q Ok and the return address?

A Don't know the street it was a C. Keane from Mill Valley, California.

Q Mill Valley, California ok. Um so you picked up the package, you put it in the car and you drove to Windsor's Yacht Basin who was in the car with you?

A My wife in the front seat my baby in the back seat.

Ok did you know what the package was when you put it in the car?

Yes I had an inclining.

Ok what, what was in the package?

I believe three individually wrapped parcels of marijuana.

Were you expecting that package?

I, yes I knew it was coming.

But you did not recognize the sender that was on the package?

No, no

Ok.

So when your wife said that she knew something suspicious was there she did not, did she know what was in the package?

No

Q    Ok um but you when she said that a package arrived for you you knew what was in that package?

A    Yes.

And you said that it was marijuana in that package?

Yes

Q    And you were expecting marijuana to be delivered to your house?

I got a tip two days before that it was early Christmas present.

And did you know how much marijuana that they were sending to you?

A    Yes.

Q    And you don't know who sent the package to you?

A    No.

Q    Do you know who phoned you or contacted you in regards to this package and told you it was coming?

A    I got a call from a gentlemen named John to me your getting an early Christmas present.

Q    And that's all you knew.

A    That's all I knew.  I actually totally forget about it um I'm very busy at work, when she told me that the package arrived I knew what was happening.

Q    So when you were contacted by this individual that said you had an early Christmas present coming you knew at that time what the package was gonna contain?

A    Yes

Q    Did you know much was gonna be contained in the package?

A    Yeah I was told like three, three pounds.

Q    Did your wife have any idea as to what was gonna be in the package?

A    No

Q    What's your wife's name?

A    Susanne

Q    Same last name?

A    Yes.  Needless to say she was extremely upset.

Q    Ok So we get back on track here, you drove towards the yacht basin where you picked up a bag of you said muscle relaxers?

A    Yeah I had cleaned out my boat the day before or two days before on the way out there is a little foyer there and I think two muscle relaxers I've had a bad back from a previous car accident.  Um didn't need them and it sounds strange but I threw them right on the foyer as you exit the marina.

Q    Did you have a prescription for those muscle relaxers?

A    No I didn't.

Q    Ok and

A     A customer of mine at work knew I had a bad back

Q     And gave them to you?

A     Yeah he gave me like four of them I ate two they didn't do anything and when I cleaned my boat out I everything goes for some reason it was in one of the top draws.

Q     And you knew that it was illegal to have these without a prescription the muscle relaxers.

A     I was kinda sorta under the impression they were generic.

Q     What do you mean by generic?

A     That they weren't, I didn't even know what they were I was just told they were muscle relaxers that a friend of mine had from his doctor and

Q     So your when your in the yacht basin you picked up the muscle relaxers

A     My back was killing me I was kinda nervous I got out I ran over I picked them up when I came back around the side of the car two cars pulled in and it was the police.

Q     Ok and where were you gonna go after you picked up the muscle relaxers?

A     I was going to the Labador Lounge.

       With the package in the car?

       Yes

Q     What were your plans to do with the package?

A     That I didn't know.

Q     Was there a reason you took the package from the porch into the car?

       Yeah cause I knew what was in it and I didn't want it

       You didn't want to what?

       In my house. I didn't want it in my house.

       Did your wife ask you what was in the package?

A She was upset, confused, nervous didn't know what was going on. I said let's go to diner have a glass of wine and

Q Now it was three pounds of marijuana what was your intention to do with that marijuana?

A Then around Christmas time I've got a bunch of friends who smoke marijuana and we were gonna divvy it up for Christmas time.

Q Ok so you were gonna sell to them and/or distribute to them?

A Yes

Q So your saying that your wife did not know what was in the package but .

A Had no idea

She was upset and concerned

A Because apparently the Fed-EX—we arrive home every day clockwork around 5:30 um but there was a Fed-EX truck sitting in front of the house he, she got out of the car and was bringing groceries in it was dark out, she signed for it put it on the front porch was undoing the groceries chasing my daughter around, she is very rambunkcious and shortly after that I pulled up.

Ok. Um

And she said Bri there was a Fed-EX truck in front you know the guys didn't leave there's a package on the front with a bogus return address on it you know what the hell is going on?

How did she know that it was a bogus address?

A Because C. Keane is an initial of my brother but he doesn't live in California he lives in Washington Township New Jersey.

Q Ok. And you knew marijuana was illegal?

A Yes.

Just to clarify your wife did not know what was in the package or she did know

A No idea.

Ok

Actually I may be in here shortly going to divorce court.

Q    Well hopefully that's not gonna happen.

A    No but she's not happy.

Q    Well when this is over she may start to get happier.

Q    So you knew, you knew when the police pulled up what they were looking for at that time?  You knew what was in the package when they asked you what was in the package?

A    Yeah, well as soon as they got out they said you know we have you with the package.

Q    And you responded that you didn't know at that time.

A    No I was upset I was confused.

But you knew your telling us the truth today that you knew what was in the package?

A    Yes

That you knew it was marijuana?

Yes

Q    And it wasn't a bomb as you stated to the police?

No

Q    And you knew it wasn't a bomb?

A    No

And you weren't going to the Fed-EX ?

A    No.

Q    So the story was I thought it was a bomb so I put it in my car with my wife and my baby?

A    I didn't know what to say.

Q With my baby. But you knew at that time that it was marijuana?

A Yes.

Q I don't have any other questions do you have any other questions?

Q No I don't have any other questions um is there anything further that you would like to add to this statement that you feel pertinent and important?

A Just it was a very stupid thing to be involved with I didn't want to be involved with it and ah I just want to put it behind me and get my wife back to work and move on with my life.

Q Have you been threatened or mistreated by any person present in this room?

A No.

Q Has this statement been given voluntarily of your own freewill and accord?

A Yes

Q And the answers you've given been and true and correct to the best of your knowledge?

A Yes.

Q Ok after this statement has been transcribed to the typewritten page and you've had the opportunity to read it um and you have read or had it read to you would you sign and validate that it is true and correct?

A Sure

That will complete this statement, the time is approximately 250 hours.

______________________________
BRIAN W. KEANE

______________________________
WITTNESS