1   Michael J. Coffino (SBN 88109)
    Email: mcoffino@reedsmith.com
2   James E. Heffner (SBN 245406)
    Email: jeheffner@reedsmith.com
3   Christopher C. Foster (SBN 253839)
    Email: cfoster@ReedSmith.com
4   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
5   San Francisco, CA 94111-3922

6   **Mailing Address:**
    P.O. Box 7936
7   San Francisco, CA 94120-7936

8   Telephone:    +1 415 543 8700
    Facsimile:    +1 415 391 8269
9
    Attorneys for Plaintiffs
10  Robert Carl Patrick Keane and Chieko Strange

11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  ROBERT CARL PATRICK KEANE,           No.: C 07 4894 SBA
    individually; and CHIEKO STRANGE,
16  individually,                        **PLAINTIFFS' MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
17                  Plaintiffs,          OPPOSITION TO DEFENDANT SETH
                                         MCMULLEN'S MOTION FOR SUMMARY
18         vs.                           JUDGMENT**

19  SETH M. MCMULLEN, PAUL ACCORNERO     Date:      September 16, 2008
    and JOHN SILVA,                      Time:      1:00 p.m.
20                                       Place:     Courtroom 3, 3rd Floor
                    Defendants.          Before:    Hon. Saundra B. Armstrong
21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

I.      INTRODUCTION ...................................................................................................................1

II.     PLAINTIFFS' STATEMENT OF THE FACTS ....................................................................2

        A.      State and Federal Law Enforcement Conduct an Investigation .................................2

        B.      Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home ........................................................................................................................3

        C.      Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice." ...................................................................................................................6

        D.      Procedural History and Discovery Issues ................................................................6

III.    LEGAL STANDARD .........................................................................................................7

IV.     ARGUMENT .....................................................................................................................8

        A.      McMullen Obtained the Warrant(s) Through Judicial Deception. ...........................8

                1.      The Warrant Affidavit Contained False and Misleading Statements. ................................................................................................8

                        a.      McMullen Misrepresented the McGuigan "Identification." .................8

                        b.      McMullen Misrepresented the Details of a Prior Shipment to the New Jersey Address .............................................................10

                        c.      McMullen Suppressed Critical Information from the Brick Township Investigation ...........................................................11

                        d.      The Return Address is Insufficient to Support a Finding of Probable Cause ...............................................................................11

                2.      McMullen Also Obtained the Arrest Warrant through Judicial Deception ...........................................................................................12

                3.      McMullen is not Immunized by the Decision to Prosecute ...........................13

        B.      The Use of Excessive Force Violated Plaintiffs' Constitutional Rights ....................14

                1.      McMullen Violated the Clearly Established Knock and Announce Procedure ......................................................................................14

                        a.      McMullen Did Not Announce His Presence and Purpose ..................14

                        b.      McMullen Failed to Wait a Reasonable Time Before Entering ...............................................................................................15

                        c.      McMullen Had no Justification For Failing to Announce His Presence and Wait for Plaintiffs to Answer the Door. ..................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.    McMullen Used Excessive Force Against Plaintiffs and Their
      Property During the Search and Arrest. ..........................................................17

      a.    McMullen's Use of Weapons During The Search Violated
            Plaintiffs' Constitutional Rights. ...........................................................17

      b.    The Use of Handcuffs During The Home Search Violated
            Plaintiffs' Constitutional Rights ............................................................19

      c.    McMullen Used Excessive Force When Placing His Boot
            on Strange's Head ...................................................................................20

3.    The Damage to Plaintiffs' Personal Property Violated Their
      Rights ...............................................................................................................20

C.    Plaintiffs' Claims are Properly Asserted Under § 1983 Because
      McMullen Acted Under the "Color of State Law" ......................................................20

      1.    The Sole Authority for McMullen to Search Plaintiffs' Home and
            Arrest Mr. Keane Came from the State of California......................................21

      2.    McMullen Was a "State Actor" Because Plaintiffs' Constitutional
            Rights Were Violated by Joint Participation Between McMullen
            and the State ..............................................................................................22

V.    PLAINTIFFS ALSO SEEK DENIAL OF MCMULLEN'S MOTION BECAUSE
      OF AN INADEQUATE OPPORTUNITY TO GATHER DISCOVERY TO
      OPPOSE THE MOTION ...........................................................................................23

VI.   CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Arizona v. Maricopa County Medical Soc.,
    457 U.S. 332 (1982)..............................................................................................7

Baldwin v. Placer County,
    418 F.3d 966 (9th Cir. 2002) .............................................................................18

Beck v. City of Upland,
    527 F.3d 853 (9th Cir. 2008) .............................................................................13

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
    403 U.S. 388 (1971)............................................................................................7

Borunda v. Richmond,
    885 F.2d 1384 (9th Cir. 1988) ...........................................................................13

Brae Transportation, Inc. v. Coopers & Lybrand,
    790 F.2d 1439 (9th Cir. 1986) ...........................................................................24

Burlington Northern Santa Fe R.R. Co. v. Assinibione and Sioux Tribes of the Fort Peck
    Reservation,
    323 F.3d 767 (9th Cir. 2003)........................................................................24, 25

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)............................................................................................7

City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,
    838 F.2d 268 (8th Cir. 1988) .............................................................................7

Copelan v. Croasmun,
    84 Fed. Appx. 762, 763 (9th Cir. 2003)............................................................23

Edmonson v. Leesville Concrete Co.,
    500 U.S. 614 (1991)..........................................................................................22

Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.,
    525 F.3d 822 (9th Cir. 2008) .............................................................................24

Forster v. County of Santa Barbara,
    896 F.2d 1146 (9th Cir. 1990) ...........................................................................8

Franks v. Delaware,
    438 U.S. 154 (1978)...........................................................................................8

Franklin v. Foxworth,
    31 F.3d 873 .................................................................................................17, 19

Howerton v. Gabrica,
    708 F.2d 380 (9th Cir. 1983) .............................................................................23

Hudson v. Michigan,
    126 S. Ct. 2159 (2006)................................................................................14, 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Jacobs v. City of Chicago,
    215 F.3d 758 (7th Cir. 2000) ...................................................................................16

Liston v. County of Riverside,
    120 F.3d 965 (9th Cir. 1997) ......................................................................................8

Lugar v. Edmondson Oil Co.,
    457 U.S. 922 (1982) ..................................................................................................20

Meredith v. Erath,
    342 F.3d 1057 (9th Cir. 2003) ...................................................................................19

Metabolife International, Inc. v. Wornick,
    264 F.3d 832 (9th Cir. 2001) .....................................................................................24

Miller v. Placer County,
    84 Fed. Appx. 973, 974 (9th Cir. 2004)....................................................................18

Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,
    182 F.3d 157 (2nd Cir. 1999) .....................................................................................7

Richards v. Wis.,
    520 U.S. 385, 394 (1997)...........................................................................................16

Robinson v. Solano County,
    278 F.3d 1007 (9th Cir. 2002) ...................................................................................18

San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,
    402 F.3d 962 (9th Cir. 2002) .....................................................................................20

Santos v. Gates,
    287 F.3d 846 (9th Cir. 2002) .....................................................................................17

Smiddy v. Varney,
    665 F.2d 261 (9th Cir. 1981) .....................................................................................13

U.S. v. Banks,
    540 U.S. 31 (2003).....................................................................................................15

U.S. v. Combs,
    394 F.3d 739 (9th Cir. 2005) .....................................................................................14

U.S. v. Leichtmann,
    940 F.2d 370 (7th Cir. 1991) .....................................................................................14

U.S. v. Reilley,
    224 F.3d 986 (9th Cir. 2001) .....................................................................................16

U.S. v. Rodriguez,
    663 F. Supp. 585 (D.C. Cir. 1987)............................................................................15

U.S. v. Spriggs,
    99 F.2d 320 (D.C. Cir. 1993).....................................................................................14

U.S v. Watson,
  423 U.S. 411 (1976).........................................................................................................12

United States v. Stanert,
  762 F.2d 775, *as amended*, 769 F.2d 1410 (1985) ...........................................................8

Visa International Service Association v. Bankcard Holders of America,
  784 F.2d 1472 (9th Cir. 1986) .........................................................................................24

### OTHER AUTHORITIES

21 U.S.C. § 873.................................................................................................................21

42 U.S.C. § 1983...............................................................................................................6

Fed. Rule Civ. Proc. 56(c) ...............................................................................................7

Fed. Rule Civ. Proc. 56(f)................................................................................................23

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I.     INTRODUCTION

Defendant Seth McMullen ("McMullen") seeks summary judgment or, in the alternative, summary adjudication of Plaintiffs' "investigation-related claims," "excessive force claims" and "section 1983 claims." He fails, however, to meet the burden necessary to succeed with his motion.

For starters, a reasonable jury could find McMullen liable for obtaining the warrants through judicial deception. Indeed, McMullen's motion does not address the numerous material omissions and false statements contained in his affidavit. For example, McMullen's affidavit alleges that an eyewitness made a positive identification of Mr. Keane from a single photo. This is misleading at best. McMullen informed the eyewitness that she was about to view a "possible suspect" before showing her an enlarged copy of Mr. Keane's state ID card including <u>unredacted address information</u> suggesting a connection to the package by way of its return address. Even with this radically improper identification, and contrary to McMullen's affidavit, the witness <u>failed to make a "positive identification</u>." Another example relates to McMullen's claim that a prior shipment was sent to the same address without return address information. Again, this is simply false. Had McMullen provided the information about the prior shipment that <u>did include return information</u> and was <u>not addressed to the same address</u>, he would have presented the Magistrate with evidence illuminating a pattern of stolen identifications for drug shipments and therefore vitiating the reliability of the return information on the package. These are only two examples of McMullen misstating and cherry-picking allegations to deceive the Magistrate.

From the moment McMullen entered Plaintiffs' house without knocking or announcing the officers' presence, he trampled Plaintiffs' rights with excessive force. In an unnecessary show of force, McMullen stormed the house, trained his weapon on Mr. Keane and Ms. Strange, placed his boot on Ms. Strange's head as she lay face down handcuffed, yelled at and otherwise threatened Plaintiffs while keeping them handcuffed for more than an hour. Further, the search resulted in substantial unnecessary damage to Plaintiffs' home and property.

McMullen's attempt to hide behind his position as a federal officer to avoid liability under § 1983, in this case, is ludicrous. A federal officer acts under the color of state law when his actions can "fairly be attributable to the state." Under the relevant Supreme Court test, McMullen's conduct

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

is attributable to the state.  Indeed, McMullen acted pursuant to state warrants, issued by a state court, to enforce state laws.  The warrants were obtained primarily in reliance on state investigation efforts.  Further, McMullen executed the warrants in accordance with state requirements, and with substantial participation from state actors who aggravated Plaintiffs' injuries with improper interrogation efforts and property damage.  McMullen's conduct was saturated in state, not federal, authority, function and purpose.

The conduct in this case offended basic investigatory and search standards of law enforcement, as well as established constitutional principles.  As Plaintiffs' expert puts it: "The defendants violated multiple law enforcement standards and conduct in the action, including with respect to the handling of the criminal investigation and the subsequent execution of the search warrant."  This case is ripe for jury determination, and Plaintiffs respectfully urge the Court to deny this motion in its entirety.

## II.    PLAINTIFFS' STATEMENT OF THE FACTS

Plaintiffs employ a uniform statement of facts for  their oppositions to the pending summary judgment motions.  For the convenience of the Court, Plaintiffs set out the statement of facts here.

On November 29, 2006, an unknown person tried to mail a package to Kerry Keane in Brick, New Jersey from the Mail Depot in Petaluma, California.  The package had a return address of "C. Keane, 307 N. Ferndale Ave., Mill Valley, CA," the location of Plaintiffs' home.  Although suspicious, the owner of the Mail Depot, Maureen McGuigan ("McGuigan") accepted the package for shipment.  McGuigan later opened the package to discover six pounds of marijuana.  She brought the package to Officer Jim Stephenson of the Petaluma Police Department, who interviewed her for almost an hour.  Declaration of Maureen McGuigan ("McGuigan Decl.") ¶ 15.

### A.    State and Federal Law Enforcement Conduct an Investigation

Officer Stephenson and another officer later visited the Mail Depot.  *Id*. ¶ 18.  They questioned McGuigan for about twenty-five minutes and asked her to identify the person who attempted the shipment from a "photo array" of six individuals.  *Id*. ¶¶ 19-20.  She could not.  *Id*. ¶

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

1    21.[1]  The same day, the Petaluma police officers contacted the DEA, and the following day, two

2    DEA agents, including Defendant McMullen, visited the Mail Depot.  The investigation that

3    followed is charitably characterized as reckless and included manipulation of evidence to produce a

4    search warrant.

5           For example, rather than conduct a standard six-pack photo array, McMullen showed

6    McGuigan an enlarged photocopy of Mr. Keane's California state identification card <u>after</u> expressly

7    identifying him as a "possible suspect."  *Id.* ¶¶ 25, 26; Declaration of Seth McMullen in Support of

8    Motion to Dismiss and for Other Relief ("McMullen Decl.") ¶ 4.  Worse, the photocopy was not

9    limited to a picture, but also included Mr. Keane's <u>name and home address</u>—information

10   suggestively matching the return address of the aborted shipment.  Keane Decl. ¶ 47, Exh. D.  After

11   looking at the highly suggestive photocopy for approximately thirty seconds, Ms. McGuigan

12   concurred with the suggestion that the man in the photocopy "looked like" the person who attempted

13   to mail the package.  McGuigan Decl. ¶ 27.  McMullen did not press McGuigan for any degree of

14   certainty and left after approximately twenty-five minutes.  *Id.* ¶¶ 24, 28.

15          McMullen sent the package to the Brick Township Police in New Jersey for a "controlled

16   delivery," which resulted in the arrest of Brian and Suzanne Keane on December 1, 2006.  The Brick

17   investigation did not reveal <u>any</u> familial or other relationship between the New Jersey Keanes and

18   Mr. Keane.  On the contrary, Brian Keane revealed that his brother Chris was the only relative

19   matching "C. Keane."  Declaration of Abraham Simmons in Support of Motion for Summary

20   Judgment ("Simmons Decl.") Exh. 1(c).  Further, New Jersey investigators determined Mr. Keane

21   and Brian Keane were born only nine months and twenty two days apart, which ruled out the

22   possibility they were brothers.  *See* Simmons Decl. Exh. 1(b); McMullen Decl. Exh 2.

23   **B.    Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home**

24          Defendants evidently did not conduct <u>any</u> additional investigation the following two weeks.

25   Then, on December 15, 2006, with no new information, McMullen signed an affidavit for a search

26   ───────────────
     [1] Defendants have refused to produce this "photo array," which is directly responsive to our discovery
27   requests. Declaration of James Heffner ("Heffner Decl.") ¶ 2.  For that reason, we do not know whether the
     original six-pack photo array contained a photo of Mr. Keane.
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    warrant of Plaintiffs' home.  McMullen Decl. Exh. 2.  As we explain below, the affidavit contained

2    major falsehoods and is grossly misleading in several respects.  To illustrate, the affidavit falsely

3    states that Ms. McGuigan made a "positive identification" based on a photo.  *Id.*  As shown, she

4    never made a "positive identification."  Further, the document was not a photo, but was instead an

5    unredacted version of Mr. Keane's state identification card including his <u>name and address</u> matching

6    that on the package, and McMullen identified the photo as that of a "possible suspect" prior to

7    displaying it.  McGuigan Decl. ¶ 25; McMullen Decl. ¶ 4.  McMullen also swore to the existence of

8    a prior shipment with no return address to the same New Jersey address.  McMullen Decl. Exh. 2.

9    This too was false.  In truth, as we explain below, there was a return address and a *pattern* of identity

10   theft in play.  McGuigan Decl. ¶ 10, 11, 13, Exh. B.  Further, McMullen withheld details of the

11   Brick, New Jersey investigation to create false and misleading impressions.  Most striking, he failed

12   to tell the Magistrate that Brian Keane, in New Jersey, had a brother named Chris Keane, sharing the

13   initials "C. Keane."  Simmons Decl. Exh. 1(d).

14       On December 19, at approximately 7:30 a.m., McMullen and others arrived at Plaintiffs' two

15   bedroom Mill Valley loft while Plaintiffs were getting ready for work.  Keane Decl. ¶¶ 6-7.  The

16   terrorizing raid began with a few seconds of commotion followed by a solitary bang outside the front

17   door.[2]  *Id.* ¶ 7.  Mr. Keane *immediately* looked over the loft railing where he had an unobstructed

18   view out the front glass door.  *Id.* ¶ 8, Exh. B.  He saw a man dressed in black crouching outside the

19   door who, on making eye contact with Mr. Keane, *immediately* shouted "There he is!" and burst

20   through the front door with a rifle drawn and trained on Mr. Keane.  *Id.* ¶¶ 9, 10.  At least two

21   similarly dressed men immediately followed, storming in with rifles trained on Plaintiffs, shouting

22   "Where are your weapons?!" and "Get down on the floor!"  *Id.* ¶¶ 12-13.

23       At no time during this initial intrusion did these armed individuals identify themselves as law

24   enforcement.  *Id.* ¶ 17; Declaration of Chieko Strange ("Strange Decl.") ¶¶ 7, 10.  Indeed, fearing a

25   home invasion, Ms. Strange screamed for Mr. Keane to call the police.  Strange Decl. ¶ 8.  The

26

27   ───────────────
     [2] Markings on the wood deck suggest the bang occurred when someone dropped something onto the deck
     floor (presumably a battering ram of some sort).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

1    intruders stormed up the stairs screaming at Plaintiffs who, frightened and confused, dutifully

2    complied.  In response to requests to identify themselves, defendants screamed instead, "Where are

3    your weapons?!" and "You know why we're here!"  Keane Decl. ¶¶ 15-21.

4            Despite the submissive compliance of their victims, Defendants tightly handcuffed Plaintiffs'

5    hands, resulting in cuts to Mr. Keane's wrists.  *Id.* ¶¶ 23, 26, Exh. C.  They continued to train their

6    weapons on Plaintiffs while they lay face down on the ground until both were cuffed.  *Id.* ¶¶ 20, 22;

7    Strange Decl. ¶ 13.  At one point, still before the intruders had identified themselves, McMullen

8    placed his boot on the head of the helpless and still-handcuffed Ms. Strange.  Strange Decl. ¶ 13.

9    Defendants left Plaintiffs laying face down for at least ten minutes.  Keane Decl. ¶ 26.  At one point,

10   McMullen lifted Mr. Keane off of the ground by the chain between his handcuffs, resulting in pain

11   and physical injury.  *Id.* ¶ 26, Exh. C.

12           During the search, McMullen and the officers unnecessarily damaged furniture and home

13   fixtures.  Keane Decl. ¶ 46.  Co-defendant Paul Accornero ("Accornero") threatened Mr. Keane with

14   imminent use of an aggressive search dog to "tear shit up," and the dog, while under Accornero's

15   control, apparently damaged property.  *Id.* ¶¶ 35, 46.

16           After thirty minutes, Defendants brought the handcuffed Mr. Keane to the bathroom and

17   made him sit on the toilet for an interrogation.  *Id.* ¶ 27.  At this sight, McMullen crudely remarked

18   to co-defendant John Silva ("Silva") "Isn't this ironic?"  It was not until this time Mr. Keane learned

19   the purpose of the invasion.  *Id.* ¶ 28.  During the interrogation, McMullen attempted to elicit a

20   confession by lying about evidence -- telling Mr. Keane his fingerprints were on the package.  *Id.*

21   ¶ 29.  Mr. Keane offered to have his fingerprints taken.  *Id.*  After a fruitless interrogation of Mr.

22   Keane, McMullen and Silva led the handcuffed Ms. Strange into the bathroom, forcing her to endure

23   the same humiliation of sitting on a toilet while interrogated.  Strange Decl. ¶ 17.  Both

24   interrogations revealed nothing linking Mr. Keane to the marijuana package or the New Jersey

25   Keanes or provide any inkling he was involved in criminal activity.  Keane Decl. ¶¶ 30-31; Strange

26   Decl. ¶¶ 22-26.

27           After the fruitless interrogations, defendants placed the handcuffed Plaintiffs on a couch

28   while they continued the search.  The abuse, however, continued.  When Ms. Strange tried to ask

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Mr. Keane what was happening, McMullen yelled: "shut up or I will put your face against the wall!"

2  Strange Decl. ¶ 28 .  Plaintiffs watched in frozen silence as Defendants tore their home apart.

3  Like the interrogations, the search, which lasted for well over an hour, produced no

4  incriminating evidence.  This is underscored by the "fruits" of the search: (1) paperwork regarding a

5  recent cholesterol test (2) bank deposit slips and (3) a phone bill.[3]  *Id.* ¶ 32.  Yet, after the search

6  ended, McMullen bellowed: "he is going to jail!"  *Id.* ¶ 33.

7  **C.    Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice"**

8  Defendants proceeded to arrest Mr. Keane.  Keane Decl. ¶ 40.  As they escorted Mr. Keane

9  from his home, Silva un-cuffed Ms. Strange so she could sign documents relating to the confiscated

10  evidence.  Strange Decl. ¶ 32.  With signature in hand, Silva, without explanation, tossed the search

11  warrant on the counter as he left – the first time Plaintiffs knew one existed.  *Id.*  ¶ 34.

12  Defendants took Mr. Keane to the Sonoma County Main Adult Detention Facility where

13  McMullen and Silva had a female officer search Mr. Keane in their presence.  When Mr. Keane's

14  pants fell to expose his buttocks, McMullen and Silva showed conspicuous amusement at the

15  situation.  Keane Decl. ¶ 43.  The inappropriateness was so palpable that the female officer

16  apologized to Mr. Keane for his understandable humiliation.  Keane Decl. ¶ 43.

17  The District Attorney's initial knee-jerk reaction was to charge Mr. Keane with unlawful

18  possession of marijuana for the purpose of sale.[4]  Ultimately, an investigator asked McGuigan to

19  view a proper six-pack photo array.  Faced with a proper photo array, and despite the taint of the

20  prior suggestive "identification," she identified someone other than Mr. Keane.  Heffner Decl. Exh

21  A.  On March 13, 2007, prosecutors dismissed the case "in the interests of justice."

22  **D.    Procedural History and Discovery Issues**

23  Plaintiffs filed this action in September 2007 pursuant to 42 U.S.C. § 1983, alleging that

24  Defendants violated their constitutional rights while acting under color of state law.  McMullen and

25
26  [3] Indeed, this evidence was exculpatory.  The phone bills contained no calls to any area codes in or near New
   Jersey.  The bank slips showed no deposits of any unusually large sums of money.

27  [4] As will be discussed, the "decision" to prosecute Mr. Keane was apparently made on December 15, 2006,
   four days prior to the search of Mr. Keane's home.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

1    Silva moved to dismiss, arguing that as federal officers, they are immune under § 1983 exposure.

2    Plaintiffs responded with a first amended complaint, adding allegations regarding liability under §

3    1983 and adding an alternative claim pursuant to *Bivens v. Six Unknown Named Agents of Fed.*

4    *Bureau of Narcotics*, 403 U.S. 388 (1971).  In response, concurrently with filing answers to the first

5    amended complaint, McMullen and Silva moved for a more definite statement, but withdrew the

6    patently frivolous motion after receiving Plaintiffs' opposition.5

7                        **III.    LEGAL STANDARD**

8            A party seeking summary judgment bears the burden of establishing that there is "no genuine

9    issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

10   Rule Civ. Proc. 56(c).  A party moving for summary judgment may not simply rely on bare,

11   unsupported allegations "with a conclusory assertion that the [opposing party] has no evidence to

12   prove his case."  *Celotex Corp. v. Catrett*, 477 US 317, 328 (1986) (White, J., concurring).  Rather,

13   the movant must identify specific issues in the factual record where the opposing party has no

14   evidence to support his or her case.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838

15   F.2d 268, 273 (8th Cir. 1988).  Thus, the moving party has a "heavy burden" to show that no

16   reasonable trier of fact could dispute that she has proven the elements of her claims.  *Nationwide Life*

17   *Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999).

18           In ruling on a motion for summary judgment, the court must resolve all ambiguities, resolve

19   all doubts as to the existence of a "genuine issue as to any material fact" and draw all reasonable

20   inferences in favor of the nonmovant.  *Nationwide Life Ins. Co*, 182 F.3d at 160.  In essence, the

21   nonmovant's "version of any disputed issue of fact is correct."  *Arizona v. Maricopa County Medical*

---

5 Although the Court made it clear discovery should proceed unimpeded, Defendants have stonewalled.  For
example, they have not produced a single document in response to Plaintiffs' Requests for Production, which
we served more than two months ago.  Heffner Decl. ¶¶ 2, 4.  Plaintiffs expected to receive evidence showing
the existence of an arrest warrant in Mr. Simmons' declaration where it stated that Exhibit 3(d) is "the abstract
noting the issuance of the arrest warrant and Special Agent Seth McMullen's return of the arrest warrant"
Simmons Decl. ¶ 4.  Yet, Exhibit 3(d) is conspicuously absent from Mr. Simmons' declaration.  *Id.*  Similarly
suspicious, Mr. Keane was never able to obtain the arrest warrant through discovery in the criminal
proceeding.  Keane Decl. ¶ 45.  Plaintiffs have also been unsuccessful in obtaining the arrest warrant in
response to a subpoena to the Sonoma County District Attorney and the Petaluma Police Department.
Heffner Decl. ¶¶ 5, 6.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    *Soc.*, 457 U.S. 332, 339 (1982).  Here, McMullen's arguments teem with issues of triable fact.

2    Indeed, in virtually every instance, the evidence is one-sided in favor of Plaintiffs.

3                                    **IV.    ARGUMENT**

4    **A.    McMullen Obtained the Warrant(s) Through Judicial Deception**

5          McMullen is not entitled to qualified immunity because he deceived the Magistrate with a

6    false and misleading affidavit in support of the warrants.  An officer is not immune from § 1983

7    liability, and is not immune when the affidavit recklessly disregards the truth and, purged of its false

8    or reckless material, would not support a finding of probable cause.  *Franks v. Delaware*, 438 U.S.

9    154, 171-72 (1978) (establishing the rule for criminal cases); *Forster v. County of Santa Barbara*,

10   896 F.2d 1146, 1148 n.3 (9th Cir. 1990) (applying *Franks* to § 1983 cases).  Indeed, a Fourth

11   Amendment violation occurs when an officer, in seeking a warrant, "intentionally or recklessly"

12   omits facts required to prevent technically true statements in an affidavit from being misleading.

13   *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).  Commonly known as "judicial

14   deception," this principle eliminates the shield of qualified immunity where the officer's misleading

15   acts or omissions manipulate the Magistrate's probable cause determination.  *Id.*, citing, *U.S v.*

16   *Stanert*, 762 F.2d 775, 781 *as amended*, 769 F.2d 1410 (1985).  The judicial deception doctrine

17   ensures that Magistrates receive complete and accurate information and discourages affiants from

18   spinning "less than the total story." *Id.*

19         McMullen deceived the Magistrate.  He cherry-picked facts to justify a search and misstated

20   facts tending to incriminate Mr. Keane.  Many of his misrepresentations and omissions

21   *independently* establish judicial deception.  Taken together, however, they provide a powerful and

22   irrefutable case of judicial deception.

23         **1.    The Warrant Affidavit Contained False and Misleading Statements**

24              **a.    McMullen Misrepresented the McGuigan "Identification"**

25         McMullen asserts that probable cause existed largely because McGuigan "positively

26   identified" Mr. Keane.  McMullen Decl. Exh. 2.  To begin, this is a falsehood.  McGuigan never

27   "positively identified" Keane.  As McMullen admits under oath, she said the photo merely

28   "resembled" or "depicted" Mr. Keane.  McMullen Decl. ¶ 4; Supplemental Declaration of Seth

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    McMullen ("Supp. McMullen Decl.") ¶ 7.  McGuigan states she only said the picture "looked like"

2    the perpetrator.  McGuigan Decl. ¶ 27.  In truth, McMullen simply did not make any efforts to

3    ascertain how certain the identification was.  McGuigan Decl. ¶ 28.  As an expert put it:  the

4    difference between "resemblance" and a "positive identification" is such that "as understood by a

5    DEA officer, when considered along with the totality of my findings, must be considered indicative

6    of false official reporting, perjury, or a level of ineptitude and ignorance of professional standards

7    and training that is unacceptable as a mere 'error'"  Declaration of Michael Levine, ("Levine Decl.)

8    ¶ 14.[6]

9         Worse, the "resemblance" becomes even more attenuated when viewed in the light of highly

10    suggestive circumstances in which McMullen procured it.  *Id*.  McMullen drastically misrepresented

11    what he presented to Ms. McGuigan to obtain the "resemblance."  McMullen told the Magistrate

12    only that he showed Ms. McGuigan "a photo of a possible suspect."  McMullen Decl. Exh. 2.  He

13    showed Ms. McGuigan more than just a photograph.  He presented her with an enlarged copy of Mr.

14    Keane's California identification card, displaying <u>Mr. Keane's name and home address</u>, which,

15    coincidentally, matched the address on the marijuana package.  McGuigan Decl. ¶ 25; Keane Decl.,

16    ¶ 47, Exh. D.  Indeed, the address information is prominently displayed in the center of Mr. Keane's

17    identification card.  Keane Decl. Exh. D.  He did not disclose this little trick to the Magistrate.  *See*

18    McMullen Decl. Exh. 2.  Moreover, the highly irregular use of a single photo—as opposed to a

19    traditional and customary six pack—intensifies the omission.  Levine Decl. ¶ 17.

20         McMullen also failed to inform the Magistrate that he told McGuigan the photo <u>she was</u>

21    <u>about</u> to <u>view</u> was of a "possible suspect."  McMullen Decl. ¶ 4.  McMullen only told <u>the</u> <u>Magistrate</u>

22    that he showed McGuigan a picture of a "possible suspect."  McMullen Decl. Exh. 2.  In other

23    words, he told the Magistrate only about his actions, not about his statement.  Telling McGuigan that

24    the person in the photo she was about to see was actually a "suspect" exacerbated an already highly

25    suggestive circumstance.  Levine Decl. ¶ 16.

26

27    _____

[6] Mr. Levine is a former Supervisory Agent for the DEA and a Police Instructor for the State of New York.  Plaintiffs retained Mr. Levine as a consulting expert in this action.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    McMullen failed also to disclose to the Magistrate that on the day Ms. McGuigan received

2    the package of marijuana, two Petaluma police officers visited the Mail Depot and presented

3    McGuigan with a "photo-array" of six individuals.  McGuigan Decl. ¶ 19.  He also failed to disclose

4    that McGuigan was unable to identify any of the six individuals as the person who attempted to mail

5    the package.  *Id*. ¶ 21.

6         **b.    McMullen Misrepresented the Details of a Prior Shipment to the New**

7              **Jersey Address**

8    McMullen represented to the Magistrate that "on May 31, 2006, another package, with an

9    unknown sending address, was sent to 39 Sandy Point Drive," the same address on the "C. Keane"

10   package.  McMullen Decl. Exh. 2.  This is untrue.  The prior May 31 shipment was addressed to

11   Kerry Keane at 36, not 39, Sandy Point Drive.  McGuigan Decl. Exh. B.  Further, the shipment did

12   have sender information:  "Bob Hart" with a 415 telephone number.  McGuigan Decl. ¶ 13, Exh B.

13   The phone listing is for Robert Hart in Sausalito, in the same county as Plaintiffs.  Mr. Hart has

14   *never* shipped a package from the Mail Depot.  Keane Decl. ¶ 48.  Critically, Mr. Hart is the same

15   family name as Brian Keane's mother in law.  Simmons Decl. Exh. 1(d).

16   This complete story would have provided the Magistrate with persuasive evidence showing a

17   pattern of identity theft – vitiating the reliability of the C. Keane return address information.  The

18   individual who shipped the C. Keane package initially prepared it for Kerry Keane at 36 Sandy Point

19   Drive – the same address as the Hart shipment.  McGuigan Decl. ¶ 8, 11, Exh. A.  He later called

20   back and changed the address to 39 Sandy Point Drive.  *Id*. ¶ 9.[7]  This undoubtedly shows that both

21   shipments were made by the same person who made the same mistake twice.  Critically, this same

22   person used two different return names and addresses.  Nevertheless, the Magistrate was not

23   presented with this information.  McMullen either knew of the identify theft pattern or turned a blind

24   eye to evidence that would undermine his reckless pursuit of Mr. Keane.  In either case, McMullen

25   presented a grossly misleading picture to the Magistrate.

26   ───────────────

27   [7] Highlighting the general recklessness and unwillingness to perform an adequate investigation is the fact that there is no evidence that any officer followed up on this phone call to determine whether the caller's identity could be ascertained from the phone records.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

c.    **McMullen Suppressed Critical Information from the Brick Township Investigation**

The New Jersey investigation produced information that McMullen selectively revealed to present a misleading picture of Mr. Keane's culpability.  Brian Keane told authorities that he did not know who sent the package and that he had a brother named Chris, who thus shared the initials "C. Keane" with the package sender.  Simmons Decl. Exh. 1(d).  At no point did Brian Keane identify either Plaintiff as relatives or acquaintances.  Simmons Decl. Exh. 1(d).

McMullen withheld this information from the Magistrate, selectively indicating only that the New Jersey Keanes denied ownership of the package.  He further misled the Magistrate in stating that Brian Keane and Mr. Keane may be related "due to their similar physical appearances" and then withholding from the Court that the Keanes in New Jersey specifically denied any familial relationship.  *Id.*  Indeed, the DEA could have easily determined whether the New Jersey Keanes and Mr. Keane had any familial relationship using one of the many powerful information databases.  Levine Decl. ¶ 21.  Further, McMullen withheld from the Magistrate the known fact that Carl Keane and Brian Keane were born slightly more than nine months apart, making it virtually impossible for them to be brothers.  Simmons Decl. Exh. 1(b); McMullen Decl. Exh 2.  McMullen was engaged in sharp practices, providing the Magistrate with highly selective information.

d.    **The Return Address is Insufficient to Support a Finding of Probable Cause**

To justify their probable cause theory, Defendants rely heavily on the fact that the package bore Plaintiffs' home address.  This is astonishing since that evidence compels the opposite conclusion.  It is well established in law enforcement that drug dealers *never* place identifying information on packages containing contraband and that, when such information is used, it is almost certainly a form of identity theft.  Levine Decl. ¶ 12.  In other words, the use of Plaintiffs' home address was <u>exculpatory</u> evidence that would have put any reasonable law enforcement agent on a wholly different investigative path.  *Id.* ¶ 11.  This is so obvious that when McMullen and Silva first asked Mr. Keane about the package, his immediate retort was "What kind of a moron puts their own return address on a package of drugs!?"  Keane Decl. ¶ 28 .

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Importantly, McMullen did not disclose this established investigatory guideline to the

2  Magistrate.  He knew better and, by not telling the Magistrate, compounded his judicial deception.

3  This is especially true considering that someone had "stolen" the identity of Mr. Hart for the prior

4  shipment to New Jersey.

5  McMullen's affidavit was replete with falsehoods, misleading statements and material

6  omissions.  It constituted judicial deception and procured a search warrant under false pretenses.[8]

7  **2.    McMullen Also Obtained the Arrest Warrant through Judicial Deception**

8  Defendants have not produced any affidavit in support of an arrest warrant.  Nor have they

9  ever produced an arrest warrant.  For now, we assume that any affidavit in support of the arrest was

10  based on the same factual misrepresentations, errors and omissions that infected the affidavit

11  McMullen proffered in support of the search warrant.  Defendants have not indicated otherwise.

12  Consequently, the probable cause analysis of the arrest warrant does not differ from the search

13  warrant analysis.  *See Forster* v. *County of Santa Barbra*, 896 F.2d 1146 (9th Cir. 1990).

14  Moreover, even if the arrest warrant were valid when issued, it grew stale as a result of the

15  home search.  Indeed, a warrant may become stale when it is "based upon discredited information."

16  *U.S v. Watson*, 423 U.S. 411, 432 n.5 (1976) (Powell, J., concurring).  Here, the search of Plaintiffs'

17  home thoroughly discredited the "information" upon which the warrant was based.  The officers tore

18  through the home with a police dog, interrogated both Plaintiffs exhaustively, attempted to coerce

19  confessions with threats of property damage and false statements about evidence—and did not

20  discover the *slightest shred* of evidence linking Mr. Keane to the illegal shipment or any crime.

21  Keane Decl. ¶¶ 30-31; Strange Decl. ¶¶ 22-26.  After the search, reliance on the previously issued

22  arrest warrant—if it existed—was wholly unreasonable.

23

24  [8] McMullen's suggestion that the Magistrate's finding of probable cause, based on the misleading affidavit, immunizes

25  him from liability is nonsense.  McMullen Motion, at 20:28-21:28.  McMullen cites no authority for this proposition, which would negate the judicial deception doctrine in its entirety.  As the law stands, "if an officer 'submitted an

26  affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot

27  be said to have acted in an objective reasonable manner, and <u>the shield of qualified immunity is lost</u>." *Branch v. Tunnell*, 937 F.2d at 1387 (9th Cir. 1991) (*quoting Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985)) (emphasis added).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**3.    McMullen is not Immunized by the Decision to Prosecute**

McMullen argues that because a District Attorney decided to prosecute Mr. Keane before the search and arrest, he is immune from liability for damages related to the investigation or that arose from Mr. Keane's subsequent arrest. McMullen Motion at 19:26-20:25. He is wrong.

A prosecutor's decision to file a criminal complaint only immunizes officers when the prosecutor exercised "*independent* judgment" in the decision to prosecute. *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008); *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (emphasis added). A prosecutor does not, however, exercise independent judgment when "the investigating officers made material omissions or gave false information to the prosecutor." *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988); *see also Smiddy*, 665 F.2d at 266-67. In that situation, there is no immunity. *Borunda*, 885 F.2d at 1390.

Here, the decision to prosecute was apparently made on December 15, 2006 – the same day the search and arrest warrants issued. Supp. McMullen Decl. Exh. 1. This alone suggests a likelihood that the prosecutor conducted no independent investigation. Further, in response to a subpoena, the Sonoma County District Attorney has provided no documents that existed on or before December 15, other than McMullen's misleading Investigation Reports. Heffner Decl. ¶ 7.

The Investigation Reports are saturated with the same reckless falsities and omissions as the warrant affidavit. The reports claims that McGuigan "positively identified" Keane, that the "identification" was made with a single "photo," and that there was a prior shipment to the same address with no return information. Heffner Decl. Exh. E. The reports also failed to inform the District Attorney that the "photo" was actually an unredacted state ID card, McGuigan was informed the ID card was that of a "possible suspect," there was a prior photo array or of the details about the prior shipment showing a pattern of identity theft. The District Attorney's exclusive reliance on the police reports rebuts any presumption of immunity. *See Borunda*, 885 F.2d at 1390.

Further, Defendants have produced <u>no</u> <u>evidence</u> that the Sonoma County District Attorney undertook any "independent" investigation before deciding to prosecute. The decision was based on false and misleading information, vitiating any claimed independent judgment.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**B.     The Use of Excessive Force Violated Plaintiffs' Constitutional Rights**

As McMullen admits, "the reasonableness of a search authorized by a valid warrant may be vitiated 'by the manner in which the police conducted the search . . . .'" *Berguist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986). Here, even when acting pursuant to a valid warrant, the use of excessive force against two fully compliant individuals is actionable.

**1.     McMullen Violated the Clearly Established Knock and Announce Procedure**

The "preferred method" of law enforcement entry into a home under the Fourth Amendment consists not only of a physical knock on the door, but an announcement of the officers' presence and purpose and receipt of an actual refusal or a delay of sufficient time to infer a refusal of entry. *U.S. v. Combs*, 394 F.3d 739, 744 (9th Cir. 2005). A civil claim for excessive force may be premised on this alone. *Hudson v. Michigan*, 126 S. Ct. 2159, 2162 (2006). Here, McMullen violated Plaintiffs' rights in two ways – by not announcing presence and purpose and by failing to wait a reasonable time before entering. Levine Decl. ¶ 24.

**a.     McMullen Did Not Announce His Presence and Purpose**

Where it is clear that someone is at home, officers must explain not just who they are, but why they are there. *U.S. v. Leichtmann*, 940 F.2d 370, 374 (7th Cir. 1991). Plaintiffs' testimony eliminates the possibility that McMullen knocked, announced the presence of law enforcement or stated his purpose.[9]

McMullen argues that it is "unimportant that Plaintiffs claim they did not hear" an announcement. McMullen Motion, at 23:20-21. This assertion is not supported by law. Indeed, the announcement must be "loud enough to be heard." *U.S.*, 948 F. 2d at 374; *see U.S. v. Spriggs*, 99 F. 2d 320, 322-23 (D.C. Cir. 1993). Plaintiffs could hear people speaking outside their door and would have heard any announcement. Keane Decl ¶¶ 4, 7, Exh. A. At the time Defendants entered the home, Plaintiffs were getting ready for work in the loft which is part of the open space abutting the front door. *Id.* ¶¶ 4, 8, Exh. B. Plaintiffs were not playing music or the television. *Id.* ¶ 6. Ms.

---

[9] McMullen suggests that Plaintiffs should have been aware of Defendants' identity because they wore DEA issued uniforms. This is absurd. Expecting traumatized citizens facing a Rambo-style raid on their home at the break of dawn and staring down the barrels of weapons to peruse the fine print on clothing is patently unreasonable.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

1  Strange was getting dressed and Mr. Keane was ironing clothes.  *Id.*  In the one or two seconds

2  before the officers invaded Plaintiffs' home, they heard a commotion, a solitary bang as though a

3  battering ram was dropped on the wood porch and an armed man, who was crouched just outside the

4  glass door, yell "there he is" – at no time did Plaintiffs hear a statement of identification or purpose.

5  *Id.* ¶¶ 10, 11, 17; Strange Decl. ¶¶ 7, 10, 11.

6       As further evidence of the failure to announce, Mr. Keane repeatedly asked the Defendants

7  "Who are you!" and Ms. Strange yelled for Mr. Keane to call the police, fearing a home invasion.

8  Keane Decl. ¶¶ 14, 19; Strange Decl. ¶¶ 8, 12.  It was not until Defendants handcuffed Mr. Keane

9  and put him on the floor that he noticed a patch that read "DEA Santa Rosa Drug Task Force" and

10  realized the home intruders were actually law enforcement agents.  Keane Decl. ¶ 22.

11                    **b.    McMullen Failed to Wait a Reasonable Time Before Entering**

12       McMullen does not claim he waited or that he was granted entry to Plaintiffs' home.  His

13  own investigation report says "agents made entry into the residence," and says nothing about being

14  granted entry.  Heffner Decl. Exh. F.  McMullen was not granted entry and was required to wait

15  before entering – which he did not do.  Keane Decl. ¶ 11; Strange Decl. ¶ 7.  Indeed, after knocking

16  and announcing, law enforcement officers must then provide an opportunity for occupants to allow

17  access.  *Hudson v. Michigan*, 126 S. Ct. 2159, 2164 (2006).  If an occupant fails to open the door

18  within a reasonable time or otherwise refuses access, the officer may then forcibly enter the subject

19  premises.  *U.S. v. Rodriguez*, 663 F. Supp. 585, 587 (D.C. Cir. 1987).

20       As a preliminary matter, McMullen failed to knock and announce and could therefore not

21  have waited.  Nevertheless, it is evident that, even if he had knocked and announced his presence, he

22  still failed to wait for a response.  Mr. Keane looked over the edge of his loft and down to the front

23  door within seconds after hearing the first sounds from outside.  Keane Decl. ¶¶ 9, 10.  As he looked

24  down to the door, he immediately made eye contact with an armed man (McMullen) dressed in dark

25  clothing who without hesitation yelled "there he is" and stormed into the house.  *Id.*  There was

26  simply no wait to determine a refusal of entry.

27       In the absence of exigent circumstances, the issue is whether the occupant's conduct suggests

28  a refusal of entry.  *U.S. v. Banks*, 540 U.S. 31, 39 (2003).  Law enforcement must wait long enough

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

1    to provide the occupant time to reach the door.  *Id.*  The length of time will depend largely on the

2    "size and character of the establishment."  *Id.* at 40.  Here, McMullen made almost immediate visual

3    contact with Mr. Keane.  Keane Decl. ¶ 10.  Mr. Keane gave no indication that he was not willing to

4    open the door.  Keane Decl. ¶ 11.  Indeed, McMullen surged into the house in what his expert

5    describes as a "dynamic entry" the moment Mr. Keane was spotted.  Declaration of  Nikos

6    Eliopoulos ("Eliopoulos Decl.") ¶ 14.  Plaintiffs were simply not given an opportunity to respond

7    much less suggest a refusal of entry.

8            c.    **McMullen Had no Justification For Failing to Announce His Presence**

9                  **and Wait for Plaintiffs to Answer the Door**

10           An otherwise unreasonable home entry can be constitutional if the officers have a reasonable

11   suspicion that knocking and announcing their presence "*under the particular circumstances*, would

12   be dangerous or futile, or that it would inhibit the effective investigation of the crime, by for

13   example, allowing the destruction of evidence."  *Richards v. Wis.*, 520 U.S. 385, 394 (1997)

14   (emphasis added).  Here, no such circumstances existed.  Indeed, McMullen's investigation report

15   says only that "occupants were aware of the presence of law enforcement" before "agents made

16   entry."  Heffner Decl. Exh. F.  For McMullen to invoke the exceptions here, he must articulate

17   specific facts making his suspicion reasonable.  *See, e.g.*, *U.S. v. Reilley*, 224 F.3d 986, 991 (9th Cir.

18   2001) (officer not excused from knock and announce rule where danger arises from "generalized" or

19   "nonspecific" fear); *Jacobs v. City of Chicago*, 215 F. 3d 758, 770 (7th Cir. 2000) (officers must

20   identify specific facts suggesting a suspect was likely to destroy or dispose of evidence).

21           Here, there are no particular circumstances to excuse the improper home entry.  Plaintiffs

22   have no weapons registered to them and nothing during the investigation leading up to the search

23   revealed that Mr. Keane or Ms. Strange had any violent tendencies.  Keane Decl. ¶ 16; Strange Decl.

24   ¶ 7.  Furthermore, the crime under investigation (possession of marijuana) is non-violent in nature.

25   Likewise, there was nothing to suggest that knocking and announcing would be futile or result in the

26   destruction of evidence—indeed law enforcement entered the home without even giving Mr. Keane

27   the opportunity to do anything—let alone refuse entry or destroy evidence.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

McMullen's conduct is squarely at odds with the Fourth Amendment.  When McMullen saw Mr. Keane in his loft he should have knocked, announced who he was and why he was there, and allowed Plaintiffs a sufficient amount of time to answer the door.  Following such fundamental constitutional law and well-established law enforcement procedures would have saved Plaintiffs a great deal of the emotional trauma suffered as a result of this ordeal.  Instead, McMullen stormed the home with what he calls a "dynamic entry," which he admits is designed "to use speed, surprise and overwhelming presence in an effort to convey that the officers 'mean business.'"  McMullen Motion, at 24:9; Eliopoulos Decl. ¶ 14

### 2.    McMullen Used Excessive Force Against Plaintiffs and Their Property During the Search and Arrest

McMullen also used excessive force during the entry and search of the home and subsequent interrogation.  To determine when a law enforcement officer has used excessive force in violation of the Fourth Amendment, the "nature and quality of the intrusion" on a person's liberty must be balanced against the "countervailing governmental issues at stake" to determine whether the force was objectively reasonable under the circumstances.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  *See also Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  Although the reasonableness of the conduct is ultimately based on the totality of circumstances, the analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Franklin v. Foxworth*, 31 F.3d 873, 876 (quoting *Graham*, 490 U.S. at 396).  Police misconduct cases almost universally turn on a jury's credibility determination.  *Santos*, 287 F.3d at 853.

### a.    McMullen's Use of Weapons During The Search Violated Plaintiffs' Constitutional Rights

McMullen and the other officers trained their weapons on Plaintiffs until they were handcuffed and lying face down.  Keane Decl. ¶ 22; Strange Decl. ¶ 10.  This never should have happened.  The Ninth Circuit has held that "pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, *especially where the*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*individual poses no particular danger.*"  *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (emphasis added).  *Baldwin v. Placer County*, 418 F.3d 966, 970 (9th Cir. 2002) is right on point.  There, the Court held that during a "para-military" style marijuana raid, training weapons on residents and forcing them to the ground was wholly unjustified where law enforcement officers had no reason to believe the occupants would be armed, would resist or flee.  *See also Miller v. Placer County*, 84 Fed. Appx. 973, 974 (9th Cir. 2004) (qualified immunity denied where officers pointed guns at and handcuffed unresisting residents during a home search for marijuana); *Robinson*, 278 F.3d at 1014-1015 (pointing gun at the head of suspect unconstitutional where suspect earlier used but no longer had a weapon).

Defendants had no justification to train weapons on Plaintiffs at any time.  Doing so was wholly contrary to DEA standards and training.  Levine Decl. ¶ 25.  McMullen argues that his shocking behavior was simply "standard" procedure in home searches and that the inherent danger of narcotics searches justifies his conduct.  McMullen Motion, at 24:9-16.  That is not the law. *Graham* requires "careful attention to the facts and circumstances of each particular case" to determine whether law enforcement officers engaged in excessive force.  490 U.S. at 396.  Further, the "dynamic entry" McMullen describes was not authorized in the present case.  Levine Decl. ¶ 24.

What is more, nothing in the investigation revealed that Mr. Keane or Ms. Strange had any violent tendencies or had ever been involved with any kind of violent crime.  Nor was there any reason to believe that Mr. Keane or Ms. Strange would be armed or dangerous.  Keane Decl. ¶ 16; Strange Decl. ¶ 7.  As in *Baldwin*, Mr. Keane was alleged to have committed a non-violent crime. 418 F.3d 966, 970 (9th Cir. 2002).  Moreover, Plaintiffs never resisted or in any way attempted to flee.  Keane Decl. ¶ 18; Strange Decl. ¶¶ 10, 13.

Underscoring McMullen's lack of justification for his egregious conduct is his own search warrant.  "Weapons with serial numbers" are property to be confiscated during the search—not as evidence in connection with any crime—but as "personal property tending to establish the identity of persons in control of [the] premises . . . ."  McMullen Decl. Exh. 2.  Simply put, McMullen cannot identify any "particular danger" justifying his use of weapons.  His conduct was objectively *unreasonable*.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**b.    The Use of Handcuffs During The Home Search Violated Plaintiffs'**
**Constitutional Rights**

The use of handcuff*s* during the execution of a search warrant must be justified by the totality of the circumstances, particularly in light of the fact that "handcuffing substantially aggravates the intrusiveness" of a detention. *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Cir. 2003). *Meredith* is directly on point. There, handcuffing the plaintiff during the execution of a search warrant was unconstitutional because the crime under investigation (although a felony) was non-violent, the investigating officer had no reason to believe plaintiff was dangerous and plaintiff made no attempt to flee the scene. *Id.* Indeed, the government's interest in handcuffing a suspect during the execution of a search warrant is minimal when there is no indication that the person would resist or flee. *Baldwin*, 418 F.3d at 970. Moreover, a detention conducted in connection with a search violates the Fourth Amendment when it causes a person unnecessary pain. *Meredith*, 342 F.3d at 1063 (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). In *Meredith*, the plaintiff's allegation that handcuffs had been applied so tightly that they caused her pain for the first thirty minutes of her detention was sufficient to overcome a summary judgment motion on qualified immunity. *Id.*

Here, Mr. Keane <u>and</u> Ms. Strange were handcuffed during the entire search without justification. Keane Decl. ¶¶ 22, 26, 27, 37; Strange Decl. ¶¶ 13, 15, 17, 27. Defendants had no reason to believe either posed any danger. Plaintiffs never resisted the investigative efforts or gave any indication they would attempt to flee. Keane Decl. ¶ 18; Strange Decl. ¶¶ 10, 13. Moreover, at no time was Ms. Strange implicated in the illegal activities being investigated.

McMullen and the other officers aggravated this constitutional violation by applying the handcuffs so tightly to Mr. Keane's wrists they caused him pain and cuts. Keane Decl. ¶¶ 23, 26, Exh. C. Moreover, before interrogating Mr. Keane, McMullen lifted Mr. Keane off the ground by his handcuffs causing him further unnecessary pain and injury. *Id.* ¶ 26. This egregious conduct was unjustified, unnecessary and unconstitutional.

1

  c.    **McMullen Used Excessive Force When Placing His Boot on Strange's**

2

  **Head**

3    The most powerful single example of excessive force occurred when, after handcuffing Ms.

4  Strange (a slight 63 year-old woman), McMullen heartlessly placed his boot on her head while she

5  lay on the ground helpless.  Keane Decl. ¶ 24; Strange Decl. ¶ 13.  No more need be said.

6    **3.    The Damage to Plaintiffs' Personal Property Violated Their Rights**

7    The Fourth Amendment prohibits law enforcement officers from destroying property during

8  a search when unnecessary.  *San Jose Charter of the Hells Angels Motorcycle Club v. City of San*

9  *Jose*, 402 F.3d 962, 977 (9th Cir. 2002).  Destruction of property is unnecessary when less intrusive

10  or less destructive alternatives exist.  *Id.*

11    McMullen and the other officers destroyed various properties belonging to Plaintiffs during

12  the search of their home, all of which was unnecessary.  For example, doors, cabinetry, furniture and

13  antiques were apparently scratched and damaged by the "aggressive alert dog"—a dog trained to

14  destroy items.  Keane Decl. ¶ 46; Simmons Decl. Exh. 2.  As Accornero bluntly put it, his dog is

15  specifically trained to "tear shit up."  Simmons Decl. Exh. 2(a); Keane Decl. ¶ 35.

16  **C.    Plaintiffs' Claims are Properly Asserted Under § 1983 Because McMullen Acted Under**

17    **the "Color of State Law"[10]**

18    McMullen argues he is immune from § 1983 claims because his actions cannot be "fairly

19  attributable to the state" and, as such, he was not acting "under the color of state law."  Silva Motion,

20  at 12:4; McMullen Motion, at 25:21-25 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937

21  (1982)).  While McMullen correctly quotes *Lugar* for the requirement that his conduct must be

22  "fairly attributable to the state" for Plaintiffs to impose liability under § 1983, he fails to apply the

23  two-part test for determining "color of law."  *Lugar*, 457 U.S. at 939.[11]  The test is satisfied when

24

25

26

27

[10] Although McMullen joined Silva's motion without making any additional arguments, Plaintiffs address each defendant separately because they are not similarly situated.  Silva is a state officer, while McMullen is a federal officer.

[11] While *Lugar* applied to private citizens, the test now includes federal agent who deprive constitutional rights.  *See Cabrera v. Martin*, 973 F.2d 73, 742 (9th Cir. 1992);  *see, e.g., Terrell v. Petrie*, 763 F. Supp. 1342, 1344 (E.D. Va. 1991) (aff'd *Terrell v. Hardesty*, 952 F. 2d 397 (4th Cir. 1991)) (section 1983 proper remedy "when federal officials abuse authority given by the state").

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR
SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    the Constitutional violation "resulted from the exercise of a right or privilege having its source in

2    state authority" and the parties can be "characterized as state actors" under the facts of the case. *Id.*

3    Application of this test shows that McMullen acted under the "color of state law."

4    **1.    The Sole Authority for McMullen to Search Plaintiffs' Home and Arrest Mr.**

5    **Keane Came from the State of California**

6    McMullen's supposed right to enter Plaintiffs' home and arrest Mr. Keane is derived solely

7    from state warrants reviewed by Sonoma County officials and signed by a judge of the Superior

8    Court of California. McMullen Decl. ¶ 6. The arrest warrant sought to enforce Sections 11360(a)

9    and 11359 of the California Health and Safety Code – both state laws. Supp. McMullen Decl., Exh.

10   1. Further, McMullen admittedly followed Sonoma County procedures for serving the alleged arrest

11   warrant. Supp. McMullen Decl. ¶ 9. The power and authority to enter Plaintiffs' home, and the

12   subsequent damage suffered by Plaintiffs, was due exclusively to an exercise of power granted by

13   the State of California. Thus, McMullen acted pursuant to state authority while enforcing state laws

14   in accordance with state imposed rules of conduct. This more than satisfies the first prong of the

15   *Lugar* test requiring that "the deprivation [be] caused by the exercise of some right or privilege

16   created by the State or by a rule of conduct imposed by the State." *Lugar*, 457 U.S. at 937.

17   McMullen's argument to the contrary is unsupported by law. He argues that DEA agents act

18   under the color of federal law, even when exercising state powers, because 21 U.S.C. § 873

19   authorizes DEA agents to "cooperate in the institution and prosecution of cases in . . . courts of the

20   several States." Silva Motion, at 13:12-19. McMullen provides no authority for this argument. As

21   noted, courts have held that "when federal officials abuse authority given by the state, Section 1983

22   is the proper remedy." *Terrell*, 763 F. Supp. at 1344. In *Terrell*, IRS agents were found to act under

23   the "color of state law" simply because they acted with the authority granted by a capias warrant

24   issued by the state. *Id.* To immunize federal officials simply because they are authorized to act

25   under state authority would carve out a substantial exception to the *Lugar* test. The first prong of the

26   *Lugar* test is satisfied.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      McMullen Was a "State Actor" Because Plaintiffs' Constitutional Rights Were
Violated by Joint Participation Between McMullen and the State**

Under *Lugar*, individuals may be characterized as state actors when there is "joint participation" between the individual and the state official in carrying out the abuse.  457 U.S. at 941; *see also Cabrera*, 973 F.2d at 742.  To determine the existence of "joint participation," the Court will look to the extent to which the actor has relied on state assistance, whether the actor is performing a traditionally state function, and whether state actors aggravated the injury.  *See Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621-22 (1991).  Each is present here.

McMullen's reliance on state officials is axiomatic.  McMullen obtained the search and arrest warrants based largely on investigations conducted by police officers from the City of Petaluma and Brick Township.  McMullen Decl., Exh. 2.  Indeed, McMullen interviewed the key witness less than half as long as the state officers (McGuigan Decl. ¶¶ 15, 24), the controlled delivery portion of the investigation involved only state actors ( Simmons Decl. Exh. 1(d)), and there is little evidence of any additional investigation conducted by McMullen or his federal counterparts (Levine Decl. ¶¶ 21-22 ("[n]o ascertainable attempts were made to conduct a professional level of investigation in adherence with the search-for-truth principles that are the basis of U.S. law enforcement")).  Further, McMullen discussed his decision to pursue warrants with the state district attorney and ultimately sought warrants in state court.  McMullen. Decl. ¶ 6.  Many, if not most, of the officers present at the search were state, not federal actors.  The City of Petaluma employs both Accornero and Silva (Supp. Silva Decl. ¶ 1; Accornero Decl. ¶ 1), and at least two of the approximately seven officers present were from the Marin County Sherriff's department (Accornero Decl. ¶¶ 8, 10).  Further, Marin County Sheriff officers conducted the first interrogation of Ms. Strange.  Strange Decl. ¶ 15.  Finally, under McMullen's direction, Mr. Keane was transported to a state jail by a state officer.  Keane Decl. ¶¶ 41, 42.  McMullen's conduct is inseparable from its state assistance.

McMullen was also performing a traditional state function resulting in injuries that were aggravated by state actors.  McMullen admits he was acting to enforce state laws – obviously a state function.  Supp. McMullen Decl. Exh. 1.  McMullen's attempt to enforce those laws resulted in injuries that were aggravated by state actors.  Indeed, as previously discussed, state actors conducted

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1 a flawed investigation, used excessive force against Plaintiffs during the search and damaged
2 Plaintiffs' property while executing the state-issued search warrants.  McMullen violated Plaintiffs'
3 rights by obtaining a search warrant through judicial deception, the multitude of injuries that
4 followed however, were aggravated by state actors who would have otherwise never entered
5 Plaintiffs' home.  There can be no clearer case of aggravation by state actors.
6        McMullen exercised powers the State of California granted him and he acted to enforce state
7 laws and aid a state prosecution.  Where analogous facts exist, courts have found federal and private
8 actors to have acted "under color of state law."  *See Howerton v. Gabrica,* 708 F.2d 380, 385 (9th
9 Cir. 1983) (in the repossession context, landlord acted under color of state law where police were on
10 the scene at each step of eviction and at times actively intervened); *Copelan v. Croasmun,* 84 Fed.
11 Appx. 762, 763 (9th Cir. 2003) (private creditor's actions attributable to state where he executed a
12 writ, issued by the state, and without whose authority, the creditor would not have acted); *Terrell,*
13 763 F. Supp. at 1344 (section 1983 proper remedy where IRS agents, pursuant to a capias warrant
14 issued by the state, unlawfully searched and arrested plaintiff).  Plaintiffs' claims are properly
15 asserted under § 1983.[12]

16  **V.      PLAINTIFFS ALSO SEEK DENIAL OF MCMULLEN'S MOTION BECAUSE OF**
17  **AN INADEQUATE OPPORTUNITY TO GATHER DISCOVERY TO OPPOSE THE**
18  **MOTION**
19        We believe there is more than ample basis to deny this motion.  As a precautionary matter,
20 however, Plaintiffs invoke Rule 56(f) of the Federal Rules of Civil Procedure, which provides for
21 denial or continuance of summary judgment where the opposing party has not had an adequate
22 opportunity to gather discovery.[13]  Fed. Rule Civ. Proc. 56(f).  Relief under the Rule is appropriate
23 where the party opposing summary judgment demonstrates that (1) it has set forth in affidavit form

24 [12] In the event this Court finds that McMullen was not acting under the color of state law for the purpose of § 1983,
25 Plaintiffs' claims are nevertheless properly asserted under *Bivens,* 403 U.S. 388 (1971), as McMullen admits to acting with federal authority.  McMullen Decl. ¶ 11

26 [13] Although it is "unusual" to both respond fully to a motion and seek Rule 56(f) relief, this Court has noted
27 that this "unusual posture of the request is not dispositive."  *Allstate Insurance Co. v. Morgan*, 806 F.Supp. 1460, 1466, n.7, (N.D. Cal. 1992) (Armstrong, J.).

28

the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the facts sought are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The party invoking the Rule also must show that it diligently pursued discovery prior to seeking a continuance. *Brae Transportation, Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Courts assessing whether Rule 56(f) relief is appropriate also consider whether (1) the premature nature of the summary judgment motion prevented adequate discovery; (2) the additional discovery sought is uniquely in the possession of the party moving for summary judgment; and (3) the additional facts sought are the subject of outstanding discovery requests. *See Burlington Northern Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001); *Visa International Service Association v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986).

Courts have emphasized that Rule 56(f) relief is particularly appropriate where a party seeks information that is the subject of outstanding discovery requests. *Visa International Service Association v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986) (finding denial of Rule 56(f) motion "especially inappropriate where material sought is also the subject of outstanding discovery requests"). Additionally, courts often apply Rule 56(f) where the material sought is uniquely in the possession of the party moving for summary judgment. *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001) (finding Rule 56(f) relief appropriate where the opposing party has identified and requested "discovery of information solely available from the defendants"). Both of these considerations are applicable here.

The First Supplemental Declaration of James Heffner sets forth in detail the additional discovery that Plaintiffs expect to receive, and how that discovery will preclude summary judgment for McMullen. Although Plaintiffs served their initial document requests over two months ago, McMullen has yet to produce a single document. Instead, McMullen, through his counsel, states that he cannot produce responsive documents until the government has determined whether the documents are appropriate for disclosure. *See* First Supplemental Declaration of James Heffner ("First Supp. Heffner Decl.") Exh. A. McMullen has made a similar representation regarding

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Plaintiffs' requests for deposition dates. *See id.*, Exh. B. Thus, the information Plaintiffs now seek,

2    which includes depositions and responses to previously issued written discovery, is the subject of

3    outstanding discovery requests. Further, Plaintiffs have requested internal DEA manuals, handbooks

4    and other documents related to investigations and search and arrest warrants. *See id.*, Exh. A. These

5    internal DEA materials are uniquely within the DEA's possession and are otherwise unavailable.

6    In sum, McMullen's motion for summary judgment is fatally premature. McMullen chose to

7    bring this motion just six weeks after the commencement of discovery and over six months before its

8    close. Despite Plaintiffs' diligent efforts and largely because of Defendants' resistance, there has

9    been no significant discovery. This alone suggests that Rule 56(f) relief is appropriate. *Burlington*

10    *Northern Santa Fe R.R. Co. v. Assinibione and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d

11    767, 773 (9th Cir. 2003) (finding that Rule 56(f) relief should be awarded "fairly freely" where an

12    early-filed summary judgment motion prevents any "realistic opportunity" to pursue discovery).

13    Accordingly, while the Court should deny this motion on its merits, we respectfully request that if

14    the Court believes otherwise, the motion hearing be continued to allow for sufficient discovery.

15    ## VI.    CONCLUSION

16    Law enforcement officers perform the difficult job of balancing the constitutionally protected

17    interests of citizens against the demand that our laws be enforced. Plaintiffs Carl Keane and Chieko

18    Strange appreciate that, when performing this difficult task, law enforcement can make mistakes.

19    But when those "mistakes" flow from intentional wrongdoing or recklessness that tramples upon

20    constitutional rights, aggrieved citizens are entitled to compensation for damage and injury. That is

21    the case here. The Court should deny the motion and clear the path for a trial by jury.

22    DATED:  August 5, 2008.

23    REED SMITH LLP

24

25    By: James E. Heffner
        Attorneys for Plaintiffs
26        Robert Carl Patrick Keane and Chieko Strange

27

28