1  Michael J. Coffino (SBN 88109)
   Email: mcoffino@reedsmith.com
2  James E. Heffner (SBN 245406)
   Email: jeheffner@reedsmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA  94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA  94120-7936

7  Telephone:    +1 415 543 8700
   Facsimile:    +1 415 391 8269
8

9  Attorneys for Plaintiffs
   Robert Carl Patrick Keane and Chieko Strange

10

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

14  ROBERT CARL PATRICK KEANE,           No.: C 07 4894 SBA
    individually; and CHIEKO STRANGE,
15  individually,                        **PLAINTIFF'S MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
16                    Plaintiffs,        OPPOSITION TO DEFENDANT JOHN
                                         SILVA'S MOTION FOR SUMMARY
17       vs.                             JUDGMENT**

18  SETH M. MCMULLEN, PAUL ACCORNERO     Date:      September 16, 2008
    and JOHN SILVA,                      Time:      1:00 p.m.
19                                       Place:     Courtroom 3, 3rd Floor
                      Defendants.        Before:    Hon. Saundra B. Armstrong
20

21

22

23

24

25

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    PLAINTIFFS' STATEMENT OF THE FACTS .....................................1

       A.     State and Federal Law Enforcement Conduct an Investigation .....................1

       B.     Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home ................................................................................................2

       C.     Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice." ..........................................................................................5

       D.     Procedural History and Discovery Issues .....................................5

III.   LEGAL STANDARD .............................................................................6

IV.    ARGUMENT ...........................................................................................7

       A.     Silva Is Liable for the Constitutional Violations as an Integral Participant to Both the Search and Arrest ..............................................7

              1.     Silva Was an Integral Participant in the Illegal Search of Plaintiffs' Home and Attendant Excessive Force. .............................8

                     a.     Silva Was More Than a Mere Bystander to the "Dynamic Entry" and Search of Plaintiffs' Home ..............................8

                     b.     Silva Continued in His Actions Despite Knowing that the Unconstitutional Acts were Occurring or Would Occur......................9

              2.     Silva Was an Integral Participant in the Unconstitutional Arrest of Mr. Keane .......................................................................11

                     a.     Silva Was More Than a Mere Bystander to the Unconstitutional Arrest of Mr. Keane. ..................................11

                     b.     Silva Continued in His Actions Despite Knowing that the Acts that Constituted an Unconstitutional Arrest Would Occur. ..................................................................................11

       B.     Silva Acted Under the "Color of State Law...........................................12

              1.     Silva, a Petaluma Police Officer, Acted Under the Color of State Law ..........................................................................................12

              2.     Silva Acted Under the "Color of State Law" Even if he Was Acting as a DEA Agent at the Time of the Raid...............................13

                     a.     The Sole Authority for Silva to Search Plaintiffs' Home and Arrest Mr. Keane Came from the State of California ..................14

          b.    Silva Was a "State Actor" Because Plaintiffs' Constitutional Rights Were Violated by Joint Participation Between Silva and the State ........................................................ 14

V.    ALTERNATIVELY, THE COULD SHOULD DENY THE MOTION BECAUSE PLAINTIFFS HAVE NOT HAD AN ADEQUATE OPPORTUNITY TO GATHER DISCOVERY ................................................................ 16

    A.    The Rule 56(f) Standard ...................................................... 16

    B.    Defendants Have Thwarted Plaintiffs' Diligent Discovery Efforts ...................... 18

    C.    Additional Considerations Governing Rule 56(f)'s Applicability Weigh in Favor of Granting Plaintiffs' Request ........................................ 19

        1.    Plaintiffs Have Not Had the Opportunity to Pursue Sufficient Discovery ............................................................ 19

        2.    Rule 56(f) Relief is Appropriate Because Plaintiffs Have Requested But Not Yet Received Probative Information That Is Solely in Defendants' Possession ............................................ 19

    3.    The Material Sought is the Subject of Outstanding Discovery Requests ............ 20

VI.    CONCLUSION ........................................................................ 21

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

## CASES

Allstate Insurance Co. v. Morgan,
    806 F. Supp. 1460 (N.D. Cal. 1992) ................................................................16

Arizona v. Maricopa County Medical Soc.,
    457 U.S. 332 (1982) ..........................................................................................6

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
    403 U.S. 388 (1971) ......................................................................................6, 16

Boyd,
    374 F.3d at 280 ..................................................................................... passim

Brae Transportation, Inc. v. Coopers & Lybrand,
    790 F.2d 1439 (9th Cir. 1986) ...........................................................................17

Burlington Northern Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck
    Reservation,
    323 F.3d 767 (9th Cir. 2003) .............................................................................19

Cabrera v. Martin,
    973 F.2d 73 (9th Cir. 1992) ..........................................................................13, 14

Castaneda v. Douglas County,
    2007 U.S. Dist. LEXIS 3471 (D. Nev. 2007), citing, Boyd, 374 F.3d at 780 .....................7, 8

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..........................................................................................6

Chuman v. Wright,
    76 F.3d 292 (9th Cir. 1996) ...............................................................................7

City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,
    838 F.2d 268 (8th Cir. 1988) .............................................................................6

Copelan v. Croasmun, 84 Fed. Appx. 762, 764 (9th Cir. 2003) .......................................16

Edmonson v. Leesville Concrete Co.,
    500 U.S. 614 (1991) ..........................................................................................15

Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.,
    525 F.3d 822 (9th Cir. 2008) .............................................................................17

Howerton v. Gabrica,
    708 F.2d 380 (9th Cir. 1983) .............................................................................15

James v. Sadler,
    909 F.2d 834 (5th Cir. 1990) .............................................................................8

McDade v. West,
    223 F.3d 1135 (9th Cir. 2000) .......................................................................12, 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Melear v. Spears,
    862 F.2d 1177 (5th Cir. 1989) ........................................................................7, 8, 9

Meredith v. Erath,
    342 F.3d 1057 (9th Cir. 2003) ...............................................................................10

Metabolife International, Inc. v. Wornick,
    264 F.3d 832 (9th Cir. 2001) ..................................................................................20

Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,
    182 F.3d 157 (2nd Cir. 1999) ...................................................................................6

Terrell v. Petrie,
    763 F. Supp. 1342 (E.D. Va. 1991) ..........................................................13, 14, 16

United States v. Watson,
    423 U.S. 411 (1976 (Powell, J., concurring) ........................................................12

Visa International Service Association v. Bankcard Holders of America,
    784 F.2d 1472 (9th Cir. 1986) ................................................................................20

### STATUTES

21 U.S.C. § 873 ...............................................................................................................14

42 U.S.C. § 1983 ..........................................................................................................1, 5

Fed. Rule Civ. Proc. 56(f) ...........................................................................................16

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I.    INTRODUCTION

In his motion for summary judgment, Defendant John Silva ("Silva") attempts to escape liability by claiming a minimal role in the unlawful investigation and arrest of Plaintiff Carl Keane and the equally unlawful raid on Plaintiffs' home. Contrary to these assertions, however, Silva's participation was significant. He was present for and integral to the execution of the raid. He was personally involved in the post-raid interrogation of Plaintiffs, and his active participation and involvement in preparatory strategic discussions placed him on notice of the unlawful nature of the raid on the home. Further, as an officer cloaked with the authority of the Petaluma Police Department, Silva acted under the color of state law, subjecting him to liability under 42 U.S.C. § 1983. Accordingly, his motion should be denied in full. Alternatively, Plaintiffs are entitled to further discovery to determine the full extent of Silva's involvement in the unlawful home invasion. In either case, the Court should deny the motion.

## II.    PLAINTIFFS' STATEMENT OF THE FACTS

Plaintiffs employ a uniform statement of facts for their opposition to the pending motions for summary judgment. For the convenience of the Court, however, we repeat the statement of facts here.

On November 29, 2006, an unknown person tried to mail a package to Kerry Keane in Brick, New Jersey from the Mail Depot in Petaluma, California. The package had a return address of "C. Keane, 307 N. Ferndale Ave., Mill Valley, CA," the location of Plaintiffs' home. Although suspicious, the owner of the Mail Depot, Maureen McGuigan ("McGuigan") accepted the package for shipment. McGuigan later opened the package to discover six pounds of marijuana. She brought the package to Officer Jim Stephenson of the Petaluma Police Department, who interviewed her for almost an hour. Declaration of Maureen McGuigan ("McGuigan Decl.") ¶ 15.

## A.    State and Federal Law Enforcement Conduct an Investigation

Officer Stephenson and another officer later visited the Mail Depot. *Id.* ¶ 18. They questioned McGuigan for about twenty-five minutes and asked her to identify the person who attempted the shipment from a "photo array" of six individuals. *Id.* ¶¶ 19-20. She could not. *Id.* ¶

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY JUDGMENT

21.[1]  The same day, the Petaluma police officers contacted the DEA, and the following day, two DEA agents, including Defendant McMullen, visited the Mail Depot.  The investigation that followed is charitably characterized as reckless and included manipulation of evidence to produce a search warrant.

For example, rather than conduct a standard six-pack photo array, McMullen showed McGuigan an enlarged photocopy of Mr. Keane's California state identification card <u>after</u> expressly identifying him as a "possible suspect." *Id.* ¶¶ 25, 26; Declaration of Seth McMullen in Support of Motion to Dismiss and for Other Relief ("McMullen Decl.") ¶ 4.  Worse, the photocopy was not limited to a picture, but also included Mr. Keane's <u>name and home address</u>—information suggestively matching the return address of the aborted shipment.  Keane Decl. ¶ 47, Exh. D.  After looking at the highly suggestive photocopy for approximately thirty seconds, Ms. McGuigan concurred with the suggestion that the man in the photocopy "looked like" the person who attempted to mail the package.  McGuigan Decl. ¶ 27.  McMullen did not press McGuigan for any degree of certainty and left after approximately twenty-five minutes.  *Id.* ¶¶ 24, 28.

McMullen sent the package to the Brick Township Police in New Jersey for a "controlled delivery," which resulted in the arrest of Brian and Suzanne Keane on December 1, 2006.  The Brick investigation did not reveal <u>any</u> familial or other relationship between the New Jersey Keanes and Mr. Keane.  On the contrary, Brian Keane revealed that his brother Chris was the only relative matching "C. Keane."  Declaration of Abraham Simmons in Support of Motion for Summary Judgment ("Simmons Decl.") Exh. 1(c).  Further, New Jersey investigators determined Mr. Keane and Brian Keane were born only nine months and twenty two days apart, which ruled out the possibility they were brothers.  *See* Simmons Decl. Exh. 1(b); McMullen Decl. Exh 2.

**B.    Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home**

Defendants evidently did not conduct <u>any</u> additional investigation the following two weeks.  Then, on December 15, 2006, with no new information, McMullen signed an affidavit for a search

---

[1] Defendants have refused to produce this "photo array," which is directly responsive to our discovery requests. Declaration of James Heffner ("Heffner Decl.") ¶ 2.  For that reason, we do not know whether the original six-pack photo array contained a photo of Mr. Keane.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY JUDGMENT

warrant of Plaintiffs' home.  McMullen Decl. Exh. 2.  As we explain below, the affidavit contained major falsehoods and is grossly misleading in several respects.  To illustrate, the affidavit falsely states that Ms. McGuigan made a "positive identification" based on a photo.  *Id.*  As shown, she never made a "positive identification."  Further, the document was not a photo, but was instead an unredacted version of Mr. Keane's state identification card including his <u>name and address</u> matching that on the package, and McMullen identified the photo as that of a "possible suspect" prior to displaying it.  McGuigan Decl. ¶ 25; McMullen Decl. ¶ 4.   McMullen also swore to the existence of a prior shipment with no return address to the same New Jersey address.  McMullen Decl. Exh. 2.  This too was false.  In truth, as we explain below, there was a return address and a *pattern* of identity theft in play.  McGuigan Decl. ¶ 10, 11, 13, Exh. B.  Further, McMullen withheld details of the Brick, New Jersey investigation to create false and misleading impressions.  Most striking, he failed to tell the Magistrate that Brian Keane, in New Jersey, had a brother named Chris Keane, sharing the initials "C. Keane."  Simmons Decl. Exh. 1(d).

On December 19, at approximately 7:30 a.m., McMullen and others arrived at Plaintiffs' two bedroom Mill Valley loft while Plaintiffs were getting ready for work.  Keane Decl. ¶¶ 6-7.   The terrorizing raid began with a few seconds of commotion followed by a solitary bang outside the front door.[2]  *Id.* ¶ 7.  Mr. Keane *immediately* looked over the loft railing where he had an unobstructed view out the front glass door.  *Id.* ¶ 8, Exh. B.  He saw a man dressed in black crouching outside the door who, on making eye contact with Mr. Keane, *immediately* shouted "There he is!" and burst through the front door with a rifle drawn and trained on Mr. Keane.  *Id.* ¶¶ 9, 10.  At least two similarly dressed men immediately followed, storming in with rifles trained on Plaintiffs, shouting "Where are your weapons?!" and "Get down on the floor!"  *Id.* ¶¶ 12-13.

At no time during this initial intrusion did these armed individuals identify themselves as law enforcement.  *Id.* ¶ 17; Declaration of Chieko Strange ("Strange Decl.") ¶¶ 7, 10.  Indeed, fearing a home invasion, Ms. Strange screamed for Mr. Keane to call the police.  Strange Decl. ¶ 8.  The

---

[2] Markings on the wood deck suggest the bang occurred when someone dropped something onto the deck floor (presumably a battering ram of some sort).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    intruders stormed up the stairs screaming at Plaintiffs who, frightened and confused, dutifully

2    complied.  In response to requests to identify themselves, defendants screamed instead, "Where are

3    your weapons?!" and "You know why we're here!"  Keane Decl. ¶¶ 15-21.

4         Despite the submissive compliance of their victims, Defendants tightly handcuffed Plaintiffs'

5    hands, resulting in cuts to Mr. Keane's wrists.  *Id.* ¶¶ 23, 26, Exh. C.  They continued to train their

6    weapons on Plaintiffs while they lay face down on the ground until both were cuffed.  *Id.* ¶¶ 20, 22;

7    Strange Decl. ¶ 13.  At one point, still before the intruders had identified themselves, McMullen

8    placed his boot on the head of the helpless and still-handcuffed Ms. Strange.  Strange Decl. ¶ 13.

9    Defendants left Plaintiffs laying face down for at least ten minutes.  Keane Decl. ¶ 26.  At one point,

10   McMullen lifted Mr. Keane off of the ground by the chain between his handcuffs, resulting in pain

11   and physical injury.  *Id.* ¶ 26, Exh. C.

12        During the search, McMullen and the officers unnecessarily damaged furniture and home

13   fixtures.  Keane Decl. ¶ 46.  Co-defendant Paul Accorrnero ("Accornero") threatened Mr. Keane with

14   imminent use of an aggressive search dog to "tear shit up," and the dog, while under Accorrnero's

15   control, apparently damaged property.  *Id.* ¶¶ 35, 46.

16        After thirty minutes, Defendants brought the handcuffed Mr. Keane to the bathroom and

17   made him sit on the toilet for an interrogation.  *Id.* ¶ 27.  At this sight, McMullen crudely remarked

18   to co-defendant John Silva ("Silva") "Isn't this ironic?"  It was not until this time Mr. Keane learned

19   the purpose of the invasion.  *Id.* ¶ 28.  During the interrogation, McMullen attempted to elicit a

20   confession by lying about evidence -- telling Mr. Keane his fingerprints were on the package.  *Id.*

21   ¶ 29.  Mr. Keane offered to have his fingerprints taken.  *Id.*  After a fruitless interrogation of Mr.

22   Keane, McMullen and Silva led the handcuffed Ms. Strange into the bathroom, forcing her to endure

23   the same humiliation of sitting on a toilet while interrogated.  Strange Decl.  ¶ 17.  Both

24   interrogations revealed nothing linking Mr. Keane to the marijuana package or the New Jersey

25   Keanes or provide any inkling he was involved in criminal activity.  Keane Decl. ¶¶ 30-31; Strange

26   Decl. ¶¶ 22-26.

27        After the fruitless interrogations, defendants placed the handcuffed Plaintiffs on a couch

28   while they continued the search.  The abuse, however, continued.  When Ms. Strange tried to ask

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

1   Mr. Keane what was happening, McMullen yelled: "shut up or I will put your face against the wall!"

2   Strange Decl. ¶ 28 .  Plaintiffs watched in frozen silence as Defendants tore their home apart.

3          Like the interrogations, the search, which lasted for well over an hour, produced no

4   incriminating evidence.  This is underscored by the "fruits" of the search: (1) paperwork regarding a

5   recent cholesterol test (2) bank deposit slips and (3) a phone bill.[3]  *Id*. ¶ 32.  Yet, after the search

6   ended, McMullen bellowed: "he is going to jail!"  *Id*. ¶ 33.

7   **C.    Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice."**

8          Defendants proceeded to arrest Mr. Keane.  Keane Decl. ¶ 40.  As they escorted Mr. Keane

9   from his home, Silva un-cuffed Ms. Strange so she could sign documents relating to the confiscated

10  evidence.  Strange Decl. ¶ 32.  With signature in hand, Silva, without explanation, tossed the search

11  warrant on the counter as he left – the first time Plaintiffs knew one existed.  *Id*. ¶ 34.

12         Defendants took Mr. Keane to the Sonoma County Main Adult Detention Facility where

13  McMullen and Silva had a female officer search Mr. Keane in their presence.  When Mr. Keane's

14  pants fell to expose his buttocks, McMullen and Silva showed conspicuous amusement at the

15  situation.  Keane Decl. ¶ 43.  The inappropriateness was so palpable that the female officer

16  apologized to Mr. Keane for his understandable humiliation.  Keane Decl. ¶ 43.

17         The District Attorney's initial knee-jerk reaction was to charge Mr. Keane with unlawful

18  possession of marijuana for the purpose of sale.[4]  Ultimately, an investigator asked McGuigan to

19  view a proper six-pack photo array.  Faced with a proper photo array, and despite the taint of the

20  prior suggestive "identification," she identified someone other than Mr. Keane.  Heffner Decl. Exh

21  A.  On March 13, 2007, prosecutors dismissed the case "in the interests of justice."

22  **D.    Procedural History and Discovery Issues**

23         Plaintiffs filed this action in September 2007 pursuant to 42 U.S.C. § 1983, alleging that

24  Defendants violated their constitutional rights while acting under color of state law.  McMullen and

25  _____

    [3] Indeed, this evidence was exculpatory.  The phone bills contained no calls to any area codes in or near New
26  Jersey.  The bank slips showed no deposits of any unusually large sums of money.

27  [4] As will be discussed, the "decision" to prosecute Mr. Keane was apparently made on December 15, 2006,
    four days prior to the search of Mr. Keane's home.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Silva moved to dismiss, arguing that as federal officers, they are immune under § 1983 exposure.

2  Plaintiffs responded with a first amended complaint, adding allegations regarding liability under §

3  1983 and adding an alternative claim pursuant to *Bivens v. Six Unknown Named Agents of Fed.*

4  *Bureau of Narcotics*, 403 U.S. 388 (1971).  In response, concurrently with filing answers to the first

5  amended complaint, McMullen and Silva moved for a more definite statement, but withdrew the

6  patently frivolous motion after receiving Plaintiffs' opposition.[5]

7  ### III.    LEGAL STANDARD

8  A party seeking summary judgment bears the burden of establishing that there is "no genuine

9  issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

10  Rule Civ. Proc. 56(c).  A party moving for summary judgment may not simply rely on bare,

11  unsupported allegations "with a conclusory assertion that the [opposing party] has no evidence to

12  prove his case."  *Celotex Corp. v. Catrett*, 477 US 317, 328 (1986) (White, J., concurring).  Rather,

13  the movant must identify specific issues in the factual record where the opposing party has no

14  evidence to support his or her case.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838

15  F.2d 268, 273 (8th Cir. 1988).  Thus, the moving party has a "heavy burden" to show that no

16  reasonable trier of fact could dispute that she has proven the elements of her claims.  *Nationwide Life*

17  *Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999).

18  In ruling on a motion for summary judgment, the court must resolve all ambiguities, resolve

19  all doubts as to the existence of a "genuine issue as to any material fact" and draw all reasonable

20  inferences in favor of the nonmovant.  *Nationwide Life Ins. Co*, 182 F.3d at 160.  In essence, the

21  nonmovant's "version of any disputed issue of fact is correct."  *Arizona v. Maricopa County Medical*

22

23  [5] Although the Court made it clear discovery should proceed unimpeded, Defendants have stonewalled.  For
example, they have not produced a single document in response to Plaintiffs' Requests for Production, which

24  we served more than two months ago.  Heffner Decl. ¶¶ 2, 4.  Plaintiffs expected to receive evidence showing
the existence of an arrest warrant in Mr. Simmons' declaration where it stated that Exhibit 3(d) is "the abstract

25  noting the issuance of the arrest warrant and Special Agent Seth McMullen's return of the arrest warrant"
Simmons Decl. ¶ 4.  Yet, Exhibit 3(d) is conspicuously absent from Mr. Simmons' declaration.  *Id*.  Similarly

26  suspicious, Mr. Keane was never able to obtain the arrest warrant through discovery in the criminal
proceeding.  Keane Decl. ¶ 45.  Plaintiffs have also been unsuccessful in obtaining the arrest warrant in

27  response to a subpoena to the Sonoma County District Attorney and the Petaluma Police Department.
Heffner Decl. ¶¶ 5, 6.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

1    *Soc.*, 457 U.S. 332, 339 (1982).

2    Here, Silva has failed to eliminate triable issues of material fact as to his involvement in the

3    raid, search and arrest. Further, this Court should find that Silva's motion is premature and should

4    be denied on that ground alone.

5    **IV.    ARGUMENT**

6    **A.    Silva Is Liable for the Constitutional Violations as an Integral Participant to Both the**

7    **Search and Arrest**

8    Silva seeks to escape liability by suggesting he did not commit the unconstitutional acts

9    himself. John Silva's Motion for Summary Judgment ("Silva Motion"), at 9-12. This betrays a

10    misunderstanding of the law and ignores relevant facts. Silva was an integral participant in the

11    initial entry into, and subsequent search of, Plaintiffs home, as well as Mr. Keane's arrest.

12    Accordingly, he is liable for these unconstitutional acts.

13    In the Ninth Circuit, each officer who is an "integral participant" in a search may be liable for

14    Fourth Amendment violations, even if the acts of the officer separately do not rise to the level of a

15    constitutional violation. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004); *see also*

16    *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). In other words, integral participation does *not*

17    require that the officer's own actions rise to the level of a constitutional violation. *Boyd*, 374 F.3d at

18    780. For example, an officer who provides backup support while other officers conduct the search

19    can be a "full, active participant." *Id.*, *citing Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989).

20    *Boyd* is illustrative. There, officers were denied qualified immunity for the unconstitutional

21    acts of others when they provided armed backup to an officer who committed an unconstitutional act

22    (the use of a flash-bang device), participated in the search that followed the unconstitutional act and

23    knew that the unconstitutional act was about to occur, but failed to object. *Id.* The *Boyd* analysis

24    distills to two key factors. First, the officer must be more than a mere bystander, *i.e.*, the officer

25    must be performing some function necessary to the completion of a police goal. *Castaneda v.*

26    *Douglas County*, 2007 U.S. Dist. LEXIS 3471, *16 (D. Nev. 2007), *citing*, *Boyd*, 374 F.3d at 780.

27    Second, the officer must continue his actions despite knowing that the unconstitutional act is

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  occurring or will occur. *Castaneda*, 2007 U.S. Dist. LEXIS 3471, *16-*17 (D. Nev. 2007).[6]  It is

2  not necessary that the officer know that the actions in fact constitute unconstitutional acts. *Id.*  Here,

3  the facts demonstrate that each factor supports a finding that Silva is not entitled to summary

4  judgment.

5  **1.    Silva Was an Integral Participant in the Illegal Search of Plaintiffs' Home and**

6  **Attendant Excessive Force.**

7  **a.    Silva Was More Than a Mere Bystander to the "Dynamic Entry" and**

8  **Search of Plaintiffs' Home**

9  Officers are not mere bystanders when they participate in "some meaningful way" with the

10  search. *Boyd*, 374 F.3d at 780.  Also illustrative is *James v. Sadler*, 909 F.2d 834 (5th Cir. 1990),

11  which *Boyd* cites with approval.  374 F.3d at 780.  There, police officers who remained armed on the

12  premises throughout the search and detained individuals were held to be integral to the search and

13  therefore potentially liable for the unconstitutional acts committed against the plaintiff by another

14  officer. *James*, 909 F.2d at 837.  Similarly, in *Melear*, 862 F.2d at 1186, which *Boyd* also cited with

15  approval, 374 F.3d at 780, defendant's provision of armed backup while another officer entered the

16  premises was enough of a "police function" to render the defendant more than a mere bystander. *Id.*

17  Application of this law demonstrates that Silva was far more than a "mere bystander."

18  Silva admits that he significantly participated in the execution of the search warrant.  He

19  admits that he was on the premises of the Keane residence during the unconstitutional raid.

20  Supplemental Declaration of John Silva ("Supp. Silva Decl.") ¶ 4.  He further admits to entering the

21  home after the initial forced entry and participating in the interrogation of both Mr. Keane and Ms.

22  Strange.  Silva Supp. Decl. ¶ 5.  Finally, it appears he would have been armed throughout the search

23  and interrogation.  Declaration of Michael Levine ("Levine Decl.") ¶ 28.

24  Indeed, contrary to his declaration, Silva was *heavily* involved in the interrogation of both

25

26  ───────────────
[6] A third factor, not identified by *Castaneda* as key, but utilized in the analysis in *Boyd*, is whether the officer

27  fails to object to the unconstitutional act.  374 F.3d at 780.  Because this factor is related to the second factor, *i.e.*, whether the officer continues in his actions, despite knowing that the acts constituting constitutional

28  violations will occur, it is addressed as part of that analysis.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Plaintiffs, asking approximately half the questions of each.  Declaration of Robert Carl Patrick

2  Keane ("Keane Decl.") ¶ 32;  Declaration of Chieko Strange ("Strange Decl.") ¶ 26.  Critically, the

3  interrogation occurred while Plaintiffs were handcuffed in violation of their civil rights, yet Silva

4  failed to object.  *Boyd*, 374 F.3d at 780 (failure to object to an act that is later deemed to be a

5  constitutional violation can give rise to liability).  Further, Silva participated in attempts to coerce a

6  confession from Keane by making false statements to him about evidence that did not exist.  Keane

7  Decl. ¶ 29.  As such, Silva is more than a mere bystander based on his participation in the

8  interrogation alone.

9      Silva was also involved in the search for physical evidence.  In fact, while interrogating Ms.

10  Strange, Silva searched through bathroom drawers and questioned her about documents he found

11  that related to Mr. Keane's family.  Strange Decl. ¶ 20, 21.  The evidence thus describes Silva as a

12  critical player in the operation and someone who was involved with Plaintiffs throughout their

13  detention.

14      In sum, Silva was more than a mere bystander to the events that trampled upon Plaintiffs'

15  civil rights.  *Melear*, 862 F.2d at 1186 (holding officers that simply remained armed and participated

16  in a search as generally being more than mere bystanders).  Silva was undeniably present at, and

17  participated in, the execution of the search warrant at the Keane residence and all of his actions were

18  taken in furtherance of a "police goal."  His only reason for being there was to execute the search

19  warrant and obtain evidence to use in the prosecution of Mr. Keane.  Silva cannot argue otherwise.

20          **b.      Silva Continued in His Actions Despite Knowing that the**

21          **Unconstitutional Acts were Occurring or Would Occur**

22      Similarly, Silva's actions meet the second key factor in the "integral participant" test.  Silva

23  continued in his actions despite knowing that the acts constituting excessive force were occurring or

24  would occur.  As discussed in *Boyd*, it does not matter whether he knew that the acts violated

25  Plaintiffs' rights, but whether he continued his actions knowing the acts occurred or would occur.

26  374 F.3d at 780.

27      First, Silva cannot and does not deny that he knew that both Keane and Strange were

28  handcuffed for the duration of the search.  Keane Decl. ¶¶ 22, 26, 27, 37; Strange Decl. ¶¶ 13, 15,

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

1    17, 27.  Indeed Silva declares that "by the time [he] entered the residence, plaintiffs were already

2    handcuffed . . . ."  Silva Decl. ¶ 4.  In fact, Silva ultimately removed the handcuffs from Strange at

3    the end of the hour-long search.  Strange Decl. ¶ 32.  This means that Silva was not only aware of

4    the fact that both Plaintiffs were handcuffed, but that he did nothing to remedy the situation despite

5    both Plaintiffs' submissive compliance with the officers.  Indeed, Silva was interacting with

6    Plaintiffs during these ongoing constitutional violations.  *See Meredith v. Erath*, 342 F. 3d 1057,

7    1062-63 (9th Cir. 2003).

8         Second, Silva was present during many of the other unconstitutional acts.  As discussed

9    above, Silva was present as both Mr. Keane and Ms. Strange were humiliatingly questioned, while

10   handcuffed, on the toilet in their bathroom.  Keane Decl. ¶ 27; Strange Decl. ¶ 17.  Indeed, Silva

11   willingly participated in the questioning of Mr. Keane and Ms. Strange at this time.  Supp. Silva

12   Decl. ¶ 5; Keane Decl. ¶ 27; Strange Decl. ¶ 17.  Moreover, Silva was in the room when McMullen

13   threatened Ms. Strange with the exclamation "Shut up or I will put your face against the wall!"

14   Strange Decl. ¶¶ 27-30.

15        Third, Silva entered Plaintiffs' home and participated in the search of the property and

16   interrogation of both Mr. Keane and Ms. Strange, despite his knowledge that an unconstitutional

17   entry and excessive force had been used.  Under any normal DEA standard operating procedure,

18   Silva would have been part of McMullen's pre-operational briefing that outlined the "dynamic entry

19   plan" into the Plaintiffs' home.  Levine Decl. ¶ 27.  Indeed, this meeting provided Silva with the

20   "information on tactics that [were] going to be used in entering the home and executing the search

21   and arrest."  *Id.*  He therefore would have had knowledge of the overwhelming force that McMullen

22   and the other officers planned to use in the entry of Plaintiffs' home.  Silva states that he did not

23   make "operational decisions," but he does not deny knowing that McMullen planned an entry into

24   the home that utilized a show of "overwhelming force."  Silva Supp. Decl. ¶ 3.

25        Silva's continued participation also demonstrates he did not object to the unconstitutional

26   acts that occurred.  He entered the home despite the unconstitutional entry, and then searched the

27   home and interrogated the Plaintiffs.  If Silva objected to these practices, he would not have

28   continued in his participation in these acts.  Moreover, Silva was not heard to object to any of the

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    tactics defendants employed during the search.  Strange Decl. ¶ 36.  Nor does Silva claim that he did.

2        Silva was an "integral participant" in the constitutional violations that occurred during the

3    entry into and search of Plaintiffs' home and is not entitled to summary judgment on Plaintiffs'

4    excessive force claims.

5        **2.**    **Silva Was an Integral Participant in the Unconstitutional Arrest of Mr. Keane**

6        This Court should also find that a triable issue of fact remains as to whether Silva was an

7    integral participant in the unconstitutional arrest of Mr. Keane.  As discussed above, the primary

8    factors to consider are whether the officer was more than a mere bystander to the unconstitutional act

9    and whether the officer continued in his participation of the act, despite his knowledge that the act

10   would occur.  Once again, it does not matter whether Silva knew that the act was unconstitutional,

11   but only whether he knew the act itself would occur.  *Boyd*, 374 F.3d at 280.

12       **a.**    **Silva Was More Than a Mere Bystander to the Unconstitutional Arrest of**

13       **Mr. Keane.**

14       Silva was a full and active participant in Mr. Keane's unconstitutional arrest.  After the

15   interrogations of Mr. Keane and Ms. Strange, Silva conferred with McMullen about whether they

16   were going to arrest Mr. Keane.  Strange Decl. ¶ 30.  Silva took Mr. Keane, then handcuffed and

17   under arrest, to Silva's vehicle.  Keane Decl ¶ 40.  Silva then transported Mr. Keane to the Sonoma

18   County Main Adult Detention Center.  Keane Decl. ¶ 42.  Furthermore, Silva was present when

19   Keane was humiliatingly searched by a female officer during Mr. Keane's booking at the Sonoma

20   County Detention Center.  Keane Decl. ¶ 43.

21       Silva cannot argue, in this respect, that his role in Mr. Keane's arrest was that of a mere

22   bystander.  Silva acted in furtherance of a "police goal"—namely to arrest Mr. Keane.  His

23   significant participation in the arrest of Mr. Keane negates any assertion that he was simply a minor

24   player in this unconstitutional act.

25       **b.**    **Silva Continued in His Actions Despite Knowing that the Acts that**

26       **Constituted an Unconstitutional Arrest Would Occur.**

27       Silva's actions here also meet the second criteria for integral participation because he

28   continued in his actions despite knowing that an unconstitutional arrest would occur.  It is axiomatic

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   that "the original grounds supporting [a] warrant [can] be disproved by subsequent investigation….

2   In those cases the warrant [may] be[come] stale … based upon discredited information." *United*

3   *States v. Watson*, 423 U.S. 411, 432 n.5 (1976 (Powell, J., concurring).

4          In this case, Silva was informed of, and discussed the complete lack of evidence discovered

5   during the search.  Strange Decl. ¶ 26.  Despite personally looking through Ms. Strange's address

6   book, Christmas cards and other personal effects, he found no evidence implicating her or Mr. Keane

7   in any crime.  Strange Decl. ¶¶ 20, 21.  Silva presented an inventory of the search to Ms. Strange and

8   asked her to sign it.  Strange Decl. ¶ 32.  This inventory contained no evidence implicating Mr.

9   Keane in any sort of drug related activity and Silva would have had that knowledge.  Yet, in spite of

10  Silva's affirmative knowledge that an arrest of Mr. Keane could not be substantiated, he fully and

11  actively participated in the arrest.

12         Furthermore, Silva's continued participation in the arrest of Mr. Keane shows that he did not

13  object to Mr. Keane's arrest.  In fact, Silva took Mr. Keane to the vehicle and personally transported

14  him to the Sonoma County Detention Center.  Keane Decl. ¶ 42.

15         These facts demonstrate that Silva did not have a minor role, as he would have the Court

16  believe.  He participated significantly in both the search of the home, the interrogation of Mr. Keane

17  and Ms. Strange and the arrest of Mr. Keane.  He was, in sum, an integral participant in the

18  unconstitutional acts that occurred in the home and is not entitled to summary judgment.

19  **B.      Silva Acted Under the "Color of State Law."**

20         Silva seeks immunity from the § 1983 claims on the basis that his actions cannot be "fairly

21  attributable to the state."  Throughout this litigation, Silva has selectively claimed to be a state

22  officer at times and a federal officer at other times.  Regardless of his "official" status at the time of

23  the raid, Silva acted under the color of state law for the purpose of § 1983 liability.

24         **1.       Silva, a Petaluma Police Officer, Acted Under the Color of State Law**

25         "The traditional definition of acting under color of state law requires that the defendant in a

26  § 1983 action have exercised power 'possessed by the virtue of state law and made possible only

27  because the wrongdoer is clothed with authority of state law.'"  *McDade v. West*, 223 F.3d 1135,

28  1139-40 (9th Cir. 2000).  Indeed, "[i]t is firmly established that a defendant in a § 1983 suit acted

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    under color of state law when he abuses the position given to him by the State." *Id*. at 1140.

2    Consequently, "a public employee act[s] under color of state law while acting in his official capacity

3    or while exercising his responsibilities pursuant to state law." *Id*.

4           Here, Silva was acting in his official capacity as a Petaluma Police officer when violating

5    Plaintiffs' rights.  The city of Petaluma Police Department, not the federal government, employs

6    Silva.  Indeed, Silva's Supplemental Declaration states that "I am an officer of the Petaluma,

7    California, Police Department."  Supp. Silva Decl. ¶ 1.  Although Silva claims to have been acting as

8    a deputized federal officer, he has provided no evidence beyond his bare assertion to support the

9    conclusion.  Indeed, nothing indicates Silva was anything other than a state officer.  As such, Silva

10    acted under the color of state law for the purposes of § 1983 liability.  *McDade*, 223 F.3d at 1140.

11        **2.**    **Silva Acted Under the "Color of State Law" Even if he Was Acting as a DEA**

12                **Agent at the Time of the Raid**[7]

13           Even if this Court finds that Silva was deputized as a federal officer and acting as a DEA

14    agent, his conduct may still be "fairly attributable to the state."  Indeed, while Silva correctly quotes

15    *Lugar* for the requirement that his conduct must be "fairly attributable to the state" for Plaintiffs to

16    impose liability under § 1983, he fails to apply the two-part test for determining "color of law."

17    *Lugar*, 457 U.S. at 939.[8]  The test is satisfied when the Constitutional violation "resulted from the

18    exercise of a right or privilege having its source in state authority" and the parties can be

19    "characterized as state actors" under the facts of the case.  *Id*.  Application of this test shows that

20    Silva acted under the "color of state law," regardless of his agency affiliation.

21

22

23

24    7 The following argument is an adaptation of the argument that Plaintiffs raise in opposition to McMullen's
claims.  Plaintiffs adapt the law for Silva's unique factual situation as a Petaluma Police officer allegedly

25    operating as a DEA agent for the convenience of the Court.

26    8 While *Lugar* applied to private citizens, the test now includes federal agents who deprive constitutional
rights.  *See Cabrera v. Martin*, 973 F.2d 73, 742 (9th Cir. 1992);  *see, e.g., Terrell v. Petrie,* 763 F. Supp.

27    1342, 1344 (E.D. Va. 1991) (aff'd *Terrell v. Hardesty,* 952 F. 2d 397 (4th Cir. 1991)) (§ 1983 proper remedy
"when federal officials abuse authority given by the state").

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

a.    **The Sole Authority for Silva to Search Plaintiffs' Home and Arrest Mr. Keane Came from the State of California**

Silva's supposed right to enter Plaintiffs' home and arrest Mr. Keane is derived solely from state warrants reviewed by Sonoma County officials and signed by a judge of the Superior Court of California.  McMullen Decl. ¶ 6.  The arrest warrant sought to enforce Sections 11360(a) and 11359 of the California Health and Safety Code – both state laws.  Supp. McMullen Decl., Exh. 1.  The power and authority to enter Plaintiffs' home, and the subsequent damage suffered by Plaintiffs, was due exclusively to an exercise of power granted by the State of California.  Thus, Silva acted pursuant to state authority while enforcing state laws in accordance with state imposed rules of conduct.  This more than satisfies the first prong of the *Lugar* test requiring that "the deprivation [be] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State."  *Lugar*, 457 U.S. at 937.

Silva's argument to the contrary is unsupported by law.  He argues that DEA agents act under the color of federal law, even when exercising state powers, because 21 U.S.C. § 873 authorizes DEA agents to "cooperate in the institution and prosecution of cases in . . . courts of the several States."  Silva Motion, at 13:12-19.  Silva provides no authority for the argument that § 873 applies in this way.  As noted, courts have held that "when federal officials abuse authority given by the state, Section 1983 is the proper remedy."  *Terrell*, 763 F. Supp. at 1344.  In *Terrell*, IRS agents acted under the "color of state law" because they acted under the authority of a state-issued a capias warrant.  *Id.*  To immunize federal officials because they are authorized to act under state authority would carve out a substantial exception to the *Lugar* test.  That is not the law.  The first prong of the *Lugar* test is satisfied.

b.    **Silva Was a "State Actor" Because Plaintiffs' Constitutional Rights Were Violated by Joint Participation Between Silva and the State**

Under *Lugar*, individuals may be characterized as state actors when there is "joint participation" between the individual and the state official in carrying out the abuse.  457 U.S. at 941; *see also Cabrera*, 973 F.2d at 742.  To determine the existence of "joint participation," the court will look to the extent to which the actor has relied on state assistance, whether the actor is

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    performing a traditionally state function, and whether state actors aggravated the injury.  *See*

2    *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621-22 (1991).  Each is present here.

3        Silva's reliance on state officials is axiomatic.  The warrants he was executing were obtained

4    based largely on investigations conducted by police officers from the <u>City of Petaluma</u> and <u>Brick</u>

5    <u>Township</u>.  McMullen Decl., Exh. 2.  Indeed, <u>state officers</u> conducted more than half the interview

6    of the key witness (Declaration of Maureen McGuigan ("McGuigan Decl.") ¶¶ 15, 18, 19, 20), the

7    controlled delivery portion of the investigation involved <u>only state actors</u> (*see* Simmons Decl. Exh.

8    1(d)), and there is little evidence of any additional investigation conducted by federal officers

9    (Levine Decl. ¶¶ 21-23 ("[n]o ascertainable attempts were made to conduct a professional level of

10   investigation in adherence with the search-for-truth principles that are the basis of U.S. law

11   enforcement")).  Further, the decision to pursue a warrant was discussed with the <u>state district</u>

12   <u>attorney</u> and the warrants were ultimately sought in <u>state court</u>.  McMullen. Decl. ¶ 6.  Many, if not

13   most, of the officers present at the search were <u>state</u>, not federal actors.  The <u>City of Petaluma</u>

14   employs both Accornero and Silva (Supp. Silva Decl. ¶ 1; Accornero Decl. ¶1), and at least two of

15   the approximately seven officers present were from the <u>Marin County Sherriff's department</u>

16   (Accornero Decl. ¶¶ 8, 10).  Finally, <u>Marin County Sheriff officers</u> conducted the first interrogation

17   of Ms. Strange.  Strange Decl. ¶ 15.  Silva's conduct is inseparable from its state assistance.

18       Silva was also performing a traditional state function resulting in injuries that were

19   aggravated by state actors.  As McMullen admitted, the officers were acting to enforce state laws –

20   obviously a state function.  Supp. McMullen Decl. Exh. 1.  Silva's attempt to enforce those laws

21   resulted in injuries that were aggravated by state actors.  Indeed, as previously discussed, state actors

22   conducted a flawed investigation, used excessive force against Plaintiffs during the search and

23   damaged Plaintiffs' property while executing the state-issued search warrants.  There can be no

24   clearer case of aggravation by state actors.

25       Silva exercised powers the State of California granted him and he acted to enforce state laws

26   and aid a state prosecution.  Where analogous facts are evident, courts have found federal and

27   private actors to have acted "under color of state law."  *See Howerton v. Gabrica,* 708 F.2d 380, 385

28   (9th Cir. 1983) (in repossession context, landlord acted under color of state law where police were

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  on the scene at each step of eviction and at times actively intervened); *Copelan v. Croasmun*, 84 Fed.

2  Appx. 762, 764 (9th Cir. 2003) (private creditor's actions attributable to state where he executed a

3  writ, issued by the state, and without whose authority, the creditor would not have acted); *Terrell*,

4  763 F. Supp. at 1344 (section 1983 proper remedy where IRS agents, pursuant to a capias warrant

5  issued by the state, unlawfully searched and arrested plaintiff). Plaintiffs' claims are properly

6  asserted under § 1983.[9]

7  ## V.    ALTERNATIVELY, THE COULD SHOULD DENY THE MOTION BECAUSE

8  ## PLAINTIFFS HAVE NOT HAD AN ADEQUATE OPPORTUNITY TO GATHER

9  ## DISCOVERY

10  Notwithstanding the very early stages of this action, Plaintiffs believe that, without

11  discovery, they have raised triable facts sufficient to defeat this motion. Plaintiffs, however, also

12  want to be careful. For that reason, as an alternative basis to deny this motion, Plaintiffs invoke Rule

13  56(f) of the Federal Rules of Civil Procedure. Under Rule 56(f), a court may deny or continue a

14  motion for summary judgment where the opposing party demonstrates that, for specified reasons, it

15  cannot present facts necessary to justify its opposition.[10] Fed. Rule Civ. Proc. 56(f). Here, Rule

16  56(f) relief is appropriate for several reasons. First, as set forth in the Second Supplemental

17  Declaration of James Heffner ("Second Supp. Heffner Decl."), Plaintiffs expect that further

18  discovery will uncover specific facts adverse to this motion. Second, Silva has repeatedly spurned

19  Plaintiffs' diligent efforts to obtain discovery, preventing them from mounting a complete

20  opposition. Finally, as we show below, each of the prevailing factors considered when assessing

21  Rule 56(f)'s applicability weighs in Plaintiffs' favor.

22  ### A.    The Rule 56(f) Standard

23  A party invoking Rule 56(f) must show that (1) it has set forth in affidavit form the specific

---

24  9 In the event this Court finds that Silva was not acting under the color of state law for the purpose of § 1983,
25  Plaintiffs' claims are nevertheless properly asserted under *Bivens*, 403 U.S. 388 (1971), as Silva admits to
    acting with federal authority. Declaration of John Silva, filed on 3/11/08, ¶¶ 2, 3.

26  10 Although it is "unusual" to both respond fully to a motion and seek Rule 56(f) relief, this Court has noted
27      that this "unusual posture of the request is not dispositive." *Allstate Insurance Co. v. Morgan*, 806 F.Supp.
        1460, 1466 n.7, (N.D. Cal. 1992) (Armstrong, J.).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY
JUDGMENT

facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought after facts are essential to oppose summary judgment. *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The requesting party must also demonstrate that it diligently pursued previous discovery opportunities before seeking a continuance. *Brae Transportation, Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986).

Plaintiffs easily meet Rule 56(f)'s requirements. The Second Supplemental Declaration of James Heffner sets forth specific facts Plaintiffs expect to elicit from further discovery. Second Supp. Heffner Decl. ¶¶ 6-8. For example, Plaintiffs expect to find that prior to the raid on the Keane home, the officers involved held a pre-operational meeting to discuss the background of the case and to give specific assignments. *Id.* ¶ 7. This meeting would also provide officers with a description of the tactics to be employed in entering the home and executing the warrants. As a task force officer participating in the raid, Silva would have been present at such a meeting and would likely have participated in any pre-raid strategy discussions. *Id.* Plaintiffs also expect discovery to reveal that Silva was on the Keane premises at the time of the initial entry and thus witnessed the manner in which the officers entered the home. *Id.* ¶ 8. If Silva witnessed an unlawful entry in violation of the knock and announce requirements, he may be liable as an integral participant in the constitutional violation. These facts are significant because they contradict Silva's primary argument that he was a minor participant in the raid.

Plaintiffs have reason to believe that these additional facts exist. According to Michael Levine, a twenty-five year veteran of federal law enforcement with forty-three years of general law enforcement training and experience, pre-operational meetings are standard procedure for raids such as this one. Declaration of Michael Levine ¶ 27. Plaintiffs believe that internal DEA materials, such as employee handbooks, training materials and policy and procedure manuals (all of which have been requested but not produced) will establish that pre-operational meetings are standard protocol and that Silva would have participated in such a meeting. Additionally, the depositions of those involved in the raid, including Silva and co-defendants McMullen and Accornero, will likely provide additional information regarding the officers' pre-raid activities and Silva's integral involvement.

Finally, additional discovery concerning these facts is needed for Plaintiffs to frame a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   complete opposition.  Silva's motion rests primarily on his claims of non-involvement in the

2   investigation and subsequent raid.  In his motion, Silva asserts that he "joined the operation only

3   after the Keane residence was secured and participated only in questioning of Plaintiffs."  *See* Silva

4   Motion, at 7.  Further, he contends that he "did not create the operations plan, did not participate in

5   the initial entry of the Keane residence, did not participate in securing the residence, and did not

6   apply the handcuffs to Plaintiffs."  *See id.* at 11, citing Supp. Silva Decl.  Currently, however, the

7   only evidence to support these assertions is Defendant Silva's own declaration.  Plaintiffs need

8   additional discovery to oppose these claims of non-involvement properly.  For example, internal

9   DEA materials will likely clarify that participants in a raid are required to attend a pre-operational

10  meeting.  If Silva attended such a meeting, he was likely briefed on the investigative history and

11  almost certainly would have been advised of the contemplated "dynamic entry" plan.  At that point,

12  he should have known that the investigation lacked probable cause and that the plan of entry was

13  excessive under the circumstances.  This knowledge would render him an "integral participant" in

14  the raid.  Further, contrary to Silva's assertions, Plaintiffs expect that deposition testimony from the

15  participating officers and other witnesses will show that Silva was substantially involved in and

16  integral to the raid and the resulting constitutional violations.  Absent any written discovery

17  responses or depositions, however, Plaintiffs cannot fully oppose this motion.  Rule 56(f) relief is

18  thus necessary to allow plaintiffs the chance to prepare a full opposition.

19  **B.     Defendants Have Thwarted Plaintiffs' Diligent Discovery Efforts**

20          Despite the premature filing of Silva's motion, Plaintiffs have dutifully pursued fact

21  discovery throughout the duration of this litigation.  On May 28, Plaintiffs served Defendant Silva

22  with a Request for Production of Documents and Things.  Second Supp. Heffner Decl. Exh. A.  On

23  July 14, 2008, over six weeks later, Silva provided his "responses," in which he asserted boilerplate

24  objections to each of Plaintiffs' requests, ultimately producing <u>no documents</u>.  *See id.* Exh. B.

25  Defendant Silva contends that federal regulations require a governmental review before disclosure,

26  and has represented that he will produce responsive documents once this governmental review is

27  complete.  *Id.*  Now, over two months after service of these discovery requests, Plaintiffs have yet to

28  receive a single document from Silva.

In addition to written discovery requests, Plaintiffs have proposed deposition dates for six fact witnesses, including defendant Silva. *See id.* Exh. C. Silva has neither agreed to nor rejected these proposed dates, relying again on an allegedly mandated governmental review procedure before he can respond. In sum, Defendant Silva has thwarted Plaintiffs' discovery efforts at every turn.

**C.    Additional Considerations Governing Rule 56(f)'s Applicability Weigh in Favor of Granting Plaintiffs' Request**

When assessing Rule 56(f)'s applicability, courts often consider additional case-specific factors, such as whether the summary judgment motion is premature, whether the additional discovery sought is uniquely in the possession of the moving party, and whether the discovery sought is the subject of outstanding discovery requests. Here, each of these three factors supports Rule 56(f) relief.

**1.    Plaintiffs Have Not Had the Opportunity to Pursue Sufficient Discovery**

Courts often apply Rule 56(f) where a prematurely filed summary judgment motion deprives the opposing party from obtaining meaningful discovery. *Burlington Northern Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (holding that relief under Rule 56(f) should be granted "fairly freely" where an early-filed summary judgment motion prevents any "realistic opportunity" for discovery). At the case management conference on May 7, this Court opened discovery and established a discovery cut-off date of December 22, 2008. On June 18, just <u>six weeks</u> after the opening of discovery and over <u>six months</u> before the December cut-off date, defendant Silva filed his notice of motion for summary judgment. This six week time frame is an impossibly small window in which to conduct discovery, particularly where the court initially contemplated a discovery period lasting through the bulk of this year. Indeed, six weeks would barely allow the parties to serve, respond to and review written discovery, let alone notice and take the depositions of the officers and other witnesses involved in this incident.

**2.    Rule 56(f) Relief is Appropriate Because Plaintiffs Have Requested But Not Yet Received Probative Information That Is Solely in Defendants' Possession**

Courts also frequently employ Rule 56(f) where a party opposing summary judgment has identified and requested "discovery of probative information solely available from" the moving

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO SILVA'S MOTION FOR SUMMARY JUDGMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  party. *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001). Here, Plaintiffs

2  have requested numerous materials solely in the DEA's possession. These materials include copies

3  of DEA handbooks and training manuals, DEA policies regarding the acquisition and execution of

4  search and arrest warrants, DEA policies governing the use of photographic "line-ups," DEA

5  indemnification agreements, and training and employment records for Defendant Silva. *See* Second

6  Supp. Heffner Decl., Exh. A. These items are internal DEA records not publicly available and are

7  thus uniquely within the Defendants' control.

8        **3.**     **The Material Sought is the Subject of Outstanding Discovery Requests**

9        Rule 56(f) also precludes summary judgment where the opposing party seeks material that is

10  the subject of outstanding discovery requests. *Visa International Service Association v. Bankcard*

11  *Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986) (finding that denial of Rule 56(f) request is

12  "especially inappropriate where the material sought is also the subject of outstanding discovery

13  requests."). As detailed above, Plaintiffs served Defendant Silva with document requests on May

14  28, seeking information related to the DEA's training policies and procedures and records related to

15  the Keane investigation and raid. Defendants have not produced a single document responsive to

16  those requests.

17        Under these facts, the case for Rule 56(f) (assuming it is needed) is compelling. Defendant

18  Silva has repeatedly refused to produce documents and has declined to participate meaningfully in

19  the discovery process. Notwithstanding this wholesale failure to cooperate, Silva has moved for

20  summary judgment just six weeks after the commencement of discovery. Without any discovery or

21  depositions, Plaintiffs cannot fashion a full response to Silva's motion. Thus, Plaintiffs request that

22  this Court deny the motion or, alternatively, delay hearing on the motion until sufficient discovery

23  has been completed.

24      ///

25      ///

26      ///

27      ///

28      ///

## VI.    CONCLUSION

Plaintiffs respectfully request that Silva's Motion be denied in its entirety.

DATED:  August 5, 2008.

REED SMITH LLP


By: James E. Heffner
    Attorneys for Plaintiffs
    Robert Carl Patrick Keane and Chieko Strange