Michael J. Coffino (SBN 88109)
Email: mcoffino@reedsmith.com
James E. Heffner (SBN 245406)
Email: jeheffner@reedsmith.com
Christopher C. Foster (SBN 253839)
Email: cfoster@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Plaintiffs
Robert Carl Patrick Keane and Chieko Strange

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually,

Plaintiffs,

vs.

SETH M. MCMULLEN, PAUL ACCORNERO and JOHN SILVA,

Defendants.

No.: C 07 4894 SBA

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PAUL ACCORNERO'S MOTION FOR SUMMARY JUDGMENT**

Date: September 16, 2008
Time: 1:00 p.m.
Place: Courtroom 3, 3rd Floor
Before: Hon. Saundra B. Armstrong

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. PLAINTIFFS' STATEMENT OF THE FACTS ........ 2

A. State and Federal Law Enforcement Conduct an Investigation 2

B. Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home 3

C. Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice." 5

D. Procedural History and Discovery Issues 6

III. LEGAL STANDARD ........ 7

IV. ACCORNERO IS A STATE OFFICER WHO WAS ACTING UNDER THE "COLOR OF STATE LAW." ........ 7

A. The Federal Officer Arguments Do Not Apply to Accornero, a State Officer Performing His Official State Duties 8

B. Accornero Acted Under the Color of State Law 9

C. Accornero Acted Under the Color of State Law Even if He Did Act in His Official Capacity. 10

V. PLAINTIFFS ALSO SEEK DENIAL OF ACCORNERO'S MOTION BECAUSE OF AN INADEQUATE OPPORTUNITY TO DISCOVER EVIDENCE NECESSARY TO OPPOSE THE MOTION ........ 10

VI. CONCLUSION ........ 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF AUTHORITIES

### CASES

Arizona v. Maricopa County Medical Soc., 457 U.S. 332 (1982) .......... 7

Brae Transportation, Inc. v. Coopers & Lybrand, 790 F.2d 1439 (9th Cir. 1986) .......... 11

Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767 (9th Cir. 2003) .......... 11, 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......... 7

City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268 (8th Cir. 1988) .......... 7

Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp., 525 F.3d 822 (9th Cir. 2008) .......... 11

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) .......... 8

Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962) .......... 7

McDade v. West, 223 F.3d 1135 (9th Cir. 2000) .......... 9, 10

Metabolife International, Inc. v. Triangle Publications, Inc., 634 F.2d 1188 (9th Cir. 1980) .......... 11, 12

Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157 (2nd Cir. 1999) .......... 7

Visa International Service Association v. Bankcard Holders of America, 784 F.2d 1472 (9th Cir. 1986) .......... 11, 12

### OTHER AUTHORITIES

41 U.S.C. § 1983 .......... 7

Fed. Rule Civ. Proc. 56(c) .......... 7

Fed. Rule Civ. Proc. 56(f) .......... 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. INTRODUCTION

The joinder of defendant Paul Accornero in the summary judgment motions of defendants John Silva ("Silva") and Seth McMullen ("McMullen") (the "DEA Defendants"), to the extent they seek immunity from the § 1983 claims on the ground they did not act under color of state law, is utterly groundless. The joinder fails for four independent grounds.

First, Accornero may not claim what a DEA defendant might, in theory, claim. Both DEA Defendants seek immunity from §1983 claims as federal officers. Accornero, however, admits he was a local officer performing official state duties at the time of the raid. The DEA defendants do not argue that a state or local officer is entitled to immunity. Consequently, Accornero's joinder is meaningless and should be summarily denied.

Second, state officers act under the color of state law when performing their official duties. Here, Accornero performed duties as a Petaluma Police Department canine handler when he searched Plaintiffs' home at the request of his *local* employer. In consequence, he performed these official duties under the color of state law.

Third, even if Accornero was not performing his official duties, his conduct can nevertheless be "fairly attributable to the state." Where conduct can be "fairly attributable to the state," it is deemed "under the color of state law" for the purposes of § 1983 claims.

Fourth, and in the alternative, the Court should deny the motion because plaintiffs have not had AN adequate opportunity to gather discovery. Here, Accornero has failed to produce documents he promised to produce bearing on the immunity issue. They include the Petaluma Police Department policies regarding "Outside Agency Assistance," which are particularly relevant here. Plaintiffs are actively meeting and conferring over dates for, but have not taken, the deposition of Accornero, among others. Plaintiffs have dutifully sought discovery and to date have been stymied. As such, the Accornero motion is premature.

Respectfully, the Court should deny the motion of defendant Accornero.[1]

---

1 Although Accornero joined the DEA Defendants' motion without adding arguments, Plaintiffs address Accornero separately because he is not similarly situated. Both Silva and McMullen argue that they are federal officials, whereas Accornero does not contend to be anything other than a state officer.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II. PLAINTIFFS' STATEMENT OF THE FACTS

Plaintiffs employ a uniform statement of facts for each of their oppositions to the pending summary judgment motions. For the convenience of the Court, Plaintiffs set out the statement of facts here.

On November 29, 2006, an unknown person tried to mail a package to Kerry Keane in Brick, New Jersey from the Mail Depot in Petaluma, California. The package had a return address of "C. Keane, 307 N. Ferndale Ave., Mill Valley, CA," the location of Plaintiffs' home. Although suspicious, the owner of the Mail Depot, Maureen McGuigan ("McGuigan") accepted the package for shipment. McGuigan later opened the package to discover six pounds of marijuana. She brought the package to Officer Jim Stephenson of the Petaluma Police Department, who interviewed her for almost an hour. Declaration of Maureen McGuigan ("McGuigan Decl.") ¶ 15.

### A. State and Federal Law Enforcement Conduct an Investigation

Officer Stephenson and another officer later visited the Mail Depot. *Id.* ¶ 18. They questioned McGuigan for about twenty-five minutes and asked her to identify the person who attempted the shipment from a "photo array" of six individuals. *Id.* ¶¶ 19-20. She could not. *Id.* ¶ 21.[2] The same day, the Petaluma police officers contacted the DEA, and the following day, two DEA agents, including Defendant McMullen, visited the Mail Depot. The investigation that followed is charitably characterized as reckless and included manipulation of evidence to produce a search warrant.

For example, rather than conduct a standard six-pack photo array, McMullen showed McGuigan an enlarged photocopy of Mr. Keane's California state identification card after expressly identifying him as a "possible suspect." *Id.* ¶¶ 25, 26; Declaration of Seth McMullen in Support of Motion to Dismiss and for Other Relief ("McMullen Decl.") ¶ 4. Worse, the photocopy was not limited to a picture, but also included Mr. Keane's name and home address—information suggestively matching the return address of the aborted shipment. Keane Decl. ¶ 47, Exh. D. After

[2] Defendants have refused to produce this "photo array," which is directly responsive to our discovery requests. Declaration of James Heffner ("Heffner Decl.") ¶ 2. For that reason, we do not know whether the original six-pack photo array contained a photo of Mr. Keane.

looking at the highly suggestive photocopy for approximately thirty seconds, Ms. McGuigan concurred with the suggestion that the man in the photocopy "looked like" the person who attempted to mail the package. McGuigan Decl. ¶ 27. McMullen did not press McGuigan for any degree of certainty and left after approximately twenty-five minutes. *Id.* ¶¶ 24, 28.

McMullen sent the package to the Brick Township Police in New Jersey for a "controlled delivery," which resulted in the arrest of Brian and Suzanne Keane on December 1, 2006. The Brick investigation did not reveal <u>any</u> familial or other relationship between the New Jersey Keanes and Mr. Keane. On the contrary, Brian Keane revealed that his brother Chris was the only relative matching "C. Keane." Declaration of Abraham Simmons in Support of Motion for Summary Judgment ("Simmons Decl.") Exh. 1(c). Further, New Jersey investigators determined Mr. Keane and Brian Keane were born only nine months and twenty two days apart, which ruled out the possibility they were brothers. *See* Simmons Decl. Exh. 1(b); McMullen Decl. Exh 2.

**B. Law Enforcement Obtain and Execute A Search Warrant at Plaintiffs' Home**

Defendants evidently did not conduct <u>any</u> additional investigation the following two weeks. Then, on December 15, 2006, with no new information, McMullen signed an affidavit for a search warrant of Plaintiffs' home. McMullen Decl. Exh. 2. As we explain below, the affidavit contained major falsehoods and is grossly misleading in several respects. To illustrate, the affidavit falsely states that Ms. McGuigan made a "positive identification" based on a photo. *Id.* As shown, she never made a "positive identification." Further, the document was not a photo, but was instead an unredacted version of Mr. Keane's state identification card including his <u>name and address</u> matching that on the package, and McMullen identified the photo as that of a "possible suspect" prior to displaying it. McGuigan Decl. ¶ 25; McMullen Decl. ¶ 4. McMullen also swore to the existence of a prior shipment with no return address to the same New Jersey address. McMullen Decl. Exh. 2. This too was false. In truth, as we explain below, there was a return address and a *pattern* of identity theft in play. McGuigan Decl. ¶ 10, 11, 13, Exh. B. Further, McMullen withheld details of the Brick, New Jersey investigation to create false and misleading impressions. Most striking, he failed to tell the Magistrate that Brian Keane, in New Jersey, had a brother named Chris Keane, sharing the initials "C. Keane." Simmons Decl. Exh. 1(d).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

On December 19, at approximately 7:30 a.m., McMullen and others arrived at Plaintiffs' two bedroom Mill Valley loft while Plaintiffs were getting ready for work. Keane Decl. ¶¶ 6-7. The terrorizing raid began with a few seconds of commotion followed by a solitary bang outside the front door.[3] *Id.* ¶ 7. Mr. Keane *immediately* looked over the loft railing where he had an unobstructed view out the front glass door. *Id.* ¶ 8, Exh. B. He saw a man dressed in black crouching outside the door who, on making eye contact with Mr. Keane, *immediately* shouted "There he is!" and burst through the front door with a rifle drawn and trained on Mr. Keane. *Id.* ¶¶ 9, 10. At least two similarly dressed men immediately followed, storming in with rifles trained on Plaintiffs, shouting "Where are your weapons?!" and "Get down on the floor!" *Id.* ¶¶ 12-13.

At no time during this initial intrusion did these armed individuals identify themselves as law enforcement. *Id.* ¶ 17; Declaration of Chieko Strange ("Strange Decl.") ¶¶ 7, 10. Indeed, fearing a home invasion, Ms. Strange screamed for Mr. Keane to call the police. Strange Decl. ¶ 8. The intruders stormed up the stairs screaming at Plaintiffs who, frightened and confused, dutifully complied. In response to requests to identify themselves, defendants screamed instead, "Where are your weapons?!" and "You know why we're here!" Keane Decl. ¶¶ 15-21.

Despite the submissive compliance of their victims, Defendants tightly handcuffed Plaintiffs' hands, resulting in cuts to Mr. Keane's wrists. *Id.* ¶¶ 23, 26, Exh. C. They continued to train their weapons on Plaintiffs while they lay face down on the ground until both were cuffed. *Id.* ¶¶ 20, 22; Strange Decl. ¶ 13. At one point, still before the intruders had identified themselves, McMullen placed his boot on the head of the helpless and still-handcuffed Ms. Strange. Strange Decl. ¶ 13. Defendants left Plaintiffs laying face down for at least ten minutes. Keane Decl. ¶ 26. At one point, McMullen lifted Mr. Keane off of the ground by the chain between his handcuffs, resulting in pain and physical injury. *Id.* ¶ 26, Exh. C.

During the search, McMullen and the officers unnecessarily damaged furniture and home fixtures. Keane Decl. ¶ 46. Co-defendant Paul Accornero ("Accornero") threatened Mr. Keane with

---

[3] Markings on the wood deck suggest the bang occurred when someone dropped something onto the deck floor (presumably a battering ram of some sort).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

imminent use of an aggressive search dog to "tear shit up," and the dog, while under Accornero's control, apparently damaged property. *Id.* ¶¶ 35, 46.

After thirty minutes, Defendants brought the handcuffed Mr. Keane to the bathroom and made him sit on the toilet for an interrogation. *Id.* ¶ 27. At this sight, McMullen crudely remarked to co-defendant John Silva ("Silva") "Isn't this ironic?" It was not until this time Mr. Keane learned the purpose of the invasion. *Id.* ¶ 28. During the interrogation, McMullen attempted to elicit a confession by lying about evidence -- telling Mr. Keane his fingerprints were on the package. *Id.* ¶ 29. Mr. Keane offered to have his fingerprints taken. *Id.* After a fruitless interrogation of Mr. Keane, McMullen and Silva led the handcuffed Ms. Strange into the bathroom, forcing her to endure the same humiliation of sitting on a toilet while interrogated. Strange Decl. ¶ 17. Both interrogations revealed nothing linking Mr. Keane to the marijuana package or the New Jersey Keanes or provide any inkling he was involved in criminal activity. Keane Decl. ¶¶ 30-31; Strange Decl. ¶¶ 22-26.

After the fruitless interrogations, defendants placed the handcuffed Plaintiffs on a couch while they continued the search. The abuse, however, continued. When Ms. Strange tried to ask Mr. Keane what was happening, McMullen yelled: "shut up or I will put your face against the wall!" Strange Decl. ¶ 28 . Plaintiffs watched in frozen silence as Defendants tore their home apart.

Like the interrogations, the search, which lasted for well over an hour, produced no incriminating evidence. This is underscored by the "fruits" of the search: (1) paperwork regarding a recent cholesterol test (2) bank deposit slips and (3) a phone bill.[4] *Id.* ¶ 32. Yet, after the search ended, McMullen bellowed: "he is going to jail!" *Id.* ¶ 33.

**C. Mr. Keane is Arrested, But the Case is Dismissed "In the Interests of Justice."**

Defendants proceeded to arrest Mr. Keane. Keane Decl. ¶ 40. As they escorted Mr. Keane from his home, Silva un-cuffed Ms. Strange so she could sign documents relating to the confiscated

---

[4] Indeed, this evidence was exculpatory. The phone bills contained no calls to any area codes in or near New Jersey. The bank slips showed no deposits of any unusually large sums of money.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

evidence. Strange Decl. ¶ 32. With signature in hand, Silva, without explanation, tossed the search warrant on the counter as he left – the first time Plaintiffs knew one existed. *Id*. ¶ 34.

Defendants took Mr. Keane to the Sonoma County Main Adult Detention Facility where McMullen and Silva had a female officer search Mr. Keane in their presence. When Mr. Keane's pants fell to expose his buttocks, McMullen and Silva showed conspicuous amusement at the situation. Keane Decl. ¶ 43. The inappropriateness was so palpable that the female officer apologized to Mr. Keane for his understandable humiliation. Keane Decl. ¶ 43.

The District Attorney's initial knee-jerk reaction was to charge Mr. Keane with unlawful possession of marijuana for the purpose of sale.[5] Ultimately, an investigator asked McGuigan to view a proper six-pack photo array. Faced with a proper photo array, and despite the taint of the prior suggestive "identification," she identified someone other than Mr. Keane. Heffner Decl. Exh A. On March 13, 2007, prosecutors dismissed the case "in the interests of justice."

**D. Procedural History and Discovery Issues**

Plaintiffs filed this action in September 2007 pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their constitutional rights while acting under color of state law. McMullen and Silva moved to dismiss, arguing that as federal officers, they are immune under § 1983 exposure. Plaintiffs responded with a first amended complaint, adding allegations regarding liability under § 1983 and adding an alternative claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In response, concurrently with filing answers to the first amended complaint, McMullen and Silva moved for a more definite statement, but withdrew the patently frivolous motion after receiving Plaintiffs' opposition.[6]

---

[5] As will be discussed, the "decision" to prosecute Mr. Keane was apparently made on December 15, 2006, four days prior to the search of Mr. Keane's home.

[6] Although the Court made it clear discovery should proceed unimpeded, Defendants have stonewalled. For example, they have not produced <u>a single document</u> in response to Plaintiffs' Requests for Production, which we served more than two months ago. Heffner Decl. ¶¶ 2, 4. Plaintiffs expected to receive evidence showing the existence of an arrest warrant in Mr. Simmons' declaration where it stated that Exhibit 3(d) is "the abstract noting the issuance of the arrest warrant and Special Agent Seth McMullen's return of the arrest warrant" Simmons Decl. ¶ 4. Yet, Exhibit 3(d) is conspicuously <u>absent from Mr. Simmons' declaration</u>. *Id*. Similarly suspicious, Mr. Keane was never able to obtain the arrest warrant through discovery in the criminal proceeding. Keane Decl. ¶ 45. Plaintiffs have also been unsuccessful in obtaining the arrest warrant in response to a subpoena to the Sonoma County District Attorney and the Petaluma Police Department.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## III. LEGAL STANDARD

A party seeking summary judgment bears the burden of establishing that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). A party moving for summary judgment may not simply rely on bare, unsupported allegations "with a conclusory assertion that the [opposing party] has no evidence to prove his case." *Celotex Corp. v. Catrett*, 477 US 317, 328 (1986) (White, J., concurring). Rather, the movant must identify specific issues in the factual record where the opposing party has no evidence to support his or her case. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc*., 838 F.2d 268, 273 (8th Cir. 1988). Thus, the moving party has a "heavy burden" to show that no reasonable trier of fact could dispute that she has proven the elements of her claims. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc*., 182 F.3d 157, 160 (2nd Cir. 1999).

In ruling on a motion for summary judgment, the court must resolve all ambiguities, resolve all doubts as to the existence of a "genuine issue as to any material fact" and draw all reasonable inferences in favor of the nonmovant. *Nationwide Life Ins. Co*, 182 F.3d at 160. In essence, the nonmovant's "version of any disputed issue of fact is correct." *Arizona v. Maricopa County Medical Soc.*, 457 U.S. 332, 339 (1982).

Here, as we show, Accornero has not merely failed to eliminate triable issues of material fact on the issue whether he acted under color of state law. Rather, as we show, he acted under the color of state law *as a matter of law* and his "attempt" to "argue" otherwise is utterly frivolous.

## IV. ACCORNERO IS A STATE OFFICER WHO WAS ACTING UNDER THE "COLOR OF STATE LAW."

To be liable under 41 U.S.C. § 1983, a defendant must have acted "under color of state law." *Marshall v. Sawyer*, 301 F.2d 639, 646 (9th Cir. 1962). The DEA Defendants seek immunity from § 1983 liability on the basis that they were acting as federal officers operating under the color of federal, not state law. Silva Motion, at 12:3-14:15; McMullen Motion, at 25:21-25. As a threshold matter, therefore, this argument cannot possibly apply to Accornero. This is because he is not a

Heffner Decl. ¶¶ 5, 6.

federal agent; he is a state employee. As such, Accornero may not effectively join in the motion of the DEA Defendants, which is premised on their alleged status as federal officers. Regardless, it is axiomatic that Accornero was acting under the color of state law and, as such, Plaintiffs' claims against him are properly addressed under § 1983.

**A. The Federal Officer Arguments Do Not Apply to Accornero, a State Officer Performing His Official State Duties**

Accornero's joinder is senseless. The DEA Defendants make no argument and provide no law relevant to Accornero's position as a state officer. They take the position they are immune from § 1983 suits because they are federal officers acting under the color of federal law and, as such, are shielded from § 1983 claims by federal immunity. They support their arguments with authority relevant to the specific immunities afforded to federal officers and the standard for when federal officers shed those immunities by participating in activities "fairly attributable to the State." John Silva's Motion for Summary Judgment ("Silva Motion"), at 12:4-14:15 citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). None of this applies to Accornero.

Accornero admits he was a state actor performing his official duties. Indeed, while surreptitiously recording his conversation with Mr. Keane (in violation of the California Penal Code), Accornero declared "my name's Paul Accornero and I'm with Petaluma Police Department."[7] Simmons Decl. Exh. 2(b); Keane Decl. ¶ 35. Accornero also admits that he is "an Officer with the City of Petaluma Police Department," "the City of Petaluma assisted the DEA in this manner approximately once or twice a year," and "he used his Police Service K-9." Accornero Decl. ¶¶ 1-2. Finally, in response to Plaintiffs' Requests for Production of "ALL DOCUMENTS that support the contention that YOU were acting under federal authority in connection with the December 19, 2006 search," Accornero responds with the admission that "no such category of documents ever existed. Third Supplemental Declaration of James Heffner ("Third Supp. Heffner Decl."), Exh A, at 9:3-12.

---

7 This puts the lie to the Accornero statement that he "was not acting as a representative of the City of Petaluma's Police Department." Accornero Decl. ¶ 5. Among other things, this testimony directly contradicts his surreptitious recording of his *scripted* speech to Mr. Keane.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

McMullen reinforces the Accornero admissions. McMullen swore that he "requested assistance from the Petaluma Police Department. Specifically, [he] requested a K-9 unit be deployed to assist with the search." McMullen Decl. ¶ 7. Importantly, McMullen did not request assistance from Accornero personally, but requested assistance from the Petaluma Police Department. *Id.* McMullen further swore that among those "present at the execution of the search warrant were the K-9 unit from Petaluma." *Id.* ¶ 8.

The motion of the DEA Defendants is no help to Accornero.[8]

**B. Accornero Acted Under the Color of State Law**

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by the virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.'" *McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000). Indeed, "[i]t is firmly established that a defendant in a § 1983 suit acted under color of state law when he abuses the position given to him by the State." *Id.* at 1140. Consequently, "a public employee act[s] under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* Here, Accornero was acting in his official capacity as a Petaluma Police officer when violating Plaintiffs' rights.

To begin, the city of Petaluma Police Department, not the federal government, employs Accornero as a canine handler. Accornero Decl. ¶¶ 1, 3. McMullen requested that the Petaluma Police Department assist in the raid on Plaintiffs' home by sending a K-9 officer to search Plaintiffs' home. McMullen Decl. ¶ 7. The Petaluma Police Department sent Accornero to perform the search. Accornero Decl. ¶ 3. Accornero began the search by telling Mr. Keane that he was "with [the] Petaluma Police Department" (Simmons Decl. Exh. 2(b)), and admits that the city of Petaluma

---

[8] Because Accornero supplied no argument in support of his joinder and chose to rely exclusively on what the DEA Defendants argued, Plaintiffs are concerned that Accornero might spring an ambush with new arguments in his reply brief. If that occurs, we urge the Court to strike the filing. "[I]t is well-established Ninth Circuit rule that an appellant cannot raise a new argument for the first time in his reply brief." *U.S. v. Taylor*, 59 Fed. Appx. 960, 970 (9th Cir. 2003); *Central Delta Water Agency v. U.S.*, 306 F.3d 938, 952 n.10 (9th Cir. 2002). Indeed, it would prejudice Plaintiffs if Accornero raised new arguments without affording Plaintiffs the opportunity to respond. *Estate of Torres v. Terhune*, 2002 U.S. Dist. LEXIS 1137 (E.D. Cal. Jan. 9, 2002).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"assists the DEA in this manner once or twice a year." Accornero Decl. ¶ 2. Finally, Accornero did not perform any function beyond his duties as a canine handler. He did not assist the DEA in the raid and did not assist the DEA in the questioning of the suspects. Consequently, as a matter of law, never mind for summary judgment purposes, he was acting in his official *local* capacity and, as such, acted under the color of state law for the purposes of § 1983 liability. *McDade*, 223 F.3d at 1140.

**C. Accornero Acted Under the Color of State Law Even if He Did Act in His Official Capacity.**

Further, Accornero acted under the color of state law even if he could show, which he has not attempted to do, he did not act in his official capacity. On this point, plaintiffs respectfully incorporate the showing in their opposition to the motion for summary judgment of the DEA Defendants. *See* Opposition to Seth McMullen's Motion for Summary Judgment at IV(C). The gist of that showing is that, even if Accornero was not acting pursuant to his authority as a Petaluma Police Officer, he was still acting under the color of state law, as were the DEA defendants. Under the applicable test in *Lugar*, both Silva and McMullen were acting under the "color of state law," an analysis that applies with equal force to Accornero. Thus, he was acting under the color of state law even if his actions fell outside the scope of his local duties.[9]

**V. PLAINTIFFS ALSO SEEK DENIAL OF ACCORNERO'S MOTION BECAUSE OF AN INADEQUATE OPPORTUNITY TO DISCOVER EVIDENCE NECESSARY TO OPPOSE THE MOTION**

As a precautionary measure and, in the alternative, Plaintiffs invoke Rule 56(f) of the Federal Rule of Civil Procedure as a basis to deny or continue this motion.[10] Rule 56(f) provides for denial or continuance of summary judgment where the opposing party has not had an adequate opportunity

---

9 It is notable that the *Lugar* test, as discussed in the incorporated arguments, applies equally to federal officials as it does to private citizens. *See Cabrera v. Martin*, 973 F.2d 73, 742 (9th Cir. 1992); *see, e.g., Terrell v. Petrie*, 763 F. Supp. 1342, 1344 (E.D. Va. 1991) (aff'd *Terrell v. Hardesty*, 952 F. 2d 397 (4th Cir. 1991)) (section 1983 proper remedy "when federal officials abuse authority given by the state"). As such, the test applies to Accornero in the event he is found to be a private citizen, as apposed to the state officer he admits to being.

10 Although it is "unusual" to both respond fully to a motion and seek Rule 56(f) relief, this Court has noted that this "unusual posture of the request is not dispositive." *Allstate Insurance Co. v. Morgan*, 806 F.Supp. 1460, 1466, n.7, (N.D. Cal. 1992) (Armstrong, J.).



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to gather discovery. Fed. Rule Civ. Proc. 56(f). Relief under the Rule is appropriate where the party opposing summary judgment demonstrates that (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the facts sought are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The party invoking the Rule also must show that it diligently pursued discovery prior to seeking a continuance. *Brae Transportation, Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Courts assessing whether Rule 56(f) relief is appropriate often consider whether (1) the premature nature of the summary judgment motion prevented adequate discovery; (2) the additional discovery sought is uniquely in the possession of the party moving for summary judgment; and (3) the additional facts sought are the subject of outstanding discovery requests. Examination of each of the above considerations demonstrates that Rule 56(f) relief is appropriate here. *See Burlington Northern Santa Fe R.R. Co. v. Assinibione and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001); *Visa International Service Association v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986).

The Third Supplemental Declaration of James Heffner sets forth the additional facts Plaintiffs expect to elicit from discovery and how they will preclude summary judgment for Accornero. The only "argument" Accornero advances is that he was not acting under the color of state law. Plaintiffs anticipate that additional discovery will further demonstrate otherwise. For example, in response to Plaintiffs' First Request for Production of Documents, Accornero promised to produce (but has not done so) a copy of the Petaluma Police Department's policy on "Outside Agency Assistance." *See* Third Supp. Heffner Decl. Exh. B at 10. This policy, and any other similar materials, will shed light on the delineation in authority where the Petaluma Police Department acts in concert with a federal agency such as the DEA. This is precisely the type of evidence that Plaintiffs need to oppose Accornero's sole argument. Additionally, Plaintiffs seek to depose Accornero and possibly a representative of the Petaluma Police Department to obtain testimony regarding the Department's policies for acting cooperatively with federal agencies. *See id.* ¶ 5; *see also id*, Exh. C. Again, such discovery is necessary to combat Accornero's argument that he was not

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

acting under color of state law.

Further, Plaintiffs' diligent pursuit of discovery has proved fruitless. On May 28, Plaintiffs served Accornero with their First Request for Production of Documents. *See id.* Exh. A. In response, Accornero, through his counsel, promised to produce certain responsive documents. *See id.* Exh. B. These documents include Petaluma's policy on "Outside Agency Assistance," which is particularly relevant here. *See id.* at 10. Now, over two months after receiving Plaintiffs' requests, Accornero has yet to produce a single document.

Finally, the current posture of this case mandates a Rule 56(f) denial or continuance of summary judgment. Rule 56(f) is inappropriate where a summary judgment motion is filed prematurely, before the parties have the opportunity to engage in meaningful discovery. *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (finding that Rule 56(f) relief should be granted "fairly freely" where an early-filed summary judgment motion prevents any "realistic opportunity" for discovery). Additionally, courts often employ Rule 56(f) where the information sought is uniquely in the possession of the moving party, or where the additional information is the subject of outstanding discovery requests. *Metabolife International, Inc. v. Triangle Publications, Inc.*, 264 F.3d 832, 850 (9th Cir. 2001) (rule 56(f) appropriate where other party in sole possession of probative information); *Visa International Service Association v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986) (denial of Rule 56(f) request "especially inappropriate" where information sought is subject of outstanding discovery requests).

Accornero joined in a premature summary judgment motion, filed just <u>six weeks</u> after the commencement of discovery and over <u>six months</u> before its close. Further, Accornero is in sole possession of documents such as the Police Department's policy on "Outside Agency Assistance," which he has refused to produce. Third Supp. Heffner Decl. Exh. B at 10. Finally, the information Plaintiffs seek is included in outstanding discovery requests of May 28, and Accornero has not produced a <u>single</u> responsive document. His premature attempt to secure summary judgment mere weeks into fact-discovery is precisely what 56(f) prohibits. Alternatively, the Court should deny the Accornero joinder on this independent ground or, at a minimum, continue the hearing to allow for

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

adequate discovery.

## VI. CONCLUSION

The motion joinder of Acconero was ill-considered and has no redeeming value. It has caused unnecessary time and expenditure of resources. Respectfully, it should be denied.

DATED: August 5, 2008.

REED SMITH LLP

By: James E. Heffner
Attorneys for Plaintiffs
Robert Carl Patrick Keane and Chieko Strange

REED SMITH LLP
A limited liability partnership formed in the State of Delaware