**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

ROBERT CARL PATRICK KEANE, *et al.*,

            Plaintiffs,

  v.

SETH M. MCMULLEN, *et al.*,

            Defendants.

No.  C 07-04894 SBA

**ORDER**

[Docket Nos. 47, 56, 84, 104, 107, 108, 131 & 133]

**REQUEST BEFORE THE COURT**

     Before the Court is defendant Seth M. McMullen's Federal Defendants' Administrative Motion to Continue Trial (the "Motion") [Docket No. 131], defendant Paul Accornero's Joinder in the Motion [Docket No. 133], and plaintiffs Robert Carl Patrick Keane's and Chieko Strange's Opposition to the Motion (the "Opposition") [Docket No. 132].  McMullen seeks a stay under the Servicemembers Civil Relief Act (the "SCRA"), 50 App. U.S.C. §§ 501 *et seq.*  McMullen is the lead defendant in this matter.  Because he has been activated for military duty and will be deployed overseas for over a year, materially affecting his and his co-defendants' defense, the Court GRANTS the Motion.

**BACKGROUND**

     This suit arises from the execution of search and arrest warrants at plaintiffs' home, in December 2006, by DEA agent McMullen, Petaluma Police Officers John Silva and Paul Accornero, other officers, and Marin County Sheriffs personnel.  An unknown individual attempted to send six pounds of marijuana from a Petaluma Mail Depot to a Kerry Keane in Brick Township, New Jersey.  The package had a return address for plaintiffs' home and the sender's name was "C. Keane."  Prior to shipping, Mail Depot determined the package contained narcotics and contacted the Petaluma Police Department.  It contacted McMullen, who opened an investigation.  After confirming the validity of the return address, he obtained plaintiff Keane's picture from the California Department of Motor Vehicle's database.  He then showed it to the Mail Depot owner, who identified it as

1   depicting the shipper.  McMullen arranged for the package's controlled delivery, and the recipient

2   claimed that he had a brother, "Chris Keane."  Based on this information, McMullen obtained search

3   and arrest warrants from the Sonoma County Superior Court.  He then led a team of police officers,

4   including Silva and Accornero, and sheriffs deputies in executing the warrants at plaintiffs' home.

5          Plaintiffs claim that without identifying himself or his law enforcement status, McMullen led

6   the team in a no-knock entry into their home, and then at gunpoint, forced them to the floor, face

7   down, for handcuffing.  Plaintiffs have difficulty specifically identifying what subsequent conduct

8   was committed by which of McMullen's team members, but they focus on McMullen and Silva in

9   alleging that: excessive force was used to handcuff them; someone placed a boot on Strange's head

10  (she is 63 years old); Keane was lifted off the floor by his handcuff chains; McMullen and Silva

11  were intimidating; plaintiffs were humiliated by individual interrogations while sitting on the toilet;

12  *et seq*.  Further, plaintiffs allege that McMullen knew that the New Jersey recipient had denied

13  knowing who sent the marijuana, and that McMullen should have shown photos of other persons, in

14  addition to Keane's photo, to the Mail Depot owner.  They thus conclude that McMullen never had

15  probable cause to obtain a search warrant.  Plaintiffs only make one specific allegation against

16  Accornero: he searched the house with a dog, after he admonished Keane in an allegedly

17  intimidating manner that upon detecting the scent of narcotics, the dog could damage property, in

18  attempting to uncover the source of the scent.  Defendants have disputed all these claims.

19         No narcotics were found, but McMullen allegedly had Keane arrested by local authorities.

20  He and Silva allegedly also had a female officer search Keane, to humiliate him, while in custody.

21  The Sonoma County District Attorney charged Keane with possession of marijuana for sale, but

22  later dismissed the charges.

23         On September 20, 2007, plaintiffs sued defendants, and on February 19, 2008, they filed a

24  First Amended Complaint.  They claim defendants violated either 42 U.S.C. § 1983, *Bivens v. Six*

25  *Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or both, by

26  conducting an unreasonable search and seizure, making an unlawful arrest, using excessive force,

27  and interfering with their "zone of privacy," in violation of various combinations of their Fourth,

28  Fifth, and Fourteenth Amendment rights.

2

1    McMullen and Silva have each filed a Motion for Summary Judgment, or in the Alternative,

2    for Summary Adjudication [Docket Nos. 47, 56] and have each filed an Augmented and Renewed

3    Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment [Docket

4    Nos. 107-08].  Accornero has also filed a Motion for Summary Judgment.  *See* Docket No. 104.

5    Trial is set for March 23, 2009.  *See* Docket No. 40.

6        On February 4, 2009, McMullen filed the Motion before the Court, requesting a stay under

7    the SCRA.  *See* Docket No. 131.  The Motion indicates that the Department of the Navy recalled

8    him to active duty, in support of Operations Noble Eagle and Enduring Freedom, as of January 23,

9    2009, and ordered him to report to Navy Operational Support Center in San Diego.  Mot. Ex. "1."

10   He will be on active duty for 420 days, with extensions possible for up to 24 months.  *Id.*  According

11   to his counsel, McMullen is currently out of state, in extensive training, and will be in Iraq or

12   Afghanistan in March.

13                                  **LEGAL STANDARD**

14       Section 522(a) of 50 App. U.S.C. applies to any civil proceeding in which a party is (1) in

15   military service, or is within 90 days after their termination of service, and (2) has received notice of

16   the proceeding.  Section 522(b)(1) specifies that a court may on its own motion, or shall upon

17   application by a servicemember, stay a proceeding for not less than 90 days, if the application

18   satisfies two conditions in § 522(b)(2).  These conditions are that the application shall contain (1) a

19   letter or other communication establishing that the servicemember's military duty materially affects

20   their ability to appear and stating when they will be available to appear, *id.* § 522(b)(2)(A); and (2) a

21   letter or other communication from the servicemember's commanding officer stating that the

22   servicemember's military duty prevents their appearance and that leave is not authorized at the time

23   of the letter, *id.* § 522(b)(2)(B).

24       Although subdivision (b)(1) uses the term "shall," a continuance is not mandated solely upon

25   finding an applicant qualifies under § 522(a).  *Boone v. Lightner*, 319 U.S. 561, 565-69 (1943).  The

26   Court has the *discretion* to determine whether a servicemember is entitled to a stay under

27   subdivision (b)(2).  *Id.*  As the Supreme Court has held, however:

28               The [Act] is always to be liberally construed to protect those who have been

                                              3

1   obliged to drop their own affairs to take up the burdens of the nation.  The discretion

2   that is vested in trial courts to that end is not to be withheld on nice calculations as to

3   whether prejudice may result from absence, or absence result from the service.

4   Absence when one's rights or liabilities are being adjudged is usually prima facie

5   prejudicial.

6   *Id.* at 575.

7   **ANALYSIS**

8       The Court finds that the SCRA applies to this matter, as McMullen has been called to active

9   duty, effective January 23, 2009.  *See id.* § 522(a).  Further, there is no dispute that McMullen led

10  the investigation which gave rise to this suit.  Nor is it disputed that he obtained the warrants and led

11  the team of local law enforcement personnel which allegedly engaged in all the conduct which gave

12  rise to this suit.  Nor is it disputed that plaintiffs' allegations are aimed primarily at McMullen and

13  Silva, and only slightly at Accornero.  As such, McMullen's testimony regarding his personal

14  knowledge and percipient observations will be critical to defendants' case in chief.  Further, the jury

15  will not be able to assess his credibility, in comparing the versions of events each side will put forth,

16  without McMullen's live testimony.  As such, McMullen's presence at trial is not only material to

17  his defense, but to that of his co-defendants' as well.  The Court thus finds that McMullen's military

18  duty materially affects his ability to appear and his and his co-defendants' ability to defend

19  themselves in this matter.  *See id.* § 522(b)(2)(A).

20      Plaintiffs claim that McMullen could have cured any prejudice by videotaping his deposition.

21  Opp'n at 1.  The Court, however, declines to read the Rules of Evidence as establishing the

22  boundaries of the SCRA, as plaintiffs provide no evidence that this would implement Congress'

23  intent that the SCRA be "liberally construed to protect those" called to defend their country.  *See*

24  *Boone*, 319 U.S. at 575.  While plaintiffs also note that a stay will deny them an earlier disposition,

25  the Court notes that this matter was only filed in September 2007, and that Congress has considered

26  this delay in their calculus when enacting the SCRA.  As courts have held, under the SCRA, "[t]he

27  possibility of detriment to parties who are not in the military service is not a controlling factor to be

28  considered in passing upon a motion for a stay of proceedings[.]"  *Cont'l Ill. Nat. Bank & Trust*

4

1    *Co. v. Univ. of Notre Dame Du Lac*, 394 Ill. 584, 69 N.E.2d 301, 305 (1946).  Likewise, "[a] stay

2    will be granted, in spite of the possibility that plaintiffs may suffer by not being able to prosecute

3    their claims in the courts and the sacrifice is one of those which must be made in war for the

4    common good."  *Craven v. Vought*, 43 D. & C. 482, 484-85 (Pa. Ct. C.P. 1942).[1]

5           While McMullen has not at this time produced a letter or other communication from his

6    commanding officer regarding his leave status, *see* § 522(b)(2)(B), he need not do so, to obtain a

7    stay.  Not only does the Court have the inherent power to control its docket, the SCRA provides the

8    Court may grant a stay on its own motion, when a servicemember is a party to a suit, and their

9    absence would materially prejudice its prosecution.  *See* § 522(b)(1).  As such, courts routinely grant

10   stays under the SCRA, when they are sufficiently convinced that a stay is necessary to avoid undue

11   prejudice to a party's prosecution of a matter.  *See, e.g*, *U.S. v. Smith*, No. CIV-04-859-C, 2006 WL

12   2338267, *1-*2 (W.D. Okla. Aug. 10, 2006) (unreported); *Hunt v. United Auto Workers Local 1762*,

13   No. 4:04CV02304 GH, 2006 WL 572805, *1-*2 (E.D. Ark. Mar. 7, 2006) (unreported) (noting

14   SCRA is administered to accomplish substantial justice); *Advanced Litig., LLC v. Herzka*,

15   No. Civ.A. 19789-NC, 2004 WL 1949292, *1-*2 (Del. Ch. Aug. 20, 2004) (unpublished).  Given the

16   facts and circumstances of this matter and of McMullen's deployment in the service of his country,

17   the Court will liberally construe the SCRA to accomplish justice among all the parties, including

18   defendants who would unquestionably be materially prejudiced in the absence of a stay.

19                                          **CONCLUSION**

20          The Court GRANTS defendant Seth M. McMullen's Federal Defendants' Administrative

21   Motion to Continue Trial [Docket No. 131] and GRANTS defendant Paul Accornero's Joinder in the

22   Motion [Docket No. 133].  Further, the Court DENIES as moot, without prejudice to refiling at a

23   later date when the stay is lifted, defendant McMullen's Motion for Summary Judgment, or in the

24   Alternative, for Summary Adjudication [Docket No. 56]; defendant John Silva's Motion for

---

[1]        The Court does not address plaintiffs' counsel's speculations regarding the New Years' Eve
shooting involving a Bay Area Rapid Transit police officer.  Opp'n at 2.  Nor does the Court address
counsel's *undeclared* assertions regarding statements allegedly made by McMullen's counsel
regarding proceeding in McMullen's absence, *id.*, given that McMullen's counsel has *declared* that
defendants initially considered this option, then declined to pursue it, Mot., Simmons Decl. ¶ 2.

5

1   Summary Judgment, or in the Alternative, for Summary Adjudication [Docket Nos. 47]; defendant

2   Paul Accornero's Motion for Summary Judgment [Docket No. 104]; McMullen's Augmented and

3   Renewed Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment

4   [Docket No. 107]; Silva's Augmented and Renewed Motion for Summary Judgment, or in the

5   Alternative, for Partial Summary Judgment [Docket No. 108]; and the Federal Defendants' Motion

6   for Administrative Relief to File a Response to Plaintiffs' Contingent Rule 56(f) Requests for Relief

7   [Docket No. 84].

8        This matter is STAYED.  All pending dates in this matter are VACATED.  Defendant

9   McMullen shall notify the Court immediately upon the termination of his activity military status, as

10  to what date will be the 90th day after the termination of his active military status.

11

12       IT IS SO ORDERED.

13

14  February 11, 2009                    _____
                                        Saundra Brown Armstrong
15                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

6