UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT CARL PATRICK KEANE, individually; and CHIEKO STRANGE, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> SETH M. MCMULLEN, PAUL ACCORNERO, and JOHN SILVA, <br><br> Defendants. | Case No:  C 07-4894 SBA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Dkt. 160 |

Plaintiffs Robert Carl Patrick Keane ("Keane") and his girlfriend, Chieko Strange ("Strange"), bring the instant <u>Bivens</u>[1] and civil rights action under 42 U.S.C. § 1983 against Seth McMullen ("McMullen"), a Special Agent ("SA") with the United States Drug Enforcement Agency ("DEA"), and City of Petaluma Police Officers John Silva ("Silva") and Paul Accornero ("Accornero").  Plaintiffs allege that their constitutional rights were violated when Defendants raided their home in Mill Valley, California, on December 19, 2006, under the erroneous belief that they were involved in marijuana trafficking or distribution.  Plaintiffs previously reached a settlement with Accornero, leaving McMullen and Silva as the only remaining Defendants.

The parties are presently before the Court on Defendants McMullen and Silva's motion for summary judgment.  Dkt. 160.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion with respect to Plaintiffs' claim for judicial deception against Silva, and DENIES the motion in all other respects.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] <u>Bivens v. Six Unknown Named Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).

## I.      BACKGROUND

### A.      FACTUAL SUMMARY

#### 1.      Discovery of Package Containing Marijuana

At around 10:30 a.m. on November 29, 2006, a man entered the Mail Depot in Petaluma, California, to ship a package.  McGuigan Decl. ¶ 2, Dkt. 66.  The customer informed Maureen McGuigan, the owner of Mail Depot, that the delivery address was 36 Sandy Point, Brick, NJ 08723, which she then entered into the store computer.  Id. ¶¶ 1-2.  The package listed the following return address: "C. Keane, 307 N. Ferndale Ave., Mill Valley, CA  94941.  Id. ¶ 4.  Ms. McGuigan asked the man for his telephone number; but citing privacy concerns, he refused to provide the requested information.  Id. ¶ 5.  At this point, Ms. McGuigan became suspicious and asked the customer whether his package contained marijuana.  Id.  He stated that it did not, and claimed that the package contained clothes for his niece.  Id. ¶¶ 6-7.  After the customer left the store, Ms. McGuigan placed the package in a bin for shipments to be sent out that day.  Id. ¶ 7.

Within an hour of his departure from the store, the customer called Ms. McGuigan and asked her to change the shipping address from 36 Sandy Point Road to 39 Sandy Point Road.  Id. ¶ 9.  When Ms. McGuigan entered the new address into the store computer, she noticed that on or about May 31, 2006, a prior shipment had been made to an address on Sandy Point Road in New Jersey.  Id. ¶ 10.  The call reminded Ms. McGuigan of her earlier suspicions, prompting her to open the package.  Id. ¶ 12.  Upon doing so, she discovered what she believed were bags containing marijuana.  Id.  Ms. McGuigan went back to the computer and discovered that, although there was no return address indicated, the prior shipment was from "Bob Hart" who had a telephone number with a 415 area code.  Id. ¶ 13.

At around 2:00 p.m., Ms. McGuigan took the package to the Petaluma Police Department where she met with Officer Jim Stephenson.  Id. ¶ 14.  She spoke with Officer Stephenson for around forty-five minutes to an hour recounting the events summarized above, and provided a physical description of the customer.  Id. ¶¶ 15-16.  Officer

Stephenson took custody of the package and Ms. McGuigan returned to her store.  Id. ¶ 17.
Later in the day, Officer Stephenson and another officer arrived at Mail Depot and showed
Ms. McGuigan an 8 1/2" x 11" photo array of six individuals and asked her whether any of
them was the customer.  Id. ¶ 19.  She responded that none of them was the person she
encountered earlier.  Id. ¶ 20.

Officer Stephenson then called Defendant McMullen and relayed the information
provided by Ms. McGuigan.  McMullen Decl. ¶ 2, Dkt. 16.  The next day, November 30,
2006, McMullen and SA Jeff Hoyt took custody of the package.  Id.  McMullen verified
that the return address on the package was an actual, physical address, and that Plaintiff
Keane resided there.  Id. ¶ 4.  Later in the day, McMullen and SA Hoyt travelled to Mail
Depot and showed Ms. McGuigan a 3" x 5" enlargement of Plaintiff Keane's California
Identification Card; the card was unredacted and displayed Keane's picture, name and
address.  McGuigan Decl. ¶ 25.  McMullen asked whether the person on the identification
card was the customer who attempted to mail the package containing marijuana.  Id. ¶ 26.
After looking at the photograph for about thirty seconds, she responded that it "looked like"
the person who had attempted to mail the package the day before.  Id. ¶ 27.  Ms. McGuigan
has no recollection of having been asked how certain she was that the person pictured in the
card was, in fact, the sender of the package.  Id. ¶ 28.

McMullen subsequently sent the package to Brick Township Police in New Jersey
for a "controlled delivery," which resulted in the arrest of Brian and Susan Keane on
December 1, 2006.  McMullen Decl. ¶ 4.  Brian Keane denied ownership of the package.
Foster Decl. Ex. C at 4, Dkt. 122-11.  When asked whether he had any relatives with the
first initial "C.," Brian Keane responded that he had a brother named "Chris."  Id.  The
ensuing investigation following the arrest, however, did not reveal and familial connection
between the Keanes in New Jersey and Plaintiff Keane in California.  Id.  In addition, no
one involved in the Brink Township investigation identified Plaintiff Keane as the sender of
the package.  Foster Decl. Ex. 1 ("McMullen Depo.") at 105:4-7, Dkt. 122-1.

### 2.      McMullen Obtains Search and Arrest Warrants

At some point during the investigation, McMullen decided to obtain a search warrant for Plaintiff Keane's home at 307 N. Ferndale Ave., Mill Valley, CA 94941, as well as an arrest warrant for Keane.  McMullen Decl. ¶ 6.  On December 15, 2006, McMullen submitted applications for a search warrant and arrest warrant to the Sonoma County Superior Court, which issued the requested warrants.  Id.

In his affidavit supporting the search warrant application, McMullen expressly represented that "McGuigan *positively identified* the individual in the photo as the person who dropped the package off a day earlier for shipment to the New Jersey address."  Foster Decl. Ex. 2 ("Search Warrant Aff.") ¶ 7 (emphasis added), Dkt. 122-3.  He further asserted that Ms. McGuigan had stated that "another package, with an unknown sending address, was sent to 39 Sandy Point Drive, Brick, New Jersey 08723."  Id.  McMullen did not disclose any facts concerning the circumstances relating to Ms. McGuigan's purported identification of Keane, that the previously sent package was addressed to 36 Sandy Point Drive (as opposed to 39 Sandy Point Drive), that the sender of the earlier package was identified as Bob Hart, or that Brian Keane in New Jersey stated that he had a brother named Chris.

### 3.      Execution of the Warrants

The search warrant obtained by McMullen was for Plaintiffs' residence at 307 N. Ferndale Ave., Mill Valley, CA 94941.  The residence at that address is a small, split level, two-bedroom A-frame house, located in a quiet residential area, which Keane and Strange have owned since 2002.  Keane Decl. ¶¶ 3-4, Dkt. 68.  The front door opens into a common open area with a kitchen and family room area.  Id. & Exs. A, B.  Above the common area is a loft which is adjacent to the bedrooms.  Id. ¶ 4.  The loft is visible from outside the front glass door.  Id.

At around 7:30 a.m. on December 19, 2006, Plaintiffs, both of whom were employed as sale representatives at Saks Fifth Avenue, were upstairs in their home, preparing for

work.  Keane Decl. ¶ 6; Strange Decl. ¶ 4, Dkt. 69.[2]  Around that time, they heard an unusually loud "bang" coming from outside, as if someone had slammed a heavy object into the deck leading to their front door.  Keane Decl. ¶ 7; Strange Decl. ¶ 5.  Keane went to the edge of the loft banister to investigate, and observed a man wearing dark clothing, later identified as McMullen, crouched outside the front door holding a rifle.  Keane Decl. ¶¶ 8-9.  McMullen spotted Keane on the loft and shouted, "There he is!"  Id. ¶ 10.  Immediately thereafter, and without consent, McMullen forced open the front door causing it to fly open and bang loudly against the kitchen counter.  Id. ¶¶ 10-11.  McMullen burst into the home with his weapon pointed directly at Keane.  Id.  Two others quickly followed McMullen with their rifles pointed at the loft area.  Id. ¶ 12.  None of the officers identified themselves.  Id. ¶ 17; Strange Decl. ¶¶ 7, 11.  Believing that they were victims of a home invasion robbery, Strange screamed for Keane to call the police.  Keane Decl. ¶ 14; Strange Decl. ¶ 11.

As they entered Plaintiffs' home, the officers pointed their weapons at Plaintiffs and repeatedly shouted, "Where are your weapons?" and demanded that they "[g]et down on the floor."  Keane Decl. ¶¶ 13, 17; Strange Decl. ¶ 9.  Plaintiffs do not own any weapons, were unarmed and did not take any action to challenge the officers' entry into their home.  Keane Decl. ¶ 16; Strange Decl. ¶ 7.  Still unaware of the apparent intruders' identity or the reason for their presence, Keane and Strange, fearing for their safety, complied with the order to lie down.  Keane Decl. ¶ 18.  Keane asked "Who are you?" at least three times, as McMullen and the others continued to point their weapons at Plaintiffs.  Id. ¶¶ 19-20.  McMullen responded, "You know why we're here."  Id. ¶ 21; Strange Decl. ¶ 12.  Once on the floor, Plaintiffs were handcuffed.   Keane Decl. ¶ 22.  The handcuffs were applied tightly, causing Keane pain.  Id. ¶ 23.  In addition, McMullen or one of the other officers stepped on Strange's head with what was believed to be his boot.  Id. ¶ 24; Strange Decl.

---

[2] At the time of the incident, Keane was 51 years-old, and Strange was around 65 years-old.  Keane Decl. Ex. C; McMullen Depo. at 299:15-19.

¶ 13.  While on the floor, Keane observed a patch on one of the uniforms which read "DEA Santa Rosa Drug Task Force."  Keane Decl. ¶ 22.

After being handcuffed on the floor for about ten minutes, Strange was assisted up and placed in a bedroom.  Strange Decl. ¶ 15.  Keane was pulled to his feet by the handcuff chain, thereby causing him to suffer cuts to his wrist.  Keane Decl. ¶ 26.  He was then taken downstairs and photographed, and thereafter led to bathroom and seated on the toilet while still handcuffed.  Id. ¶ 27.  Defendants finally disclosed the reason for the raid, and Silva falsely told Keane that his fingerprints were found on the package delivered to New Jersey.  Id. ¶¶ 28-29.  Keane denied that that the package was his or having been to Petaluma in years, and offered to have his fingerprints taken.  Id.  After finishing with Keane, McMullen brought Strange into the same bathroom, placed her on the toilet and interrogated her while still handcuffed.  McMullen Depo. at 283:13-284:12, 298:14-19, 299:2-4.  Though Strange insisted that she was not involved in any illicit activities, McMullen assumed she was lying.  Id. at 302:9-18.[3]

Following completion of the bathroom interrogations, McMullen and Silva led Plaintiffs to the living room and sat them across from each other.  Strange Decl. ¶ 27.  Strange attempted to ask Keane what was happening, prompting one of the officers, believed to be McMullen, to yell, "Shut up or I will put your face against the wall."  Id. ¶ 28.  McMullen, Silva and the others continued to rifle through Plaintiffs' personal belongings for over an hour, but found nothing incriminating, much to their visible frustration.  Id. ¶ 26; McMullen Depo. at 325:22-327:15.

McMullen and Silva placed Keane under arrest.  Keane Decl. ¶ 40.  As Keane was being escorted out, Silva uncuffed Strange so that she could sign an inventory of items being taken from her home.  Strange Decl. ¶ 32.  She asked where Keane was being taken, prompting McMullen to shout back in an agitated voice, "He's going to jail!"  Id. ¶ 33.  At

---

[3] At some point during the search, Accornero entered with a drug sniffing dog and threatened that the dog was trained to "tear shit up."  Keane Decl. ¶ 35.  This placed Keane in fear for his personal safety as well as Strange and the well-being of their two pet dogs, which were in the house.  Keane Decl. ¶ 35; Strange Decl. ¶ 16.

this point, Silva produced what turned out to be the search warrant which he left on the table without explanation.  Id. ¶ 34.  The raid left Plaintiffs' home damaged and in disarray. Id. ¶ 36.  Among other things, Plaintiffs found that the officers had broken their front gate, damaged their hardwood floors, tore a kitchen cabinet door off its hinges, tore their couch, scratched an antique chest, and damaged their front yard fence.  Keane Decl. ¶ 46.

### 4. Post Raid Events

McMullen and Silva brought Keane to the Sonoma County Main Detention Center, where he was physically searched by a female officer in the presence of both McMullen and Silva.  Keane Decl. ¶ 43.  During the search, Keane's buttocks became exposed, to the apparent amusement of both Defendants.  Id.  The female officer apologized to Keane for the manner in which he was being treated.  Id.  Keane spent the day in jail until Strange was able to post $20,000 bail.  Id. ¶ 44.

The Sonoma County District Attorney's Office conducted its own investigation.  An investigator with the office showed Ms. McGuigan a six-person photo array and she identified a person other than Plaintiff Keane.  Foster Decl. Ex. 9, Dkt. 122-10.  Ultimately, the District Attorney's Office concluded that Keane was not involved in the attempted shipment of marijuana to the Keanes in New Jersey, and dismissed the case in the interest of justice on March 31, 2007.

### B. PROCEDURAL HISTORY

On September 20, 2007, Plaintiffs Keane and Strange filed a Complaint in this Court against McMullen, Silva and Accornero.  Dkt. 1.  By stipulation of the parties, Plaintiffs filed a First Amended Complaint ("FAC") on February 19, 2008.  Dkt. 18, 20.  The FAC, which is the operative pleading, alleges two claims; the first under 42 U.S.C. § 1983 and the second pursuant to Bivens.  Both claims are predicated on the same conduct, namely: (1) submitting a search warrant affidavit in reckless disregard for the truth; (2) entering Plaintiffs' home in violation of the "knock and announce" rule; (3) illegally entering Plaintiffs' home and arresting Keane without probable cause; and (4) using excessive force in the course of executing the search warrant and arresting Keane.  See FAC ¶ 43, 48.

Defendants filed motions for summary judgment with respect to all claims alleged in the FAC.  Dkt. 104, 107, 108.  On February 2, 2009, the Court stayed the action and denied the pending motions without prejudice due to McMullen having been recalled to active military duty.  Dkt. 134.  Upon McMullen's return, the Court lifted the stay on August 17, 2011, and referred the matter for a mandatory settlement conference.  Dkt. 139, 141.  The parties participated in a settlement conference before Magistrate Judge Elizabeth D. Laporte and reached a settlement as to Accornero only.  Dkt. 145, 148.

On April 17, 2012, Defendants McMullen and Silva renewed their motions for summary judgment.  Dkt. 151, 152.  Because the motions failed to comply with the Court's Standing Orders, the Court struck Defendants' briefs.  Dkt. 159.  In accordance with the Court's directions, Defendants filed a single, renewed summary judgment motion on May 29, 2012.  Defs.' Mot. for Summ. J. ("Defs.' Mot."), Dkt. 160.

In their renewed summary judgment motion, Defendants contend that Silva is entitled to summary judgment on the ground that he was not involved in the investigation leading to the issuance of the search warrant or the initial entry into Plaintiffs' home.  Id. at 2.  As to McMullen, Defendants contend Plaintiffs' "investigation-related claims" fail on the basis of qualified immunity.  Id. at 3.  Defendants further argue that McMullen is entitled to summary judgment on Plaintiffs' excessive force claim on the grounds that Plaintiffs have not specifically identified him as the person who handcuffed Keane or restrained Strange with his boot or other object.  Id.  The motion has been fully briefed and is ripe for adjudication.  Dkt. 162, 163.

## II.      **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the

portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, __, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.  A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  Only admissible evidence may be considered in ruling on a motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III.   DISCUSSION

### A.   CLAIMS UNDER 42 U.S.C. § 1983

The threshold question presented is whether Plaintiffs' claims against Defendants McMullen and Silva should be construed as Bivens claims or claims under 42 U.S.C. § 1983.  The FAC alleges claims under Bivens and § 1983 as to both McMullen and Silva, based on the same conduct.  See FAC ¶¶ 43, 48.  Under Bivens, a plaintiff may bring a civil action for constitutional violations committed by federal employees or their agents.  See Western Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1119 (9th Cir. 2009).  In contrast, § 1983 provides a remedy for constitutional violations by state actors.  Cerrato v.

1    San Francisco Comt'y College Dist., 26 F.3d 968, 971 n.5 (9th Cir. 1994).  "Actions under

2    § 1983 and those under Bivens are identical save for the replacement of a state actor under

3    § 1983 by a federal actor under Bivens."  Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.

4    1991).  Thus, to state a private cause of action under Bivens or § 1983, a plaintiff must

5    allege: (1) that a right secured by the Constitution of the United States was violated, and

6    (2) that the violation was committed by a federal actor.  Id.; Karim-Panahi v. Los Angeles

7    Police Dept., 839 F.2d 621, 624 (9th Cir. 1988).

8         Defendants contend that Plaintiffs' claims are Bivens claims, and therefore, all

9    claims under § 1983 must be dismissed.  Defs.' Mot. at 19-20.  Specifically, Defendants

10   argue that Silva "is a Petaluma Police Officer who was deputized and acting in his capacity

11   as a federal Task Force Officer with regard to his activities in this case."  Id. at 2 n.1.

12   Perhaps so, but Defendants fail to provide any citation to the record in support of this

13   assertion.  As such, the Court is unable to determine the veracity of this contention.  See

14   Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial

15   system relies on the advocates to inform the discussion and raise the issues to the court.").

16   Indeed, the evidence submitted by Plaintiffs shows that at the time of the raid on Plaintiffs'

17   home, Silva was on the payroll of the City of Petaluma.  Silva Depo. at 23:4-7, Dkt. 122-

18   12.  Accordingly, Defendants' motion for summary judgment as to Plaintiffs' § 1983

19   claims is DENIED.

20        **B.    INVALID SEARCH WARRANT**

21        The Fourth Amendment protects individuals against unreasonable searches and

22   seizures.  U.S. Const. amend. IV.  To comport with the Fourth Amendment, "[a] search

23   warrant . . . must be supported by an affidavit establishing probable cause."  United States

24   v. Mayer, 560 F.3d 948, 958 (9th Cir. 2009) (internal quotations and citations omitted).  In

25   particular, the affidavit must establish a fair probability that contraband will be found at the

26   particular place to be searched.  Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th

27   Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  A search "conducted

28

pursuant to an ill-begotten or otherwise invalid warrant" may give rise to a constitutional claim for damages.  Id.

A claim based on an invalid search warrant may be based on a claim of judicial deception; that is, the defendant misled the magistrate when applying for the warrant, and had the magistrate considered all of the facts, she would not have found probable cause. Chism v. Wash. State, 661 F.3d 380, 386 (9th Cir. 2011).  For such a claim to survive summary judgment, a plaintiff "must 1) make a substantial showing of the officers' deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the searches and arrest would not have occurred."  Id. (internal quotations and brackets omitted).[4]

### 1.    McMullen

Defendants contend that McMullen is insulated from liability under the doctrine of qualified immunity.  Defs.' Mot. at 15-16.  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  The issue of qualified immunity generally entails a two-step process to determine (1) whether the officer violated the plaintiff's constitutional rights, and if so, (2) whether that right was "clearly established" at the time of the alleged misconduct.  Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "[A] district court should decide the issue of qualified immunity as a matter of law when the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts." Conner v. Heiman, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotations and citation

---

[4] A judicial deception claim is distinguishable from a "garden variety" claim that a warrant, on its face, lacked probable cause.  Chism, 661 F.3d at 386.  In a garden variety claim, "the arresting officer enjoys qualified immunity unless the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  Id. (internal quotations and citation omitted).  Here, the FAC alleges that the search warrant affidavit "showed a reckless disregard for the truth in light of the information then known to SILVA and McMULLEN."  FAC ¶¶ 43(c), 48(c).  The Court therefore construes Plaintiffs' claim as one based in judicial deception.

1    omitted).  Where the historical facts are in dispute, the issues should be submitted to a jury.

2    Id.

3                                  *a)      Constitutional Violation*

4            Defendants argue that Plaintiffs have failed to make a substantial showing that

5    McMullen misled the state court which issued the search warrant, and *a fortiori*, there was

6    no constitutional violation as a matter of law.  See Defs.' Mot. at 17.  This contention is

7    uncompelling.  The record shows that there was a dearth of evidence linking the marijuana

8    to Plaintiff or his residence.  Though Plaintiff Keane's first initial and surname, along with

9    his home address, were listed as the return address on the package, McMullen should have

10   viewed that fact with extreme suspicion.  According to Plaintiffs' expert, Michael Levine, a

11   police instructor for the State of New York and former Supervisory Agent for the DEA

12   with twenty-five years' experience, it is "totally inconsistent with the practices and mores

13   of the inherently paranoid drug trafficker" to use his actual name and address on a package

14   containing drugs.  Levine Decl. ¶ 11, Dkt. 65.  He further notes that any reliance on the

15   return address as a basis for probable cause "must be deemed both unreasonable and highly

16   indicative of an unacceptable level of ignorance and/or ineptitude on the part of

17   investigating officers, and for that reason, would have discounted its importance to virtually

18   zero when making application to the magistrate for issuance of a search and arrest warrant."

19   Id. ¶ 12.[5]

20           No doubt aware of the lack of facts to establish a nexus between the package and

21   Plaintiff, McMullen attempted to forge such a connection by affirmatively representing that

22   Ms. McGuigan—the owner of Mail Depot and the only person to actually have seen the

23   sender—"*positively identified* the individual in the photo [i.e., Keane] as the person who

24   dropped the package off a day earlier for shipment to the New Jersey address."  Search

25

26           [5] In a footnote in their reply, Defendants assert that the Court should disregard Mr.
     Levine's opinion allegedly "because it is neither scientific nor reliable."  Defs.' Reply at 7
     n.2.  Defendants provide no analysis or argument to support this conclusory assertion.  In
27   addition, to the extent that Defendants are taking the position that the Court should not
     consider Mr. Levine's declaration, they should have filed a separate objection or motion to
28   strike, rather than making passing reference to his declaration in a footnote.

Warrant Aff. ¶ 7 (emphasis added).  In fact, Ms. McGuigan made no such positive identification.  To the contrary, Ms. McGuigan merely thought, after pondering the photograph for thirty seconds, that it "*looked like*" the person who attempted to send the package of marijuana to the Keanes in New Jersey.  McGuigan Decl. ¶¶ 27-28 (emphasis added).  Notably, Ms. McGuigan offered her tentative and equivocal statement of resemblance only upon being shown a photocopy of Keane's California Identification Card, which displayed his photograph, full name and address—which matched the return address on the package.  Id.  Ms. McGuigan's highly suggestive identification is hardly the type of "positive identification" which McMullen represented in his affidavit.  Given that McMullen was the individual who solicited the identification from Ms. McGuigan, a reasonable trier of fact could conclude that his mischaracterization that she "positively identified" Keane as the sender was deliberately false or, at a minimum, in reckless disregard for the truth.

Similarly, McMullen misstated that, "McGuigan also said that on May 31, 2006, another package with an unknown sending address, was sent to *39 Sandy Point Drive*, Brick, New Jersey 08723."  Search Warrant Aff. ¶ 7 (emphasis added).  In fact, the earlier package was sent to *36* Sandy Point Drive, not 39 Sandy Point Drive.  McGuigan Decl. Ex. B.  In addition, McMullen omitted the fact that Mail Depot's database showed that the sender was "Bob Hart" and contained his telephone number.  Id.  Had McMullen contacted that telephone number, he could have confirmed that said number was for Bob Hart, and that Mr. Hart would have denied having ever shipped any packages from Mail Depot in Petaluma.  Keane Decl. ¶ 48.

Finally, McMullen omitted exculpatory information from the Brick Township investigation that would have further undermined any nexus between the illicit package and Plaintiffs.  When asked whether he had any relatives with the first initial "C.," Brian Keane, the recipient of the package in New Jersey, responded that he had a brother named "Chris."  Foster Decl. Ex. 10 at 4, Dkt. 122-11.  No one involved in the Brink Township investigation identified Plaintiff Keane as the sender of the package.  McMullen Depo. at

105:4-7.  Yet, McMullen omitted this information, and instead disclosed only that both

Keanes in New Jersey denied ownership of the package and then asserted that Brian Keane

and Plaintiff are related because they share the same last name and that look alike.  Foster

Decl. Ex. C at 4.  Thus, despite Defendants' protestations to the contrary, this and the other

omissions and misstatements in McMullen's affidavit discussed above are more than

sufficient to establish a substantial showing of McMullen's deliberate falsehoods and/or

reckless disregard for the truth.  See Chism, 661 F.3d at 386.[6]

### b)    Clearly Established

Defendants do not address the second prong of the qualified immunity inquiry,

which concerns whether Plaintiffs' constitutional rights were clearly established at the time

of the incidence.  Chism, 661 F.3dd at 392.  Nonetheless, the Court's determination that

Plaintiffs have made an adequate showing of judicial deception to avoid summary judgment

is dispositive of the qualified immunity inquiry.  Id. at 393 (holding that "[i]n judicial

deception cases, [the] qualified immunity analysis at the summary judgment stage is

swallowed by the question of reckless or intentional disregard for the truth.").

Accordingly, the Court finds that McMullen is not entitled to qualified immunity on

Plaintiffs' claim for judicial deception and therefore DENIES summary judgment as to

McMullen on said claim.

---

[6] Defendants do not address the second prong germane to a judicial deception claim; to wit, that but for the misinformation and/or omissions, the magistrate would not have found probable cause to issue the warrant.  Chism, 661 F.3d at 386.  Their failure to do so, standing alone, is fatal to their qualified immunity defense.  See Indep. Towers of Wash., 350 F.3d at 929 ("Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief.") (quoting in part Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994)).  Nevertheless, it is clear that Plaintiffs have made a sufficient showing on this prong to avoid summary judgment.  As noted, the only connection between Plaintiffs' address and the package containing marijuana was that Plaintiffs' address was listed on the package as the return address.  It is highly unlikely whether that evidence would have been found to be sufficient to establish probable cause, given that drug traffickers do not list their correct name and actual return address on a package containing drugs.  Levine Decl. ¶¶ 11-12.

### 2.   Silva

Defendants contend that they are entitled to summary judgment as to Plaintiffs' invalid search warrant claim against Silva on the ground that he was not involved in the investigation of Plaintiffs or the procurement of the search and arrest warrants.  Pls.' Mot. at 13.  Plaintiffs do not address, let alone dispute, Defendants' argument.  Accordingly, the Court GRANTS summary judgment in favor of Silva on Plaintiffs' claim for judicial deception.

### C.   EXCESSIVE FORCE

Plaintiffs allege that Defendant used excessive force in the course of executing the search and arrest warrants and in arresting Keane.  The Fourth Amendment requires law enforcement officers "to use only an amount of force that is objectively reasonable in light of the circumstances facing them."  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  This prohibition applies both to arrests, see id., and the execution of a search warrant, Boyd v. Benton Cnty., 374 F.3d 773, 780 (9th Cir. 2004).

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." Liston v. Cnty. of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (internal quotations and citations omitted).

As will be set forth below, the Court finds that there are genuine disputes of material fact as to whether McMullen and Silva used excessive force which preclude summary judgment on this claim.

### 1.   Silva

Defendants argue that Silva is entitled to summary judgment on the ground that Plaintiffs have failed to attribute specific instances of excessive force to him.  Defs.' Mot. at 13-15.  As a general matter, liability may be imposed on an individual defendant under

§ 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  Alternatively, even if the officer did not personally engage in the unconstitutional conduct, the officer may be liable if he or she was an "integral participant" in the constitutional violation.  See Boyd v. Benton Cty., 374 F.3d 773, 781 (9th Cir. 2004).

An officer is an integral participant where she "participated in some meaningful way" in the actions which gave rise to the constitutional violation.  Id.  Thus, for instance, an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can nevertheless be a 'full, active participant' in the search."  Id. (citing James ex rel. James v. Sadler, 909 F.2d 834 (5th Cir. 1990)).  In contrast, an officer who is merely present as a bystander but is not involved in the search is not subject to liability.  Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th Cir. 2009) ("it is clear that an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search in any fashion cannot be held liable [under the integral participant doctrine].").

Here, Defendants argue that Silva was nothing more than a bystander, and that it was McMullen who was responsible for executing the search warrant, entering Plaintiffs' home and arresting Keane.  Defendants' attempt to minimize Silva's role is unavailing.  Silva was part of the law enforcement team whose purpose it was to enter and search the residence and ultimately arrest Keane.  McMullen Depo. 215:10-219:4.  At the outset of the raid, Silva guarded the perimeter of Plaintiffs' residence with his weapon drawn to intercept anyone trying to escape the house.  Foster Decl. Ex. 11 ("Silva Depo.") at 83:19-84:3; 97:11-17, 103:2-6, Dkt. 122-12.  This alone is sufficient to render him an integral participant potentially liable for excessive force.  See Boyd, 374 F.3d at 780.

In addition, Silva acknowledges that he entered Plaintiffs' home, was involved in the search of the premises, and interrogated Plaintiffs.  Silva Depo. at 129:18-23, 149:19-24, 152:11-13.  Far from being a mere bystander, Silva was integrally involved in the raid upon Plaintiffs' home, the alleged mistreatment of Plaintiffs and Keane's arrest.  See Liston v.

1  County of Riverside, 120 F.3d 965, 981 (9th Cir. 1997) (holding that officers who were

2  inside plaintiff's premises during the execution of the search warrant "were participants in

3  the detention of the [plaintiffs]" and therefore were not entitled to summary judgment on

4  plaintiffs' claim under the Fourth Amendment).  Under well settled Ninth Circuit authority,

5  Plaintiffs' evidence is more than sufficient to create a triable issue of fact as to whether

6  Silva was an integral participant with respect to the alleged constitutional violations.  Thus,

7  Defendants' motion for summary judgment on Plaintiffs' claim of excessive force against

8  Silva is DENIED.

9               **2.     McMullen**

10          Defendants next contend that McMullen is entitled to summary judgment on

11  Plaintiffs' excessive force claim on the grounds that they have failed to specifically identify

12  him as the individual responsible for applying unreasonable force.  Defs.' Mot. at 18-19.

13  However, the evidence shows that McMullen, among others, had his weapon pointed at

14  Plaintiffs from the time of entry into their home until they were placed on the floor face

15  down.  McMullen Depo. at 264:21-266:11; Keane Decl. ¶ 19, 22; Strange Decl. ¶¶ 9, 11.

16  Plaintiffs were unarmed, did not challenge the officers' authority and ostensibly posed no

17  particular danger to them.  Id.  Under controlling Ninth Circuit authority ignored by

18  Defendants, such conduct may give rise to a claim for excessive force.  See Robinson v.

19  Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002) ("as a general principle . . . pointing a

20  gun to the head of an apparently unarmed suspect during an investigation can be a violation

21  of the Fourth Amendment, especially where the individual poses no particular danger.");

22  McKenzie v. Lamb, 738 F.2d 1005, 1010 (9th Cir. 1984) (pointing guns and forcing

23  suspects to the ground constitutes sufficient evidence to present a claim of excessive force).

24          In addition, there is a question of fact regarding whether Defendants' handcuffing of

25  Plaintiffs violated their Fourth Amendment rights.  "[D]etaining a person in handcuffs

26  during the execution of a warrant to search for evidence is permissible, *but only when*

27  *justified by the totality of the circumstances*."  Meredith v. Erath, 342 F.3d 1057, 1062-63

28  (9th Cir. 2003) (emphasis added).  Here, the record supports the inference that, under the

totality of the circumstances, Defendants' use of handcuffs was unreasonable.  Plaintiffs were handcuffed for over an hour, during which time they were forced to lay on the floor and later interrogated while sitting on a toilet.  Keane Decl. ¶¶ 18, 22, 26, 27, 37; Strange Decl. ¶¶ 13, 15, 17, 27.  Plaintiffs, who are in their 50's and 60's, were unarmed and at all times compliant with the officers' instructions.  Id.  The handcuffs were placed so tightly on Keane's wrists that they caused pain.  Keane Decl. ¶¶ 22-26.  McMullen then lifted Keane up by the handcuff chain causing cuts to both of his wrists.  Id. ¶ 26 & Ex. C.  The unjustified and unnecessarily forceful use of handcuffs is sufficient to raise a question of fact regarding the reasonableness of Defendants' use of handcuffs.  See LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000) (tight handcuffing can constitute excessive force); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (same).

Defendants attempt to make much of Plaintiffs' confusion over which Defendant was responsible for each alleged constitutional violation.  According to Defendants, Plaintiffs initially identified McMullen as the person was responsible for stepping on Strange's head with his boot and pulling Keane up with the chain on the handcuffs, but that when deposed, they equivocated regarding which officer was responsible.  Defs.' Mot. at 10.  Defendants also contend that Plaintiffs have confused McMullen for Silva and vice-versa.  Id. at 11.  However, any uncertainties in Plaintiffs' identification of McMullen and Silva are pertinent to Plaintiffs' credibility, which cannot be resolved on summary judgment.  See Liston, 120 F.3d at 981 (noting that plaintiffs' inability to "state with certainty which officers had violated their rights" did not preclude defendants' liability for constitutional violations).  These are matters ultimately within the province of the factfinder.

Moreover, there is ample, consistent testimony and evidence to support Plaintiffs' excessive force claim against McMullen.  McMullen obtained the search and arrest warrants, planned the raid, and was "in charge" of the operation.  McMullen Depo. at 215:10-217:22, 219:1-4, 242:1-4.  At his deposition, McMullen admitted that he was stationed at Plaintiffs' front door, and that he was the first to enter the residence with his

weapon drawn as soon as he observed Keane.  Id. at 221:2-9, 243:7-10, 251:6-18, 264:21-24, 266:6-11.  McMullen also conceded that both he and Silva interrogated Plaintiffs while they were handcuffed and seated on the toilet, id. at 283:25-284:2, 285:3, 291:11-18, 299:2-4, and that one of them arrested Keane, id. at 320:13-17.  Although Plaintiffs may have exhibited some confusion regarding which of the remaining Defendants was responsible for each specific act, Defendants' contention that they had no involvement in any of the acts giving rise to this lawsuit will also be within the province of the finder of fact to consider.  At trial, Defendants will have the opportunity to examine Plaintiffs regarding their allegedly inconsistent identifications.  Defendants' motion for summary judgment on Plaintiffs' claim of excessive force against McMullen is therefore DENIED.

### D.   KNOCK AND ANNOUNCE

Plaintiffs allege that Defendants violated Plaintiffs' constitutional rights by entering their home without complying with the "knock and announce" rule.  Absent exigent circumstances, the law requires that "officers entering a dwelling pursuant to a search warrant announce their purpose and authority and either wait a reasonable amount of time or be refused admittance before forcibly entering the residence."  United States v. Bynum, 362 F.3d 574, 579 (9th Cir. 2004) (citations omitted).  This requirement "is part of the reasonableness inquiry under the United States Constitution's Fourth Amendment guarantee against unreasonable searches and seizures."  United States v. Combs, 394 F.3d 739, 742 (9th Cir. 2005) (citing Wilson v. Arkansas, 514 U.S. 927, 934 (1995)).

Defendants do not address Plaintiffs' knock and announce claim in their moving papers, but in their reply, contend that Plaintiffs have "insufficient evidence" to support such a claim.  Defs.' Reply at 9.  The Court typically does not consider arguments that are "not specifically and distinctly argued in [the] opening brief[.]"  Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (internal quotation marks and citations omitted).  That aside, it is clear that there are genuine issues of material fact regarding this claim.  McMullen alleges that he complied with the knock and announce requirement.

1  McMullen Depo. at 221:2-18, 251:5-13.  Plaintiffs emphatically claim that he did not.

2  Keane Depo. at 36:18-38:25; 42:3-19; 44:12-23, 51:8-20, 90:19-91:1; Strange Depo. at

3  51:18-52:2.  Obviously, resolution of this factual dispute turns on the credibility of the

4  parties which cannot be resolved at this juncture.  The Court therefore DENIES

5  Defendants' motion for summary judgment as to Plaintiffs' knock and announce claim.

6  IV.    **CONCLUSION**

7      For the reasons set forth above,

8      IT IS HEREBY ORDERED THAT

9      1.    Defendants' Motion for Summary Judgment is GRANTED IN PART and

10  DENIED IN PART.  Summary judgment is GRANTED only with respect to Plaintiffs'

11  claim of judicial deception against Silva.  The motion is DENIED in all other respects.

12      2.    This matter is REFERRED to Magistrate Judge Elizabeth Laporte for a

13  mandatory settlement conference to take place within sixty (60) days of the date this Order

14  is filed.

15      3.    This Order terminates Docket 160.

16      IT IS SO ORDERED.

17  Dated:  August 8, 2012

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

18

19

20

21

22

23

24

25

26

27

28